**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMISSIONS IMPORT EXPORT S.A.,

*Petitioner*,

v.                                    Civil Action No. 1:13-cv-713-RLW

REPUBLIC OF THE CONGO,

*Respondent.*

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO VACATE AMENDED DEFAULT JUDGMENT**

CHADBOURNE & PARKE LLP
Attorneys for Respondent
    Republic of the Congo
1301 Avenue of the Americas
New York, NY  10019
(212) 408-5100

Dana Frix
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
Tel. (202) 974-5600

            Of Counsel

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................……..2

FACTUAL BACKGROUND................................................................................4

ARGUMENT .....................................................................................................10

I   DEFAULT JUDGMENTS, WHICH ARE DISFAVORED IN GENERAL AND IN
    PARTICULAR AGAINST SOVEREIGN ENTITIES, MAY BE VACATED
    UNDER RULE 60(b) ...............................................................………10

II  THE DEFAULT JUDGMENT SHOULD BE VACATED UNDER RULE 60(b)(4)
    AS VOID FOR LACK OF PERSONAL JURISDICTION, BECAUSE THE
    CONGO WAS NOT PROPERLY SERVED IN THE MANNER REQUIRED BY
    THE FOREIGN SOVEREIGN IMMUNITIES ACT ..........................................13

    A.  The Congo Was Not Served Pursuant to the "Special Arrangement For
        Service" That Had Been Agreed to Between the Congo and Commisimpex,
        as Required by the FSIA Under 28 U.S.C. § 1608(a)(1) ...........................................15

    B.  Petitioner's Attempt to Serve the Congo's Minister of Foreign Affairs Was
        Also Improper and Defective Even Under the Terms of 28 U.S.C. §
        1608(a)(3) ...................................................................................................17

III THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED AS VOID
    FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 60(b)(4),
    BECAUSE PETITIONER LACKS STANDING TO SEEK TO CONFIRM THE
    ARBITRAL AWARD IN COMMISIMPEX'S NAME…..................................19

IV  THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED AS VOID
    FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 60(b)(4)
    BECAUSE SUBJECT-MATTER JURISDICTION UNDER THE FAA
    REQUIRES A WRITTEN AGREEMENT TO ARBITRATE, WHICH IS NOT
    PRESENT HERE ..............................................................................................22

V   THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED UNDER
    RULE 60(b)(1) BECAUSE ANY DEFAULT UNDER THE CIRCUMSTANCES
    HERE QUALIFIES AS "INADVERTENCE" AND "EXCUSABLE NEGLECT"
    THAT THIS MOTION ADDRESSED WITHIN A "REASONABLE TIME" AND
    WITHIN A YEAR ...........................................................................................24

    A.  The Congo's Delay in Responding to the Petition Was Due to the Lack of
        Actual Notice of the Petition by the Officials Charged with Responding to

       Foreign Legal Papers, Due to the Improper Manner in Which Service Was
Made .......................................................................................................................24

B.    There Will Be No Prejudice From Having to Resolve the Petition to Confirm
on the Merits ..........................................................................................................27

C.    The Congo Acted Timely in Filing Its Motion for Rule 60 Relief ...........................28

D.    The Congo Acted in Good Faith, While Good-Faith Efforts by the Petitioner
Are Lacking ...........................................................................................................29

E.    The Congo Has "Meritorious Defenses" to Commisimpex's Petition .....................31

      1.    Jurisdictional Defenses .................................................................. 31
      2.    Other Procedural Defenses ............................................................ 32
      3.    New York Convention Defenses .....................................................33

CONCLUSION......................................................................................……..34

## TABLE OF AUTHORITIES

**Page**

<u>**Case**</u>

*Abur v. Republic of Sudan*,
    437 F. Supp. 2d 166 (D.D.C. 2006) ........................................................................18

*Acree v. Republic of Iraq*,
    658 F. Supp. 2d 124 (D.D.C. 2009) ........................................................................11

*Anyanwutaku v. Wilson*,
    CIV.A.00-2296, CIV.A.00-2296 CKK/JM ..............................................................29

*Austin Inv. Fund, LLC By & Through Elieff v. United States*,
    88 Fed. R. Serv. 3d 839 (D.D.C. 2014) ..................................................................25

*Barot v. Republic of Zambia*, CV 13-0451 (ABJ), 2014 WL 1400849, at *2 (D.D.C. Apr. 11,
    2014); *reconsideration denied*, CV 13-0451 (ABJ), 2013 WL 2443868 (D.D.C. June 2, 2014)
    ...............................................................................................................................19

*Barot v. Embassy of Republic of Zambia*,
    CV 13-0451 (ABJ), 2014 WL 2443868 (D.D.C. June 2, 2014) ...............................15

*BCCI Holdings v. Khalil*,
    20 F. Supp. 2d 1 (D.D.C. 1997) ..............................................................................21

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
    734 F.3d 1175 (D.C. Cir. 2013) ..............................................................................19

*\*Combs v. Nick Garin Trucking*,
    825 F.2d 437 (D.C. Cir. 1987) ..........................................................................11, 13

*Commissions Imp. Exp. S.A. v. Republic of Congo*,
    916 F. Supp. 2d 48 (D.D.C. 2013), *rev'd and remanded*, 757 F.3d 321 (D.C. Cir. 2014)........5

*Cunard S.S. Co. v. Salen Reefer Serv. AB*,
    773 F.2d 452 (2d Cir. 1985)....................................................................................21

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
    358 F.3d 1286 (11th Cir. 2004) ..............................................................................23

*Donnelly v. F.A.A.*,
    411 F.3d 267 (D.C. Cir. 2005)................................................................................21

*\*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
    447 F.3d 835 (D.C. Cir. 2006)........................................10, 11, 12, 24, 27, 31, 35

*First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda –Permanent Mission*,
    877 F.2d 189 (2d Cir. 1989)......................................................................................12

*Florida Audubon Soc. v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996).....................................................................................19

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
    675 F. Supp. 2d 104 (D.D.C. 2009)...........................................................................27

*Green v. Am. Fed. of Labor and Congress of Indus. Organizations*,
    811 F. Supp. 2d 250 (D.D.C. 2011)...........................................................................13

*Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*,
    288 F. Supp. 2d 22 (D.D.C. 2003).............................................................................31

*Jackson v. People's Republic of China*,
    794 F.2d 1490 (11th Cir. 1986) .................................................................................12

*Keegel v. Key West & Caribbean Trading Co.*,
    627 F.2d 372 (D.C. Cir. 1980)...................................................................................27

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................................19, 20

*Magness v. Russian Fed'n*,
    247 F.3d 609 (5th Cir. 2001) .....................................................................................15

*Marshall v. Honeywell Tech. Solutions, Inc.*,
    675 F. Supp. 2d 22 (D.D.C. 2009).............................................................................32

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    375 B.R. 719 (S.D.N.Y. 2007)...................................................................................20

*Mohammadi v. Islamic Republic of Iran*,
    947 F. Supp. 2d 48 (D.D.C. 2013).............................................................................19

*Moses v. Howard Univ. Hosp.*,
    606 F.3d 789 (D.C. Cir. 2010).............................................................................20, 21

*Passarella v. Hilton Int'l Co.*,
    810 F.2d 674 (7th Cir. 1987) .....................................................................................30

*Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*,
    507 U.S. 380 (1993).............................................................................................10, 11

*Practical Concepts, Inc. v. Republic of Bolivia*,
    811 F.2d 1543 (D.C. Cir. 1987) .................................................................................12

*Pulliam v. Pulliam*,
    478 F.2d 935 (D.C. Cir. 1973) ..........................................................................11

*Ramirez v. Dep't of Justice*,
    680 F. Supp. 2d 208 (D.D.C. 2010) ...................................................................11

*Standard Enterprises, Inc. v. Bag-It, Inc.*,
    115 F.R.D. 38 (S.D.N.Y. 1987) ...........................................................................6

*Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*,
    421 F. Supp. 2d 87 (D.D.C. 2006), *aff'd sub nom. TermoRio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ...........................................................................22

*Thompson v. Am. Home Assur. Co.*,
    95 F.3d 429 (6th Cir. 1996) ...............................................................................26

*Toussaint v. Howard Univ.*,
    CIV.A. 03-1395 JDB, 2005 WL 6778614 (D.D.C. Nov. 8, 2005) .....................32

*\*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    30 F.3d 148 (D.C. Cir. 1994) .......................................................................14, 15

*Trupei v. United States*,
    274 F.R.D. 38 (D.D.C. 2011) .............................................................................25

*Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d. Cir. 1987) .............................................................................21

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..........................................................................................20

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................3, 22, 23

*28 U.S.C. § 1608 ...........................................................14, 15, 16, 17, 18, 19

28 U.S.C. § 1330(b) .............................................................................................14

Fed. R. Civ. P. 12 .................................................................................................31

Fed. R. Civ. P. 17 ...........................................................................................31, 32

*Fed. R. Civ. P. 60 .................................................................................... *passim*

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21
    U.S.T. 2517, 330 U.N.T.S. 38. ... ...........................................................22, 23, 33, 34

OHADA "Uniform Act Organizing Collective Proceedings for Wiping Off Debts" .....6, 8, 28, 32

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A., | |
| *Petitioner*, | |
| v. | Civil Action No. 1:13-cv-713-RLW |
| REPUBLIC OF THE CONGO, | |
| *Respondent.* | |

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO VACATE AMENDED DEFAULT JUDGMENT**

Respondent the Republic of the Congo (the "Congo"),[1] by its attorneys CHADBOURNE

& PARKE LLP, respectfully submits this memorandum of law in support of its Motion to Vacate

Amended Default Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[2]

---

[1]   The Republic of the Congo is a West African nation the capital of which is Brazzaville. It should not be confused with its neighbor to the east, the Democratic Republic of the Congo (formerly known as the Republic of Zaïre), the capital of which is Kinshasa.

[2]   The Congo's motion to vacate is supported by the following documents being filed concurrently with this memorandum:  (1) the Declaration of Robert A. Schwinger in Support of Respondent's Motion to Vacate Amended Default Judgment, executed September 24, 2014, and the exhibits thereto ("Schwinger Decl."); (2) the Declaration of Marc Suskin in Support of Respondent's Motion to Vacate Amended Default Judgment, executed September 24, 2014, and the exhibits thereto ("Suskin Decl."); (3) the Declaration of Gaston Mossa, executed September 18, 2014, and the exhibits thereto, submitted in the original French and with a certified translation ("Mossa Decl."); (4) the Declaration of Gilbert Ondongo, executed September 15, 2014, submitted in the original French and with a certified translation ("Ondongo Decl."); and (5) the Declaration of Boaz S. Morag, executed September 23, 2014 ("Morag Decl.").

## PRELIMINARY STATEMENT

This action was brought to confirm an international arbitration award dated January 21, 2013 (the "2013 Final Award") (Schwinger Decl., Exh. 4), against the Respondent, the Congo, a foreign state and sovereign nation.  The Petitioner filed the Petition to Confirm Arbitral Award (Schwinger Decl., Exh. 2) (the "Petition") on May 15, 2013.  A default was entered against the Congo and subsequently a default judgment was issued on September 30, 2013 (Dkt. No. 16), followed by an amended default judgment on October 9, 2013 (Dkt. No. 18).  The Congo now moves to vacate the amended default judgment.

Default judgments are disfavored and default judgments against foreign sovereigns are especially disfavored.  Here, the amended default judgment should be vacated for four principal reasons.

First, the Congo was never properly served with process in this action because it is a foreign state but was not served in accordance with the requirements of the Foreign Sovereign Immunities Act ("FSIA").  For this reason alone, the default should be vacated.

Second — in an issue that also goes both to subject-matter jurisdiction in this action as well as to the merits of why the underlying award should not be confirmed — the nominal Petitioner in this action lacks standing to bring suit in the name of the Congolese entity Commissions Import Export S.A. ("Commisimpex").  Before this action was filed, Commisimpex was declared insolvent and placed into liquidation, and a committee liquidation trustees (hereinafter "liquidation trustees") was appointed to serve as the legal representative for the estate of Commisimpex.  It was not these liquidators, however, who filed or caused to be filed in the name of Commisimpex this action to confirm the arbitral award.  Rather, upon information and belief, it was the *prior management* of Commisimpex (who had initiated the underlying arbitration prior to the time when Commisimpex had been placed in liquidation) who

caused this action to be filed through the counsel they had employed in the arbitration.  This action was filed in the name of Commisimpex without the knowledge or authority of the liquidation trustees and notwithstanding the fact that prior management's authority with respect to the affairs of Commisimpex had been expressly terminated by judicial order when Commisimpex was placed into liquidation and the liquidators were appointed — facts that neither the Petition nor any of the Petitioner's other filings in this action ever disclosed to this Court.  For this reason, there is no subject-matter jurisdiction over this action because the persons acting as the Petitioner herein lacked authority to initiate suit in Commisimpex's name.

Third, there is also a failure of subject-matter jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, because there was no written agreement to arbitrate the contractual dispute that gave rise to the 2013 Final Award which Petitioner now seeks to confirm.

Finally, irrespective of whether the Petitioner had standing or whether service of process was properly made, relief from default is warranted in this case because any delay on the part of the Congo in appearing was inadvertent and excusable, in view of how service was made and the fact that the Petitioner never gave so much as a courtesy notification to the Congo's counsel about bringing this action or any of the proceedings herein, notwithstanding the fact that counsel for the parties were in regular contact on a variety of other legal matters throughout this period, including both (a) proceedings in another action before this court and the D.C. Circuit, and (b) proceedings abroad concerning the underlying 2013 Final Award.  Nor did Petitioner ever make this Court aware of the existence or pendency of these other proceedings.

Along with this motion, the Congo has filed a Verified Answer setting forth its numerous meritorious affirmative defenses to enforcement of the underlying arbitral award.  In these

circumstances, the amended default judgment should be vacated and the Congo permitted to defend against this action and oppose confirmation of the 2013 Final Award on the merits.

## FACTUAL BACKGROUND

Commisimpex, the purported Petitioner herein, is a Congolese company now in liquidation.  (*See* Mossa Decl. ¶ 2.)  As set forth in the 2013 Final Award, in the mid-1980s, Commisimpex and the Congo executed several contracts for public works and the supply of equipment in the Congo.  (*See* Schwinger Decl., Exh. 3 ¶ 4.)  Issues subsequently arose regarding payments under these contracts.  (*See id.* ¶ 3.)

On October 14, 1992, the parties signed an agreement, Protocol No. 566 (the "1992 Protocol") (Schwinger Decl., Exh. 10), providing for the payment of promissory notes by the Congo to Commisimpex over a period of 10 years.  The 1992 Protocol included a dispute resolution clause providing for arbitration in Paris under the rules of the International Chamber of Commerce (the "ICC").  (*Id.*, Art. 10.)  The 1992 Protocol also contained a provision requiring that all notices concerning the performance of the 1992 Protocol be sent to the Congo via the Caisse Congolaise D'Amortissement (the "Caisse Congolaise") at the address "Caisse Congolaise D'[A]mortissement, B.P. 2090- Telex 5294 KG, Brazzaville (Republic of Congo)." (*Id.*, Art. 9.)[3]

In 1998, Commisimpex brought an ICC arbitration against the Congo in Paris, France, for monies that the Congo allegedly owed under the 1992 Protocol.  *Commisimpex v. Republic of the Congo & Caisse Congolaise D'Amortissement*, ICC Case No. 9899/AC/DB, Final Award (Dec.

---

[3]   The Caisse Congolaise is a Congolese public entity that manages the payment of the Congo's debts.  The Ministry of Finance supervises the Caisse Congolaise. (*See* Ondongo Decl.)

3, 2000).  This proceeding led to an arbitral award under which the Congo and Caisse Congolaise were ordered to pay Commisimpex approximately US$107 million (in various currencies) on the promissory notes under the 1992 Protocol (the "2000 Final Award").  (*See* Schwinger Decl. ¶ 10 & Exh. 9.)[4]  Several years later, on August 23, 2003, Commisimpex and certain officials from the Congo purportedly signed another document, Protocol No. 706 (the "2003 Protocol") (Schwinger Decl., Exh. 5), that purportedly provided for the Congo's payment of the totality of monies allegedly still owed to Commisimpex.[5]  The 2003 Protocol did not contain a dispute resolution provision.  (*See id.*)

On April 17, 2009, Commisimpex commenced a new ICC arbitration proceeding, again in Paris, France against the Congo based on the 2003 Protocol.  *Commisimpex Import Export S.A., v. Republic of the Congo*, ICC Case No. 16257/EC/ND/MCO, Final Award (Jan. 21, 2013).  (*See* Morag Decl. ¶¶ 2-3.)  This is the arbitration proceeding from which the Petition in this action arose.

---

[4]  In 2009, Commisimpex confirmed the 2000 Final Award in England's High Court of Justice. Following the confirmation, Commisimpex sought recognition of the English judgment as a "foreign-country judgment" in this Court.  *See Commissions Imp. Exp. S.A. v. Republic of Congo*, 916 F. Supp. 2d 48, 50 (D.D.C. 2013), *rev'd and remanded*, 757 F.3d 321 (D.C. Cir. 2014).  This Court dismissed that petition as untimely since it was brought outside the three-year FAA statute of limitations, *id.* at 57, but the D.C. Circuit reversed on appeal, holding the FAA statute of limitations does not preempt the longer statute of limitations in the D.C. Recognition Act for enforcing a foreign court judgment, and remanding the case back to this Court.  *See* 757 F.3d at 333.

[5]  The Congo has raised serious issues about the legitimacy of the claimed agreement purportedly represented by the 2003 Protocol.  (*See* Point V.E., *infra*, at p. 31.)  All discussions of the 2003 Protocol in this memorandum are without prejudice to and subject to the reservation of those issues.

In this arbitration, the Congo challenged the ICC tribunal's jurisdiction because the 2003 Protocol upon which Commisimpex's claim was based (*see* Schwinger Decl., Exh. 5), unlike the 1992 Protocol (*compare id.*, Exh. 10, Art. 10) did not contain a dispute resolution provision providing for arbitration.  (*See id.*, Exh. 4 ¶ 17.)  However, in an August 20, 2010 ruling on this jurisdictional issue (Schwinger Decl., Exh. 4), the ICC tribunal rejected the Congo's jurisdictional challenge, on the stated basis that the 1992 and 2003 Protocols formed part of the same "group of contracts" and therefore must be read together under French law, so as to make the 1992 Protocol's arbitration provision applicable to disputes under the 2003 Protocol.  (*See id.* ¶¶ 18, 117, 135, 145.)[6]

The arbitration then continued to the merits phase.  However, on September 26, 2012, while the arbitration was still underway, the Congo's National Social Security Fund (Caisse Nationale de Sécurité Sociale) began liquidation proceedings against Commisimpex in the Commercial Court of Brazzaville (*see* Mossa Decl., Exh. A) under the OHADA "Uniform Act Organizing Collective Proceedings for Wiping Off Debts" (the "OHADA Uniform Act"),[7] as a

---

[6]   On November 17, 2010, the Congo moved to set aside the August 20, 2010, jurisdictional award in the French courts.  On January 29, 2014, the Cour de Cassation rejected the Congo's application.  *See* Cour de Cassation [Cass.] Jan. 29, 2014, Case No. 67 F-D, Appeal No. G 12-26.597 (Fr.).

[7]   "OHADA" refers to a uniform set of business laws and institutions adopted by seventeen West and Central African nations.  OHADA stands for "Organisation pour l'Harmonisation en Afrique du Droit des Affaires" (or, the Organization for the Harmonization of Business Law in Africa).  (*See* Mossa Decl. ¶ 7.)  The OHADA "Uniform Act Organizing Collective Proceedings for Wiping Off Debts" can be found on the OHADA website in English translation at http://www.ohada.com/actes-uniformes/588/uniform-act-organizing-collective-proceedings-for-wiping-off-debts.html and in the original French at http://www.droit-afrique.com/images/textes/Ohada/AU/OHADA%20-%20AU%20Procedures%20coll.pdf.  Copies are also provided here at Suskin Decl. ¶ 8 &  Exhs. 1, 2.

result of Commisimpex's failure to pay over 2.8 billion Congolese francs (approximately US$3 million) in social security contributions and taxes for over 20 years. (*See* Mossa Decl., Exh. A at 3.) In an October 30, 2012 ruling (Mossa Decl., Exh. A) ruling, the Commercial Court of Brazzaville liquidated Commisimpex's property, ordered the personal bankruptcy of Commisimpex's owner Mr. Mohamed, and dissolved Commisimpex as a corporate body and appointed three liquidation trustees and a Supervisory Judge to oversee the liquidation of Commisimpex. (*Id.* at 26.) In its ruling, the court ordered that "the acts, rights and actions of COMMISIMPEX S.A. shall be done or exercised, for the duration of the liquidation of assets by the trustee acting alone in representing COMMISIMPEX[.]" (*Id.* (emphasis added); *see also* Mossa Decl. ¶ 3.)

The ICC arbitration nevertheless proceeded to completion, despite the liquidation ruling.[8] On January 21, 2013, the tribunal issued the 2013 Final Award (Schwinger Decl., Exh. 3). The 2013 Final Award ordered the Congo to pay Commisimpex a sum equivalent to approximately US$770 million (s*ee id.* at ECF p. 167, ¶¶ 10-11),[9] or approximately 5.5% of the Congo's 2013

---

[8]  Commisimpex's liquidation was brought to the attention of the ICC arbitral tribunal during the arbitration proceedings. While the tribunal determined that it had the authority to complete the arbitration that had been commenced and was already in progress before the liquidation had been ordered, it cautioned that nothing in its ruling purported to deem the liquidation invalid or to address its impact on any other legal proceedings. (*See* Schwinger Decl., Exh. 3 ¶¶ 216-22.)

[9]  Specifically, the 2013 Final Award called for the Congo to pay €222,749,598.82 plus 10% interest on the award running from December 31, 2003 until the date of the full payment of the award, compounded annually; plus an additional €1,956,425 for Commisimpex's legal fees; and US$855,000 for 75% of the ICC arbitration costs. (Schwinger Decl., Exh. 3 at ECF p. 167, ¶¶ 10-11.) The current value of the award totals over €580 million, or roughly more than US$770 million.

gross domestic product.[10]  Less than a month after this award was issued, on February 20, 2013, the Congo commenced a proceeding before the Court of Appeals of Paris (France being the seat of the arbitration) to set aside the 2013 Final Award on various grounds, which set-aside proceeding is currently awaiting a decision.  (*See* Suskin Decl. ¶ 4; Morag Decl. ¶¶ 2-4.)[11]

On May 13, 2013, the Appellate Court of Brazzaville issued a ruling on the October 30, 2012 Commisimpex liquidation order.   (*See* Mossa Decl. ¶¶ 5-6 & Exh. B.)   The Appellate Court's ruling confirmed the liquidation of Commisimpex under Congolese law, but declared the personal bankruptcy of Commisimpex's owner Mr. Mohamed Hajaij to be invalid, and appointed a modified group of three liquidation trustees and a supervisory judge.  (*See* Mossa Decl. ¶¶ 5-6 & Exh. B at 12.)[12]

Nevertheless, on May 15, 2013 — <u>a mere two days</u> after the Appellate Court of Brazzaville confirmed the liquidation of Commisimpex — Petitioner <u>without the authorization or knowledge of the Commisimpex liquidation trustees</u> filed this action in the name of Commisimpex to confirm the 2013 Final Award.  (Mossa Decl. ¶¶ 9-10; *see* Schwinger Decl.,

---

[10]   The World Bank's website lists the Congo's 2013 gross domestic product as having been $14.11 billion.  *See Republic of the Congo*, The World Bank, www.worldbank.org/en/country/congo (last visited Sept. 20, 2014).

[11]   A number of briefs have been filed by the parties in this set-aside proceeding in France.  In this matter, Commisimpex filed its brief on September 1, 2014, the Congo filed its brief on September 10, 2014, and a hearing was scheduled for September 16, 2014.  (Suskin Decl. ¶ 4.)  Once a decision is rendered, the parties may further appeal to the "Cour de Cassation" in France.  (*See id.*)

[12]   Pursuant to the OHADA Uniform Act, Commisimpex has since appealed the decision of the Appellate Court of Brazzaville to the Common Court of Justice and Arbitration in Abidjan, which is located in the Ivory Coast.  (Suskin Decl. ¶ 9.)

Exh. 2.)  However, the Petition — and all subsequent proceedings and filings in this action — failed to inform the Court of a number of salient facts.

First, the Petition failed to notify the Court that a Congolese judgment, which had been rendered and affirmed on appeal, had ordered the liquidation of Commisimpex and had designated liquidation trustees as the sole representatives of Commisimpex going forward.

Second, the Petition failed to inform the Court that as of the filing date of the Petition, the Congo already had initiated legal proceedings (still pending today) in France, the place of original jurisdiction of the 2013 Final Award, to set aside the very award that the Petition sought to enforce.

Third, there was never any disclosure that the 1992 Protocol created what the FSIA terms a "special arrangement" for service, which required the Congo to be served through the Caisse Congolaise and not through the Congo's Ministry of Foreign Affairs.  As the proof of service filings herein make clear, Petitioner did not serve the Petition through the Caisse Congolaise in accordance with the special arrangement for service contained in the 1992 Protocol.  (*See* Schwinger Decl., Exhs. 6, 7, 8.)  As a result, the proper authorities in the Congo did not timely receive notice that this action had been filed, and thus did not appear or respond.  (*See* Ondongo Decl.)  As a result, the Petitioner obtained an entry of default, a default judgment and then ultimately the amended default judgment from which the Congo now seeks relief.  (Dkt. Nos. 12, 14-18.)

Remarkably, throughout these proceedings — during which counsel for the Petitioner was in regular communication with counsel for the Congo on various other matters, including other litigation before this Court and the D.C. Circuit (*see* n.4, *supra*) and the French set-aside proceeding (*see* Suskin Decl. ¶ 3; Morag Decl. ¶¶ 2-4) — Petitioner's counsel never once

informed the Congo's counsel about the Petition, the entry of default, or the default judgment or amended default judgment.  (Morag Decl. ¶¶ 6-8.)  Accordingly, the Congo now moves to vacate the amended default judgment so that it can appear in this action, respond as to why the 2013 Final Award should not be confirmed, and have this case properly resolved on its merits.

## ARGUMENT

### I

### DEFAULT JUDGMENTS, WHICH ARE DISFAVORED IN GENERAL AND IN PARTICULAR AGAINST SOVEREIGN ENTITIES, MAY BE VACATED UNDER RULE 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part:

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

\*   \*   \*

 (4) the judgment is void;

\*   \*   \*

"A motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).

When a party seeks relief from a default judgment under Rule 60(b)(1) based on "inadvertence" or "excusable neglect," "the determination is . . . an equitable matter," in which the "relevant factors" include

"the risk of prejudice to the non-movant, the length of delay, the reason for the delay, including whether it was in the control of the movant, and whether the movant acted in good faith."

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (citing *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S.

380, 395 (1993) (discussing "excusable neglect" under Fed. R. Bank. P. 9006(b)(1)).  These factors "are of course not exclusive." *FG Hemisphere Assocs.*, 447 F.3d at 838.  In addition, a party seeking to set aside a default judgment under Rule 60(b)(1) is "generally require[d] to assert a potentially meritorious defense." *Id.* at 842.

Different tests apply where vacatur of a default judgment is sought under Rule 60(b)(4). "A judgment or order may be void for purposes of Rule 60(b)(4) if the court lacked personal jurisdiction or subject-matter jurisdiction in the case." *Ramirez v. Dep't of Justice*, 680 F. Supp. 2d 208, 210 (D.D.C. 2010); *see Combs v. Nick Garin Trucking*, 825 F.2d 437, 448 (D.C. Cir. 1987) (reversing default judgment as void under Rule 60(b)(4) where there was no effective service).

The application of these various Rule 60 provisions is guided by the principle, repeatedly recognized by the D.C. Circuit, that default judgments are disfavored. *See, e.g.*, *Pulliam v. Pulliam*, 478 F.2d 935, 936 n.3 (D.C. Cir. 1973) ("Since a default is not favored in the law, all doubts should be resolved against entering a default judgment.") (citation omitted).  "In the context of a default judgment 'a court should liberally allow relief under' Rule 60(b) because 'a resolution on the merits is preferable to a judgment by default.'" *FG Hemisphere Assocs.*, 447 F.3d at 839 (citations omitted).

Default judgments against foreign sovereigns are "especially disfavored." *See Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 127 (D.D.C. 2009).  As stated by then-Circuit Judge Ruth Bader Ginsburg:

> "Intolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and undermine the State Department's continuing efforts to encourage . . . foreign sovereigns generally[] to resolve disputes within the United States' legal framework."

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987) (citations omitted).  The D.C. Circuit has stated that on Rule 60(b)(1) applications, in addition to the usual *Pioneer* factors applied in ordinary cases, "we've stressed a foreign sovereign's interest — and our interest in protecting that interest — in being able to assert defenses based on its sovereign status."  *FG Hemisphere Assocs.*, 447 F.3d at 838.

Thus, defaults against sovereigns are frequently vacated under Rule 60.  *See, e.g.*, *Practical Concepts*, 811 F.2d at 1552 (declining to reinstate a default judgment against Bolivia due to foreign policy considerations); *FG Hemisphere Assocs.*, 447 F.3d at 839 (default judgment against sovereign set aside based, *inter alia*, on the "United States's interest in assuring foreign nations' ability to rely on the U.S. courts"); *Jackson v. People's Republic of China*, 794 F.2d 1490, 1495-96 (11th Cir. 1986) (affirming Rule 60(b) vacatur of default judgment where district court properly considered the impact that a default judgment could have on U.S.-China relations); *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda –Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) (vacating a default judgment and noting that "courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside.") (citations omitted).

The United States Government has intervened in cases involving default judgments against foreign sovereigns where it believed the risk of injury to diplomatic relations too great to allow a default judgment to stand.  As the Government stated in one Fifth Circuit appeal:

> "[A]lthough the United States obviously wishes its citizens be treated fairly while litigating against foreign governments, it also has a great stake in having the service of process rules followed so that the likelihood that those governments will appear in our courts to defend the merits of claims against them is increased. <u>Having controversies involving foreign governments resolved on their merits rather through default judgments is clearly in the public interest</u>."

Brief for the United States of America as Amicus Curiae filed on May 31, 2000 in *Magness v. Russian Federation*, No. 00-20136 (5th Cir.), 2000 WL 33990362 at *2-3 (emphasis added).

For the reasons discussed below, relief from the amended default judgment entered here against the sovereign nation of the Congo is warranted under Rule 60(b)(4) for lack of personal and subject-matter jurisdiction, because the Congo was never properly served, the persons who caused this action to be filed in the name of Commisimpex did not have authority or standing to do so, and there was no written agreement to arbitrate. Relief is alternatively warranted under Rule 60(b)(1) because any delay in the Congo's appearance was inadvertent and excusable, and arose from the manner of service employed. Further, the Verified Answer makes clear that there are substantial issues presented as to numerous potential meritorious defenses to enforcement of the Petition, including but not limited to the jurisdictional issues noted above. The Congo's Rule 60(b) motion to vacate should therefore be granted.

## II

### THE DEFAULT JUDGMENT SHOULD BE VACATED UNDER RULE 60(b)(4) AS VOID FOR LACK OF PERSONAL JURISDICTION, BECAUSE THE CONGO WAS NOT PROPERLY SERVED IN THE MANNER REQUIRED BY THE FOREIGN SOVEREIGN IMMUNITIES ACT

The court must grant relief from default judgment in cases where the judgment is "void." Fed. R. Civ. P. 60(b)(4); *see Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987) ("[T]here is no question of discretion on the part of the court when a motion is under Rule 60(b)(4)." (citations omitted)).

"A judgment may be void if the court lacked personal or subject matter jurisdiction in the case." *Green v. Am. Fed. of Labor and Congress of Indus. Organizations*, 811 F. Supp. 2d 250, 253 (D.D.C. 2011). "It is uniformly held that a judgment is void where the requirements of

effective service have not been satisfied." *Combs v. Garin Trucking*, 825 F.2d 437, 441-42 n.31 (D.C. Cir. 1987).

The Congo is, of course, a foreign state.  (Petition [Schwinger Decl., Exh. 2] ¶ 3.)  The FSIA, in 28 U.S.C. § 1608(a), establishes the exclusive procedures for service on a foreign state. *See* 28 U.S.C. § 1330(b) (authorizing personal jurisdiction over a foreign state only when served in accordance with § 1608); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) ("In  cases under section 1608(a) . . . decisions have rarely excused defective service.").

Under § 1608(a):

"Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."

28 U.S.C. §§ 1608(a)(1)-(3) (emphases added).[13]  These means for service under § 1608(a) are "hierarchical," meaning that a plaintiff must attempt the methods of service in the order they are

---

[13]  If service cannot be made within 30 days under paragraph (3), a plaintiff has the option to effect service by sending documents specified under the statute to the Secretary of State, who then will effect service through diplomatic channels.  *See* 28 U.S.C. § 1608(a)(4).

presented in the statute.  *See Magness v. Russian Fed'n*, 247 F.3d 609, 611, 612-13 (5th Cir. 2001).

Courts in this Circuit require "[s]trict adherence to the terms of 1608(a)" to effectuate service upon a foreign state.  *Transaero*, 30 F.3d at 154.  Neither claimed "substantial compliance" with the statute, nor even "actual notice" of the lawsuit — which is not claimed here — is sufficient to effect service on the foreign state.  *See Barot v. Embassy of Republic of Zambia*, CV 13-0451 (ABJ), 2014 WL 2443868, at *2-3 (D.D.C. June 2, 2014).  As the D.C. Circuit has noted, Congress intended that plaintiffs strictly comply with the service requirements of the FSIA because organs of foreign governments may lack the "sophisticated knowledge" of the United States legal system possessed by other defendants, such as international corporations. *Transaero*, 30 F.3d at 154 (citing *Practical Concepts*, 811 F.2d at 1546).  Accordingly, courts in this Circuit "have rarely excused defective service" under § 1608(a) and "will dismiss the plaintiff's case absent <u>exact compliance</u> with the statute."  *Barot*, 2014 WL 2443868, at *2 (emphasis added) (citing *Transaero*, 30 F.3d at 153-54).

**A.     The Congo Was Not Served Pursuant to the "Special Arrangement For Service" That Had Been Agreed to Between the Congo and Commisimpex, as Required by the FSIA Under 28 U.S.C. § 1608(a)(1)**

In the hierarchy of potential service methods under § 1608(a), the first obligation is to utilize any "special arrangement for service" that the parties may have agreed to.  *See* 28 U.S.C. § 1608(a)(1).  The Congo and Commisimpex have such a "special arrangement for service," and the default judgment here is void because the Congo was not served in accordance with that "special arrangement for service."  Instead, it appears that an attempt was made to effect service on the Minister of Foreign Affairs for Congo, improperly utilizing a lower method in the hierarchy of service found in § 1608(a)(3).

The "special arrangement for service" is found in the 1992 Protocol.  (*See* Schwinger Decl., Exh. 10, Art. 9.)   During the ICC arbitration that resulted in the 2013 Final Award, Commisimpex argued that the 1992 and 2003 Protocols must be read together because "the 2003 Protocol is the direct result of Congo's non-performance of the 1992 Protocol" and the Protocols have "the same unique economic operations, specifically the settlement of Congo's debt vis-à-vis Commisimpex."   (*See* Schwinger Decl., Exh. 4 ¶¶ 18, 117.)   The ICC tribunal accepted Commisimpex's argument, finding that the two Protocols formed part of the same "group of contracts" and must be read together under French law.  (*See id.* ¶¶ 18, 117, 135, 145.)  Indeed, it was only on this basis that the arbitration was able to proceed, because there was no arbitration provision in the 2003 Protocol itself (*see* Schwinger Decl., Exh. 5), and thus arbitral jurisdiction was dependent upon reading the two protocols together.  Thus, because it was necessary to read the 2003 Protocol under a "group of contracts" theory in order for there even to be an arbitration that could give rise to the 2013 Final Award that Petitioner now seeks to confirm, accepting that "group of contracts" theory (as Petitioner seeks to do) likewise requires that it honor the special arrangement for service found in the 1992 Protocol when bringing this action.  But this Petitioner failed to do so.

The service provision in the 1992 Protocol required that all notices be sent to the Congo via the Caisse Congolaise at the following address: "Caisse Congolaise D'[A]mortissement, B.P. 2090- Telex 5294 KG, Brazzaville (Republic of Congo)."  (Schwinger Decl., Exh. 10, Art. 9.)  In various prior actions between Commisimpex and the Congo, Commisimpex served the Congo

via the Caisse Congolaise in accordance with this "special arrangement."[14]  Thus, in this action, pursuant to the established "special arrangement" for service, the Petitioner was required to first attempt service on Congo via the Caisse Congolaise.  28 U.S.C. § 1608(a)(1).  Petitioner, however, failed to do so and instead only directed service of process to Congo's Minister of Foreign Affairs, apparently making first and only resort to procedures under 28 U.S.C. § 1608(a)(3).  (*See* Schwinger Decl. ¶¶ 7-9 & Exhs. 6-8.)  Since service on the Ministry of Foreign Affairs would only have been permissible "if service cannot be made under paragraphs (1) or (2)" of § 1608(a), 28 U.S.C. § 1608(a)(3), such service was not a proper method of service here under the FSIA.

Accordingly, because Petitioner thus failed to make service upon the Congo properly as required under the FSIA in 28 U.S.C. § 1608(a), there is a failure of personal jurisdiction.  The amended default judgment is therefore "void" and should be vacated under Rule 60(b)(4).

**B.  Petitioner's Attempt to Serve the Congo's Minister of Foreign Affairs Was Also Improper and Defective Even Under the Terms of 28 U.S.C. § 1608(a)(3)**

Even if Petitioner were not required to serve the Congo under the 1992 Protocol's "special arrangement," the default judgment would nonetheless still be void because Petitioner failed to make proper service under 28 U.S.C. § 1608(a)(3), the lower method of service in the

---

[14]  For example, in prior litigation in this Court, *Commissions Import Export S.A. v. Republic of the Congo et al.*, No. 1:12-cv-00743, Commisimpex sought to enforce the 2000 Final Award against the Congo by effectuating service upon the Caisse Congolaise D'Amortissement address provided in the 1992 Protocol.  (*See* Schwinger Decl., Exh. 11).  After receiving notice in that case pursuant to the agreed-upon "special arrangement," the Congo appeared in that action, making numerous filings and asserting its defenses against enforcement of the 2000 Final Award.  (*See* Schwinger Decl., Exh. 13 at Dkt. Nos. 13, 14, 26, 28, 36, 39, 41.)

§ 1608(a) hierarchy that Petitioner apparently attempted to utilize.[15]   Petitioner failed to make proper service under § 1608(a)(3) because it did not serve using a "form of mail requiring a signed receipt" as the statute requires.

Proper satisfaction of this provision is illustrated by *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006).   In that case, this Court found service proper under 28 U.S.C. § 1608(a)(3) when the plaintiffs provided airbills with tracking numbers for the outgoing packages, corresponding DHL tracking receipts indicating that delivery to Iran was completed and signed for, and "[o]f equal or greater evidentiary significance" DHL delivery logs reflecting "a recipient's signature." *Id.* (emphasis added).

Here, by contrast, Petitioner failed to use a "form of mail requiring a signed receipt" of delivery as § 1608(a)(3) requires.   While Petitioner submitted DHL tracking slips on its application for a default, those tracking slips manifested only DHL's internal note that the packages were signed for but do not reflect any underline actual signature by the claimed recipients at the Ministry of Foreign Affairs.   (*See* Schwinger Decl., Exh. 8.)   Unlike the plaintiffs in *Abur*, Petitioner failed to file DHL delivery logs reflecting actual script signatures for the delivery of the packages.   Indeed, the face of the DHL tracking slip indicates that Petitioner had the option to "get proof of delivery" of the packages, *see id.*, which allows the sender to view "an image of the receiver's signature," *see* http://www.dhl.com/en/express/tracking/proof_of_delivery.html,

---

[15]   28 U.S.C. § 1608(a)(2), which permits service in accordance with an "applicable international convention on the service of judicial documents," does not apply here, since the Congo is not a member of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

18

but Petitioner apparently either failed to do so or attempted to do so but was unable to obtain any actual script signatures.

Petitioner's failure to fulfill the technical requirements of § 1608(a)(3) means service was improper.   "[T]his Circuit requires strict adherence to the terms of section 1608(a), and a technical fault in service cannot be overcome by actual notice."   *Barot v. Republic of Zambia*, CV 13-0451 (ABJ), 2014 WL 1400849, at *2 (D.D.C. Apr. 11, 2014); *reconsideration denied*, CV 13-0451 (ABJ), 2013 WL 2443868 (D.D.C. June 2, 2014). Accordingly, the electronic DHL tracking slip that was filed with the Court on Petitioner's default application does not constitute a "signed receipt" as required under 28 U.S.C. § 1608(a)(3), and thus cannot constitute valid service under that provision even if resort to that provision were legally available.

### III

### THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED AS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 60(b)(4), BECAUSE PETITIONER LACKS STANDING TO SEEK TO CONFIRM THE ARBITRAL AWARD IN COMMISIMPEX'S NAME

A judgment is void "if the issuing court lacked subject-matter jurisdiction." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1180-81 (D.C. Cir. 2013). Standing "'is an essential and unchanging' predicate to any exercise of [a court's subject-matter] jurisdiction." *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).   The party claiming subject-matter jurisdiction has the "burden of proving that jurisdiction exists." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 61 (D.D.C. 2013); *see Lujan*, 504 U.S. at 561 (requiring evidentiary showing when general allegations of standing are challenged).

The Supreme Court in *Lujan* explained that "the irreducible constitutional minimum of standing contains [certain] elements. First, the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is  . . . concrete and particularized . . . ." *Lujan*, 504 U.S. at 560 (citing *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-41 n.16 (1972)).  As the Supreme Court explained:

> "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.  A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'"

*Warth v. Seldin*, 422 U.S. at 499 (citations omitted) (emphasis added).

Here, the Congolese entity Commisimpex was dissolved and liquidators were appointed with sole authority to act with respect to Commisimpex's estate.  (*See* Mossa Decl. ¶¶ 2-6 & Exhs. A-B.)  In these circumstances, only the liquidation trustees had standing to bring suit in Commisimpex's name.

> "In the context of bankruptcy proceedings, it is well understood that 'a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.'"

*Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010) (citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam)) (emphasis added); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 375 B.R. 719, 725 (S.D.N.Y. 2007) ("[C]ourts have consistently held that only the trustee and not a debtor has standing to pursue causes of action that belong to the bankruptcy estate." (emphasis added)).

Here, the Petitioner who caused this action to be filed in Commisimpex's name and purports to act on behalf of Commisimpex lacks standing.  At the time the Petition was filed, Commisimpex had been put into liquidation and the corporate entity dissolved, with the

20

Appellate Court of Brazzaville having declared and confirmed, only two days before the Petition was filed, that the liquidation trustees have the sole legal authority to act on behalf of Commisimpex.

> "The acts, rights and shares of Commisimpex SA shall be done or exercised for the duration of the liquidation of assets <u>by the trustee acting alone in representing Commisimpex SA</u>."

(Mossa Decl. ¶ 3 & Exh. A at 26 (emphasis added).)   But the liquidation trustees did not authorize the filing of this action and indeed had no knowledge of it.  (Mossa Decl. ¶¶ 9-10.)[16]

The Petition notably made no mention of these facts.  The liquidation trustees were not made a party to the Petition, nor did the Petition plead that the persons who had caused the Petition to be filed in the name of Commisimpex in fact had authority or standing to act in Commisimpex's name or to seek to confirm an arbitral award on behalf of Commisimpex.

Since only the liquidation trustees had the legal authority to file a Petition on behalf of Commisimpex, but did not do so here, this Court does not have subject-matter jurisdiction over this action.  The purported Petitioner here (or the persons acting in its name) are not the "real party in interest," do not have the capacity or authority to have commenced this action, and thus

---

[16]   Foreign judgments like the Congolese liquidation judgments are recognized and given effect in United States courts under comity principles.  *See generally Donnelly v. F.A.A.*, 411 F.3d 267, 270-71 (D.C. Cir. 2005).  Such comity is "especially important" in the context of bankruptcy proceedings, *In re Maxwell Commc'n Corp. plc By Homan*, 93 F.3d 1036, 1048 (2d Cir. 1996), and the recognition of liquidators or trustees appointed by foreign courts to act as receivers empowered to act on behalf of insolvent corporations is commonplace.  *BCCI Holdings v. Khalil*, 20 F. Supp. 2d 1, 4 (D.D.C. 1997); *see Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have recognized the particular need to extend comity to foreign bankruptcy proceedings."); *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 456-59 (2d Cir. 1985) (recognizing Swedish court's bankruptcy decision and consequent implementation of a stay on creditor actions).

lacked "standing" to bring this action.  *See Moses v. Howard Univ. Hosp.*, 606 F.3d at 795. Accordingly, there is no subject-matter jurisdiction over this action under Article III. Consequently, the amended default judgment should be vacated as void under Rule 60(b)(4).

**IV**

**THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED AS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 60(b)(4) BECAUSE SUBJECT-MATTER JURISDICTION UNDER THE FAA REQUIRES A WRITTEN AGREEMENT TO ARBITRATE, WHICH IS NOT PRESENT HERE**

The Court also lacks subject-matter jurisdiction over the Petition because the Congo never agreed *in writing* to arbitrate disputes arising under the 2003 Protocol as required by the "New York Convention," *i.e.*, the *Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, English text available at http://www.uncitral.org/pdf/english/texts/arbitration/NY-conv/XXII_1_e.pdf.   The New York Convention is enforced in the United States pursuant to 9 U.S.C. § 201.

Article III of New York Convention "provides that signatory nations are to recognize and enforce arbitral awards rendered in other nations."  *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 91 (D.D.C. 2006), *aff'd sub nom. TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007) (citing New York Convention Art. III).  Article IV of the New York Convention provides that "[t]o obtain recognition and enforcement, the party applying for recognition and enforcement shall . . . supply . . . [t]he original agreement referred to in article II."  In turn, Article II of the New York Convention provides:

> "Each Contracting State shall recognize <u>an agreement in writing</u> under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration."  (Emphasis added.)

22

The requirement of a written agreement to arbitrate goes to the subject-matter jurisdiction of the court under the FAA.  A party seeking confirmation of an award under the New York Convention, as the Petitioner seeks to do here with the 2013 Final Award, "must meet article IV's prerequisites to establish the district court's <u>subject matter jurisdiction</u> to confirm the award." *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004) (emphasis added). "Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction." *Id.* at 1291.

There was no agreement in writing or any other agreement between Commisimpex and the Congo regarding arbitration of disputes under the 2003 Protocol.  The 2003 Protocol does not contain an arbitration clause, nor indeed a dispute resolution clause of any kind.  (*See* Schwinger Decl., Exh. 5.)  The fact that the ICC tribunal was willing to proceed with the arbitration under a "group of contracts" theory that imported the arbitration provision from the 1992 Protocol into the 2003 Protocol (*see* Schwinger Decl., Exh. 4 at 18, 117, 135, 145) is not dispositive of the question of whether the parties had "an agreement in writing" *within the meaning of Article II of the New York Convention as adopted through 9 U.S.C. § 201*, so as to create subject-matter jurisdiction under the FAA for this Court to confirm the 2013 Final Award.

Because here there was no actual "agreement in writing" (as contrasted with the supposed agreement that the arbitral panel concluded was implied by French law, *see* Schwinger Decl., Exh. 4 at 18, 117, 135, 145), there is no subject-matter jurisdiction in this action to confirm the 2013 Final Award that resulted from these arbitral proceedings.  Accordingly, the amended default judgment is void for lack of subject-matter jurisdiction under Rule 60(b)(4) for this additional reason and should be vacated.

23

**V**

**THE AMENDED DEFAULT JUDGMENT SHOULD BE VACATED UNDER RULE 60(b)(1) BECAUSE ANY DEFAULT UNDER THE CIRCUMSTANCES HERE QUALIFIES AS "INADVERTENCE" AND "EXCUSABLE NEGLECT" THAT THIS MOTION ADDRESSED WITHIN A "REASONABLE TIME" AND WITHIN A YEAR**

Separate and apart from the personal and subject-matter jurisdiction issues that require vacatur of the amended default judgment under Rule 60(b)(4), relief from the amended default judgment is additionally warranted under Rule 60(b)(1).   The manner of service employed by Petitioner and the lack of actual notice of this action on the part of the Congolese government officials responsible for dealing with such matters gave rise to a situation where any claimed default was "inadverten[t]" and constituted "excusable neglect."   As made clear by the parties' special arrangement for service upon the Congo under the 1992 Protocol, which Commisimpex had honored for years, service in a specific manner was needed and important in order to ensure that notice of litigation against the Congo in other countries was given to the appropriate authorities, so that the Congo could avoid the very situation now presented here — namely, papers served incorrectly and not upon the designated body, and thus not reaching the appropriate Congolese authorities charged with responding to such legal matters.   Under the *Pioneer* factors for evaluating "excusable neglect" as articulated by the D.C. Circuit in *FG Hemisphere Assocs*, 447 F.3d at 838, vacatur under Rule 60(b)(1) is warranted.   These factors are discussed below.

**A.      The Congo's Delay in Responding to the Petition Was Due to the Lack of Actual Notice of the Petition by the Officials Charged with Responding to Foreign Legal Papers, Due to the Improper Manner in Which Service Was Made**

As previously discussed, the Petition in this action and other papers that Petitioner purported to serve on the Congo were not served on the Caisse Congolaise per the provisions of the 1992 Protocol but instead were served improperly on the offices of the Congo's Ministry of

Foreign Affairs. As explained in the accompanying declaration of the Congo's Minister of Economy, Finance, Public and Integration, Gilbert Ondongo (*see generally http://en.wikipedia.org/wiki/Gilbert_Ondongo*), "[i]t is not part of the duties of the Ministry of Foreign Affairs to follow-up on judicial litigation involving the Congo," and thus the Ministry of Foreign Affairs is not "the correct address" for serving such papers. (Ondongo Decl.) Rather, pursuant to the 1992 Protocol, "any notification sent to the Republic of the Congo should be addressed to the Caisse Congolaise d'Amortissement, the body responsible for the management of public debt." (*Id.*) But in light of how the Petition in this action was purportedly served, "[t]he Caisse Congolaise d'Amortissement had no knowledge of notice from the Clerk." (*Id.*) Moreover, "[t]he Ministry of Finance, which supervises the Caisse Congolaise d'Amortissement, also did not receive this notice either. This therefore did not allow the Congo to prepare and present its defense." (*Id.*)

Thus, even taking as true Petitioner's claim that it caused its Petition to be delivered upon the Congo's Ministry of Foreign Affairs, the apparent failure of those papers to get routed from that office to the appropriate officials responsible for them in the Caisse Congolaise d'Amortissement, under the Ministry of Finance, who had no notice of those papers, constitutes "excusable neglect" under Rule 60(b)(1). "Several courts have held that lost mail resulting in the missing of a deadline . . . is within the contemplation of 'excusable neglect' as listed in Rule 60(b)." *Trupei v. United States*, 274 F.R.D. 38, 39 (D.D.C. 2011) (citations and internal quotations omitted); *see also Austin Inv. Fund, LLC By & Through Elieff v. United States*, 88 Fed. R. Serv. 3d 839 (D.D.C. 2014) (granting Rule 60(b)(1) motion where party affirmed he had not received the court's order and had no notice). Indeed, even where service may technically have been proper, a "lack of actual notice of a lawsuit is a sufficient reason for the district court

to set aside a judgment under Rule 60." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996); *see also Standard Enterprises, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39-40 (S.D.N.Y. 1987) (finding excusable neglect where complaint had "languished" in pile of junk mail for months).

Ordinarily, the Congo would have expected foreign legal papers such as the Petition to be received by the Caisse Congolaise within the Ministry of Finance.  (*See* Ondongo Decl.).  The obvious reason for contracting for such special arrangements for service is the recognition that papers served upon other government offices (particularly legal papers from foreign jurisdictions) may not be properly recognized in the non-English-speaking Congo and thus not timely routed, if routed at all, to the appropriate public officials charged with dealing with such matters.  The circumstances here now vindicate that very concern.  Indeed, to the extent that subsequent mailings were made about the entry of default and the amended default judgment, they too were directed to the same improper address.  (*See* Dkt. No. 21.)

Had the Congo received actual notice of the Petition in a timely manner — or had the Petitioner simply reached out to the Congo's counsel — the Congo would have promptly responded and appeared in these proceedings.  This can be seen from the extensive history of litigations filed in conjunction with disputes between the Congo and Commisimpex, including in the Congo, the United States, Sweden, Belgium and France.  (*See* Schwinger Decl. ¶ 12.)  It would be illogical to believe that, if the Congo likewise had received notice of this action, the Congo would have made a conscious decision to simply ignore this one case in the middle of its many disputes with Commisimpex, particularly in light of size of the award and the meritorious defenses that the Congo has against confirmation of the 2013 Final Award (*see* Point V.E.,

*infra*), and the fact that the Congo is currently pursuing review of that very award in the courts of France.  (*See* Suskin Decl. ¶ 3; Morag Decl. ¶¶ 2-4.)

In sum, even if the mailings were received by personnel at the Ministry of Foreign Affairs but were not recognized as requiring attention by officials in other parts of the Congolese government, or were mislaid or otherwise failed to reach the government officials charged with responding to such matters, such circumstances amounts to nothing more than ordinary "excusable neglect" under Rule 60(b)(1) of the kind that warrants vacatur of the amended default judgment.

**B.      There Will Be No Prejudice From Having to
      <u>Resolve the Petition to Confirm on the Merits</u>**

There will be no prejudice if the default is vacated and the merits of this case have to be litigated.

> "Prejudice under Rule 60(b)(1) appears typically and properly to contemplate costs that reconsideration of the final judgment would inflict on the non-moving party independent of the chance of reversal."

*FG Hemisphere Assocs.*, 447 F.3d at 840 (no prejudice where plaintiff's only costs during the delay period were costs associated with attempts to satisfy judgment for which vacatur was being sought).  Exposure to adjudication on the merits does not constitute prejudice under Rule 60(b)(1).  *Id.*  (citing *Pigford v. Johanns*, 416 F.3d 12, 21 (D.C. Cir. 2005)).  Nor is mere delay sufficient to establish prejudice.  *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980).  Courts instead look for concrete harms that have resulted from the delay, such as "'loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.'"  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 110 (D.D.C. 2009) (quoting *Fed. Dep. Ins. Corp. v. Francisco Inv. Corp.*, 873 F.2d 474, 479 (1st Cir. 1989)).

Here, no such harms will result from vacating the default judgment.  There is no risk of losing evidence, nor is discovery made any more difficult.  This action concerns confirmation of an arbitral award that was issued just last year, and which is subject to a set-aside proceeding currently pending in France, in which briefs were filed and a hearing held just this month.  (*See* Suskin Decl. ¶ 4; Morag Decl. ¶¶ 2-4.)  The files on this matter are thus very much still active, and any additional months that may be needed to adjudicate this action on the merits will not add any burden to Petitioner.  In fact, because Commisimpex was awarded damages plus interest from the date of the 2003 Protocol in the 2013 Final Award (*see* Schwinger Decl., Exh. 3 at ECF p. 167, ¶¶ 10-11), it will be compensated for any delay (if successful) in the form of additional interest covering the time period needed to properly resolve the Petition.  Moreover, as noted below, any claim of prejudice must necessarily be balanced against the fact that Commisimpex could have avoided any prejudice by simply notifying longstanding opposing counsel of the existence of the lawsuit.

**C.**      **The Congo Acted Timely in Filing Its Motion for Rule 60 Relief**

Next in the *Pioneer* factors, vacating the amended default judgment is supported by the fact that the Congo proceeded in a timely manner, bringing this motion within a reasonable time and also within the one-year period required with respect to vacatur applications under Rule 60(b)(1).  The amended default judgment was issued on October 9, 2013, less than a year ago, and the appropriate Congolese governmental officials did not have actual notice of this action at that time.  As the submissions on this Rule 60 motion make clear, the motion involves understanding a long and tangled multi-forum procedural history, voluminous foreign language legal documents from judicial and arbitral proceedings in multiple jurisdictions requiring translation, obtaining foreign language declarations from a high government official in the Congo and one of the liquidation trustees, and analysis of the OHADA Uniform Act under which

Commisimpex was put into liquidation.  These factors — combined with the inherent delays of a foreign sovereign communicating with U.S. attorneys, working in different languages and across many time zones — contributed to time needed for the Congo to prepare and file this motion and its supporting papers.  There was no unreasonable delay in proceeding on this vacatur application here.

**D.      The Congo Acted in Good Faith, While**
**          Good-Faith Efforts by the Petitioner Are Lacking**

Courts typically will only find a lack of good faith in the "excuable neglect" analysis where there exists, for example, an "unfailing pattern of untimely filing of documents."  *Cf. Anyanwutaku v. Wilson*, CIV.A.00-2296 CKK/JM, 2006 WL 1663407, at *3 (D.D.C. June 12, 2006) (applying *Pioneer* factors in the context of Fed. R. App. P 4(a)(5)).  Here there is no pattern of untimely filings, nor any intent not to respond.  Rather, Commisimpex and the Congo have been involved in multiple actions and arbitration proceedings relating to the public works contracts, and where it has been properly served, the Congo has repeatedly appeared and vigorously asserted its rights.

It would make no sense for the Congo intentionally to avoid appearing in this case when it is currently participating in various other actions, relating to the 1992 Protocol, including both one in this Court and the ongoing French proceeding where the Congo is affirmatively seeking to set aside the 2013 Final Award.  (*See* n.4, *supra*; Suskin Decl. ¶¶ 3-6.)  The Congo's delay in appearing here was obviously an aberration resulting from the manner of service employed and the resulting lack of actual notice.  (*See* Ondongo Decl.)

By contrast, the Petitioner easily could have taken steps to avoid a default but did not.  Specifically, before seeking a default judgment, the Petitioner could have provided a copy of its filing to the Congo's counsel as a matter of professional courtesy, since during that time and

thereafter Commisimpex was engaged in a related action with the Congo before this Court and the D.C. Circuit, in which both parties were represented by U.S. counsel.  (*See* n.4, *supra*.)  In that litigation, the Congo appeared through its attorneys at Cleary Gottlieb Steen & Hamilton, LLP, and Commisimpex appeared through its attorneys at White & Case LLP, the counsel for the Petitioner herein — the same law firms that represented the parties in France.  (*See* Schwinger Decl., Exh. 13.)  But at no time prior to the issuance of the amended default judgment did Petitioner's counsel alert the Congo's counsel of the Petition, the entry of default, the motion for default judgment, the issuance of the initial default judgment or the issuance of the amended default judgment.  (*See* Morag Decl. ¶¶ 6-8.)

The Petitioner also could have sent a copy of the Petition and other papers to the Congo's standard service address at the Caisse Congolaise, irrespective of whether by contract that was the exclusive address for service of process upon the Congo in this case.  Petitioner's counsel was certainly familiar with that address, as it made service upon the Congo using that address in Commisimpex's earlier litigation against the Congo in this Court regarding the 2000 Final Award.  (*See* Schwinger Decl., Exh. 11.)

Petitioner's conduct is thus reminiscent of that seen in *Passarella v. Hilton Int'l Co.*, 810 F.2d 674 (7th Cir. 1987), where the Seventh Circuit reversed the denial of a Rule 60(b)(1) motion to vacate a default judgment, stating:

> "[T]he plaintiff did not extend [the defendant] the usual professional courtesy extended to fellow professionals before the bar of informing the defendant before the entry of default judgment and garnishment.  [Plaintiff's] attorney's action leads one to question it[,] for the record reveals that [plaintiff] <u>was not anxious to have this case tried on the merits</u> since she carefully avoided providing [defendant] with any notice that would have informed [defendant] of its default . . . ."

*Id.* at 677 (emphasis added).  The rationale of *Passarella* should apply here:  Petitioner can take no issue with the Congo's good faith and lack of willfulness when the Petitioner itself knowingly

and intentionally avoided obvious reasonable steps of common professional courtesy that might have avoided the current situation.

**E.     The Congo Has "Meritorious Defenses" to Commisimpex's Petition**

In addition to the *Pioneer* factors, courts in this Circuit also consider on Rule 60(b)(1) motions whether the defaulting party has asserted a "potentially meritorious defense." *FG Hemisphere Assocs.*, 447 F.3d at 842. "A defendant's allegations are considered meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22, 28 (D.D.C. 2003) (citing *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Under this Court's local rules, a party seeking to set aside a default judgment must file a verified answer, *see* LCvR 7(g), which the Congo is doing concurrently with this motion. (*See* Schwinger Decl. ¶ 1 & Exh. 1 ("Verified Answer").) The Congo's Verified Answer asserts numerous affirmative defenses setting forth various reasons why this action should be dismissed and why the 2013 Final Award should not be enforced. (*See id.* ¶¶ 28-62.)

**1.     Jurisdictional Defenses**

Prime among the reasons why this action should be dismissed are the same personal and subject-matter jurisdiction issues that the Congo has raised under Rule 60(b)(4) on this motion: (1) that this action should be dismissed under Rules 12(b)(3) and 12(b)(5) for failure to make service of process upon the Congo, a foreign state, in accordance with FSIA requirements (*see* Point II, *supra*); (2) that this action should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction because the nominal Petitioner lacks standing to bring suit in the name of Commisimpex, a company in liquidation whose exclusive representatives are the court-appointed liquidation trustees who have not authorized bringing this action (*see* Point III, *supra*); and

(3) that this action should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction under the FAA because the was no written agreement to arbitrate the dispute which led to the arbitral award that Petitioner now seeks to confirm (*see* Point IV, *supra*).  (*See* Verified Answer ¶¶ 35-39.)

### 2.     <u>Other Procedural Defenses</u>

The Congo additionally has non-jurisdictional defenses against confirmation of the Petition.  The Petitioner's lack of authority to bring suit in the name of Commisimpex raises not just a subject-matter jurisdiction issue, but also the issue of suit being brought by someone other than the real party in interest, in violation of Fed. R. Civ. P. 17(a), and the issue of suit being brought by a party who lacks the capacity to initiate suit in the name of Commisimpex, in violation of Fed. R. Civ. P. 17(b), given the Congolese liquidation order which gave such authority and capacity exclusively to Commisimpex's liquidation trustees.  (*See* Verified Answer ¶¶ 48-54.)  Whoever may have caused this action to be filed had no legal right to do so.

Because "[e]very action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a), the Petitioner's lack of real party in interest status is grounds for dismissal. Where an entity is liquidated during a pending legal proceeding, the trustee replaces the liquidated entity as the real party in interest and holds the sole authority to pursue the legal proceeding.  *See Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F. Supp. 2d 22, 25 (D.D.C. 2009) ("Once a cause of action becomes the property of the bankruptcy estate, the bankruptcy trustee assumes the status of the real party in interest in whose name Federal Rule of Civil Procedure 17 requires an action to be brought, and the debtor no longer has standing to pursue that cause of action."); *Toussaint v. Howard Univ.*, CIV.A. 03-1395 JDB, 2005 WL 6778614, at *2 (D.D.C. Nov. 8, 2005) ("Once a cause of action becomes the property of the bankruptcy estate, the bankruptcy trustee assumes the status of the real party in interest under Fed. R. Civ. P.

17."). Once Commisimpex was liquidated and the liquidation trustees were appointed for it (*see* Mossa Decl. ¶¶ 2-6 & Exhs. A-B), those liquidation trustees became the real party in interest for the claim in this action, displacing the persons who purported to cause this action to be filed post-liquidation in the name of Commisimpex (assuming that those persons to have been Commisimpex's prior management).

For similar reasons, the Petitioner does not have capacity to bring this suit. "Capacity to sue or be sued is determined . . . for a corporation, by the laws under which it was organized." Fed. R. Civ. P. 17(b), which would be Congolese law for Commisimpex. Under Article 53 of the OHADA Uniform Act that is applied in the Congo, however, once a liquidation order is issued only the appointed liquidation trustees have the capacity to act on behalf of the debtor, barring certain exceptions. (*See* Suskin Decl., Exh. 2 at Art. 53("The acts, rights, and actions of the debtor concerning his estate shall be done or exercised during the entire duration of the liquidation of the property by the receiver acting alone as authorized agent of the debtor.")). Because a liquidation order was issued for Commisimpex by Congolese court judgments issued under Congolese law (*see* Mossa Decl. ¶¶ 2-7 & Exhs. A-B), under which liquidation trustees were appointed and given sole authority to act on Commisimpex's behalf (*see id.* ¶ 3 & Exh. A), the purported Petitioner did not have the capacity to file this action in Commisimpex's name.

### 3.   <u>New York Convention Defenses</u>

Additional defenses are provided by the New York Convention. Enforcement of awards "may be refused" under the New York Convention if certain criteria are met. *See* New York Convention Art. V(1).

Here, for example, it is premature to enforce the 2013 Final Award while the French set-aside proceedings for that award remain pending in the French courts (*see* Suskin Decl. ¶¶ 3-5; Morag Decl. ¶¶ 2-4), since France was the seat of the arbitration and thus the court of primary

jurisdiction over the 2013 Final Award under Article V(1)(e) of the New York Convention for hearing such challenges.  Article VI of the New York Convention provides that when a set-aside proceeding is pending before the proper court, "the authority before which the award is sought to be relied upon [*e.g.*, this Court in this action] may, if it considers it proper, adjourn the decision on the enforcement of the award."  (*See* Verified Answer ¶ 59).

In addition, under Article V(2)(b) of the New York Convention, recognition or enforcement of an award should be refused where "[t]he recognition or enforcement of the award would be contrary to the public policy of [the] country" where such recognition or enforcement is being sought.  The Congo has raised such a public policy defense here (*see* Verified Answer ¶ 61) based on an issue that is currently being litigated in the French set-aside proceedings for the 2013 Final Award as to whether the 2003 Protocol is unenforceable because it arose out of political corruption.  (*See* Suskin Decl. ¶ 6.)  This defense as currently being litigated in the French set-aside proceedings raises the following questions: whether the 2003 Protocol was based on manufactured evidence, whether evidence of the alleged debt claimed by Commisimpex was manufactured, and whether the 2003 Protocol fulfills the necessary requirements to be legally effective, in particular whether the necessary approvals were obtained and whether the persons signing the document possessed the legal authority to do so.  (*See id.*)

In sum, in light of all the issues identified here in Point V.E., the Congo plainly has asserted a "potentially meritorious defense," *FG Hemisphere Assocs.*, 447 F.3d at 842, so as to be entitled to vacatur of the amended default judgment under Rule 60(b)(1).

## CONCLUSION

For the foregoing reasons, the Congo's Rule 60(b) Motion to Vacate Amended Default Judgment should be granted in all respects.

Dated:    September 24, 2014

Respectfully submitted,

CHADBOURNE & PARKE LLP


By  */s/ Robert A. Schwinger*
    Robert A. Schwinger (DC Bar ID # NY0092)
    Rachel Thorn
    Marc Suskin
    Members of the Firm
    Attorneys for Respondent
     Republic of the Congo
    1301 Avenue of the Americas
    New York, NY  10019
    (212) 408-5100
    *rschwinger@chadbourne.com*
    *rthorn@chadbourne.com*
    *msuskin@chadbourne.com*


Dana Frix
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
Tel. (202) 974-5600

Of Counsel