UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMISSIONS IMPORT EXPORT, S.A., | ) | |
| *Petitioner*, | ) ) ) | |
| *v.* | ) ) | Civil Action No. 1:13-CV-000713-RJL |
| REPUBLIC OF THE CONGO, | ) ) ) | |
| *Respondent.* | ) ) | |

## SECOND DECLARATION OF MICHAEL A. POLKINGHORNE

I, Michael A. Polkinghorne, declare as follows:

1. I am a partner in the Paris, France office of White & Case LLP, counsel to Commissions Import Export, S.A. ("Commisimpex") in this action. I am admitted to the Bars of Paris, England and Wales, and South Australia. I have a broad range of experience in arbitration and litigation in the areas of energy, telecommunications, project finance, construction and infrastructure. I have served as counsel and arbitrator in arbitrations conducted under most major institutional rules, and was for several years the Australian member of the International Court of Arbitration of the International Chamber of Commerce ("ICC"), where I was also a member of, *inter alia*, the ICC taskforce on arbitrations involving state entities.

2. This is the second declaration I am submitting in this case.

**The Jurisdiction of the ICC Arbitral Tribunal**

3.     As I noted in my prior declaration, in 2009 Commisimpex filed a Request for Arbitration based on the Congo's failure to make payments under an agreement between Commisimpex and the Congo, signed August 23, 2003 ("the 2003 Protocol").  In 2010, the tribunal rendered its jurisdictional award.  In the jurisdictional award, the tribunal held that the arbitration clause contained in an earlier agreement between the parties (the 1992 Protocol) extended to the current dispute, thereby giving the tribunal jurisdiction to hear the claim.  Specifically, the tribunal reasoned that the 1992 Protocol and the 2003 Protocol formed one "group of contracts" for the purposes of applying the arbitration clause.  The Award on Jurisdiction, with English translations of the relevant sections, is attached to my declaration as Exhibit 1.

4.     Notably, however, the tribunal did not find that Commisimpex's claims arose under the 1992 Protocol.  Indeed, in response to the Congo's res judicata arguments in connection with the 2000 Award, rendered on the basis of the 1992 Protocol, the tribunal, in its final award on the merits, stated on page 53: "[The requests submitted to the tribunal in ICC Case No. 16257, leading to the 2013 Award] are based exclusively on the Protocol allegedly concluded between the Parties in 2003 and not on the 1992 Protocol, the basis of the arbitral award of 2000. … [The requests] are based on the 2003 Protocol, which, if it were recognized as valid, would substitute for the 1992 Protocol."  The tribunal then found that the 2003 Protocol was indeed valid.  Therefore there is no reason why other aspects of the 1992 Protocol, including any provisions about transmitting communications of service of process to the address of *Caisse Congolaise d'Amortissement* ("CCA"), would extend to the dispute over the 2003 agreement.

### The Arbitral Tribunal's Ruling on the Congolese Liquidation Proceedings

5.      On September 26, 2012, while the award on the merits of the arbitration was pending, Commisimpex received notice that the *Caisse Nationale de Sécurité Sociale du Congo* (the Social Security Administration of the Congo, "CNSS") had brought an action against Commisimpex in the Brazzaville Commercial Court.  Through a one-page document, CNSS alleged that Commisimpex owed about €4.3 million on allegedly unpaid social payments due since 1981.  CNSS requested, among other things, that Commisimpex be declared insolvent and be liquidated, and that trustees be nominated to manage the liquidation.  CNSS's request was based on numerous apparent inaccuracies and fabrications and lacked any supporting documentation or other evidence.

6.      Two days later, in an order dated September 28, 2012 (attached as <u>Exhibit 2</u>), the Chief Judge of the Brazzaville Commercial Court declared that he had "attempted to reconcile the parties in vain" and set a hearing for October 2, 2012 to "decide on the merits of the request" for liquidation.  Commisimpex was informed of the hearing just three days before its scheduled date, when the order was served upon the security guard of the Lebanese Consulate in the Congo.

7.      White & Case notified the arbitral tribunal of the liquidation proceedings by letter dated October 1, 2012 (attached as <u>Exhibit 3</u>).  We described the fraudulent nature of the proceedings, as well as the suspicious timing of the action and the extremely compressed timeframe in which it was taking place.  By email dated the same day (attached as <u>Exhibit 4</u>), the tribunal then ordered the Congo to take all measures necessary so that the status quo between the parties was not altered before the final award was rendered and the tribunal could hear both parties on the issue.

8.      On October 4, 2012, as the Congolese proceedings were moving forward, White & Case again wrote to the tribunal to request that it order the Congo to instruct CNSS to withdraw its action in Brazzaville (attached as Exhibit 5). We also requested that the tribunal take note of the various irregularities of the Brazzaville proceedings.

9.      On October 8, 2012, the tribunal issued a procedural order requiring both parties to avoid taking actions that would alter the status quo between them before the final award was rendered. The tribunal also ordered the Congo to ensure that no state agency put Commisimpex into liquidation before the final award. The procedural order is attached to my declaration as Exhibit 6.

10.     Following the Brazzaville court's October 30, 2012 ruling ordering the liquidation of Commisimpex, White & Case informed the tribunal that the Congo had violated the procedural order, and the tribunal permitted the parties to file explanatory comments. We submitted comments by letter on November 14, 2012 (attached as Exhibit 7) and included a declaration from Commisimpex's local Congolese counsel, Joseph Brudey, describing the Congolese proceedings (attached as Exhibit 8, with English translation).

11.     In the letter, White & Case demonstrated that the liquidation proceedings were fraudulent and that the tribunal was not required to recognize the liquidation (as several other ICC awards had held) if doing so would violate principles of good faith, or if the foreign judgment violated international public policy. We noted that the Congo had intentionally violated the tribunal's order to reestablish the status quo. Moreover, as Mr. Brudey observed, the procedure followed by the Brazzaville court was exceptionally quick and included numerous procedural irregularities, thus violating Commisimpex's procedural rights. We noted that this was not the first time that the Congo had tried to make Commisimpex disappear in the context of

an arbitration, since, during the proceedings leading to the 2000 Award, the Congo had struck Commisimpex from the Congolese commercial registry in an attempt to make its creditor disappear. The earlier tribunal had not been fooled and had noted "various uncertainties". We also showed that the Commercial Court's judgment was nonsensical, that the timing of the liquidation was more than suspicious, and that the CNSS's claim was, on the merits, baseless.

12. Counsel for the Congo responded to our comments on November 22, 2012, contending, among other things, that the Congo did not have the authority to stop the prosecutor from bringing the liquidation proceedings.

13. On January 21, 2013, the tribunal issued the Final Award against the Congo (Docket No. 1-4). As I stated in my prior declaration, Commisimpex was awarded €222,749,598.82 plus interest, legal expenses, and costs.

14. With respect to the liquidation, the tribunal reviewed and considered the evidence demonstrating that the liquidation proceedings were improper and should not be recognized. In particular, the tribunal observed:

- *The debt claimed by CNSS dates back to 1981;*

- *By order dated 28 September 2012, the President of the Court of Commerce of Brazzaville scheduled for 2 October 2012 (2 business days) the hearing for ruling on the legal grounds of the Request dated 26 September 2012, ordering Commisimpex to present its defense "within eight days before the hearing";*

- *Counsel for Commisimpex requested a one-month continuation, but only 8 days were granted, even though the hearing was postponed to 9 October 2012, then to 16 October;*

- *The matter was argued on 23 October 2012 and the ruling for liquidation was handed down on 30 October 2012;*

- *Thus, only 34 days passed between the filing of the Request by CNSS and the ruling ordering liquidation of Commisimpex.*[1]

15.     The tribunal also took issue with the timing of the action, noting the contradiction between the 30-year delay and the accelerated proceedings. The tribunal stated: "One could ask . . . whether the proceedings for enforcement of the arbitral award of 2000 and the imminence of the pronouncement of the [tribunal's] ruling were not more probable explanations for what appeared to be haste."[2]

16.     In light of these findings, the tribunal held it could not recognize the liquidation as legitimate in the context of the arbitration.[3] In particular, it found that "recognizing [the consequences of the liquidation] in this arbitration proceeding would ***not comply with the requirements of international public policy***."[4] The tribunal thus held that it would not recognize the liquidation of Commisimpex, and it further noted "the lack of standing of the liquidators appointed to represent Commisimpex in this arbitral proceeding."[5]

### French Proceedings Affirming the Decision on Jurisdiction and the Final Award

17.     As I described in my first declaration, the law applicable to the arbitration was French law, and Paris was the place of arbitration. The seat of the arbitration was France, making France the primary jurisdiction for any review of the tribunal's decisions. Both the 2010 Award on Jurisdiction and the 2013 Final Award were brought before French courts in setting aside proceedings and have been confirmed.

---

[1] Final Award, dated January 21, 2013 (Docket No. 1-4) ¶¶ 220-221.
[2] *Id.* ¶ 221.
[3] *Id.* ¶¶ 216-219.
[4] *Id.* ¶ 222 (emphasis added).
[5] *Id.* ¶ 223.

18.     On January 29, 2014, the French Court of Cassation (the highest court) rejected the Congo's appeal of the Award on Jurisdiction dated August 20, 2010.  That decision is now final.

19.     On October 14, 2014, the Paris Court of Appeal (the intermediate court) rejected the Congo's request to set aside the 2013 Final Award.  The Paris Court of Appeal decision (the "French Judgment") with English translation is attached to my declaration as Exhibit 9.  In the decision, the Court of Appeal upheld the tribunal's findings on liability and damages and additionally agreed that the Congolese liquidation proceedings were illegitimate and unenforceable.  It stated:

> *By deciding that the liquidation of Commisimpex – following an accelerated proceeding, by a judgment of the Brazzaville Commercial Court on October 30, 2012 on the basis of an insolvency established by a social debt dating from 1981 and a lack of liquid assets resulting from the Congo's own refusal to abide by the arbitral award of December 3, 2000 – was contrary to the principle of good faith, so that the liquidation decision had to be considered without effect on the arbitration proceedings and the bankruptcy trustees without standing to represent Commisimpex, the arbitral tribunal did not exceed its jurisdiction.*[6]

20.     The Court of Appeal also, among other findings, noted and rejected the Congo's argument that the 2003 Protocol was procured through political corruption.  This contention, the Court stated, had no basis in evidence and was also contrary to the principle of good faith.[7]

**Service of Process on the Congo**

21.     While the 2009 arbitration was proceeding, I also assisted coordination of efforts to obtain recognition of the award from Commisimpex's first arbitration against the Congo, which had resulted in the 2000 Award.  I submitted a declaration in support of enforcement actions in the United Kingdom and the United States.  On behalf of Commisimpex, we also

---

[6] Judgment of October 14, 2014 (Court of Appeal of Paris) at 6.
[7] *Id.*

7

coordinated enforcement of the award in Belgium in 2009-2010 and Sweden in 2012. In the Swedish action, Commisimpex served process on the Congo through transmission of documents to the Congo's Ministry of Foreign Affairs. In the Belgian action, the Congolese Ministry of Foreign Affairs confirmed via diplomatic note (attached as <u>Exhibit 10</u>, with English translation) that it was in receipt of service documents from a Belgian bailiff regarding the matter with Commisimpex. In the diplomatic note, the Ministry provided an assurance that "the competent authorities have already been notified" of the dispute with Commisimpex and "further action on this matter will be conveyed in a timely manner." The Congo did not contest the method of service in any of these actions. Courts in each of these countries have confirmed (or granted exequatur to) the 2000 Award.

22.     I understand that the Congo now contends that service of process on the Congo was to be delivered to CCA. In my six years of representing Commisimpex against the Congo, I am aware of not a single instance in which the Congo mentioned a special arrangement between the parties or claimed that it was the necessary or required method for service of process.

**<u>The Congo and its Counsel's Bad Faith</u>**

23.     The Congo has long been represented by the same law firm, Cleary, Gottlieb, Steen & Hamilton LLP, who, I understand, has been recently discharged in some of the actions involving Commisimpex. The Congo and its counsel Cleary Gottlieb on several noteworthy occasions have failed to extend professional courtesy to Commisimpex or Commisimpex's counsel. For example, the Congo failed to notify White & Case both when it initiated an action to set aside the 2013 Award in France and also when it filed an appeal to the French Court of Cassation in the set-aside action for the Award on Jurisdiction. In both instances, we learned of the Congo's filings at least a month after they were filed.

\*   \*   \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of November 2014 in Paris, France.

Michael A. Polkinghorne