# Exhibit 9

Grosses délivrées
aux parties le :

**REPUBLIQUE FRANCAISE**
AU NOM DU PEUPLE FRANCAIS

### COUR D'APPEL DE PARIS

Pôle 1 - Chambre 1

### ARRET DU 14 OCTOBRE 2014

(n°    ,  8   pages)

Numéro d'inscription au répertoire général : **13/03410**

Décision déférée à la Cour : Recours en annulation d'une sentence du 21 Janvier 2013 rendue par le tribunal arbitral de PARIS constitué, sous l'égide de la Chambre de commerce international, de M. Hanotiau et de Mme Malinvaud, arbitres, et de M. Derains, président

**DEMANDEUR AU RECOURS :**

**LA RÉPUBLIQUE DU CONGO**

Palais Présidentiel
Quartier Plateau
BRAZZAVILLE
REPUBLIQUE DU CONGO

représentée par Me Jean-Claude CHEVILLER, avocat postulant du barreau de PARIS, toque : D0945
assistée de Me Jean-Yves GARAUD de la SDE CLEARY, GOTTLIEB, STEEN & HAMILTON LLP, avocat plaidant du barreau de PARIS, toque : J021


**DÉFENDEURS AU RECOURS :**

**S.A. COMMISSIONS IMPORT EXPORT exerçant sous l'enseigne COMMISIMPEX**
prise en la personne de ses représentants légaux

86 avenue Foch, Quartier Cathédrale - BP 1244
BRAZZAVILLE
REPUBLIQUE DU CONGO

représentée par Me Luca DE MARIA de la SELARL PELLERIN- DE MARIA- GUERRE, avocat postulant du barreau de PARIS, toque : L0018
assistée de Me Michael POLKINGHORNE et Me Charles NAIRAC du cabinet WHITE and CASE et de Me Christophe SERAGLINI, du cabinet BETTO SERAGLINI, avocat plaidant du barreau de PARIS, toque : L 16

**Monsieur Gaston MOSSA ès-qulalités de président du Syndic, Liquidateur de la société COMMISSIONS IMPORT EXPORTS (COMMISIMPEX)**

rue de la tours en diagonale du Palais de Justice
Immeuble Eolis ODF
BRAZZAVILLE
REPUBLIQUE DU CONGO

NON REPRÉSENTÉ

**Monsieur Aiméry Patrick TATI ès-qulalités de membre du Syndic, Liquidateur de la société COMMISSIONS IMPORT EXPORTS(COMMISIMPEX)**

rue de la tours en diagonale du Palais de Justice
Immeuble Eolis ODF
BRAZZAVILLE
REPUBLIQUE DU CONGO

NON REPRÉSENTÉ

**Monsieur Emile NZONDO ès-qulalités de membre du Syndic, Liquidateur de la société COMMISSIONS IMPORT EXPORTS (COMMISIMPEX)**

rue de la tours en diagonale du Palais de Justice
Immeuble Eolis ODF
BRAZZAVILLE
REPUBLIQUE DU CONGO

NON REPRÉSENTÉ

**COMPOSITION DE LA COUR :**

L'affaire a été débattue le 16 septembre 2014, en audience publique, le rapport entendu, devant la Cour composée de :

> Monsieur ACQUAVIVA, Président
> Madame GUIHAL, Conseillère
> Madame DALLERY, Conseillère

qui en ont délibéré

**Greffier,** lors des débats **:** Madame PATE

**ARRET :**- RÉPUTÉ CONTRADICTOIRE

- prononcé par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

- signé par Monsieur ACQUAVIVA, président et par Madame PATE, greffier présent lors du prononcé.

---

Entre 1984 et 1987 la REPUBLIQUE DU CONGO (le CONGO) a conclu avec la société COMMISSION IMPORT EXPORT (COMMISINPEX) plusieurs marchés de travaux publics et de fourniture de matériaux.

Le 14 octobre 1992, faute de règlement par le CONGO, les parties ont signé un protocole d'accord qui prévoyait un paiement échelonné par émission de billets à ordre et comportait une clause compromissoire. Une sentence arbitrale n° 9899 du 3 décembre 2000 a condamné le CONGO au paiement d'une partie de ces billets à ordre. Le recours contre cette sentence a été rejeté par la cour d'appel le 23 mai 2002.

Le 23 août 2003 les parties ont conclu un nouvel accord de règlement des dettes du CONGO portant sur un montant total de 48 milliards de FCFA.

En avril 2009, faute de paiement, COMMISINPEX a engagé une procédure d'arbitrage en application de la clause compromissoire stipulée par le protocole de 2003. Alors que les débats étaient clos, elle a été placée en liquidation judiciaire par un jugement du tribunal de commerce de Brazzaville du 30 octobre 2012.

Devant les arbitres, les parties, en substance, étaient contraires sur le point de savoir si le protocole de 1992 portait sur la totalité ou sur une partie seulement de la dette du CONGO et, par conséquent, sur la question de l'existence ou non d'une cause au protocole de 2003 reconnaissant à COMMISINPEX une créance supérieure à celle qui résultait du protocole de 1992.

Par une sentence rendue à Paris le 21 janvier 2013, le tribunal arbitral constitué, sous l'égide de la Chambre de commerce international, de M. Hanotiau et de Mme Malinvaud, arbitres, et de M. Derains, président :
- s'est reconnu compétent pour connaître des demandes de COMMISINPEX relatives aux effets du jugement de liquidation judiciaire sur la procédure arbitrale,
- a dit que les exigences de l'ordre public international s'opposaient à ce que la mise en liquidation de COMMISINPEX ait des effets dans la procédure arbitrale, et constaté, par conséquent, le défaut de qualité des liquidateurs pour représenter COMMISINPEX,
- a rejeté la demande de COMMISINPEX de remboursement des frais engendrés dans l'arbitrage par la procédure de liquidation et s'est déclaré incompétent pour connaître des autres demandes de COMMISINPEX relatives à sa mise en liquidation judiciaire,
- a rejeté l'exception de chose jugée par la sentence du 3 décembre 2000,
- a constaté la validité du protocole de 2003 et son caractère contraignant pour les parties,
- a constaté que les montants dus par le CONGO au titre de l'article 1$^{er}$ du protocole de 2003 étaient ceux qui avaient été alloués par la sentence du 3 décembre 2000, et les a déduits de la condamnation qu'il prononçait,
- a condamné le CONGO à payer à COMMISINPEX au titre des articles 2 et 3 du protocole de 2003 la somme de 222.749.598 euros, outre intérêts au taux de 10 % l'an, à compter du 31 décembre 2003 avec capitalisation,
- a prononcé sur les frais de procédure.

Le 20 février 2013, le CONGO a formé un recours contre cette sentence.

Il a signifié le 17 juin puis le 10 septembre 2014 des conclusions par lesquelles il en sollicite l'annulation, ainsi que la condamnation de COMMISINPEX à lui payer la somme de 40 000 euros en application de l'article 700 du code de procédure civile. Il soutient que la sentence viole l'ordre public international en entérinant un détournement de fonds publics, que le tribunal arbitral a méconnu le principe de la contradiction en ne soumettant pas à la discussion des parties le moyen relevé d'office tiré de l'estoppel, que le tribunal n'était pas compétent pour statuer sur les effets de la

liquidation judiciaire et que s'il l'était, il ne pouvait se prononcer sans avoir mis les organes de la liquidation en mesure de s'expliquer de sorte qu'il a violé le principe de la contradiction, enfin que les arbitres ont outrepassé leur mission en prononçant une condamnation en euros et non dans la devise choisie par les parties.

Par des conclusions signifiées le 1er septembre 2014, COMMISINPEX demande à la cour de rejeter le recours et de condamner le CONGO à lui payer la somme de 250.000 euros en application de l'article 700 du code de procédure civile.

Elle a déposé le 15 septembre 2014 des conclusions tendant à ce que les écritures signifiées par son adversaire le 10 septembre, veille de la clôture, soient écartées des débats.

Mes MOSSA, TATI et NZONDO, ès qualités de président et de membres du syndic liquidateur de COMMISINPEX n'ont pas constitué.

**SUR QUOI** :

**Sur les conclusions de procédure** :

Considérant que les conclusions déposées par le CONGO la veille de la clôture ne contenant ni demande ni moyens nouveaux, il n'y a pas lieu de les écarter des débats;

**Sur le moyen d'annulation tiré de la violation de l'ordre public international (article 1520 5° du code de procédure civile)** :

Le CONGO soutient que la sentence entérine un détournement de fonds publics en faisant valoir trois arguments. En premier lieu, il expose que le Protocole de 1992 couvrait l'intégralité de la dette congolaise à l'égard de COMMISINPEX et présentait un caractère global et novatoire, de sorte que le Protocole de 2003 qui ajoute aux 22 milliards de FCFA reconnus par le Protocole de 1992 une somme supplémentaire de 26 milliards de FCFA ne peut avoir qu'une cause illicite et ne peut s'expliquer que par un climat général de corruption dont a profité COMMISINPEX. Le recourant se fonde sur les attestations de hautes autorités congolaises ainsi que sur le fait que le Protocole de 2003 repose exclusivement sur une lettre du 7 octobre 1992 "découverte" à l'été 2003 et qui aurait prétendument entériné la décision, prise lors de réunions tenues en septembre 1992 dont aucune trace n'a été conservée, de procéder à une scission de la dette congolaise envers COMMISINPEX entre une partie couverte par le Protocole du 14 octobre 1992 et une autre partie dont le règlement devait se faire par l'attribution d'entreprises à privatiser. Le CONGO considère que cette pièce, qui aurait disparue et serait réapparue dans des conditions suspectes, et qui contient plusieurs anomalies est un faux. Le recourant fait valoir, en deuxième lieu, que le tribunal arbitral a admis l'existence d'une créance de 48 milliards de FCFA en l'absence de preuve. Enfin, il soutient, en dernier lieu que le tribunal arbitral a reconnu le caractère contraignant du Protocole de 2003 malgré l'absence de pouvoir des signataires.

Considérant que le "*Protocole d'accord de négociations entre l'Etat du Congo et la société Commisinpex SA*" a été signé le 23 août 2003 à Brazzaville par M. Longobe, ministre délégué, secrétaire général de la présidence de la République et par M. Okemba, secrétaire d'Etat, secrétaire général du Conseil de sécurité "*agissant sur délégation de Monsieur le Président de la République, son Excellence, Monsieur Denis Sassou Nguesso et ayant pouvoir à cet effet*", les signatures étant revêtues du cachet de la Présidence de la République du Congo;

Qu'il résulte des énonciations de ce Protocole que COMMISINPEX a financé au moyen de devises étrangères des travaux et fournitures au profit de l'Etat du Congo qui sont demeurés impayés; que l'Etat du Congo reconnaît qu'à l'issue des réunions des 7 et 23 septembre 1992, les diverses administrations concernées ont reconnu la validité de la dette, laquelle a été fixée au montant, entériné par la Présidence de la République, de 48 milliards de FCFA; que COMMISINPEX a pris acte de cette reconnaissance de dette par courriers des 7 octobre et 24 novembre 1992; enfin, que l'Etat du Congo reconnaît que cette dette dont la valeur en FRF au 30 septembre 1992 s'établit à 960 millions et qui a été partagée comme suit "*conformément à l'accord conclu au terme des deux réunions du 7 et 23 septembre susvisés et confirmé par courrier de la société COMMISINPEX du 7 octobre 1992 :
- une première partie est fixée à 440.000.000 FRF soit l'équivalent de 22 milliards de FCFA, objet du Protocole d'accord n° 566 du 14 octobre 1992,
- une deuxième partie est fixée à 520.000.000 FRF, soit l'équivalent de 26 milliards de F CFA*";

Considérant que le tribunal arbitral a estimé que la cause de la dette était énoncée dans la reconnaissance et qu'il incombait donc au CONGO de démontrer que la cause réelle n'était pas celle qui était portée à l'acte; que le tribunal, à la majorité, a jugé que ni les circonstances "rocambolesques" de la disparition et de la réapparition de la lettre du 7 octobre 1992, ni les incohérences du contenu de cette dernière ou le fait qu'elle n'ait jamais été mentionnée avant le Protocole de 2003 ne suffisaient à démontrer l'inexistence ou l'illicéité de la cause mentionnée par Protocole de 2003, à savoir que la dette du CONGO à l'égard de COMMISINPEX arrêtée au 30 septembre 1992 représentait la somme de 48 milliards FCFA; que les arbitres, à la majorité, ont estimé que le CONGO faisait d'autant moins cette preuve que la réalité et le montant de la dette résultaient de plusieurs documents - en particulier d'une fiche de calcul détaillée émise en 1991 par la Caisse congolaise d'amortissement - et qu'ils étaient corroborés par un rapport d'expertise du cabinet Ernst &Young du 25 septembre 2001, rendu sur une ordonnance du président du tribunal de commerce de Brazzaville; que les arbitres ont ajouté que le CONGO ne pouvait se contenter, pour se délier de ses engagements, d'alléguer en termes généraux l'existence d'un climat de corruption, d'autant qu'en l'occurrence la corruption aurait dû concerner un très grand nombre de personnes sur une longue période de temps et que les bénéficiaires éventuels n'avaient pas été inquiétés;

Considérant que lorsqu'il est prétendu qu'une sentence donne effet à un contrat obtenu par corruption, il appartient au juge de l'annulation, saisi d'un recours fondé sur l'article 1520 5° du code de procédure civile, de rechercher en droit et en fait tous les éléments permettant de se prononcer sur l'illicéité alléguée de la convention et d'apprécier si la reconnaissance ou l'exécution de la sentence viole de manière effective et concrète l'ordre public international;

Considérant qu'il résulte de la fiche de calcul détaillée établie en 1991 par la Caisse congolaise d'amortissement que le montant de la dette du CONGO à l'égard de COMMISINPLEX s'établissait alors approximativement à 48 milliards de FCFA; que le Protocole d'octobre de 1992 a prévu un rééchelonnement de la dette du CONGO dont le montant en principal a alors été fixé à 22 milliards de FCFA pour l'ensemble des marchés énumérés dans son annexe; qu'il est constant que le CONGO n'a procédé à aucun

règlement en exécution de cet accord; que, dès lors, et peu important le caractère apocryphe de la lettre du 7 octobre 1992, la circonstance que les parties, lors des négociations menées en 2003, soient revenues sur la décote consentie en 1992 n'apparaît pas par elle-même comme l'indice d'une cause frauduleuse alors, au surplus, que le taux d'intérêts, qui était de 10,5 % l'an dans l'accord de 1992 a été ramené à 10 % dans celui de 2003 et qu'il était prévu un abandon par COMMISINPEX des intérêts échus;

Et considérant qu'il ne saurait être admis, sans ruiner la force obligatoire des contrats sur laquelle est fondé le commerce international, qu'un Etat se dégage des engagements contractuels souscrits par ses représentants apparents en se bornant à alléguer un climat général de corruption au sein de son administration, sans indication des personnes susceptibles d'être en cause et sans que les bénéficiaires éventuels aient fait l'objet de poursuites;

Qu'il n'est pas démontré que la sentence donne effet à une convention obtenue par corruption;

Considérant, pour le surplus, que le moyen, en ce qu'il critique la prétendue insuffisance des preuves retenus par les arbitres ou l'appréciation à laquelle ils se sont livrés des pouvoirs des signataires du Protocole de 2003 invite la cour à une révision au fond de la sentence qui n'est pas permise au juge de l'annulation;

Que le moyen tiré de la violation de l'ordre public international doit donc être écarté;

**Sur le moyen d'annulation tiré de l'incompétence du tribunal arbitral (article 1520 1° du code de procédure civile)** :

Le CONGO fait valoir que les arbitres n'étaient pas compétents pour statuer sur les effets de la liquidation judiciaire de COMMISINPEX alors au surplus que lui-même ne s'en était pas prévalu.

Considérant que si les principes de l'arrêt des poursuites individuelles, de dessaisissement du débiteur et d'interruption de l'instance en cas de faillite sont d'ordre public international et s'imposent même au cas où l'arbitrage se déroulant en France n'est pas soumis à la loi française, il n'en appartient pas moins à l'arbitre de vérifier, avant de faire application de ces principes, que la décision judiciaire qui ouvre la procédure d'insolvabilité et désigne un mandataire ne méconnaît pas elle-même les exigences de l'ordre public international;

Qu'il en va ainsi lorsque le tribunal arbitral est informé de la mise en liquidation judiciaire de l'une des parties, peu important que la partie adverse ne se prévale pas de cette circonstance;

Qu'en décidant que la mise en liquidation judiciaire de COMMISINPEX, prononcée, à l'issue d'une procédure accélérée, par un jugement du tribunal de commerce de Brazzaville du 30 octobre 2012 à raison d'une cessation des paiements caractérisée par une dette sociale datant de 1981 et un défaut d'actifs liquides résultant du propre refus du CONGO d'exécuter la sentence arbitrale du 3 décembre 2000, était contraire au principe de bonne foi de sorte que le jugement de liquidation devait être regardé comme sans effet dans la procédure arbitrale et les liquidateurs sans qualité pour représenter COMMISINPEX, le tribunal arbitral n'a pas méconnu sa compétence;

Que le moyen doit être écarté;

**Sur le moyen d'annulation tiré de la méconnaissance du principe de la contradiction (article 1520 4° du code de procédure civile) :**

Le CONGO fait valoir, en premier lieu, que le tribunal arbitral ne pouvait se prononcer sur les effets de la liquidation sans inviter les liquidateurs à s'en expliquer.

Le recourant soutient, en second lieu, que pour décider que le Protocole de 2003 avait une valeur contraignante, quoique ses signataires n'aient pas eu le pouvoir de prendre de tels engagements en son nom, le tribunal arbitral s'est fondé sur le moyen relevé d'office et non soumis au débat contradictoire de l'estoppel, alors que la partie adverse s'était prévalue de la théorie de l'apparence.

Sur le moyen pris en sa première branche :

Considérant que le moyen n'ayant pas été présenté aux arbitres est irrecevable devant le juge de l'annulation;

Sur le moyen pris en sa seconde branche :

Considérant que le principe de la contradiction exige que les parties aient pu faire connaître leurs prétentions de fait et de droit et discuter celles de leur adversaire de telle sorte que rien de ce qui a servi à fonder la décision des arbitres n'ait échappé à leur débat contradictoire; qu' il n'implique pas, toutefois, que les parties soient invitées à débattre de la motivation de la sentence préalablement à son prononcé;

Considérant que pour conclure à la réalité des pouvoirs des signataires du Protocole de 2003 et au caractère contraignant de cette convention, le tribunal arbitral s'est fondé sur un faisceau d'indices d'où il a déduit que MM. Longobé et Okemba disposaient bien d'une habilitation pour engager la République du CONGO (sentence § 236 à 253);

Que ce n'est que de manière superfétatoire et, du reste, en reprenant un argument présenté par COMMISINPEX (§ 271) que les arbitres ont évoqué l'estoppel;

Que le moyen pris en sa seconde branche n'est donc pas fondé;

**Sur le moyen d'annulation tiré de la méconnaissance par les arbitres de leur mission (article 1520 3° du code de procédure civile)** :

Le CONGO soutient qu'en prononçant une condamnation en euros, alors que les demandes étaient formulées en diverses devises, le tribunal arbitral a méconnu sa mission.

Considérant que le Protocole de 2003 distinguait d'une part, des montants en francs français, livres sterlings et dollars qui relevaient du Protocole de 1992, d'autre part une créance exprimée exclusivement en francs français; que la condamnation prononcée par la sentence ne porte que sur cette deuxième partie; que le tribunal ayant calculé cette somme en francs français, il entrait dans sa mission de la convertir en euros, conformément, du reste, à la demande préliminaire de COMMISINPEX;

Que le moyen ne peut qu'être écarté;

Considérant qu'il résulte de tout ce qui précède que le recours doit être rejeté;

**Sur l'article 700 du code de procédure civile** :

Considérant que le CONGO, qui succombe, ne saurait bénéficier de ces dispositions; qu'il sera condamné sur ce fondement à payer à COMMISINPEX la somme de 100.000 euros;

**PAR CES MOTIFS** :

Rejette la demande tendant à voir écarter des débats les conclusions signifiées le 10 septembre 2014 par la REPUBLIQUE DU CONGO.

Rejette le recours en annulation de la sentence rendue entre les parties le 21 janvier 2013.

Condamne la REPUBLIQUE DU CONGO aux dépens.

Condamne la REPUBLIQUE DU CONGO à payer à la société COMMISSIONS IMPORT EXPORT SA la somme de 100.000 euros en application de l'article 700 du code de procédure civile.

LA GREFFIÈRE                                               LE PRÉSIDENT

# Translation

| | |
|---|---|
| Delivered hard copies to parties on: | **THE FRENCH REPUBLIC**<br>IN THE NAME OF THE FRENCH PEOPLE |

## COURT OF APPEAL OF PARIS

### Division 1 - Room 1

### JUDGMENT OF OCTOBER 14, 2014

(n°      ,  8   pages)

General Register Case Number: **13/03410**

Decision submitted to the Court: Proceedings for setting aside an award of January 21, 2013 rendered by an arbitral tribunal of PARIS made up, under the aegis of the International Commerce Chamber, of Mr. Hanotiau and Ms. Malinvaud, arbitrators, and of Mr. Derains, chairman

**CLAIMANT ON THE SET ASIDE ACTION:**

**THE REPUBLIC OF CONGO**

*Palais Présidentiel*
*Quartier Plateau*
*BRAZZAVILLE*
*REPUBLIQUE DU CONGO*

Represented by Mr. Jean-Claude CHEVILLER, Esq., filing lawyer of the bar of PARIS, Bar Number: D0945
assisted by Mr. Jean-Yves GARAUD, Esq. of CLEARY, GOTTLIEB, STEEN & HAMILTON LLP, trial counsel of the bar of PARIS, Bar Number: J021

**DEFENDANTS ON THE SET ASIDE ACTION:**

**S.A. COMMISSIONS Import Export, with trade name COMMISIMPEX**
in the person of its legal representatives

*86 avenue Foch, Quartier Cathédrale - BP 1244*
*BRAZZAVILLE*
*REPUBLIQUE DU CONGO*

Represented by Mr. Luca DE MARIA, Esq. of the firm SELARL PELLERIN- DE MARIA- GUERRE, filing lawyer of the PARIS Bar, Number: L0018
assisted by Mr. Michael POLKINGHORNE, Esq. and Mr. Charles NAIRAC, Esq. of the firm WHITE and CASE and by Mr. Christophe SERAGLINI, Esq., of the firm BETTO SERAGLINI, trial counsel of the bar of PARIS, Bar Number: L 16

**Mr. Gaston MOSSA in the capacity of president of the trustee group, Liquidator of the COMMISSIONS IMPORT EXPORTS (COMMISIMPEX) company**

*rue de la tours en diagonale du Palais de Justice*
*Immeuble Eolis ODF*
*BRAZZAVILLE*
*REPUBLIQUE DU CONGO*

NOT REPRESENTED


**Mr. Aiméry Patrick TATI in the capacity of member of the trustee group, Liquidator of the COMMISSIONS IMPORT EXPORTS (COMMISIMPEX) company**

*rue de la tours en diagonale du Palais de Justice*
*Immeuble Eolis ODF*
*BRAZZAVILLE*
*REPUBLIQUE DU CONGO*

NOT REPRESENTED


**Mr. Emile NZONDO in the capacity of member of the trustee group, Liquidator of the COMMISSIONS IMPORT EXPORTS (COMMISIMPEX) company**

*rue de la tours en diagonale du Palais de Justice*
*Immeuble Eolis ODF*
*BRAZZAVILLE*
*REPUBLIQUE DU CONGO*

NOT REPRESENTED


**COMPOSITION OF THE COURT:**

The case was argued on September 16, 2014, in open court, the report heard, before the Court made up of:

> Mr. ACQUAVIVA, President
> Ms. GUIHAL, Councilor
> Ms. DALLERY, Councilor

Who deliberated on it


**Clerk**, at the time of the arguments: Ms. PATE


**JUDGMENT**:  -  ISSUED AFTER INTERESTED PARTIES WERE HEARD

- Delivered by provision of the judgment to the Registry of the Court, the parties having been previously notified in accordance with the second paragraph of Article 450 of the Code of Civil Procedure.

- signed by Mr. ACQUAVIVA, president, and by Ms. PATE, clerk present during pronouncement.

---

Between 1984 and 1987, the REPUBLIC OF CONGO (the CONGO) concluded with the COMMISSION IMPORT EXPORT (COMMISINPEX) [*sic*] company a series of public works and material supply contracts.

On October 14, 1992, due to non-payment by the CONGO, the parties signed a memorandum of understanding (*Protocol*), which envisaged payment by installments by subscription of promissory notes and included an arbitration clause. An arbitral award n° 9899 of December 3, 2000 held the CONGO to the payment of part of these promissory notes. The Court of Appeal rejected the action to set aside this award on May 23, 2002.

On August 23, 2003 the parties concluded a new agreement for payment of the debts of the CONGO for a total amount of 48 billion FCFA.

In April 2009, in the absence of payment, COMMISINPEX [*sic*] initiated an arbitration proceeding pursuant to the arbitration clause stipulated by the 2003 Protocol. When the proceedings were closed, the company was placed in compulsory liquidation by a judgment of the commercial court of Brazzaville of October 30 2012.

Before the arbitrators, the parties, essentially, were opposed on the point of whether the 1992 Protocol was for the totality or a part only of the CONGO's debt and, consequently, on the question of the existence or not of a *causa* of the 2003 Protocol recognizing to COMMISINPEX [*sic*] a debt owed greater than that which resulted from the 1992 Protocol.

By an award rendered in Paris on January 21 2013, the arbitral tribunal made up of, under the aegis of the International Chamber of Commerce, Mr. Hanotiau and Ms. Malinvaud, arbitrators, and of Mr. Derains, president:
- Found that it had jurisdiction over the claims of COMMISINPEX [*sic*] in connection with the effects of the judgment of compulsory liquidation on the arbitration proceeding,
- Said that the requirements of international public policy prevented the liquidation of COMMISINPEX [*sic*] from having effects on the arbitration proceeding, and noted, as a result, the lack of capacity of the liquidators to represent COMMISINPEX [*sic*],
- Rejected the request of COMMISINPEX [*sic*] for refunding of the expenses generated in the arbitration by the liquidation proceeding and declined jurisdiction to hear the other requests of COMMISINPEX [*sic*] in connection with its judicial liquidation,
- Rejected the plea of *res judicata* via the award of December 3, 2000,
- Noted the validity of the 2003 Protocol and its binding character for the parties,
- Noted that the amounts owed by CONGO in accordance with Article 1 of the 2003 Protocol were those which had been granted by the award of December 3, 2000, and deducted them from the award that it rendered,
- Held that the CONGO was to pay to COMMISINPEX [*sic*] in accordance with articles 2 and 3 of the 2003 Protocol the sum of 222,749,598 Euros, in addition to interest at the rate of 10% per year, starting from December 31, 2003 with capitalization,
- Determined the litigation costs.

On February 20, 2013, the CONGO brought an action to set aside this award.

It filed on June 17th then on September 10, 2014 the pleadings by which it requests setting aside the award, as well as the requirement that the Congo pay

COMMISINPEX [*sic*] the sum of 40,000 Euros pursuant to Article 700 of the Code of Civil Procedure. The Congo maintains that the award violates international public policy by ratifying the misuse of public money, that the arbitral tribunal ignored the principle that interested parties must be heard by not allowing the parties the right to comment on the basis of decision of estoppel raised sua sponte by the tribunal, that the court did not have jurisdiction to rule on the effects of the judicial liquidation and that, if it did, it could not decide without allowing the liquidation trustees to explain themselves and thereby violated the principle that interested parties must be heard, and, finally, that the arbitrators exceeded their mandate by rendering an award in Euros and not in the currency chosen by the parties.

By pleadings filed on September 1, 2014, COMMISINPEX [*sic*] asks the court to reject the action to set aside the award and to order the CONGO to pay to it the sum of 250,000 Euros pursuant to Article 700 of the Code of Civil Procedure.

It filed, on September 15, 2014, pleadings requesting that those of its opponent filed on September 10, the day before the closing of the proceedings, be excluded from the proceedings.

Messrs. MOSSA, TATI and NZONDO, Esq., in their capacity of president and members of the trustee group of COMMISINPEX, were not represented.

**WHEREAS**:

**On the conclusions of procedure:**

Since the brief submitted by the CONGO on the eve of the closing of the proceedings contained neither new requests nor new reasoning, there is no reason to exclude it from the proceedings;

**On the argument to set aside based on the violation of international public policy (Article 1520 5° of the Code of Civil Procedure):**

The CONGO claims that the award ratifies a misuse of public money by putting forward three arguments. First, it states that the Protocol of 1992 covered the entirety of the Congolese debt to COMMISINPEX [*sic*] and was global and constituted a novation, so that the Protocol of 2003, which adds to 22 billion FCFA recognized by the Protocol of 1992 an additional sum of 26 billion FCFA, can have only an illicit *causa* and can be explained only by a general climate of corruption from which COMMISINPEX [*sic*] benefited. The claimant bases its arguments on the witness statements of Congolese high-ranking authorities, as well as on the fact that the 2003 Protocol is based exclusively on a letter of October 7, 1992 "discovered" in the summer of 2003, which allegedly ratified the decision of meetings held in September 1992, of which there is no record, to proceed to split the Congolese debt to COMMISINPEX [*sic*] into one part covered by the Protocol of October 14, 1992 and another part whose payment was to be made by the attribution of companies to be privatized. The CONGO considers that this exhibit, which allegedly disappeared and reappeared under suspicious circumstances, and which contains several anomalies, is a forgery. The claimant argues, second, that the arbitral tribunal accepted the existence of a debt of 48 billion FCFA in the absence of proof. Lastly, it argues that the arbitral tribunal recognized the binding nature of the Protocol of 2003 in spite of the absence of authority of the signatories.

The "*Negotiation Protocol between the State of the Congo and the company Commisinpex [sic] SA*" was signed on August 23, 2003 in Brazzaville by Mr. Longobe, deputy minister, secretary general of the presidency of the Republic, and by Mr. Okemba, State Secretary, secretary general of the Security Council "*acting on behalf of the President of the Republic, his Excellence, Mr. Denis Sassou Nguesso and having authority for this purpose*" with signatures bearing the stamp of the Presidency of the Republic of Congo;

It results from the contents of this Protocol that COMMISINPEX [*sic*] financed, by means of foreign currencies, work and supplies for the benefit of the State of Congo that remained unpaid; that the State of Congo recognizes that, following the meetings of September 7 and 23, 1992, the various administrations concerned recognized the validity of the debt, which was set at the amount, ratified by the Presidency of the Republic, of 48 billion FCFA; that COMMISINPEX [*sic*] took note of this acknowledgement of debt by letters dated October 7 and November 24, 1992; finally, that the State of Congo recognizes that this debt with a value in FRF as of September 30, 1992 amounting to 960 million and shared as follows "*in accordance with the agreement concluded at the end of the two meetings of September 7 and 23 referred to above and confirmed by letter of the company COMMISINPEX [sic] of October 7, 1992:*
- *a first part is set at 440,000,000 FRF, i.e., the equivalent of 22 billion FCFA, subject of Protocol no. 566 of October 14, 1992,*
- *a second part is set at 520,000,000 FRF, i.e., the equivalent of 26 billion FCFA*";

The arbitral tribunal considered that the *causa* of the debt was stated in the acknowledgement of debt and that, therefore, it was incumbent upon the CONGO to demonstrate that the real *causa* was not that which appeared on the face of the act; that the tribunal, in the majority, judged that neither the "fantastic" circumstances of the disappearance and reappearance of the letter of October 7, 1992, nor the inconsistencies of its contents or the fact that it was never mentioned before the Protocol of 2003 were enough to show the inexistence or the illegality of the *causa* cited by the Protocol of 2003, namely that the debt of the CONGO to COMMISINPEX [*sic*] as of September 30, 1992 represented the sum of 48 billion FCFA; that the arbitrators, in the majority, considered that the CONGO demonstrated this proof even less in that the reality and the amount of the debt resulted from several documents - in particular from a detailed calculation worksheet generated in 1991 by the Caisse Congolaise d'Amortissement - and that they were corroborated by an expert report of the Ernst &Young firm of September 25, 2001, issued upon an order of the president of the commercial court of Brazzaville; that the arbitrators added that the CONGO could not simply, in order to evade its commitments, allege in general terms the existence of a climate of corruption, especially since in this case corruption would have involved a very great number of people over a long period of time and since the potential beneficiaries had not been troubled;

When it is alleged that an award gives effect to a contract obtained by corruption, it is up to the judge deciding on the action to set it aside, addressing an action based on Article 1520(5) of the Code of Civil Procedure, to examine in law and in fact all the evidence making it possible to come to a conclusion about the alleged illegality of the agreement and to assess whether the recognition or enforcement of the award violates international public policy in an effective and concrete manner;

It results from the detailed calculation worksheet generated in 1991 by the Caisse Congolaise d'Amortissement that the amount of the debt of the CONGO to COMMISINPLEX [*sic*] was then roughly 48 billion FCFA; that the Protocol of October of 1992 envisaged rescheduling the debt of the CONGO, the amount in principal of which was then set at 22 billion FCFA for all the contracts enumerated in its annex; that it is established that the CONGO made no payments pursuant to this

agreement; that, consequently, and it is unimportant whether the letter of October 7, 1992 is apocryphal, the fact that the parties, during the negotiations carried out in 2003, reconsidered the rebate granted in 1992 does not appear in itself as the indication of a fraudulent *causa*, all the more so since the interest rate, which was 10.5% per annum in the agreement of 1992 was decreased to 10% in that of 2003, which foresaw a waiver by COMMISINPEX [*sic*] of interest due;

And it cannot be admitted, without destroying the binding character of contracts on which international trade is based, that a State can get out of contractual obligations entered into by a representative with apparent authority simply by alleging a general climate of corruption in the administration, without indicating the individuals in question and without the possible beneficiaries having been subject to prosecution;

It has not been shown that the award gives effect to an agreement obtained by corruption;

Moreover, by the defense arguing the alleged insufficiency of the evidence relied upon by the arbitrators or criticizing their decision on the capacity of the signatories of the Protocol of 2003, the Court is asked to perform a substantial review of the award, which the judge deciding on a petition to set aside an arbitral award is not permitted to do;

The argument based on a violation of international public policy must thus be rejected;

> **On the request for set aside based on the lack of jurisdiction of the arbitral tribunal (article 1520(1) of the Code of Civil Procedure):**

CONGO makes the point that the arbitrators did not have jurisdiction to rule on the effects of the compulsory liquidation of COMMISINPEX, on which the Congo itself did not rely.

While the principles of staying individual lawsuits, dispossession of the debtor and staying the proceedings in the event of bankruptcy are of international public policy and are applied even if the arbitration proceeding in France is not subject to French law, the arbitrator nonetheless has to determine, before applying these principles, that the judicial decision opening the insolvency proceedings and designating a trustee does not itself fail to respect the requirements of international public policy;

That is the case when the arbitral tribunal is informed of the compulsory liquidation of one of the parties, whether or not the opposing party relies on that occurrence;

By deciding that the compulsory liquidation of COMMISINPEX [*sic*], the judgment of which was entered, following an expedited procedure, by the commercial court of Brazzaville on October 30, 2012 due to insolvency characterized by a social debt dating from 1981 and a lack of liquid assets resulting from the CONGO's own refusal to execute the award of December 3, 2000, violated the principle of good faith so that the judgment of liquidation had to be regarded as without effect on the arbitration proceeding, and the liquidators without capacity to represent COMMISINPEX [*sic*], the arbitral tribunal did not incorrectly rule on its jurisdiction;

The argument must be rejected;

**On the request for set aside drawn from the infringement of the right of interested parties to be heard (Article 1520(4) of the Code of Civil Procedure):**

The CONGO argues, first, that the arbitral tribunal could not decide on the effects of liquidation without inviting the trustees to explain themselves.

The appellant argues, second, that in order to decide that the Protocol of 2003 was not binding, though its signatories did not have the capacity to make such promises on its behalf, the arbitral tribunal relied on the estoppel argument raised sua sponte and not subject to debate, while the opposing party had relied on the theory of apparent authority.

On the first part of the argument:

An argument not having been presented to the arbitrators is inadmissible in a set-aside action.

On the second part of the argument:

The principle that an interested party must be heard requires that the parties have been able to express their claims in law and fact and address those of their adversary so that nothing on which the decision of the arbitrators is based should escape debate; that does not imply, however, that the parties are invited to discuss the reasoning of the award before it is rendered;

To conclude that the signatories of the Protocol of 2003 had capacity to sign it and that the agreement was binding, the arbitral tribunal based its reasoning on a body of evidence from which it concluded that Mr. Longobé and Mr. Okemba had authority to bind the Republic of CONGO (Award § 236 to 253);

It is only additionally and, moreover, by taking up an argument presented by COMMISINPEX [*sic*] (§ 271) that the arbitrators invoked estoppel;

The second part of the argument is thus not correct;

**On the argument for set aside based on the failure of the arbitrators to respect their mandate (Article 1520(3) of the Code of Civil Procedure):**

The CONGO argues that by rendering a decision in Euros, whereas the requests for relief were expressed in various currencies, the arbitral tribunal did not respect its mandate.

The Protocol of 2003 distinguished, on the one hand, the amounts in French Francs, Pound Sterling and Dollars arising from the Protocol of 1992, and, on the other hand, a debt expressed exclusively in French Francs; the decision rendered relates only to this second part; once the tribunal calculated this sum in French Francs, it was part of its mandate to convert it into Euros for the outstanding payments, which also corresponded, moreover, to the preliminary request of COMMISINPEX [*sic*];

The argument can only be dismissed;

It results from what precedes that the action to set aside must be dismissed;

**Considering Article 700 of the Code of Civil Procedure:**

The CONGO, the losing party, cannot benefit from these provisions; it will be ordered on this basis to pay to COMMISINPEX [*sic*] the sum of 100,000 Euros;

**FOR THESE REASONS:**

The Court rejects the request to strike from the proceedings the pleadings filed on September 10, 2014 by the REPUBLIC OF CONGO.

The Court rejects the action to set aside the award rendered between the parties on January 21 2013.

The Court orders the REPUBLIC OF CONGO to pay fees.

The Court orders the REPUBLIC OF CONGO to pay to the company COMMISSIONS Import Export SA the sum of 100,000 Euros pursuant to Article 700 of the Code of Civil Procedure.

THE REGISTRAR                                    THE PRESIDENT