UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT, S.A., )<br>)<br>*Petitioner*, )<br>)<br>v. )<br>)<br>REPUBLIC OF THE CONGO, )<br>)<br>*Respondent.* )<br>) | Civil Action No.<br>1:13-CV-000713-RJL |

### DECLARATION OF MOHSEN HOJEIJ

I, Mohsen Hojeij, declare as follows:

1.  I have been the CEO and Chairman of the Board of Directors of Commissions Import Export, S.A. ("Commisimpex") for over 30 years.  Commisimpex is one of the companies in the Hojeij Group, which began doing business in the Republic of the Congo ("the Congo") in 1973.  Since that time, Commisimpex and other companies in the Hojeij Group have invested many millions of dollars in the Congo.

**Commisimpex's Arbitrations Against the Congo**

2.  In the mid-1980s, Commisimpex entered into a number of contracts with the Congo and agreed to perform certain public works and supply certain materials to the Congo. On October 14, 1992, Commisimpex and the Congo concluded an agreement entitled "*Protocole d'Accord No. 566*" to arrange for the repayment of a portion of the outstanding debts the Congo owed Commisimpex.  Following the Congo's failure to respond to Commisimpex's demands for payment, on March 13, 1998, Commisimpex filed a request for arbitration with the International Court of Arbitration of the International Chamber of Commerce ("ICC") (Arbitration No. 9899), pursuant to the arbitration clause contained in the 1992 Protocol, as well as in related

commitment letters. This arbitration ultimately resulted in an award for Commisimpex against the Congo and *Caisse Congolaise d'Amortissement* (part of the Congo's Ministry of Finance) for approximately €193 million (the 2000 Award), denominated in various currencies.

3. In 2003, Commisimpex and the Congo entered another agreement for payment of the totality of debt owed to Commisimpex (the 2003 Protocol). Again the Congo failed to pay, and on April 17, 2009, Commisimpex filed a new Request for Arbitration against the Congo before the ICC (Arbitration No. 16257). On January 21, 2013, the ICC arbitral tribunal rendered an award against the Congo for approximately €222 million, plus over €350 million in interest and reimbursement of legal expenses and costs.

**Liquidation Proceedings in the Congo**

4. On September 26, 2012, while Commisimpex was involved in multiple proceedings in France to enforce the 2000 Award and the second arbitration was pending, *Caisse Nationale de Sécurité Sociale du Congo* (the Social Security Administration of the Congo, the CNSS) initiated liquidation proceedings against Commisimpex in an action in the Brazzaville Commercial Court in the Congo.

5. In support of its claim, CNSS submitted a one-page document dated March 13, 2012 and signed by a manager of the CNSS. This document is attached to my declaration as Exhibit 1. In the document, CNSS alleged that Commisimpex owed the Congolese Franc equivalent of approximately €4.3 million in social payments, supposedly due since 1981.

6. This was the first time I had heard of any outstanding social payments owed by Commisimpex. Between 1981 and 2012, Commisimpex never received any request for outstanding payment of social charges or any notice of payments allegedly due. Indeed, in

2

numerous and extensive dealings between Commisimpex and the Congo over that time period – including in negotiations over the 1992 and 2003 protocols and during two arbitrations before the International Chamber of Commerce (ICC) – no Congolese official or representative ever mentioned social charges or any debt allegedly owed by Commisimpex.

7. CNSS's one-page submission to the Commercial Court contained numerous blatant fabrications and was not supported by any documents or other evidence. For example, Commisimpex had first hired employees only in 1982 (not 1981) and always timely paid <u>all</u> of its social charges owed on those employees until 1991. In 1991, Commisimpex ceased its activities in the Congo and formally was made "dormant" (*mise en sommeil*) by its shareholders. After 1991, Commisimpex did not have employees in the Congo and was therefore not required to make payments to the Social Security Administration.

8. On October 8, 2012, Commisimpex urgently filed a reply to CNSS's submission, and provided extensive evidence including bank statements, checks, and payment slips dating back 30 years and covering each year of the relevant period. Commisimpex's reply submission is attached as <u>Exhibit 2</u>. In the reply, to demonstrate payment of social taxes due for March 1986, for example, Commisimpex produced copies of (i) CNSS's request for payment of approximately 9 million Congolese Francs, sent to Commisimpex on June 12, 1986, (ii) check no. 7107374 issued on July 10, 1986 in the same amount, and (iii) the corresponding bank statement according to which this check was paid on July, 23 1986. In addition, Commisimpex also produced, among other things, the result of a verification by the Social Security Administration acknowledging that, as of 1989, all payments had been made on time. Commisimpex further argued that the Commercial Court lacked jurisdiction to hear disputes

related to labor and social debts, as such jurisdiction actually belonged to the Congolese Tribunal du Travail.

9. Shortly after filing its reply, Commisimpex also filed a separate criminal complaint in the Congo against CNSS alleging various types of fraud in connection with the CNSS document dated March 13, 2012. The criminal complaint is attached here as <u>Exhibit 3</u>. Commisimpex then requested a stay of the commercial proceedings pending the outcome of the criminal proceedings, in conformity with Congolese civil procedure.

10. The Commercial Court heard the case on October 23, 2012, and rendered a decision on October 30, 2012, which became available in writing on November 9, 2012 and is attached here as <u>Exhibit 4</u>. In its decision, the Commercial Court found that Commisimpex's evidence was not persuasive since it did not establish that the checks issued before 1991 had been cashed by CNSS, nor that the absence of business activity (and therefore of employees) released Commisimpex from the payment of the related social taxes. The Court ignored Commisimpex's request for a stay related to the pending criminal proceedings.

11. The Court declared Commisimpex insolvent, ordered its liquidation, and appointed three trustee-liquidators. The liquidators that the Court named – Messrs. Mossa, Nzondo and Tati (who had been disbarred) – are known to be close to senior Congolese officials.

12. Commisimpex's liquidation became immediately enforceable in the Congo, notwithstanding any appeal. Commisimpex was listed as "in liquidation" on the Brazzaville commercial registry as of November 12, 2012. This decision was effected within less than a month from Commisimpex receiving the initial motion for liquidation, which is an extremely short time for commercial proceedings in the Congolese courts.

13. Commisimpex immediately appealed the decision to the Brazzaville Court of Appeals. On May 13, 2013, subsequent to the issuance of the ICC arbitral award, the Court of Appeals confirmed the Commercial Court's decision. The Court of Appeals also replaced Mr. Tati as liquidator and appointed Mr. Apesse as *Juge-commissaire* (judge responsible for overseeing the liquidators). Mr. Apesse shortly thereafter received a promotion to First President of the prestigious *Cour des Comptes* (Auditing Court) by the Congolese government.

14. Commisimpex then appealed the Court of Appeals decision to the Common Court of Justice and Arbitration of OHADA in Abidjan, Ivory Coast, where the case is still pending.

15. In early February 2014, Commisimpex's Congolese counsel received a summons dated January 13, 2014 requesting that Commisimpex's legal representative appear before the Investigating Judge in connection with the criminal complaint that had been submitted on October 22, 2012. The summons is attached here as <u>Exhibit 5</u>. The date for the appearance was two days after the date of the summons, January 15, 2014. Commisimpex's Congolese counsel addressed a courtesy reply on February 5, 2014. By letter dated February 26, 2014, I wrote to the Prosecutor to confirm the criminal complaint. Commisimpex's counsel appeared, and there has been no outcome in those proceedings.

16. In my over 30 years of doing business in the Congo, I have never heard of an involuntary liquidation initiated by government against a private company doing business in the Congo. I am aware of no other similar proceedings in the Congo.

**Congolese Tax Proceedings Against Commisimpex**

17. Commisimpex has also been fraudulently targeted by the Congolese tax authorities. By letter dated March 19, 2014, attached as <u>Exhibit 6</u>, the Congolese tax authorities, without ever reviewing Commisimpex's documents or files, informed me that they had

conducted an assessment of Commisimpex's taxes for the years 2010, 2011, and 2012. According to this assessment, Commisimpex allegedly owed 883,985,785,208 Congolese Francs – or approximately US$ 1.7 *billion* – formally demanded by letter of April 18, 2014 (attached as Exhibit 7) and subject to a 10% late fee. The principal basis for this assessment is the 2013 arbitral award, even though it had not yet even been rendered for the tax years in question and the Congo has refused to pay the amount.

18.   By letter dated July 10, 2014, attached as Exhibit 8, Commisimpex formally contested the estimated tax assessment, both procedurally and on the merits. On October 2, 2014, I received a letter dated September 18, 2014 from the Congolese tax authorities stating that, to maintain the appeal of the tax assessment, Commisimpex would have to pay 10% of the sums allegedly owed – *i.e.*, around US$ 170 million. This letter is attached here as Exhibit 9.

19.   With the liquidation proceedings, the tax assessments, and other efforts, the Congo has waged continuous fraudulent attacks on Commisimpex and has impaired Commisimpex's ability to enforce its rights.

\*   \*   \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17 day of November 2014 in Beirut, Lebanon.

Mohsen Hojeij