# Exhibit 2

| | |
|---|---|
| **Cabinet**<br>**BRUDEY-ONDZIEL GNELENGA - LOCKO**<br>Avocat à la Cour | **Maître Gérard DEVILLERS**<br>Avocat à la Cour |

A Messieurs les Président et juges composant
le Tribunal de commerce de Brazzaville
_____

Audience du 9 octobre 2012

# CONCLUSIONS EN REPONSE N°1

**POUR**

**La société COMMISSIONS IMPORT EXPORT (COMMISIMPEX)**
société anonyme de droit congolais immatriculée au RCCM de Brazzaville sous le numéro RCCM CG/BZV/07 B413, dont le siège social est sis 86 avenue Foch, BP 1244, Brazzaville, République du Congo, agissant poursuites et diligences de son représentant légal en exercice

*Ayant pour avocats constitués*

**Cabinet BRUDEY, ONDZIEL GNELENGA, LOCKO**
domicilié 46 avenue William Guynet Galerie Marchande de l'Arce Centre Ville Brazzaville
B.P. 2041

**Maître Gérard DEVILLERS**
domicilié Avenue de l'Indépendance Face Ambassade de la RDC Centre Ville Brazzaville
B.P. 1211

**CONTRE**

**La CAISSE NATIONALE DE SECURITE SOCIALE,** dite CNSS, dont le siège social est situé avenue Denis Sassou Nguesso, centre-ville, Brazzaville, agissant poursuites et diligences de son Directeur général

*Ayant pour avocat constitué*

**Maître Firmin MOUKENGUE**
Avocat à la Cour, domicilié Immeuble SOPROGI (Patte d'Oie), en face de l'ENAM, B.P. 14625

# PLAISE AU TRIBUNAL DE COMMERCE DE BRAZZAVILLE

**I        L**A REQUETE INTRODUCTIVE D'INSTANCE

1.       Le dispositif de la requête introductive d'instance de la **CAISSE NATIONALE DE SECURITE SOCIALE** datée du 26 septembre 2012 est le suivant :

« *ADVENUE L'AUDIENCE :*
« *-Constater, dire et juger que la société COMMISSION IMPORT EXPORT, dite*
« *COMMISIMPEX SA  a cessé de payer ses cotisations sociales  depuis  Août 1981, date de*
« *sa dernière déclaration, faite en application de l'article 23 ali.1<sup>er</sup> de la loi 004/86 du 25 février*
« *1986  instituant le code de sécurité sociale ;*
« *-Constater l'inobservation  par la COMMISIMPEX SA des dispositions de l'article 269 de l'Acte*
« *Uniforme relatif au droit des sociétés  commerciales et du groupement d'intérêt économique ;*
« *-Dire et juger qu'il est établi que la société COMMISIMPEX SA se trouve dans l'impossibilité*
« *de  faire face au passible exigible avec son actif disponible ;*
« *- Constater, dire et juger que cette situation paralyse la bonne exécution de la nouvelle politique*
« *de la caisse du Gouvernement  de la République ;*
« *- Constater, dire et juger que Monsieur HAJAIJ Moshin Mohamed  a posé des actes de pure*
« *mauvaise foi et d'imprudences graves aux règles et usages du commerce ;*
« *EN CONSEQUNECE*
« *- Dire et juger que la société COMMISSION  IMPORT EXPORT dite COMMISIMPEX SA est en*
« *état de cessation des paiements ;*
« *- Ordonner la liquidation d ses biens ;*
« *Nommer les organes pour assurer ladite liquidation ;*
« *-Dire et juger que la durée  du mandat s'étendra jusqu'à la clôture des opérations de*
« *liquidation ;*
« *- Cantonner la créance de la Caisse Nationale de Sécurité Sociale à l'encontre de la société*
« *COMMISIMPEX SA  qui est une créance sociale à 2.823.739.920 francs CFA au principal et à*
« *celle de trois milliards cinq cent millions (3.500.000.000) francs CFA, à titre de dommages-*
« *intérêts ;*
« *- Prononcer la faillite personnelle de Monsieur HAJAIJ Moshin Mohamed avec toutes  les*
« *conséquences de droit nécessaire ;*
« *- Fixer souverainement la date de cessation des paiements ;*
« *- Dire que les émoluments  du liquidateur seront fixés par décision du Président du Tribunal de*
« *Commerce de Brazzaville, statuant à bref délai ;*
« *- Ordonner l'exécution provisoire du jugement à intervenir, nonobstant toutes voies de recours*
« *et sans caution, conformément aux dispositions des articles 217 de l'Acte Uniforme portant*
« *organisation des procédures  collectives d'apurement du passif et 58  du code de procédure*
« *civile, commerciale, administrative et financière ;*
« *- Condamner la COMMISIMPEX SA et HAJAIJ Moshin  Mohamed aux dépens » ;*

**II       SUR LE DEFAUT DE SAISINE DU TRIBUNAL DE COMMERCE DE BRAZZAVILLE**

**2.**     La concluante COMMISIMPEX SA a été citée par la notification qui lui a été faite le 28 septembre 2012 de l'ordonnance prise par Monsieur le Président du Tribunal de Commerce le même 28 septembre 2012.

**3.**     Au résultat de cette notification, COMMISIMPEX SA est citée à comparaître devant le Tribunal de Commerce de Brazzaville à l'audience commerciale des référés du 2 octobre 2012 à 8 heures précises pour entendre statuer sur les mérites de la requête dont s'agit.

**COMMISIMPEX a donc été citée à comparaître à une audience <u>de référé</u>.**

**4.     Or, la procédure a été inscrite au rôle du <u>Tribunal de commerce</u> de Brazzaville du 2 octobre 2012.**

**5.**     Le Tribunal de commerce de Brazzaville en sa formation collégiale <u>n'est pas</u> une juridiction de référé.

**6.**     En conséquence, le Tribunal de commerce de Brazzaville n'est pas valablement saisi par la citation délivrée à COMMISIMPEX SA.

Le Tribunal de commerce de Brazzaville déclarera cette fin de non-recevoir fondée et en conséquence se dessaisira du dossier.

**III      SUR L'ABSENCE DE MISE EN CAUSE DE MONSIEUR MOSHIN MOHAMED HAJAIJ**

**7.**     L'ordonnance prévue aux articles 38, 39 et 40 du Code de procédure civile, commerciale, administrative et financière prise par Monsieur le Président du Tribunal de commerce le 28 septembre 2012 est ainsi conçue :

> « *Nous, Gérard BIKINDOU, Président du Tribunal de Commerce de Brazzaville*
> « *Vu la requête de : La CNSS*
> « *Siège social sis Avenue Denis SASSOU NGUESSO, Centre –Ville – Brazzaville ;*
> « *Vu les articles 5, 6, 7, 9, 11, 12, 13, 14, 32, 33 et suivants de la loi 51/83 du 21 Avril 1983, portant*
> « *Code de Procédure Civile, Commerciale, Administrative et Financière ;*
> « *Attendu que nous avons vainement tenté de concilier les parties ; fixons au 02 Octobre 2012 à 8*
> « *heures, date à laquelle l'affaire sera appelée au lieu ordinaire de nos audiences aux fins de*
> « *statuer sur les mérites de ladite requête ;*
> « *- Disons que : La Société Commisimpex S.A, siège social sis à Brazzaville.*
> « *- Devront produire leurs défenses huit jours au plus tard avant l'audience.*
> « *- Mandons le Greffier du Tribunal de Céans à l'effet de notifier la présente ordonnance aux*
> « *parties, accompagnée, en ce qui concerne la partie défenderesse, d'une copie de la requête*
> « *introductive d'instance et de la liste des pièces déposées par le requérant » ;*

Cette ordonnance ne vise donc pas Monsieur Moshin Mohamed HAJAIJ.

**8.**     L'acte du 28 septembre 2012 valant notification de l'ordonnance et citation à comparaître à l'audience des référés du 2 octobre 2012, n'a été notifié qu'à la seule société COMMISSIONS IMPORT EXPORT en sigle COMMISIMPEX SA, centre-ville - Brazzaville.

**9.**     Force est de constater que Monsieur Moshin Mohamed HAJAIJ, bien que son nom figure dans la requête introductive d'instance du 26 septembre 2012, n'est concerné ni par l'ordonnance présidentielle du 28 septembre 2012, ni par l'acte de notification valant citation du même 28 septembre 2012.

**10.**    En conséquence, Monsieur Moshin Mohamed HAJAIJ n'est pas partie à la présente procédure et n'entend pas comparaître volontairement.

Il ne pourra donc être concerné par aucune disposition de la décision à intervenir.

**IV    FAITS ET PROCEDURE**

*Présentation de COMMISIMPEX*

**11.**    La société COMMISSIONS IMPORT EXPORT (COMMISIMPEX) (ci-après, "**COMMISIMPEX**"), est une société commerciale de droit congolais immatriculée au Registre du Commerce du Crédit Mobilier de Brazzaville (ci-après, le "**RCCM**") depuis 1980.

**12.**    Entre 1984 et 1986, COMMISIMPEX a exécuté divers marchés de travaux publics et de fournitures de matériels pour le compte de la République du Congo, laissant subsister au bénéfice de COMMISIMPEX une créance très élevée sur l'Etat congolais.

*La mise en sommeil de COMMISIMPEX*

**13.**    A partir de 1988, du fait de l'annulation du projet Etoumbi-Kunda, COMMISIMPEX a été contrainte de cesser ses activités et de procéder au licenciement de l'ensemble de son personnel.

*Pièce n°1 : Lettre adressée par COMMISIMPEX à Monsieur le Directeur régional du Travail le 4 mai 1988*

**14.**    Lors de leur assemblée générale en date du 28 juin 1991, les actionnaires de COMMISIMPEX ont pris acte de cette cessation d'activité et décidé la mise en sommeil provisoire de la société.

*Pièce n°2 : Procès-verbal d'assemblée générale mixte du 28 juin 1991*

*La créance de COMMISIMPEX sur la REPUBLIQUE DU CONGO*

**15.**    Le 14 octobre 1992, COMMISIMPEX et la République du Congo ont conclu un premier protocole d'accord aux fins de règlement par la République du Congo d'une fraction de sa dette à l'égard de COMMISIMPEX.

*Pièce n°3 : Protocole d'accord du 14 octobre 1992*

**16.** Le protocole susvisé n'ayant pas été exécuté par la République du Congo, COMMISIMPEX a introduit, le 13 mars 1998, une première demande d'arbitrage auprès de la Chambre de commerce internationale (ci-après, la "**CCI**"), qui a abouti, le 3 décembre 2000, à la condamnation par sentence de la République du Congo au paiement de diverses sommes d'argent (dont le montant actualisé à fin août 2012 avoisine **192 000 000 €**, ou **126 000 000 0000 FCFA**).

*Pièce n°4 : Sentence CCI en date du 3 décembre 2000*

**17.** Cette sentence arbitrale devenue définitive, qui demeure inexécutée à ce jour, a été reconnue exécutoire par la Cour suprême du Congo par un arrêt du 27 juin 2003 aux termes duquel elle a « *renvo[yé] les parties à l'exécution de cette sentence arbitrale.* »

*Pièce n°5 : Arrêt de la Cour suprême du Congo, Ch. com., 27 juin 2003*

**18.** Le 23 août 2003, COMMISIMPEX et la République du Congo ont conclu un nouveau protocole d'accord portant sur la dette globale de la République du Congo envers COMMISIMPEX – qui n'a pas davantage été exécuté par l'Etat congolais que celui de 1992, si bien que COMMISIMPEX a dû introduire, le 17 avril 2009, une seconde demande d'arbitrage auprès de la CCI, portant cette fois sur les sommes visées au protocole de 2003 qui n'étaient pas comprises dans la sentence du 3 décembre 2000.

*Pièce n°6 : Protocole d'accord du 23 août 2003*

**19.** Le tribunal arbitral CCI saisi de cette demande devrait rendre sa sentence très prochainement, ce qui explique manifestement la présente initiative de la CNSS, hasardeuse et téméraire, sans aucun fondement factuel digne de foi ni fondement juridique digne de ce nom.

### *La demande en liquidation de la CAISSE NATIONALE DE SECURITE SOCIALE*

**20.** C'est en effet dans ce contexte que, le 26 septembre 2012, la CAISSE NATIONALE DE SECURITE SOCIALE (ci-après, la "**CNSS**"), prétextant soudainement d'un défaut de paiement de cotisations sociales de COMMISIMPEX (selon des états et documents réunis et constitués fin février 2012/début mars 2012, soit il y a près de 7 mois), a saisi le Tribunal de commerce de Brazzaville d'une « *requête aux fins de liquidation des biens et faillite personnelle d'un dirigeant* ».

**21.** Le 28 septembre 2012, le Président du Tribunal de céans a fixé au… 2 octobre 2012 à 8h00 la date à laquelle l'affaire serait appelée, imposant aux défendeurs de produire leur défense au plus tard 8 jours avant l'audience, soit avant même la reddition de l'ordonnance de fixation.

Cette ordonnance a été notifiée à la société COMMISIMPEX le même jour par Mme Irène M. BIKAMBIDI, Greffier en Chef près le Tribunal de commerce de Brazzaville.

Il est à noter que **M. Moshin Mohammed HAJAIJ**, dirigeant de la Société pourtant poursuivi en faillite personnelle (rien moins !), si l'on en croit la requête déposée par la CNSS, **n'était pas visé dans l'ordonnance présidentielle et n'a donc été rendu destinataire d'aucune notification du Greffier en Chef valant citation à comparaître**.

**22.**   A l'audience du 2 octobre 2012, le cabinet BRUDEY ONDZIEL LOCKO et Me DEVILLERS se sont constitués pour la société COMMISIMPEX et ont sollicité un renvoi à un mois en insistant sur le fait que les créances réclamées étaient extrêmement anciennes et qu'outre l'absence d'urgence, il faudrait au minimum plusieurs semaines pour réunir tous les documents nécessaires à la présentation d'une défense équitable.

Contre toute attente, à rebours de la pratique habituelle du Tribunal en la matière, l'affaire a été renvoyée à une semaine, soit au 9 octobre 2012.

**23.**   C'est en cet état que l'affaire se présente devant le Tribunal.

## V   DISCUSSION

**24.**   La requête présentée par la CNSS vise notamment à :

- *Lui donner acte du dépôt de la présente requête [et] l'autoriser à faire citer [COMMISIMPEX] par devant [lui] à telle audience qu'il [lui] plaira de fixer pour :*

- *Dire et juger que [COMMISIMPEX] est en état de cessation des paiements ;*

- *Ordonner la liquidation de ses biens. »*

**25.**   Il sera démontré :

- *A titre principal*, que cet acte et les formalités de notification qui l'ont suivi n'ont pu valablement introduire l'instance afin de liquidation sollicitée (A).

- *A titre subsidiaire*, que les demandes de la CNSS sont mal fondées (B).

- *A titre reconventionnel*, que le caractère hasardeux de la mise en cause de COMMISIMPEX par la CNSS justifie que celle-ci soit condamnée pour procédure abusive (C).

### A   *A titre principal, sur l'irrégularité de la procédure afin de liquidation judiciaire introduite par la CNSS*

**26.**   Conformément à l'Acte uniforme OHADA du 10 avril 1998 portant organisation des procédures collectives d'apurement de passif (ci-après, l'"**AUPC**"), les procédures collectives ne peuvent être ouvertes que dans les deux cas suivants :

- soit **à la demande d'un créancier** sur le fondement de l'article 28, lequel prévoit :

    « *La procédure collective peut être ouverte sur la demande d'un créancier, quelle que soit la nature de la créance, pourvu qu'elle soit certaine, liquide et exigible.*
    *L'assignation du créancier doit préciser la nature et le montant de sa créance et viser le titre sur lequel elle se fonde* » ;

- soit **sur saisine d'office de la juridiction** compétente sur le fondement de l'article 29 qui dispose :

    « *La juridiction compétente peut se saisir d'office, notamment sur la base des informations fournies par le représentant du Ministère public, les commissaires aux comptes des personnes morales de droit privé lorsque celles-ci en comportent, les associés ou membres de ces personnes morales, ou les institutions représentatives du personnel qui lui indiquent les faits de nature à motiver cette saisine. Le Président fait convoquer le débiteur, par les soins du greffier, par acte extrajudiciaire, à comparaître devant la juridiction compétente siégeant en audience non publique. L'acte extrajudiciaire doit contenir la reproduction intégrale du présent article* ».

**27.** En l'espèce, bien que la requête déposée par la CNSS vise expressément l'article 28 de l'AUPC, la procédure suivie n'est conforme ni à ce dernier, ni à l'article 29 de l'AUPC.

1°/    <u>Le Tribunal n'a pas été valablement saisi sur le fondement de l'article 28 de l'AUPC</u>

**28.** L'article 28 de l'AUPC permet l'ouverture d'une procédure collective à l'initiative d'un créancier :

- sur **assignation** de ce dernier exclusivement ;

- cette assignation devant – à peine de nullité – reproduire un certain nombre de mentions – et notamment la nature et le montant de la créance de même que le **titre** sur lequel se fonde le créancier assignant.

**29.** Au cas présent, aucune de ces prescriptions n'a été respectée.

*a)* <u>*La CNSS n'ayant délivré aucune assignation, la requête ne saurait avoir valablement introduit l'instance afin de liquidation judiciaire*</u>

**30.** En effet, c'est par une requête non contradictoire – et non pas par voie d'assignation, la seule valablement désignée par la loi – que la CNSS a saisi le Tribunal de commerce de Brazzaville.

La saisine du Tribunal n'a donc pu régulièrement intervenir.

**31.** L'ordonnance de renvoi notifiée par le Tribunal, qui fait expressément référence à la requête, ne saurait pallier cette irrégularité, puisque rien dans les dispositions applicables n'autorise une quelconque régularisation selon ce procédé.

**32.** Dans ces conditions, l'instance n'étant pas valablement introduite, le Tribunal ne pourra que se déclarer non valablement saisi.

b) *En tout état de cause, la requête de la CNSS ne comporte aucune indication du titre sur lequel elle se fonde*

**33.** Dût-on, par extraordinaire, considérer qu'une simple requête ait pu valablement introduire l'instance afin d'ouverture de procédure collective, il sera démontré que cette requête ne mentionnant pas un **titre** valable, elle devra être considérée comme nulle et non avenue.

**34.** En effet, pour asseoir sa demande et tenter sans doute de se conformer aux impératifs posés par l'article 28 de l'AUPC quant aux mentions prescrites à peine de nullité, la CNSS expose que « […] *le titre sur lequel elle se fonde* [est] *bien connu* » (Requête du 26 septembre 2012, p.2) et produit à cette fin un document intitulé « *Situation de la cotisante COMMISIMPEX au 31 décembre 2011* » établi par Léonie DZAMA, Directrice du recouvrement et du contentieux de la CNSS.

**35.** Ce document, dont aucune preuve de communication à COMMISIMPEX sous quelque forme que ce soit n'est d'ailleurs fournie, ne saurait constituer un titre au sens visé par l'article 28 de l'AUPC. Il constitue un document préparé de façon unilatérale par la CNSS, sans valeur probatoire ou exécutoire.

**36.** Or, ainsi qu'il a été rappelé par la Cour d'appel de Dakar le 18 février 2010 :

« *il y a lieu d'observer qu'au vu de l'article 28 de l'AUPC, l'ouverture d'une procédure collective ne peut être fondée sur des créances contestables ; en l'espèce, l'appelant n'a pas produit de titre exécutoire ; les créances alléguées résultent de documents unilatéraux ne comportant pas la signature du débiteur et non certifiés par une autorité légalement habile* » (CA Dakar, chambre civile et commerciale, 18 février 2010, n° 132, cité *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1177).

**37.** Dans ces conditions, l'acte prétendument introductif d'instance est nul et le Tribunal se déclarera de plus fort non valablement saisi.

2°/ Le Tribunal n'a pas davantage pu être saisi sur le fondement de l'article 29 de l'AUPC

**38.** Si l'article 29 de l'AUPC envisage une saisine d'office du Tribunal, il prévoit aussi le respect d'une procédure spécifique – et notamment (i) la signification au débiteur par acte extrajudiciaire, et (ii) la reproduction intégrale de l'article 29 de l'AUPC.

**39.** En l'espèce, là encore, aucune de ces prescriptions n'a été respectée. Ainsi :

- l'ordonnance vise exclusivement la requête, décrite comme une « *requête introductive d'instance* », cette dernière visant l'article 28, et non 29, de l'AUPC.

- elle a fait l'objet d'une simple notification par les soins de la greffière, qui en sa qualité d'agent administratif, n'a aucune compétence pour délivrer des actes de nature extrajudiciaire, pourtant expressément requise par la disposition susvisée ;

- l'article 29 de l'AUPC n'est pas intégralement reproduit ;

- aucune référence n'est faite à une quelconque saisine d'office.

**40.** Par suite, le Tribunal ne pourra que constater qu'il n'a pas pu davantage être valablement saisi par la CNSS sur le fondement de l'article 29 de l'AUPC.

Les demandes formulées par la CNSS seront donc jugées irrecevables.

### B     *A titre subsidiaire, sur le mal-fondé de la demande d'ouverture de liquidation*

**41.** Si le Tribunal venait à considérer qu'il a été valablement saisi, il ne pourra que constater que les conditions prévalant à l'ouverture d'une procédure collective ne sont pas réunies en l'espèce.

**42.** En effet, pour prononcer une telle décision à l'encontre d'une société assignée par l'un de ses créanciers, l'article 28 de l'AUPC exige non seulement que la créance soit « *certaine, liquide et exigible* », mais encore qu'elle soit fondée sur un **titre**, ce titre devant par ailleurs être **mentionné** dans l'assignation.

Enfin, l'article 28 impose la démonstration par le créancier de **vaines poursuites** : on ne saurait en effet demander efficacement l'ouverture d'une procédure collective sans qu'il soit tenu pour acquis que la créance que l'on prétend détenir n'est pas contestable dans son principe (voir à cet égard la décision de la Cour d'appel de Dakar précitée) et que l'on a déjà vainement poursuivi son débiteur.

Quant à l'article 29, il exige pour sa part la démonstration d'un état de **cessation des paiements**.

**43.** Au cas présent, pour fonder ses demandes, la CNSS se contente d'affirmer que COMMISIMPEX est en état de cessation des paiements et demande en conséquence l'ouverture d'une procédure collective « *à son bénéfice* » (sic) aux seuls motifs que :

- « *COMMISIMPEX a*[urait] *cessé de payer ses cotisations sociales depuis Août 1981* » ;

- « *COMMISIMPEX n'a*[urait] *pas respecté les dispositions de l'article 269 de l'AUPC* ».

**44.** Ces prétentions ne sauraient prospérer.

**45.** COMMISIMPEX démontrera en effet qu'aucune procédure collective ne saurait être ouverte à son encontre, quel qu'en soit le fondement, dès lors que :

- La CNSS ne justifie d'aucun titre à son encontre, et le Tribunal de commerce est incompétent pour lui en délivrer un ;

- La CNSS ne justifie d'aucunes poursuites demeurées vaines à son encontre ;

- La créance alléguée par la CNSS est hautement contestable ;

- Aucun autre élément ne permet d'accréditer l'existence d'un état de cessation des paiements, bien au contraire.

1°/ <u>La CNSS ne justifie d'aucun titre à l'encontre de COMMISIMPEX, et le Tribunal de commerce est absolument incompétent pour lui en délivrer un</u>

**46.** Comme indiqué ci-dessus, la Cour d'appel de Dakar a ainsi rejeté l'ouverture d'une procédure collective au motif que le créancier « *n'a pas produit de titre exécutoire* », et que *« les créances alléguées résultent de documents unilatéraux ne comportant pas la signature du débiteur et non certifiés par une autorité légalement habile »* (CA Dakar, chambre civile et commerciale, 18 février 2010, n° 132, cité *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1177).

De la même manière, les juridictions ivoiriennes ont indiqué que le créancier qui n'est pas muni d'un titre exécutoire non exécuté n'apporte pas la preuve de l'état de cessation des paiements de son débiteur (Abidjan, 28 juillet 2000, n°2000, *Société des banques de Côte d'Ivoire c. SOFAMO*, cité *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1176).

**47.** En l'espèce, et pour seule preuve de son titre, la CNSS produit un document intitulé « *Situation de la cotisante COMMISIMPEX au 31 décembre 2011* » établi par Léonie DZAMA, Directrice du recouvrement et du contentieux.

**48.** On a déjà indiqué que ce document unilatéral, qui n'a aucune valeur probante (puisqu'il constitue en réalité une simple preuve à soi-même) n'a pas davantage, *a fortiori*, de quelconque valeur exécutoire.

**Le juge commercial est <u>absolument incompétent</u> pour déterminer le montant de la créance éventuelle de la CNSS sur COMMISIMPEX :** par définition, ce n'est ni à la CNSS ni même au juge commercial de déterminer le montant de la créance qui pourrait être éventuellement due par COMMISIMPEX à cet organisme social.

**49.** En effet, si l'on se réfère aux dispositions du Code de sécurité sociale, c'est, en cas de contestation, au seul Président du Tribunal du Travail de fixer le montant des cotisations pouvant être éventuellement dues à la CNSS, ceci après respect des formalités expressément prévues par les articles 185, 186, 187 et 188 du Code de sécurité sociale, formalités qui sont les suivantes :

- délivrance d'une contrainte par la CNSS visée et rendue exécutoire par le Président du Tribunal du Travail ;

- signification de la contrainte au débiteur présumé étant précisé que ladite contrainte n'est exécutoire que s'il n'y a pas d'opposition du débiteur ;

- en cas d'opposition, tentative de conciliation devant le Président du Tribunal du Travail ;

- 10 -

- en cas de non-conciliation, décision du Président du Tribunal du Travail qui fixe le montant de la créance de la CNSS avec possibilité pour le débiteur de relever appel de cette décision.

Il sera rappelé que les articles 185 à 188 du Code de sécurité sociale stipulent :

**Article 185 :**

*« Cette contrainte est signifiée au débiteur par voie d'agent administratif spécialement commis à cet effet. Elle peut valablement être adressée par lettre recommandée avec accusé de réception. Elle est exécutée dans les mêmes conditions qu'un jugement.*
*L'exécution de la contrainte peut être interrompue par opposition motivée, formulée par le débiteur par inscription au secrétariat du Tribunal du Travail ou par lettre recommandée adressée au secrétariat dudit Tribunal dans les 15 jours à compter de la signification prévue au 2ème alinéa du présent article.*
*Les frais de signification et d'exécution de la contrainte sont à la charge de l'employeur débiteur. »*

**Article 186 :**

*« En cas de d'opposition le Président du Tribunal du Travail cite les parties à comparaître et procède à une tentative de conciliation.*
*En cas de non conciliation, le Président du Tribunal du Travail statue sur le litige. »*

**Article 187 :**

*« Le Président du Tribunal du Travail peut ordonner l'exécution par provision de toutes ses décisions.*
*Le Greffier notifie dans un délai de 8 jours les décisions à chacune des parties convoquées à l'audience par lettre recommandée avec avis de réception. »*

**Article 188 :**

*« Les décisions du Président du Tribunal du Travail sont susceptibles d'appel par chacune des parties intéressées dans les 15 jours de la réception de la notification prévue à l'article 187 de la présente loi. Il est porté devant le Tribunal Populaire de Région ou de Commune. »*

**50.** Si l'on se reporte au cas d'espèce, et aux pièces versées aux débats par la CNSS, on constatera qu'il n'a jamais été délivré à COMMISIMPEX par CNSS, ni mise en demeure, ni contrainte de 1981 à 2001.

**51.** La CNSS, qui ne peut s'affranchir des dispositions impératives du Code de sécurité sociale sera donc renvoyée par le juge commercial à faire établir sa créance dans le respect de la procédure expressément prévu par le Code de sécurité sociale.

**52.** Pour que le Tribunal soit complètement édifié sur le bien-fondé de la contestation de la prétendue créance de la CNSS, les concluants indiqueront que depuis 1991 COMMISIMPEX n'a plus aucune activité ni donc de salariés, sur le territoire congolais, ce qui interdit à la demanderesse au litige de lui réclamer des cotisations pour la période allant de 1991 à 2011.

**53.** Il sera ajouté, s'agissant de la période allant de 1981 à 1991, que COMMISIMPEX affirme s'être acquittée de l'intégralité des cotisations dues par elle, étant précisé que si cela n'avait pas été le cas, bien entendu mises en demeure et contraintes se seraient succédées, contraintes et mises en demeure qui, dans cette hypothèse, n'auraient pas manqué d'être produites et versées aux débats par la demanderesse au litige.

**54.** Qu'en l'état, le juge commercial se doit de constater que la créance dont se prévaut la CNSS n'est ni certaine, ni exigible et qu'il n'est pas de sa compétence de se substituer au juge social pour déterminer si cette créance existe ou non.

**55.** Dans ces conditions, le Tribunal ne pourra que rejeter la demande de la CNSS, tant d'ouverture de la liquidation que de « *cantonne[ment]* » (sic) de sa créance prétendue sur COMMISIMPEX (tant à titre d'arriérés de cotisations sociales qu'à titre de dommages-intérêts), et l'inviter à mieux se pourvoir devant le Président du Tribunal du Travail le cas échéant, seul compétent pour émettre un titre exécutoire afférent à des cotisations sociales.

2°/   <u>La CNSS ne justifie d'aucunes vaines poursuites à l'encontre de COMMISIMPEX</u>

**56.** Il est établi que seule la démonstration de vaines poursuites permet à un créancier d'assigner valablement son débiteur afin d'ouverture d'une procédure collective.

**57.** A cet égard, les juridictions gabonaises n'ont accepté d'ouvrir une procédure collective que dans la mesure où le créancier établissait que « *les poursuites en paiement* [du débiteur] *sont demeurées vaines* » (TPI Libreville, 12 mars 2001, RG n° 11/2000-2001 cité *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1176).

De la même manière, les juridictions camerounaises n'ont pu décider d'ouvrir une procédure collective que dans la mesure où « *le créancier n'a pas obtenu le paiement de ce qui est dû en dépit des poursuites vaines contre le débiteur sans domicile connu* » (TGI de Mfundi, 23 janvier 2002, jugement n°158, Sté SHO Cameroun SA c. Ste UDEC, cité *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1176).

En l'espèce, la CNSS prétend n'avoir pas perçu de cotisations sociales depuis 30 ans, mais n'est pas en mesure de faire état d'un seul appel de cotisation, d'une seule lettre de relance, d'une seule mise en demeure ou d'un seul commandement de payer demeuré infructueux !

**58.** Ce n'est pas sérieux, et le Tribunal le dira en rejetant de plus fort la demande de la CNSS.

3°/   <u>La créance alléguée à l'encontre de COMMISIMPEX est, en tout état de cause,  contestable et contestée</u>

**59.** Il est encore établi en jurisprudence que l'état de cessation des paiements ne saurait résulter d'une créance **contestée** (voir notamment en ce sens : Abidjan, 28 juillet 2000, n°2000, *Société des banques de Côte d'Ivoire c. SOFAMO* ; Dakar, chambre civile et commerciale, 18 février 2010, n°192 cités *in* OHADA, Traité et actes uniformes commentés et annotés, Juriscope 2012, p. 1176-1177).

**60.**     Or, en l'espèce, la créance alléguée par la CNSS au titre de cotisations sociales depuis août 1981 – dont la prétendue existence est portée pour la première fois à la connaissance de COMMISIMPEX est **hautement fantaisiste**.

**61.**     COMMISIMPEX n'est en effet débitrice d'aucune cotisation sociale dans la mesure où :

- Entre 1981 et 1988, elle a payé toutes les cotisations appelées par la CNSS ;

- Entre 1988 et 2011, elle était, d'abord dépourvue de tout personnel puis, à partir de 1992, mise en sommeil, et n'était donc redevable d'aucune cotisation sociale ;

- Entre 1992 et 2011, elle bénéficiait également d'une exonération conventionnelle de cotisations sociales.

a) <u>La CNSS réclame le paiement de cotisations sociales entre 1981 et 1988 qui ont déjà été payées</u>

**62.**     La CNSS prétend, sans aucune justification, que COMMISIMPEX ne se serait pas acquittée de ses cotisations sociales entre 1981 et 1988.

**63.**     Même s'il n'appartient pas à COMMISIMPEX de rapporter la preuve qu'elle s'est bien acquittée de ses cotisations (puisqu'il appartient au contraire à la CNSS de justifier, par la production des documents appropriés, qu'elle a, conformément aux articles 185 à 188 du Code de la sécurité sociale, suivi la procédure lui permettant d'obtenir un titre à l'encontre de COMMISIMPEX), et malgré la difficulté que représente pour elle d'avoir à rechercher des preuves de paiement de créances aussi anciennes,

avec la difficulté d'accès à ses archives sociales que l'on imagine dans des délais aussi brefs que ceux impartis par l'audiencement précipité de cette affaire, COMMISIMPEX a pu retrouver dans l'urgence quelques photocopies de chèques de règlement au profit de la CNPS (ancêtre de la CNSS avant 1986).

*Pièce n°7 : Chèques de règlement de cotisations sociales*

**64.**     On le voit, la créance sur laquelle la CNSS prétend pouvoir faire reposer sa demande est, là encore, éminemment contestable puisque COMMISIMPEX est en mesure d'apporter la preuve contraire qu'elle a réalisé des paiements au profit de la CNSS/CNPS lors de la période en question (1981 à 1988), qui ne sont pas même retracés dans la « *Situation de la cotisante COMMISIMPEX au 31 décembre 2011* » établie au début du mois de mars 2012 par la CNSS.

**65.**     Quant à l'affirmation de la CNSS selon laquelle COMMISIMPEX aurait compté 264 salariés en 1981, et que sa cotisation mensuelle aurait alors été de 3 915 611 FCFA, elle est tout simplement mensongère, puisqu'en 1981, la société n'avait <u>aucun</u> employé.

Elle n'a commencé à avoir quelques employés que dans le courant de l'année 1982, employés dont le nombre est resté très faible en 1983, ainsi qu'en atteste les comptes d'exploitation de COMMISIMPEX pour ces deux années (qui constatent des salaires faibles, et des cotisations CNPS corrélativement tout aussi faibles).

*Pièce n°8 : Comptes annuels COMMISIMPEX pour l'exercice 1982*
*Pièce n°9 : Comptes annuels COMMISIMPEX pour l'exercice 1983*

b) <u>La CNSS réclame le paiement de cotisations sociales entre 1988 et 2011 alors que COMMISIMPEX a licencié la quasi-totalité de ses salariés en 1988, puis été mise en sommeil en 1991</u>

**66.** La CNSS reproche également à COMMISIMPEX de ne pas s'être acquittée de ses cotisations sociales entre 1988 et 2011.

**67.** Or, le 25 avril 1988, COMMISIMPEX a licencié la quasi-totalité de son personnel.

*Pièce n°1 : Lettre adressée par COMMISIMPEX à Monsieur le Directeur régional du Travail le 4 mai 1988*

**68.** Puis, le 28 juin 1991, COMMISIMPEX a cessé toute activité et a formellement été mise en sommeil.

*Pièce n°2 : Procès-verbal d'assemblée générale mixte du 29 juin 1991*

**69.** La cessation d'activité est prévue par l'article 65 de l'Acte uniforme OHADA du 15 décembre 2010 portant sur le droit commercial général (ci-après, l'"**AUDCG**") – elle a notamment pour conséquence d'exonérer la société du paiement des cotisations sociales.

**70.** On ne voit pas, dans ces conditions, comment des cotisations sociales auraient pu naître au profit de la CNSS.

c) <u>En tout état de cause, la CNSS réclame le paiement de cotisations sociales entre 1992 et 2011 alors que la République du Congo s'est engagée à prendre en charge le paiement de ces cotisations</u>

**71.** La CNSS reproche à COMMISIMPEX de ne pas s'être acquittée de ses cotisations sociales entre 1992 et 2011.

**72.** Or, l'article 6 du protocole d'accord conclu le 14 octobre 1992 entre COMMISIMPEX et la République du Congo prévoit que :

*« Tout impôt, taxe ou droit de quelconque nature que ce soit, présent ou à venir, exigible à l'occasion de l'exécution du présent accord et des suites légalement en République du Congo sont à la charge de la République ».*

*Pièce n°3 : Protocole d'accord du 14 octobre 1992*

- 14 -

**73.** COMMISIMPEX, ayant alors cessé toute autre activité, bénéficiait ainsi d'une exonération conventionnelle de paiement des cotisations sociales.

**74.** La CNSS est donc aujourd'hui mal fondée à réclamer à COMMISIMPEX le paiement de cotisations sociales qui, si seulement elles avaient existé, auraient dû être prises en charge par la République du Congo.

**75.** Le Tribunal relèvera incidemment que l'existence des créances invoquées par la CNSS est d'autant plus douteuse que la société COMMISIMPEX n'a <u>jamais</u> fait l'objet d'une quelconque demande d'un ancien salarié qui se serait plaint de ne pas bénéficier de sa protection sociale faute de paiement des cotisations sociales par son ancien employeur…

4°/ <u>Aucun élément ne permet au demeurant de suspecter un quelconque état de cessation des paiements</u>

**76.** A l'exception de la présente demande, particulièrement fantaisiste, émanant d'un organisme public congolais agissant manifestement sur ordre de l'Etat congolais dans le cadre d'une stratégie initiée par ce dernier pour tenter de déstabiliser COMMISIMPEX, avec laquelle il est en conflit notoire depuis de longues années, voire d'en prendre le contrôle, COMMISIMPEX n'a <u>jamais</u> fait l'objet d'une quelconque demande en paiement de la part d'un quelconque créancier commercial, fiscal ou social qui n'aurait pas été honoré de ses créances.

**77.** Dans ces conditions, il est manifeste que COMMISIMPEX, qui a toujours honoré ses engagements contractuels, fiscaux et sociaux, n'est <u>pas</u> en cessation de paiements.

**78.** Consciente de ce qu'aucun grief ne peut être fait à la société COMMISILMPEX, la CNSS sollicite la mise en faillite personnelle de Monsieur Moshin Mohamed HAJAIJ sans même se préoccuper des dispositions des articles 196, 197, 198 de l'AUPC, dont il n'est pas inutile rappeler les termes :

**Article 196 :**

« *A toute époque de la procédure, la juridiction compétente prononce la faillite personnelle des personnes qui ont*
*1°-soustrait la comptabilité de leur entreprise, détourné ou dissimulé une partie de son actif ou reconnu frauduleusement des dettes qui n'existaient pas ;*
*2°- exercé une activité commerciale dans leur intérêt personnel, soit par personne interposée, soit sous couvert d'une personne morale masquant leurs agissements ;*
*3°-usé du crédit ou des biens d'une personne morale comme des leurs propres ;*
*4°-par leur dol, obtenu pour eux- même ou pour leur entreprise, un concordat annulé par la suite ;*
*5°-commis des actes de mauvaise foi ou des imprudences inexcusables ou qui ont enfreint gravement les règles et usages du commerce tels que définis par l'article 197 ci-après.*
*Sont également déclarés en faillite personnelle, les dirigeants d'une personne morale condamnés pour banqueroute simple ou frauduleuse.* »

- 15 -

**Article 197** :

 « *Sont présumés actes de mauvaise foi, imprudences inexcusables ou infractions graves aux règles et usage du commerce :*
*1°-l'exercice d'une activité commerciale ou d'une fonction de gérant administrateur, président, directeur général ou liquidateur, contrairement à une interdiction prévue par les Actes Uniformes ou par la loi de chaque Etat-partie ;*
*2°-l'absence d'une comptabilité conforme aux règles comptables et aux usages reconnus de la profession, eu égard à l'importance de l'entreprise ;*
*3°-les achats pour revendre au-dessous du cours dans l'intention de retarder la constatation de la cessation des paiements ou simple, dans la même intention, de moyens ruineux pour se procurer des fonds ;*
*4°-la souscription, pour le compte d'autrui, sans contrepartie, d'engagements jugés trop importants au moment de leur conclusion, eu égard à la situation du débiteur ou de son entreprise ;*
*5°-la poursuite abusive d'une exploitation déficitaire qui ne pouvait conduire l'entreprise qu'à la cessation des paiements.* »

**Article 198 :**

« La juridiction compétente peut prononcer la faillite personnelle des dirigeants qui :
1°-ont commis des fautes graves autres que celles visées à l'article 197 ci-dessus ou ont fait preuve d'une incompétence manifeste ;
2°-n'ont pas déclaré, dans les trente jours, la cessation des paiements de la personne morale ;
3°-n'ont pas acquitté la partie du passif social mise à leur charge. »

**79.** La CNSS ne tente même pas d'établir que le représentant légal de COMMISIMPEX aurait posé l'un quelconque des actes prévus aux dispositions légales ci-dessus rappelées.

**80.** Dans ces conditions, au vu des éléments évoqués ci-dessus, le Tribunal ne pourra que rejeter les demandes de la CNSS tendant à prononcer la liquidation judiciaire de la société COMMISIMPEX.

**C**     <u>*A titre reconventionnel, Sur le caractère abusif de la présente procédure*</u>

**81.** La vacuité du dossier présenté par la CNSS à l'appui d'une demande aussi grave que celle de la mise en liquidation d'une société démontre à elle seule que la présente procédure n'a été conçue que pour tenter de tromper, dans l'urgence, la religion du Tribunal de céans et extorquer un jugement de liquidation de COMMISIMPEX – dans le seul but, non pas de recouvrer une créance en réalité totalement imaginaire, mais de nuire purement et simplement à COMMISIMPEX, qui est ailleurs en litige avec l'Etat congolais.

**82.** Il est patent que le Tribunal de commerce a été en l'espèce saisi d'une procédure particulièrement abusive et vexatoire, ne serait-ce que parce qu'en toute hypothèse cette procédure a été initiée, d'une part en violation flagrante et patente des dispositions du Code de sécurité sociale, et d'autre part, avec une volonté manifeste de nuire aux défendeurs.

**83.** Dans ces conditions, et compte tenu des mesures extrêmes réclamées par la CNSS, COMMISIMPEX est fondée à régulariser une demande reconventionnelle en paiement de la somme de 300.000.000 FRS à titre de dommages-intérêts pour procédure abusive et vexatoire.

# PAR CES MOTIFS

*Vu les articles 28 et 29 de l'AUPC,*
*Vu la requête de la CNSS en date du 26 septembre 2012,*

Il est demandé au Tribunal de commerce de Brazzaville de bien vouloir :

CONSTATER qu'il n'est pas régulièrement saisi, la citation ayant été délivrée à comparaître à une audience de référé et, par voie de conséquence, se dessaisir du dossier ;

CONSTATER que Monsieur Mohamed Moshin HAJAIJ n'est visé ni par l'ordonnance de Monsieur le Président du Tribunal de commerce du 28 septembre 2012, ni par la citation du même 28 septembre 2012 à comparaître le 2 octobre 2012 ;

DIRE ET JUGER en conséquence que Monsieur Mohamed Moshin HAJAIJ n'est pas partie au procès et ne peut en conséquence être concerné par aucune disposition du jugement à intervenir ;

A titre principal :

DECLARER irrecevables les demandes formées par la CNSS.

A titre subsidiaire :

CONSTATER l'absence de titre de la CNSS à l'encontre de COMMISIMPEX ;

CONSTATER l'incompétence absolue du Tribunal de commerce de Brazzaville pour déterminer l'existence d'une éventuelle créance de la CNSS sur COMMISIMPEX ;

SE DECLARER pareillement incompétent pour statuer sur la demande de « *cantonnement* » de la créance invoquée par CNSS et RENVOYER la CNSS à mieux se pourvoir sur ce point ;

CONSTATER le caractère contestable et contesté de la créance de la CNSS à l'encontre de COMMISIMPEX ;

CONSTATER par suite l'absence de cessation des paiements de COMMISIMPEX ;

En conséquence,

DIRE n'y avoir lieu à prononcer la liquidation de COMMISIMPEX ;

REJETER l'ensemble des demandes, fins et conclusions de la CNSS ;

RECEVOIR COMMISIMPEX en sa demande reconventionnelle ;

DIRE que la mise en cause de COMMISIMPEX par la CNSS, hasardeuse et vexatoire, revêt un caractère abusif ;

En conséquence,

CONDAMNER la CNSS à verser à COMMISIMPEX la somme de Trois Cent Millions (300 000 000) FCFA à titre de dommages-intérêts, avec exécution provisoire nonobstant appel.

CONDAMNER la CNSS aux entiers dépens de l'instance, en ce compris les frais et émoluments taxés des Avocats soussignés.

SOUS TOUTES RESERVES.-/-
BRAZZAVILLE, LE 8 OCTOBRE 2012

Cabinet
BRUDEY-ONDZIEL GNELENGA-LOCKO

Maître Gérard DEVILLERS