# Exhibit 3

Cabinet
BRUDEY- ONDZIEL GNELENGA –LOCKO
Avocats à la Cour

Maître Gérard DEVILLERS
Avocat à la Cour

*A Monsieur le Doyen des Juges d'instruction
près le Tribunal de grande instance de Brazzaville*

# PLAINTE AVEC CONSTITUTION DE PARTIE CIVILE

**La société COMMISSIONS IMPORT EXPORT (COMMISIMPEX)**
Société anonyme de droit congolais immatriculée au RCCM de Brazzaville sous le numéro RCCM CG/BZV/07 B413, dont le siège social est sis 86 avenue Foch, BP 1244, Brazzaville, République du Congo, agissant poursuites et diligences de son représentant légal en exercice

*Ayant pour avocat*

**- Le cabinet BRUDEY ONDZIEL-GNELENGA LOCKO**
Domicilié 46 avenue William Guynet, Galerie Marchande de l'Arc,
Centre-ville Brazzaville B.P. 2041

**-Maître Gérard DEVILLERS**, domicilié, Avenue de l'Indépendance,
Centre -ville Brazzaville B.P. 1211

## A L'HONNEUR DE PORTER A VOTRE CONNAISSANCE

### A. ELEMENTS DE CONTEXTE

**1.**     La société COMMISSIONS IMPORT EXPORT (COMMISIMPEX) (ci-après, "**COMMISIMPEX**"), est une société commerciale de droit congolais immatriculée au Registre du Commerce du Crédit Mobilier de Brazzaville (ci-après, le "**RCCM**") depuis 1980.

*Pièce n° 1 : Extrait RCCM de COMMISIMPEX*

**2.**     Entre 1984 et 1986, COMMISIMPEX a exécuté divers marchés de travaux publics et de fournitures de matériels pour le compte de la République du Congo, laissant subsister au bénéfice de COMMISIMPEX une créance très élevée sur l'Etat congolais.

**3.**     A partir de 1988, du fait de l'annulation du projet Etoumbi-Kunda, COMMISIMPEX a été contrainte de cesser ses activités et de procéder au licenciement de l'ensemble de son personnel.

*Pièce n° 2 : Lettre adressée par COMMISIMPEX à Monsieur le Directeur régional du Travail le 4 mai 1988*

**4.**     Lors de leur assemblée générale en date du 28 juin 1991, les actionnaires de COMMISIMPEX ont pris acte de cette cessation d'activités et décidé la mise en sommeil provisoire de la société.

*Pièce n° 3 : Procès-verbal d'assemblée générale mixte du 28 juin 1991*

**5.**     Le 14 octobre 1992, COMMISIMPEX et la République du Congo ont conclu un premier protocole d'accord aux fins de règlement par la République du Congo d'une fraction de sa dette à l'égard de COMMISIMPEX.

*Pièce n° 4 : Protocole d'accord du 14 octobre 1992*

**6.**     Ce protocole n'ayant pas été exécuté par la République du Congo, COMMISIMPEX a introduit, le 13 mars 1998, une première demande d'arbitrage auprès de la Chambre de commerce internationale qui a abouti, le 3 décembre 2000, à la condamnation de la République du Congo au paiement de diverses sommes d'argent (dont le montant actualisé à fin août 2012 avoisine **192 000 000 €**, ou **126 000 000 0000 FCFA**).

*Pièce n° 5 : Sentence CCI en date du 3 décembre 2000*

**7.**     Cette sentence arbitrale a été reconnue exécutoire par la Cour suprême du Congo par un arrêt du 27 juin 2003 aux termes duquel elle a « *renvo[yé] les parties à l'exécution de cette sentence arbitrale.* »

*Pièce n° 6 : Arrêt de la Cour suprême du Congo, Chambre commerciale du 27 juin 2003*

Elle n'a pourtant jamais été exécutée.

**8.**     Le 23 août 2003, COMMISIMPEX et la République du Congo ont conclu un nouveau protocole d'accord portant sur la dette globale de la République du Congo envers COMMISIMPEX.

*Pièce n° 7 : Protocole d'accord du 23 août 2003*

**9.**     Le second protocole n'ayant pas davantage été exécuté, COMMISIMPEX a alors été contrainte d'introduire, le 17 avril 2009, une seconde demande d'arbitrage auprès de la CCI, portant cette fois sur les sommes visées au protocole de 2003 qui n'étaient pas comprises dans la sentence du 3 décembre 2000.

Le tribunal arbitral saisi de cette demande doit rendre sa sentence très prochainement.

**10.**     Alors que COMMISIMPEX a pour ainsi dire cessé ses activités au Congo depuis 1991, soit il y a plus de vingt ans et que le tribunal arbitral, à nouveau saisi dans le litige qui continue à l'opposer à l'Etat congolais, est sur le point de rendre sa sentence, la CAISSE NATIONALE DE SECURITE SOCIALE (ci-après, la "**CNSS**"), administration publique dépendant de l'Etat congolais, a soudainement imaginé, le 26 septembre 2012, saisir le Tribunal de commerce de Brazzaville d'une « *requête aux fins de liquidation des biens et faillite personnelle d'un dirigeant* » !

*Pièce n° 8 : Requête aux fins de liquidation présentée par la CNSS le 26 septembre 2012*

### B. F<small>AITS JUSTIFIANT LA PRESENTE PLAINTE</small>

**11.**     Dans le cadre de cette procédure, la CNSS reproche principalement à COMMISIMPEX de ne pas avoir payé ses cotisations sociales depuis le 1er août 1981 et demande ainsi au Tribunal de :

« *Constater, dire et juger que la société COMMISIMPEX IMPORT EXPORT dite COMMISIMPEX SA a cessé de payer ses cotisations sociales depuis Août 1981, date de sa dernière déclaration* […] ».

*Pièce n° 8 : Requête aux fins de liquidation présentée par la CNSS le 26 septembre 2012*

**12.**     Au soutien de cette prétention, la CNSS ne produit qu'<u>un seul et unique</u> document intitulé « *Situation cotisante de la société COMMISIMPEX au 31 décembre 2011* » établi par « *la Direction du Recouvrement et du Contentieux de la CNSS* » – donc par elle-même – en date du 13 mars 2012.

*Pièce n° 9 : Bordereau de pièces joint à la Requête aux fins de liquidation de la CNSS du 26 sept. 2012*

**13.**     Aux termes de ce document, la CNSS indique d'abord qu'au 1er août 1981 :

*« Les effectifs de la société COMMISIMPEX s'élèvent à 264 salariés déclarés ».*

*Pièce n° 10 : Document produit par la CNSS dans le cadre de la procédure de liquidation de COMMISIMPEX*

**14.** Cette affirmation est déjà, pour le moins, surprenante dans la mesure où la société COMMISIMPEX n'a commencé à avoir des employés que dans le courant de l'année 1982, et encore, en très faible nombre, ainsi qu'en attestent les comptes d'exploitation de COMMISIMPEX pour 1982 et 1983…

*Pièce n° 11 : Comptes annuels COMMISIMPEX pour les exercices 1982 et 1983*

**15.** Mais il y a mieux. La CNSS prétend ainsi ensuite que depuis 1981 :

*« Les cotisations sociales n'ont jamais été versées à la Caisse ».*

*Pièce n° 10 : Document produit par la CNSS dans le cadre de la procédure de liquidation de COMMISIMPEX*

**16.** Cette affirmation est encore plus étonnante car, en dépit du temps pourtant des plus réduits imparti par le Tribunal à COMMISIMPEX pour présenter sa défense – quelques jours seulement – en procédant aux recherches nécessaires dans des archives vieilles d'une trentaine d'années, COMMISIMPEX a pourtant retrouvé quelques photocopies de chèques de règlement au profit de la CNPS (ancêtre de la CNSS jusqu'en 1986), ainsi que des bordereaux de versement et des bordereaux de paiement concernant la période 1989 - 1991.

*Pièce n° 12 : Chèques de règlement de cotisations sociales pour la période de 1981 à 1986*
*Pièce n° 13 : Bordereaux de versement des cotisations sociales pour la période de 1989 et 1991*
*Pièce n° 14 : Bordereaux de paiement des cotisations sociales pour 1990*

**17.** Poursuivant ses "erreurs", la CNSS expose encore que :

*« Aucun élément pertinent ne permet de réviser* [le montant de la cotisation de COMMISIMPEX depuis 1981]. »

*Pièce n° 10 : Document produit par la CNSS dans le cadre de la procédure de liquidation de COMMISIMPEX*

**18.** Or, il est de notoriété publique que depuis 1988, COMMISIMPEX a cessé toutes ses activités et a dû procéder au licenciement de l'ensemble de son personnel.

*Pièce n° 2 : Lettre adressée par COMMISIMPEX à Monsieur le Directeur régional du Travail le 4 mai 1988*

Lors de leur assemblée générale en date du 28 juin 1991, les actionnaires de COMMISIMPEX ont d'ailleurs pris acte de cette cessation d'activité et décidé la mise en sommeil provisoire de la société.

*Pièce n° 3 : Procès-verbal d'assemblée générale mixte du 28 juin 1991*

**19.** Il résulte de ce qui précède que le document établi par la CNSS le 13 mars 2012, qui constitue le seul et unique document produit par la CNSS au soutien de son argumentation (aux termes de laquelle COMMISIMPEX n'aurait acquitté aucune cotisation sociale depuis 1981) dans le cadre de la procédure aux fins de liquidation de la société COMMISIMPEX actuellement pendante devant le Tribunal de commerce de Brazzaville, contient des affirmations et des éléments qui sont si grossièrement contraires à la réalité qu'il est permis de croire qu'elles ont un caractère frauduleux, dont ses auteurs ont nécessairement conscience.

### C. QUALIFICATIONS PENALES SUSCEPTIBLES D'ETRE RETENUES

#### 1. Faux et usage

**20.** Le **faux** peut se définir comme toute altération frauduleuse de la vérité de nature à causer un préjudice et accomplie par quelque moyen que ce soit, dans un écrit ou tout autre support d'expression de la pensée et qui a pour objet ou qui peut avoir pour effet d'établir la preuve d'un droit ou d'un fait ayant des conséquences juridiques.

L'**usage** de faux est le fait de se prévaloir d'une telle falsification.

**21.** Conformément à la jurisprudence constante de la Cour de cassation française rendue sous l'empire de l'ancien Code pénal français (dont les dispositions étaient identiques au Code pénal congolais), les infractions de faux et d'usage de faux peuvent notamment être constituées en cas de :

> « *fabrication d'un document pour servir de preuve et sa production, même sous forme de photocopie, au cours d'une instance civile, lorsque le document ainsi versé aux débats est, comme il résulte des constatations des juges, de nature à avoir valeur probatoire et à entraîner des effets juridiques* » (Cass. Crim. 16 novembre 1995, n° 94-84725).

**22.** Elles peuvent également être constituées, même en l'absence de fabrication matérielle d'un document : on parle alors de « *faux intellectuel* ».

Les faux intellectuels peuvent notamment être constitués par le seul fait de « *porter dans ses écritures des mentions inexactes* » (Cass. Crim. 14 mai 1990, n° 89-84807) ou de produire des factures qui ne sont pas dues par le débiteur (Cass. Crim. 19 septembre 1995, n° 94-85353).

**23.** En l'espèce, les faits exposés ci-dessus sont susceptibles d'être qualifiés de faux ou d'usage de faux en application des articles 145 et suivants du Code pénal.

**24.** Selon la qualité de celui ou de ceux qui sont les auteurs ou complices du faux et la nature dudit faux, il s'agira d'un faux

- **en écritures publiques** puni de la réclusion criminelle à perpétuité, l'usage étant puni de la réclusion à temps de 10 à 20 ans (article 148 du Code pénal), s'il a été commis

par un « *fonctionnaire ou officier public qui, dans l'exercice de ses fonctions, aura commis un faux […] par altération des actes, écritures ou signatures* » (article 145 du Code pénal) et qui « *en rédigeant des actes de son ministère, en aura frauduleusement dénaturé la substance ou les circonstances […] en constatant comme vrais des faits faux […]* » (article 146 du Code pénal) ;

- **en écritures privées** puni d'un emprisonnement de 1 à 5 ans, l'usage étant pareillement puni (article 151 du Code pénal) s'il a été commis par toute autre personne qu'un fonctionnaire ou un officier public, « *par contrefaçon ou altération d'écritures ou de signatures, […] par fabrication de conventions, dispositions, obligations ou décharges, ou par leur insertion après coup dans ces actes, [ou] par addition ou altération de clauses, de déclarations ou de faits que ces actes avaient pour objet de recevoir et de constater* » (articles 147 et 150 du Code pénal).

### 2. Escroquerie

**25.** Aux termes de l'article 405 du Code pénal, constitue une escroquerie le fait pour

« *Quiconque* [d']*employ*[er] *des manœuvres frauduleuses pour persuader l'existence […] d'un crédit imaginaire* [et se faire] *remettre ou délivrer des fonds, des meubles ou des obligations, dispositions, billets, promesses, quittances ou décharges* ».

**26.** Faisant application de ce texte, la Cour de cassation française considère avec constance que la production en justice d'un document frauduleux peut constituer une escroquerie indépendamment de la faculté laissée au juge civil de déterminer le sens exact et la valeur probante des pièces qui sont soumises à son examen.

Tel est notamment le cas lorsqu'une partie présente en justice « *des documents mensongers forgés par lui ou sous sa direction et qui, destinés à tromper la religion du juge, sont susceptibles, si la machination n'est pas déjouée, de faire condamner son adversaire à lui payer des sommes qui ne sont pas dues* » (Cass. Crim. 14 mars 1972, n° 71-91077 ; voir également Cass. Crim, 22 mars 1973, n° 72-90523 ; Cass. Crim, 16 mai 1979, n° 78-92162).

Tel est encore le cas de « *l'action en justice exercée de mauvaise foi, étayée par la production de documents mensongers, dans le but de surprendre la religion du juge* » (Cass. Crim. 24 septembre 1996, n° 94-84528).

**27.** Dans ces conditions, les faits exposés ci-dessus sont également susceptibles d'être qualifiés d'escroquerie, ou à tout le moins, dans l'immédiat, de tentative d'escroquerie.

28. L'article 70 du Code de procédure pénale dispose que :

« Toute personne qui se prétend lésée par un crime ou un délit ou une contravention peut, en portant plainte, se constituer partie civile devant le magistrat instructeur ».

29. Au vu des faits rapportés ci-dessus, la société COMMISIMPEX a l'honneur de déposer entre vos mains, Monsieur le Doyen des Juges d'instruction du Tribunal de grande instance de Brazzaville, une plainte avec constitution de partie civile contre personne non dénommée pour les infractions de faux, usage de faux, escroquerie et tentative, prévues et réprimées par les articles 145 et suivants, 363 et 405 du Code pénal.

Fait à Brazzaville, le 22 octobre 2012

COMMISIMPEX
Représentée par M. Moshen HOJEIJ, président

DEVILLERS GERARD
Avocat à la Cour
BP 1211 BRAZZAVILLE

BRUDEY- ONDZIEL GUELENGA- LOCKO
Avocats
B.P. 2041 - Tel. 81.34.42
E-mail: brudeyondziel_locko_avocats@yahoo.fr
BRAZZAVILLE REP. DU CONGO

## PIECES COMMUNIQUES AU SOUTIEN DE LA PRESENTE
## PLAINTE AVEC CONSTITUTION DE PARTIE CIVILE

Pièce n° 1 –    Extrait RCCM de COMMISIMPEX

Pièce n° 2 –    Lettre adressée par COMMISIMPEX à Monsieur le Directeur régional du Travail le 4 mai 1988

Pièce n° 3 –    Procès-verbal d'assemblée générale mixte du 28 juin 1991

Pièce n° 4 –    Protocole d'accord du 14 octobre 1992

Pièce n° 5 –    Sentence CCI en date du 3 décembre 2000

Pièce n° 6 –    Arrêt de la Cour suprême du Congo, Chambre commerciale du 27 juin 2003

Pièce n° 7 –    Protocole d'accord du 23 août 2003

Pièce n° 8 –    Requête aux fins de liquidation présentée par la CNSS le 26 septembre 2012

Pièce n° 9 –    Bordereau de pièces joint à la Requête aux fins de liquidation présentée par la CNSS le 26 septembre 2012

Pièce n° 10 –   Document produit par la CNSS dans le cadre de la procédure de liquidation de COMMISIMPEX

Pièce n° 11 –   Comptes annuels COMMISIMPEX pour les exercices 1982 et 1983

Pièce n° 12 –   Chèques de règlement de cotisations sociales pour la période de 1981 à 1986

Pièce n° 13 –   Bordereaux de versement des cotisations sociales pour la période de 1989 et 1991

Pièce n° 14 –   Bordereaux de paiement des cotisations sociales pour 1990

_____