# Exhibit 8



# COMMISIMPEX S.A

*CG/BZV/O7 B 413, Siege Social 86, Avenue Foch, Brazzaville*

Le 10 juillet 2014

Direction Générale des Impôts et des Douanes
BP 180
Brazzaville
République du Congo

**Par DHL**

A l'attention de Monsieur le Directeur de la Direction Générale des Impôts

Objet : Réclamation contentieuse
      Suite à la mise en recouvrement en date du 18 avril 2014
      Relative au redressement notifié au titre des exercices 2010, 2011 et 2012

Référence : n°403/MFBPP/DGT/RPI-B

Monsieur Le Directeur,

Nous faisons suite à l'avis de mise en recouvrement n°403/MFBPP/DGT/RPI-B en date du 18 avril 2014 par lequel la Direction Générale du Trésor a invité la société Commisimpex (la « Société ») à régler la somme de 883.985.785.208 FCFA à la suite de la procédure de taxation d'office qui est conduite à son encontre au titre des exercices 2010, 2011 et 2012.

Conformément aux articles 423 et suivants du Code général des impôts, « *Tout contribuable qui se croit imposé à tort, ou surtaxé, peut présenter une demande écrite […]. La réclamation doit être adressée à la DGI […]. La réclamation doit parvenir à la DGI dans les trois mois à compter du jour où le contribuable a eu connaissance de l'existence de son imposition.* »

1

L'avis de mise en recouvrement reçu par la Société correspond à un rappel d'imposition totalement infondé que la Société ne peut pas accepter. La Société vous adresse en conséquence une réclamation en vue d'obtenir la décharge intégrale de l'imposition qui a été mise en recouvrement à tort par l'avis susvisé.

A l'appui de sa réclamation, la Société réitère les commentaires qu'elle a adressés dans son courrier du 31 mars 2014 auxquels l'administration n'a pas répondu (2) et répond aux nouveaux points soulevés par l'administration dans son courrier en date du 25 avril 2014 (1).

### 1. Réponse aux commentaires de l'administration dans son courrier du 25 mars 2014

1.1. Sur la procédure de liquidation judiciaire

La Société prend bonne note de ce que Monsieur Mohsen Hajaij, en qualité de Directeur Général de la Société, reste l'interlocuteur de vos services.

Elle rappelle également que la prétendue mise en liquidation judiciaire qui a été mise en œuvre à son encontre est sans fondement, arbitraire et frauduleuse. Dans ce contexte, la démarche de l'administration consistant à informer le prétendu syndic liquidateur des actions entreprises à l'encontre de la Société et de lui demander des informations est inappropriée.

1.2. Sur le caractère inéquitable et non-contradictoire de la procédure de redressement

La Société a formulé des réserves sur l'application des dispositions de l'article 390 bis C du CGI qui prévoit que le contribuable « *a la faculté de se faire assister par un conseil de son choix pour discuter cette proposition ou pour y répondre* ».

En soutenant que l'avis de vérification de comptabilité a expressément mentionné la faculté dont dispose la Société de se faire assister par les conseils de son choix, l'administration ne répond pas à la critique formulée par la Société selon laquelle l'administration n'a pas permis à la Société de présenter ses observations dans le cadre d'un débat équitable et contradictoire.

1.2.1. En premier lieu, la Société a été convoquée la 15 janvier 2014 à une réunion le 16 janvier 2014 à 12h afin de présenter les pièces qui lui étaient demandées et être en mesure de présenter ses commentaires.

Bien que la convocation ait été adressée sans respecter le moindre délai de prévenance, la Société s'est organisée pour qu'une délégation soit présente le 16 janvier 2014 à 12h au siège de la Société, 86 avenue Foch à Brazzaville, comme elle y avait été invitée.

La Société s'étonne que l'administration prétende que l'inspecteur se soit présenté et ait trouvé portes closes dans la mesure où Messieurs Rida et Zein Hojeij ainsi que le conseil financier étaient sur place toute la journée.

Par courrier en date du 17 janvier 2014, la Société a constaté votre absence et vous a proposé de reprendre date pour que cette réunion de vérification puisse se tenir à une date

2

ultérieure. Cette proposition est restée sans retour de votre part. Vous prétendez que le silence de vos services ne serait pas dû à une faute ou négligence de votre part mais s'expliquerait par le fait que le courrier en date du 17 janvier 2014 ne vous serait parvenu que le 15 avril 2014. Vous reprochez à la Société de ne pas avoir pris toutes les précautions pour assurer la bonne remise du courrier.

Or, comme pour les échanges précédents, le courrier a été adressé par DHL. La lettre de transport correspondante de DHL attestant de l'expédition le 20 janvier 2014 est jointe à la réclamation (pièce jointe n°1) et prouve que le courrier a été adressé dès que la Société a constaté que la réunion ne s'était pas tenue. La Société ne peut pas être tenue responsable du délai d'acheminement de ce courrier par DHL.

1.2.2.  En réponse à la notification de taxation d'office en date du 19 mars 2014, la Société a adressé un courrier le 31 mars 2014 à vos services pour présenter ses observations.

Vous avez transmis en annexe de votre courrier du 25 avril 2014 une copie de la lettre de mise en recouvrement n°061//MEFPPPI/DGID/DVGR/SVF en date du 7 avril 2014 par laquelle la Direction Générale des Impôts et des Domaines demande à Monsieur le Receveur Principal des Impôts de l'informer de l'état de recouvrement de la Société suite à la taxation d'office au titre des exercices 2010, 2011 et 2012 pour un montant total de 883.985.785.208 FCFA.

Cette démarche de vos services a donc été initiée sans même attendre de recevoir la réponse que la Société était en droit de vous adresser dans le délai de 30 jours à compter de la réception de la notification pour présenter ses observations conformément à l'article 390 bis A du Code général des impôts.

Cet empressement à mettre en recouvrement la taxation d'office est révélateur de l'attitude de vos services qui ne se préoccupent pas des commentaires que la Société peut présenter pour sa défense et n'envisagent en aucune manière de revoir leur position à l'aune de ces commentaires. La Société souhaite rappeler que, même dans le cadre d'une taxation d'office (si tant est que le recours à cette procédure soit justifié, ce que la Société conteste), le contribuable conserve le droit de faire ses observations, d'apporter toute preuve permettant d'ajuster le rehaussement et/ou de démontrer que le redressement est disproportionné et injustifié. Il appartient à l'administration de veiller à ce que ce principe soit respecté, ce qui n'a de toute évidence pas été le cas en l'espèce.

En poursuivant la procédure en cours sans laisser à la Société le temps de présenter ses observations, l'administration a privé la Société de ses droits de défense élémentaires.

1.2.3.  Enfin, en répondant le 25 avril 2014 au courrier de la Société « *sans aller dans le fond à l'étape actuelle de la procédure de la taxation d'office* » et sans répondre à aucun des arguments énoncés par la Société pour contester cette taxation infondée, vos services ont

3

une fois encore démontré qu'ils cherchaient à priver la Société de toute possibilité de se défendre dans la procédure initiée à son encontre.

Dans ce contexte, la défaillance de vos services s'apparente à une démarche d'obstruction entravant le bon cours de la vérification. Du fait qu'elle n'a pas été conduite de façon équitable et dans le respect des droits du contribuable, la Société demande à ce que la procédure de redressement soit déclarée nulle et que la taxation d'office soit purement et simplement abandonnée.

### 1.3. Sur la disponibilité des états comptables et financiers de la Société

La Société a participé à plusieurs contrats de travaux publics. En 1988, la Société a été contrainte de cesser ses activités opérationnelles du fait de l'annulation des projets en cours et a été mise en sommeil. Vos services ont connaissance de cette cessation d'activité et ne la conteste pas.

Vos services ont également pris pour hypothèse que la Société n'a aucun résultat fiscal, ce qui est exact puisqu'au titre des exercices vérifiés (2010, 2011 et 2012) la Société n'a eu aucune activité opérationnelle taxable.

Conformément à l'article 124 A 1) du Code général des impôts, les personnes morales sont tenues de souscrire les déclarations prévues pour l'assiette de l'impôt sur le revenu en matière de bénéfices industriels, commerciaux et artisanaux. Les articles 30 et 31 du même code prévoient que seuls les contribuables dont le chiffre d'affaires est supérieur ou égal à 100.000.000 FCFA sont tenus de transmettre le bilan, le compte de résultat, les états financiers et les annexes ainsi qu'une déclaration du montant de leur résultat taxable.

A contrario, dès lors que la Société n'a aucun chiffre d'affaires au titre des exercices contrôlés, elle n'est pas tenue aux obligations déclaratives susvisées auprès du service des impôts dont elle dépend.

La Société a toutefois continué à établir ses comptes annuels qui ont été certifiés par son commissaire aux comptes en République du Congo. Elle a également continué à fonctionner régulièrement avec des délibérations du conseil d'administration et la tenue d'assemblée d'actionnaires conformément aux statuts de la Société.

La Société est donc en règle au regard de ses obligations déclaratives pour une société en sommeil.

### 1.4. Sur l'avis complémentaire de vérification de comptabilité (inopinée)

La Société a été informée par « *avis complémentaire de vérification de comptabilité (inopinée)* » en date du 15 janvier 2014 de la venue de Monsieur Richard Pouncha-Ebouangoy, inspecteur vérificateur, « *en vue de vérifier les exercices comptables non prescrits  et ce, en exécution de la note de service n°0829/MFBPP/DGIP du 6 août 2013* ».

4

Ce document renvoie expressément à l'avis de vérification initial qui avait été adressé à la Société en août 2013 et qui couvrait les exercices clos au 31 décembre 2010, 2011 et 2012. Ce document ne fait aucune mention de l'exercice clos au 31 décembre 2013.

De plus, les informations relatives à un exercice clos au 31 décembre peuvent être adressées à l'inspecteur divisionnaire jusqu'au 30 avril de l'année suivante conformément à l'article 80 du Code général des impôts.

Prétendre que « *l'avis complémentaire du 15 janvier 2014 vise exclusivement l'exercice 2013* » ne fait pas de sens dans la mesure où les états financiers et les déclarations fiscales n'ont pas à être fournies à cette date. Il s'agit nécessairement d'une erreur.

1.5.   Sur la mise en œuvre d'une taxation d'office

La Société rappelle que la procédure de taxation d'office est une procédure dérogatoire qui est prévue à titre exceptionnel lorsque des manquements « *du fait du contribuable ou de tiers* » font obstacle au contrôle fiscal (article 390 bis H du CGI).

Or, la Société a démontré qu'elle a répondu à vos courriers, s'est tenue à la disposition de vos services lorsqu'ils ont sollicité une réunion, a proposé de nouvelles dates pour fixer la réunion à la convenance de l'administration et n'a jamais cherché à faire obstruction à la procédure de vérification.

La Société maintient donc sa position selon laquelle l'évaluation d'office de ses bases d'imposition n'est pas fondée.

2.   **Sur le fond**

La société réitère les commentaires qu'elle a déjà formulés sur le caractère injustifié et excessif du redressement et du mode de calcul retenus par vos services.

2.1.   Exonération totale d'impôt octroyée à la Société

La République du Congo a accordé une exonération totale d'impôt à la Société conformément à l'article 6 du protocole d'accord n°566 signé le 14 octobre 1992. L'exonération d'impôt octroyée à la Société est formulée dans des termes très larges qui couvrent tous les revenus acquis, futurs, directs et accessoires à la créance. L'exonération a donc vocation à s'appliquer aux impôts de toute nature qui pourraient résulter du protocole de 2003 et/ou de la sentence arbitrale (notamment l'impôt sur les sociétés et l'impôt sur le revenu des valeurs mobilières) (voir pièce jointe n° 2).

Vos services doivent tenir compte des accords particuliers qui ont été octroyés à la Société et qui sont opposables à l'administration conformément à l'article du 390 bis D CGI.

5

Le redressement des bases imposables de la Société est en contradiction avec l'octroi de cette exonération d'impôt et n'a donc pas lieu d'être.

2.2.   Contestation des motifs de redressements

Vos services procèdent à un redressement d'office du bénéfice de la Société correspondant à une majoration théorique de son actif net pour un montant égal (i) à la valeur d'une propriété bâtie à Brazzaville et (ii) au montant de la créance que la Société détiendrait sur le Congo en application de la sentence arbitrale rendue le 21 janvier 2013.

Ce redressement est opéré selon des modalités similaires au titre de chaque année vérifiée en prenant pour fiction que lesdits actifs entreraient et sortiraient du bilan de la Société au cours de la même année, comme s'il y avait eu une distribution systématique d'égal montant au profit des associés ou d'un tiers.

Cette fiction procède d'une analyse erronée et nie la réalité des faits :

- La sentence arbitrale est intervenue en 2013. Si l'on suit votre raisonnement, la créance née de cette sentence ne peut être inscrite à l'actif de la Société qu'à compter de sa notification à la Société, à savoir au plus tôt, le 21 janvier 2013. Aucune écriture ne peut en revanche être portée à l'actif de la Société pour les exercices vérifiés et redressés, à savoir les exercices 2010, 2011 et 2012. De surcroît, le montant de la créance représente les activités de la Société effectuées avant 1990 dont toutes les déclarations financières et administratives y afférentes étaient en règle.

- La propriété de Mpila à Brazzaville a été acquise par la Société au début des années 1980 et a, depuis son acquisition, toujours été détenue par la Société. Contrairement à ce que vos services affirment, le bien est comptabilisé à l'actif de la Société depuis son acquisition pour son prix de revient d'origine de 534.000.000 FCFA (voir pièces jointes 3, 4 et 5: bilans et comptes de résultat des exercices 2010, 2011 et 2012). Vos services retiennent une valeur vénale de 3.000.000.000 FCFA « *tenant compte de la contexture de la propriété et de la nature de la spéculation des prix dans la zone de Mpila* ». Quand bien même, la valeur intrinsèque du bien excèderait sa valeur d'inscription au bilan, aucune réévaluation de l'actif ne peut être exigée de la Société tant que l'actif n'est pas cédé. Dès lors, la comptabilisation du bien à l'actif pour une valeur inchangée depuis son acquisition est conforme aux dispositions des articles 117 et suivants du Code général des impôts et ne constitue pas une minoration de l'actif net de la Société.

- Le redressement opéré en matière d'impôt sur les sociétés par voie de majoration de l'actif net supposerait que la Société n'ait aucun actif à son bilan à la date d'ouverture de son premier exercice non prescrit, ce qui n'est pas le cas. Tout redressement fondé sur une prétendue minoration de l'actif net n'est possible que si l'on se réfère au bilan de l'exercice précédent (ou, dans l'hypothèse d'une vérification de tous les exercices non prescrits au bilan d'ouverture de la période non prescrite). Le montant rehaussé ne peut correspondre qu'à la variation d'actif net entre la date d'ouverture et de clôture de

l'exercice vérifié. Il n'est en revanche pas possible de remettre les compteurs à zéro chaque année au seul motif que les déclarations d'une société en sommeil n'ont pas été transmises à l'administration.

- Le redressement opéré en matière d'impôt sur le revenu des valeurs mobilières supposerait que la Société ait distribué ou se soit désinvestie de l'intégralité de ses actifs avant la clôture de l'exercice, ce qui est faux et impossible. Ni la créance, ni l'actif de Mpila n'a été « distribué » ou alloué de quelque manière que ce soit à un tiers ou aux associés. Les actionnaires de la Société ont d'ailleurs constaté que « *la société n'a pas fait de bénéfices au cours de ces exercices compte tenu de sa mise en sommeil* » et n'ont décidé aucune distribution de résultat ou de réserves au titre des trois derniers exercices clos (voir pièces jointes 6 et 7: procès-verbaux du Conseil d'administration et de l'assemblée générale d'approbation des comptes des exercices 2010, 2011 et 2012). Les biens ont et sont toujours détenus par la Société. Il n'y a donc pas lieu de redresser un quelconque revenu distribué rendant exigible l'impôt sur le revenu de valeurs mobilières :

  o La propriété de Mpila n'a jamais été ni cédée, ni transférée de quelque manière que ce soit à un tiers. Le titre foncier TF 16 658 volume 318 dont vos services font état prouve que la Société est restée seule propriétaire du bien depuis son acquisition. Prétendre le contraire est une affirmation inexacte dont le seul but est de créer une base taxable fictive ;

  o Cette même remarque vaut également pour la créance de 2013 que vos services réintègrent chaque année comme s'il s'agissait d'un revenu généré puis désinvesti en intégralité au titre de chacun des exercices. Il est d'ailleurs constant que la Société est et a toujours été seule à agir pour obtenir le recouvrement de ses créances car elle est la seule créancière reconnue. Prétendre que les créances auraient été allouées à des tiers est, là encore, une affirmation inexacte dont le seul but est de créer une base taxable fictive.

Pour ces raisons, les deux motifs de redressements sont infondés dans les faits et en droit. La Société les conteste et demande à ce que vous abandonniez les différents motifs de redressement qui lui ont été notifiés et mis en recouvrement.

La société conteste également les pénalités de 50% et 100% qui lui ont été appliquées et qui sont prévues en cas de taxation d'office dès lors que le principe de cette taxation d'office n'est pas justifié.

En s'abstenant de répondre à ces arguments déjà présentés par la Société dans son courrier du 31 mars 2014, l'administration reconnait implicitement que son redressement n'est pas justifié sur le fond.

7

Enfin, la Société demande à bénéficier d'un sursis de paiement dans l'attente de la décision au fond sur le bien-fondé et la légalité du redressement.

\*   \*

\*

Plus généralement, le redressement opéré, qui est totalement infondé dans son principe et ses montants, ne procède, une fois encore, que de la stratégie mise en œuvre par la République du Congo dans le but d'échapper à ses propres obligations envers la Société, en particulier au titre des sentences arbitrales en date du 3 décembre 2000 et du 21 janvier 2013.

La démarche du Service des Vérifications de Brazzaville qui lance une vérification de comptabilité inopinée le 7 août 2013, le choix d'une taxation d'office totalement arbitraire, le montant astronomique des rappels d'impôts et pénalités notifiés à la Société sur la base d'un prétendu profit de la Société alors qu'il est de notoriété publique que la Société a cessé toute activité opérationnelle depuis près de 25 ans, la mise en recouvrement des sommes sans attendre que la Société ait présenté ses observations, s'inscrivent dans la droite ligne des autres démarches entreprises afin de chercher à faire naitre artificiellement des dettes chez la Société. La République du Congo ne cesse d'utiliser des moyens frauduleux dans le but d'échapper aux obligations financières qui lui incombent et sont dues à la Société.

La Société vous demande d'accepter la présente réclamation et d'abandonner la taxation d'office qui a été opérée.

Je vous prie d'agréer, Monsieur le Directeur, l'expression de mes salutations distinguées.

Monsieur Mohsen Hajaij

Directeur Général

Pièces jointes :

1.      Lettre de Transport de DHL expédiée le 20 janvier 2014

2.      Protocole d'accord n°566 du 14 octobre 1992

3.      Bilan et compte de résultat de l'exercice clos au 31 décembre 2010

8

4.      Bilan et compte de résultat de l'exercice clos au 31 décembre 2011

5.      Bilan et compte de résultat de l'exercice clos au 31 décembre 2012

6.      Procès-verbal du Conseil d'administration du 5 juillet 2013

7.      Procès-verbal de l'assemblée générale d'approbation des comptes des exercices clos au 31 décembre 2010, 2011 et 2012 en date du 27 juillet 2013


Copie :

Monsieur l'Inspecteur Vérificateur Richard Poungha Ebouangoy

Michael Polkinghorne / Charles Nairac / Elizabeth Oger-Gross / Emmanuelle Pontnau-Faure
White & Case LLP
19, Place Vendôme
75001 Paris, France