UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT, S.A., ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 1:13-CV-000713-RJL |
| REPUBLIC OF THE CONGO, ) | |
| ) | |
| *Respondent.* ) | |
| ) | |

## DECLARATION OF JACQUES-ALEXANDRE GENET

I, Jacques-Alexandre Genet, declare as follows:

1. I am a French-qualified lawyer (*avocat à la cour*) and a founding partner of the firm Genet Colboc Goubault, located in Paris, France. I earned two master's degrees in French (2000) and English & US (2001) business laws at the University of Paris X - Nanterre, and another master's degree at the *Institut d'Etudes Politiques - Sciences Po* (2001), where I majored in finance. I have been practicing law since 2002 and was admitted to the Paris Bar in 2004. I have represented Commissions Import Export, S.A. ("Commisimpex") in numerous enforcement actions in France pertaining to the 2000 arbitral award against the Republic of the Congo (or the "Congo") and the subsequent French judgment confirming the award. I have also been involved in dozens of similar enforcement actions against more than a dozen other foreign sovereigns, all involving the service of process upon foreign sovereigns, to which I have served, through bailiffs instructed by me, several hundreds of judicial documents or deeds over the years.

**Service of Process on the Congolese Ministry of Foreign Affairs**

2. Beginning in 2011, I initiated a series of enforcement actions on behalf of Commisimpex to enforce the French judgment confirming the 2000 arbitral award, among which

was a preliminary attachment action served upon Société Générale, a French bank. Pursuant to French law, I enlisted the services of a bailiff to serve Société Générale with the writ of attachment. Then, on my request, the same bailiff served the attachment deed on the Republic of the Congo in accordance with the French law on service on a foreign State.

3. Under articles 683 and 684 § 2 of the French Code of Civil Procedure, service on a foreign State must, absent any applicable international convention on service, be effected through diplomatic channels. A copy of this law is attached to my declaration as <u>Exhibit 1</u>.

4. Further to French law, service on a foreign State through diplomatic channels involves first sending the documents for service to the French prosecutor's office, which then sends the package to the French Ministry of Justice. The Ministry of Justice forwards the service documents to the French Ministry of Foreign Affairs, which then sends the documents via the French embassy in the foreign State to the Ministry of Foreign Affairs of the State being served. Service by this method is considered effective once it reaches the Ministry of Foreign Affairs of the foreign State.

5. To serve the deed of attachment on the Republic of the Congo pertaining to enforcement of the 2000 arbitral award, the bailiff followed the diplomatic channels and remitted the relevant documents to the French prosecutor's office. Following normal protocols, the relevant documents were ultimately hand or mail delivered to the Congolese Ministry of Foreign Affairs in Brazzaville, the capital of the Republic of the Congo.

6. The Republic of the Congo filed an opposition against the attachment before the French Enforcement Proceedings Judge (*Juge de l'exécution*), arguing, notably, that Commisimpex did not establish that service of process had been completed pursuant to the

diplomatic channels, *i.e.* delivery of the relevant documents to their Ministry of Foreign Affairs. A copy of the Congo's objection to service is attached as Exhibit 2.

7.  The Congo did not at any point contend there was a special arrangement for service between the Congo and Commisimpex or pertaining to the 2000 arbitral award. The Congo also did not contend that the relevant papers had to be delivered to Caisse Congolaise d'Amortissement (CCA) or the Congolese Ministry of Finance. The Congo *only* argued that Commisimpex did not establish that service by French diplomatic channels had been completed.

8.  On behalf of Commisimpex, I submitted documentary proof before the court demonstrating that service had been completed pursuant to the French procedures for service by diplomatic channels. The Congo then dropped its objection to service on the Ministry of Foreign Affairs and contested the attachment on other bases.

9.  Simultaneously and since that initial enforcement action, I requested bailiffs, on behalf of Commisimpex, to serve the Congo dozens of times in third-party attachment actions pertaining to enforcement of the French judgment based on the 2000 arbitral award. For each action, service of process was effected under French diplomatic channels culminating in delivery to the Congolese Ministry of Foreign Affairs. Formal service was always effected through the diplomatic channels on the Ministry of Foreign Affairs and *never* to CCA. Proofs of service are attached as Exhibit 3.

10.  The Congo appeared in court to contest several of these simultaneous or subsequent attachment proceedings, but did not object to service of process in a *single* one.

11.  I was informed by counsel from White & Case that the Congo has now asserted that a special arrangement for service with Commisimpex is found in the 1992 protocol that formed the basis for the 2000 arbitral award. I had not previously heard of any special

3

arrangement for service between the Congo and Commisimpex, and I have never been informed that service of process on the Congo was to be completed by delivering the documents to CCA. The Congo has never made a statement asserting this in any of the cases in which the bailiffs I have instructed have served the Congo through the Ministry of Foreign Affairs.

12. I have read the statement of the Congolese Minister of State, Economy, and Finance Gilbert Ondongo, who says that "[t]he responsibilities of the Ministry of Foreign Affairs do not include the monitoring of judicial proceedings of the Congo and therefore cannot be the correct address." This is not consistent with my experience. In my experience, the Congolese Ministry of Foreign Affairs always accepts service of process on behalf of the Congo. From my experience, the Ministry is fully aware of what to do with documents it receives concerning a legal proceeding involving Commisimpex, and it has had no difficulty in routing the service documents to the appropriate person or agency.

**Status of Congolese Order Appointing the Liquidator-Trustees**

13. I am familiar with the Congo's efforts to appoint liquidators to take over Commisimpex from its legal owners and thereby thwart collections on the judgments and awards against the Congo.

14. In one of the recent attachment actions in France (in which Commisimpex was attempting to attach €191 million from the French Development Agency), the Congo attempted to join the alleged liquidator-trustees to the proceedings by serving them when it filed its opposition to the attachment. The liquidators, however, did not claim an injury related to the proceedings or to the 2000 arbitral award, and they did not make any requests of the court, although they asserted that the Congo's argumentation in opposition to the attachment was

legitimate. Neither the Congo nor the liquidators sought formal judicial recognition by the French court of the Congolese judgment appointing the liquidators.

15. Commisimpex objected to the inclusion of the liquidators in the proceedings, arguing that the Congolese liquidation judgment should not be recognized in France because, among other reasons, Commisimpex's rights were violated during the Congolese proceedings and the Congolese proceedings were fraudulent. Commisimpex presented evidence to show that the alleged basis for appointing the liquidators – a purported failure by Commisimpex to make payments to the Congolese Social Security Administration since 1981 – was fraudulent and that the liquidation proceedings had taken place only weeks before an international arbitral tribunal was about to rule on an ongoing dispute between Commisimpex and the Congo and while enforcement proceedings were pending. A copy of Commisimpex's submission is attached as <u>Exhibit 4</u>.

16. The Congo defended the presence of the liquidators while also stating that the liquidators' presence did not invalidate the presence of "Commisimpex itself." A copy of the Republic of the Congo's submission is attached as <u>Exhibit 5</u>.

17. Ultimately, the French court noted that the Congo, the liquidators, and Commisimpex all agreed that the liquidators did not have the power to represent Commisimpex in France and that Commisimpex continued to have the power to represent itself. The French court decision is attached as <u>Exhibit 6</u>.

18. The Congolese orders appointing the liquidators have never been enforced in France, and neither the Congo nor the liquidators has claimed that the orders are enforceable in French courts.

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of November 2014 in Paris, France.

Jacques-Alexandre Genet