# Exhibit 5

A Madame le Juge de l'exécution
du Tribunal de grande instance de Paris
-------------------------------------------------

Audience du 28 février 2013, à 9h
RG n° 13/80130 & 12/84003

## CONCLUSIONS ADDITIONNELLES

POUR:

**La REPUBLIQUE DU CONGO**, représentée par son Ministère de l'Economie, des Finances et du Budget, domicilié à Brazzaville – République du Congo

Ayant pour Avocats :
Maître Jean-Yves Garaud
Avocat au Barreau de Paris
Cleary Gottlieb Steen & Hamilton LLP
12 rue de Tilsitt – 75008 Paris
Tél. : 01 40 74 68 00 – Fax. : 01 40 74 68 88      J 21
**Chez qui elle a élu domicile pour la présente procédure**

**DEMANDEUR**

CONTRE:

**La société COMMISSIONS IMPORT EXPORT (COMMISIMPEX)**, société anonyme de droit congolais immatriculée au RCCM de Brazzaville sous le numéro RCCM CG/BZV/07 B413, dont le siège social est sis 86 avenue Foch, BP 1244, Brazzaville, République du Congo, prise en la personne de son représentant légal,

Ayant pour Avocats :
Maître Jacques-Alexandre Genet
Avocat au Barreau de Paris
SELAS Genet Colboc Goubault
92, rue Jouffroy d'Abbans – 75017 Paris
Tel. : 01 40 54 51 00 – Fax : 01 40 54 51 01      P0122
**Chez qui elle a élu domicile pour la présente procédure**

**LIQUIDATION JUDICIAIRE COMMISIMPEX** (syndic liquidateur de la société COMMISSIONS IMPORT EXPORT), ayant son siège Rue de la tours en diagonale du Palais de Justice, Immeuble Eolis ODF, Brazzaville, République du Congo,

**Monsieur Gaston MOSSA, ès qualité de Président du Syndic Liquidateur de la société COMMISSIONS IMPORT EXPORT (COMMISIMPEX)** nommé par jugement en date du 30 octobre 2012 rendu par le Tribunal de Commerce de BRAZZAVILLE (N° 173 F°145/248 REPERTOIRE N°076) demeurant au siège du Syndic Liquidateur rue de la tours en diagonale du Palais de Justice, Immeuble Eolis ODF, Brazzaville, République du Congo

**Monsieur Aiméry Patrick TATI**, **ès qualité de membre du Syndic Liquidateur de la société COMMISSIONS IMPORT EXPORT (COMMISIMPEX)** nommé par jugement en date du 30 octobre 2012 rendu par le Tribunal de Commerce de BRAZZAVILLE (N° 173 F°145/248 REPERTOIRE N°076) demeurant au siège du Syndic Liquidateur, rue de la tours en diagonale du Palais de Justice, Immeuble Eolis ODF, Brazzaville, République du Congo

**Monsieur Emile NZONDO, ès qualité de membre du Syndic Liquidateur de la société COMMISSIONS IMPORT EXPORT (COMMISIMPEX**) nommé par jugement en date du 30 octobre 2012 rendu par le Tribunal de Commerce de BRAZZAVILLE (N° 173 F°145/248 REPERTOIRE N°076) demeurant au siège du Syndic Liquidateur, rue de la tours en diagonale du Palais de Justice, Immeuble Eolis ODF, Brazzaville, République du Congo

Ayant tous pour Avocats :
Maître François de Kerversau
Avocat au Barreau de Paris
Gramond – Kerversau, Société d'avocats, SELARL
12 rue du Quatre Septembre – 75002 Paris
Tel. : 01 45 55 90 45 – Fax : 01 45 55 94 04          P16

**L'Agence Française de Développement**, établissement public de l'Etat à caractère industriel et commercial, immatriculé au RCS de Paris sous le numéro 775 665 599, dont le siège est sis 5 rue Roland-Barthes 75598 Paris Cedex 12, prise en la personne de son représentant légal,

Ayant pour Avocats :
Maître Dominique Mondoloni
Avocat au Barreau de Paris
Willkie Farr & Gallagher LLP
21-23 rue de la Ville l'Evêque – 75008 Paris
Tel. : 01 53 43 45 00          J003

**PLAISE AU JUGE DE L'EXECUTION**

### I. PROCEDURE

1.  Par assignation du 28 novembre 2012 visant Commisimpex, l'AFD et la « liquidation judiciaire Commisimpex (syndic liquidateur de la société Commissions Import Export) », la République du Congo a contesté la saisie pratiquée à son préjudice par Commisimpex entre les mains de l'AFD le 28 août 2012 et a demandé qu'il en soit donné mainlevée. Par acte du 30 novembre 2012, l'AFD a également assigné Commisimpex afin de demander la mainlevée de la saisie.

2.  Commisimpex a répondu par conclusions du 29 janvier 2013, sans pour autant relever la moindre irrégularité de l'assignation à l'égard du syndic liquidateur.

3.  L'AFD a, quant à elle, communiqué dans la procédure initiée par la République du Congo des conclusions reprenant les termes de son assignation en mainlevée.

4.  Lors de l'audience du 31 janvier 2013, les liquidateurs de Commisimpex étaient représentés par leur avocat qui a fait état du jugement de liquidation prononcé par le Tribunal de commerce de Brazzaville le 30 octobre 2012.

5.  Commisimpex a alors sollicité un renvoi afin de prendre position sur l'assignation de l'AFD, qu'elle prétendait ne pas avoir reçue, ainsi que sur le jugement congolais de liquidation, qu'elle prétendait découvrir alors qu'il lui est connu depuis son prononcé puisqu'elle en a fait appel (voir le jugement et la déclaration d'appel du même jour : **Pièce Commisimpex n° 48**) et qu'elle a fait état de ce jugement le jour même lors de l'arbitrage dès le mois de novembre 2012[1]. A cette audience, l'affaire a été renvoyée au 28 février 2013 et il a été enjoint à Commisimpex de conclure pour le 14 février 2013.

6.  Commisimpex a communiqué ses conclusions n° 2 et de nouvelles pièces le 16 février 2013 dans la procédure initiée par la République du Congo (RG n° 13/80130) et dans celle initiée par l'AFD (RG n° 12/84003). Ces conclusions visent la République du Congo, l'AFD, la « liquidation judiciaire Commisimpex (syndic liquidateur de la société Commissions Import Export) » et Messieurs Gaston Mossa, Aimery Patrick Tati et Emile Nzondo, qui sont les liquidateurs de Commisimpex.

### II. DISCUSSION

7.  Commisimpex soutient dans ses conclusions n° 2 du 16 février 2013 que l'intervention des liquidateurs serait irrecevable dès lors qu'ils n'auraient pas été assignés, que leur intervention volontaire ne serait pas régulière, et que le jugement de liquidation invoqué serait inopposable en France.

8.  Dans ses nouvelles conclusions, Commisimpex forme les demandes additionnelles suivantes :

> « *Constater que MM. Gaston MOSSA, Aimery Patrick TATI et Emile NZONDO n'ont pas été assignés à comparaitre dans la présente instance ;*

---

[1]   C'est ce que rappelle la sentence arbitrale du 21 janvier 2013, n° 138 (**Pièce Commisimpex n° 49**, § 138).

> *Constater que « Liquidation judiciaire COMMISIMPEX » ne dispose pas de la personnalité juridique et qu'elle ne peut donc être représentée à la présente instance ;*
>
> *Constater que le jugement rendu par le Tribunal de commerce de Brazzaville le 30 octobre 2012 est le produit d'une fraude ;*
>
> *Constater que le jugement rendu par le Tribunal de commerce de Brazzaville le 30 octobre 2012 est contraire à l'ordre public ;*
>
> *En conséquence,*
>
> *Déclarer irrecevable les interventions volontaires de MM. Goston MOSSA, Aimery Patrick TATI et Emile NZONDO ;*
>
> *Déclarer inopposable en France le jugement rendu par le Tribunal de commerce de Brazzaville le 30 octobre 2012. »*

9. Les demandes de Commisimpex sont mal fondées et seront donc rejetées. En effet, l'argumentation de Commisimpex est inexacte et l'ensemble des éléments conduisent au contraire à admettre la présence des liquidateurs dans la présente procédure sans pour autant remettre en cause la présence de Commisimpex elle-même.

10. Comme il sera exposé :

   – l'intervention des liquidateurs est recevable et régulière (i),

   – et Madame le juge de l'exécution n'a par ailleurs pas à se prononcer sur la régularité du jugement congolais pour rendre sa décision (ii).

   – En toute hypothèse, le jugement de liquidation apparaît régulier et c'est avant tout à la Cour d'appel de Brazzaville, devant laquelle Commisimpex a formé appel de ce jugement, qu'il appartient d'en décider (iii).

11. Par les présentes conclusions additionnelles, la République du Congo entend demander le rejet des nouvelles demandes formées par Commisimpex le 16 février 2013. Par ailleurs, la République du Congo demande à Madame le juge de l'exécution de lui adjuger le bénéfice de son assignation du 28 novembre 2012.

### *(i)* *L'intervention des liquidateurs est recevable et régulière*

12. Commisimpex soutient que les liquidateurs n'auraient pas été assignés au motif que la République du Congo a visé dans son assignation la « liquidation judiciaire Commisimpex (syndic liquidateur de la société Commissions Import Export) » au lieu de viser chaque liquidateur individuellement.

13. Tout d'abord, ce supposé vice ne pourrait être invoqué que par les liquidateurs et non par Commisimpex. Or, non seulement les liquidateurs ne soulèvent pas cet argument mais ils demandent au contraire à être présents dans ces procédures.

14. De plus, la République du Congo a utilisé cette formulation dans son assignation car c'est celle qui ressort du jugement congolais de liquidation qui constitue les organes de la liquidation (**Pièce Commisimpex n°48**, p. 26) et c'est également sous ce même vocable que les liquidateurs sont intervenus dans la procédure arbitrale[2].

---

[2] Voir par exemple la lettre de M. Gaston Mossa, « Président du syndic », sur en-tête « Liquidation judiciaire Commisimpex », que Commisimpex avait communiquée dans l'arbitrage (**Pièce Commisimpex n° 80.12**).

15.  En effet, le jugement de liquidation désigne Monsieur Gaston Mossa en qualité de « Président du syndic liquidateur » de Commisimpex et Monsieur Aiméry Patrick Tati et Monsieur Emile Nzondo en qualité de « Membre du syndic liquidateur » (voir le dispositif du jugement : **Pièce Commisimpex n°48**, p. 26).

16.  A travers ce vocable empreint du droit congolais applicable à la liquidation judiciaire et dont relève la société Commisimpex incorporée en République du Congo, ce sont bien les liquidateurs qui étaient visés par l'assignation de la République du Congo.

17.  C'est d'ailleurs ce qui a été compris par l'ensemble des intervenants à l'audience du 31 janvier 2013, en particulier le représentant de Commisimpex et celui des liquidateurs. Ainsi, le conseil des liquidateurs a déclaré à l'audience qu'il *« représente les liquidateurs »* et le conseil de Commisimpex a fait mine de s'offusquer de ce que *« les liquidateurs s'en rapportent »* à justice (Feuille d'audience, **Pièce Commisimpex n° 52**).

18.  A cet égard, il n'y a rien d'étonnant à ce que les liquidateurs s'en remettent à la justice dans le cadre de cette procédure. On comprend parfaitement que tout en étant attachés à la défense des intérêts de la liquidation, ils n'entendent pas pour autant cautionner une voie d'exécution pratiquée par la société en violation du droit français – en particulier la loi interdisant toute saisie des concours de l'AFD – et qui s'inscrit dans une stratégie visant à multiplier les saisies sur des biens insaisissables et protégés de la République du Congo, tels que les avoirs diplomatiques ou les créances fiscales[3].

19.  En tout état de cause, la jurisprudence admet qu'un groupement de personnes agissant collectivement puisse être attrait en justice bien qu'il ne dispose pas de la personnalité morale. En effet, de tels groupements disposent alors d'une capacité dite « passive » leur permettant de se défendre et donc d'être attraits en justice bien qu'ils ne disposent pas de la capacité « active » leur permettant d'exercer une telle action[4].

20.  Dans la mesure où en l'espèce, conformément aux dispositions applicables[5], les liquidateurs agissent collectivement dans le cadre de la « liquidation judiciaire Commisimpex (syndic liquidateur de la société Commissions Import Export) » constituée en cette forme par le jugement de liquidation (*supra.*, n° 14), ils peuvent ainsi être assignés collectivement sous ce groupement.

21.  En toute hypothèse, Madame le Juge de l'exécution pourra constater que les liquidateurs sont intervenus volontairement aux procédures en cause lors de l'audience du 31 janvier dernier. C'est d'ailleurs ce qui est retranscrit dans la feuille d'audience où leur avocat déclare qu'il « *représente les liquidateurs* »[6].

22.  S'agissant d'une procédure orale, l'intervention des liquidateurs à l'audience est parfaitement régulière.

---

[3]  Assignation de la République du Congo, n° 28-30.

[4]  S. Guinchard (dir.), *Droit et pratiques de la procédure civile*, Dalloz Actions, éd. 2011, n°103.13 (M. Bandrac).

[5]  Art. 43 al. 2 de l'Acte Uniforme OHADA Acte uniforme portant organisation des procédures collectives d'apurement du passif du 10 avril 1998 indiquant que « *« s'il a été nommé plusieurs syndics, ils agissent collectivement »*. Le fait que le syndics agissent collectivement est d'ailleurs admis par Commisimpex qui cite elle-même cette disposition (Conclusions Commisimpex n° 2, n° 58).

[6]  Feuille d'audience (**Pièce Commisimpex n° 52**).

23. C'est à tort que Commisimpex fait mine d'ignorer l'intérêt évident des liquidateurs à intervenir pour être présents à une procédure dont l'objet est la contestation d'une saisie pratiquée par la société dont ils ont été nommés liquidateurs dans la juridiction du siège de la société en vertu d'une décision de justice, fût-elle étrangère, ne serait-ce que pour que le jugement à intervenir ait plein effet à leur égard.

24. Toutefois, la présence des liquidateurs dans la présente procédure n'implique aucunement que Madame le Juge de l'exécution se prononce sur le jugement de liquidation rendu en République du Congo et qui fait l'objet d'un appel pendant.

### *(ii) Madame le Juge de l'exécution n'a pas à se prononcer sur le jugement de liquidation rendu par les tribunaux congolais*

25. Commisimpex soutient dans ses conclusions n° 2 qu' « *il appartient au juge de céans de vérifier la régularité du jugement congolais invoqué par les liquidateurs avant de lui reconnaître l'effet demandé* » (n° 74) et que ce jugement serait contraire à l'ordre public international français (n° 79).

26. Ce raisonnement ne saurait prospérer.

27. En l'espèce, Madame le Juge de l'exécution n'a pas à se prononcer sur la régularité du jugement congolais de liquidation pour accepter dans la présente procédure la présence de Commisimpex et des liquidateurs.

28. <u>En premier lieu</u>, pour appréhender les effets en France du jugement de liquidation rendu par les tribunaux congolais, il convient de se référer aux dispositions de la Convention de coopération en matière judiciaire entre la République française et la République populaire du Congo datant du 1$^{er}$ janvier 1974 (la « Convention de coopération judiciaire ») (**Pièce Commisimpex n° 80.18**).

29. A cet égard, Commisimpex fait une citation parcellaire des conditions prévues par cette Convention de coopération judiciaire pour que les décisions congolaises soient reconnues de plein droit par les juridictions françaises.

30. En effet, avant d'envisager qu'il soit vérifié que *« les parties ont été régulièrement citées, représentées ou déclarées défaillantes »* (Convention de coopération judiciaire, art. 49, c) ou que *« la décision ne contient rien de contraire à l'ordre public de l'Etat où elle est invoquée »* (art. 49, d) comme Commisimpex y invite Madame le Juge de l'exécution, il convient tout d'abord de s'assurer que *« la décision ne peut plus, d'après la loi de l'Etat où elle a été rendue, faire l'objet d'un recours ordinaire ou d'un pourvoi en cassation »* (**Pièce Commisimpex n° 80.18**, art. 49, b).

31. Or, il n'est pas contesté que Commisimpex a fait appel du jugement de liquidation prononcé par le Tribunal de commerce de Brazzaville le 30 octobre 2012 et que cet appel est pendant devant la Cour d'appel de Brazzaville (**Pièce Commisimpex n° 48**).

32. Il ne fait donc aucun doute que le jugement de liquidation congolais ne remplit pas les conditions pour bénéficier de la reconnaissance de plein droit prévue par la Convention de coopération en matière judiciaire entre la République française et la République du Congo sans qu'il ne soit nécessaire de se prononcer sur les autres critères.

33. De ce point de vue, il ne saurait donc être question d'examiner à ce stade de la procédure la régularité du jugement congolais de liquidation.

34. <u>En second lieu</u>, il reste à s'interroger sur les effets en France du jugement de liquidation congolais, qui n'a pas fait l'objet d'exequatur et qui ne peut bénéficier de la reconnaissance de plein droit prévue par la Convention de coopération judiciaire.

35. La jurisprudence et la doctrine ne reconnaissent qu'un effet limité à un jugement de faillite étranger qui n'a pas été revêtu de l'exequatur.

36. D'une part, la jurisprudence estime en particulier qu'un jugement de faillite étranger, qui n'a pas été revêtu de l'exequatur, ne peut entraîner automatiquement le dessaisissement du débiteur sur les biens situés en France[7]. Il en résulte encore qu'un tel jugement n'entraîne pas, par lui-même, la suspension des poursuites ou l'application du régime des actes de la période suspecte[8].

37. Par conséquent, faute d'exequatur et du bénéfice de la Convention de coopération judiciaire, le jugement de liquidation prononcé par les tribunaux congolais n'est pas de nature à remettre en cause la qualité de Commisimpex à se défendre dans la présente procédure sans, là encore, qu'il n'y ait à se prononcer sur la régularité du jugement.

38. D'autre part, il n'en demeure pas moins que le jugement de faillite congolais, bien que non revêtu de l'exequatur, confère malgré tout aux liquidateurs de Commisimpex le pouvoir de représenter cette dernière devant les tribunaux français et justifie que la présente procédure soit conduite en leur présence.

39. En effet, le jugement étranger, même non revêtu de l'exequatur, fait naître un nouvel état, constitue un fait juridique et a de ce point de vue une certaine valeur, que les tribunaux français ne peuvent ignorer totalement[9].

40. La jurisprudence, en cela confortée par la doctrine, reconnaît un « effet de titre » au jugement étranger de faillite qui n'a pas été revêtu de l'exequatur[10].

41. C'est en vertu de cet effet de titre, qui n'est soumis à aucun contrôle, même incident, des juges français[11], et compte tenu du caractère spécifique et réduit de son effet, que les liquidateurs peuvent se prévaloir du jugement de liquidation congolais pour intervenir à la présente procédure.

---

[7] Cass. Civ. 1ère, 24 mars 1998, Bull. civ. 1998, I, n° 122. En ce sens, voir également H. Synvet, « Faillite », *Rép. Dalloz. Dr. Int.*, 1998, n° 75.

[8] J.-D. Bredin et Y. Loussouarn, *Droit du commerce international*, Sirey, 1969, n° 689 ; D. Bureau et H. Muir-Watt, *Droit international privé*, T.II, PUF 2ème éd., n°1089 à 1091.

[9] Cass. Com., 4 octobre 2005 (pourvoi 02-18201), Bull. civ. IV, 2005, n°189; Cass. Civ. 1ère, 11 juillet 2006 (pourvoi 01-02593), Bull. civ. I, 2006, n°376.

[10] H. Synvet, *op. cit.*, n°77 ; B. Audit, *Droit international privé*, Economica, 6e éd., n° 459 ; Y. Loussouarn, note sous Trib. civ. De la Seine, 7 mars 1957, Gaz. Pal. 1957, 2, p. 123.

[11] A cet égard, B. Audit classe l'effet de titre du jugement étranger dans la catégorie des « effets indépendants de toute régularité » (B. Audit, *op. cit.*, n° 457 et 459). Voir aussi P. Mayer et V. Heuzé, *Droit international Privé*, Montchrestien, éd. 2010, n° 452 et 454.

42. C'est ainsi que la jurisprudence estime qu'un jugement de faillite étranger constitue la preuve écrite du pouvoir du syndic qui peut s'en prévaloir en France comme d'un titre qui l'habilite à agir en justice[12].

43. Comme l'explique H. Synvet dans son étude sur la faillite internationale reflétant la jurisprudence précitée en la matière :

> « <u>*L'effet de titre reconnu au jugement étranger de faillite*</u>*, conformément aux solutions habituelles du conflit de juridictions, produit des conséquences dont l'étendue exacte n'a pas toute la précision désirable.* <u>*Ce qui est certain est que le jugement étranger fait par lui-même la preuve du mandat donné au syndic, de sorte que celui-ci peut se prévaloir en France de sa qualité par la simple production de la décision qui le nomme*</u>*. Selon la formule d'un arrêt ancien de la Cour de cassation, il s'agit simplement de constater un fait résultant de la décision étrangère, à savoir que le débiteur a été déclaré en faillite et que des mandataires ont été nommés syndics, « comme tels chargés de représenter les créanciers du failli »* […]*. Le syndic étranger a le pouvoir d'ester en justice en France. Il peut ainsi : solliciter l'exequatur du jugement étranger de faillite ; s'opposer à l'ouverture d'une faillite en France et en particulier former tierce opposition au jugement prononçant une faillite française* […] *; déclarer, dans une procédure française, les créances dont sont titulaires les membres de la masse qu'il représente* […]*. On accepte aussi, généralement, que le syndic étranger accomplisse des actes conservatoires en France, par exemple en demandant l'apposition de scellés* […] »[13].

44. Le jugement étranger constitue par conséquent un titre en vertu duquel le syndic a qualité à agir en France pour représenter la société en liquidation, indépendamment de toute vérification de la régularité du jugement étranger[14].

45. Le juge de céans ne pourra donc que reconnaître que les liquidateurs ont bien qualité à agir en représentation de la société Commisimpex en liquidation judiciaire au Congo, et ce, concurremment avec la société Commisimpex elle-même, qui en l'absence de l'application de la Convention de coopération judiciaire et d'exequatur du jugement, ne doit pas être considérée comme dessaisie *ipso facto* de ses biens ni de ses actions en France.

46. Il convient de souligner que, en l'espèce, la présence des liquidateurs dans la présente procédure, en plus de celle de la société en liquidation, ne pose aucune difficulté concrète puisque les liquidateurs n'ont pas adopté une position contraire à celle de Commisimpex.

47. La présence des liquidateurs est parfaitement justifiée. Il importe, en particulier, que la décision à intervenir sur la saisie litigieuse puisse porter tous ses effets, tant à l'égard de Commisimpex que des organes de la liquidation.

---

[12] Trib. civ. de la Seine, 7 mars 1957, *RCDIP* 1957 p. 331, note Loussouarn et *RTD Com.* 1957 p. 508 ; CA Paris, 14 décembre 1875, *Clunet* 1877.144 ; CA Paris, 20 janv. 1877, JDI 78.41 ; CA Paris, 7 mars 1878, JDI 78.606 ; CA Paris, 29 mai 1963, *Clunet*, 1964.119 obs. Sialelli ; Cass. com., 14 mai 1996, Bull. civ. IV, 1995, n°131, note M. Vasseur, *Dalloz* 1996.586.

[13] H. Synvet, *op. cit.*, n°77.

[14] Voir jurisprudence (*supra* note 12) et doctrine (*supra* notes 10, 11 et 13) précitées.

48. De plus, il n'est en rien utile ni nécessaire de se prononcer sur la régularité du jugement étranger pour que soit jugée la demande de mainlevée de la saisie litigieuse.

49. Commisimpex cherche à retarder le prononcé de la décision de Madame le Juge de l'exécution pour maintenir une saisie abusive, puisque pratiquée en violation manifeste de la loi, et extrêmement préjudiciable à la République du Congo et l'AFD puisqu'elle porte sur l'aide au développement.

50. C'est sans doute encore dans l'espoir d'obtenir des délais supplémentaires que Commisimpex a introduit le 19 février dernier, peu avant l'audience sur la saisie litigieuse, une assignation aux fins d'inopposabilité du jugement congolais devant le Président du TGI de Paris, qu'elle n'a communiquée que le 21 février à la présente procédure (**Pièces Commisimpex n° 80 et suivantes**).

51. Pour illustrer le caractère fantaisiste de cette action, on relèvera la description affabulatoire que donne Commisimpex de la présente procédure. Commisimpex n'hésite pas à faire état d'une imaginaire *« tentative d'interférence des syndics »* dans la présente procédure (**Pièce Commisimpex n° 80,** n° 49) et à prétendre que la République du Congo aurait volontairement attendu la liquidation de Commisimpex pour assigner en mainlevée de la saisie litigieuse parce qu'elle espérait *« créer une confusion et obtenir par ce biais, grâce à la complicité des syndics de Commisimpex, une mainlevée qu'elle sait avoir fort peu de chances d'obtenir sans cela, dès lors qu'elle a renoncé à son immunité d'exécution et qu'aucune insaisissabilité ne protège les créances saisies »* (**Idem,** n° 29).

52. Madame le Juge de l'exécution pourra constater que Commisimpex imagine une fraude qui n'existe pas, dans la mesure où il était légitime que la République du Congo assigne les liquidateurs – la liquidation de Commisimpex au lieu de son siège ne pouvant être ignorée pour assurer le plein effet de la décision à intervenir – et que les liquidateurs ont fait savoir qu'ils tenaient à être présents dans cette procédure qui concerne la société dont ils ont été nommés liquidateurs mais qu'ils n'ont bien évidemment pris aucune position contraire aux intérêts de la société.

53. Les prétentions de Commisimpex sur le caractère frauduleux du jugement de liquidation ne sont pas plus sérieuses.

### *(iii)   Il appartient à la Cour d'appel de Brazzaville de statuer sur sa régularité du jugement de liquidation, qui en tout état de cause a été rendu dans le respect des droits procéduraux fondamentaux de Commisimpex*

54. Commisimpex prétend, sans en justifier, que le jugement de liquidation aurait été rendu en violation de ses « droits procéduraux fondamentaux » et constituerait même une « fraude » de la République du Congo afin de s'opposer à la présence des liquidateurs à la procédure. Ces prétentions sont mal fondées pour la première et fantaisistes pour la seconde.

55. <u>A titre préalable</u>, comme il a été précédemment exposé, il n'est en l'espèce aucunement besoin de se prononcer sur la régularité internationale du jugement de liquidation pour admettre Commisimpex à la présente procédure ainsi que les liquidateurs.

56. La présente procédure devant Madame le Juge de l'exécution n'est pas le forum approprié pour le contrôle de la régularité internationale du jugement congolais de liquidation.

57.     Il appartient à Commisimpex de soumettre ses arguments tirés d'éventuelles irrégularités procédurales ou du supposé mal fondé de la décision au fond à la juridiction du second degré, en l'espèce la Cour d'appel de Brazzaville. C'est d'ailleurs ce qu'a fait Commisimpex et c'est donc bien à la Cour d'appel de Brazzaville qu'il appartient de se prononcer sur ses arguments et de confirmer ou d'infirmer le jugement de faillite.

58.     C'est ensuite à la juridiction compétente de chaque Etat de déterminer si le jugement de faillite, une fois les voies de recours épuisées, remplit les conditions nécessaires pour se voir conférer la force exécutoire dans son ordre juridique.

59.     Il n'appartient pas à Madame le Juge de l'exécution de se prononcer dans la présente procédure sur la régularité du jugement de liquidation dans la mesure où cela n'est aucunement nécessaire ni même utile pour admettre Commisimpex et les liquidateurs à la procédure et encore moins pour se prononcer sur la demande de mainlevée de la saisie.

60.     Les nouvelles demandes de Commisimpex n'ont d'autre objectif que de chercher à utiliser le juge de céans comme un juge du second degré ou un juge de la régularité d'un jugement étranger alors qu'il ne l'est pas et que ces demandes sont sans rapport avec l'objet de la présente procédure en mainlevée.

61.     <u>En tout état de cause</u>, Commisimpex n'établit aucune irrégularité du jugement de liquidation qui soit de nature à s'opposer à sa reconnaissance en France.

62.     D'une part, les droits procéduraux fondamentaux de Commisimpex ont été respectés. Contrairement à ce qu'elle prétend, Commisimpex a été valablement citée à comparaître et a été mise en mesure de présenter sa défense. Commisimpex a été représentée par deux avocats locaux réputés[15] qui étaient présents aux audiences, ont obtenu des renvois, ont eu accès aux écritures et pièces adverses, ont eux-mêmes déposé des écritures détaillées avec de nombreuses pièces au soutien de leur défense[16] qu'ils ont également soutenue oralement lors de l'audience de plaidoirie.

63.     Le contradictoire a parfaitement été respecté par le tribunal congolais qui a posé des délais de procédure raisonnables et a même accordé des délais supplémentaires à Commisimpex pour conclure.

64.     En l'espèce, le jugement étranger est motivé en fait et en droit, et Commisimpex a été en mesure de discuter l'ensemble des éléments du dossier[17]. Le simple fait que cette motivation mène à un jugement défavorable à Commisimpex ne suffit pas à rendre la décision contraire à l'ordre public.

---

[15] Cela ressort du jugement congolais de liquidation (p. 1 et 3). De plus, Commisimpex a choisi de se faire représenter par deux avocats réputés, parmi lesquels Maitre Devillers, dont Commisimpex sait parfaitement qu'il est le conseil habituel de l'Etat congolais pour ses contentieux, en particulier contre Commisimpex, ce qui confirme encore, s'il en était besoin, que la procédure de la CNSS n'a aucun rapport avec l'Etat congolais. Maître Devillers représentait l'Etat congolais contre Commisimpex devant la Cour d'appel de Brazzaville (arrêt du 18 juillet 2002) et la Cour suprême (arrêt du 27 juin 2003 : **Pièce Congo n° 8**, p. 1).

[16] Voir en particulier les conclusions de Commisimpex devant le Tribunal de commerce de Brazzaville qui visent de nombreuses pièces (**Pièce Commisimpex n° 45.3**).

[17] Le jugement congolais de liquidation est long de 27 pages.

65. La mise en liquidation judiciaire (à la suite d'une action introduite par un organisme de sécurité sociale) d'une société qui n'a plus d'activité et qui n'a, semble-t-il, plus fait de déclaration fiscale ou sociale ni déposé de compte depuis vingt ans au terme d'une procédure de 34 jours n'a rien d'irrégulier.

66. Au regard du délai, on observera que la position de Commisimpex est particulièrement contradictoire. Elle prétend que la procédure de première instance aurait été « bâclée et expéditive » au motif qu'elle aurait duré à peine plus d'un mois mais elle se plaint en même temps de ce que la Cour d'appel de Brazzaville n'a pas statué dans le mois suivant l'appel comme le prévoirait certains textes[18]. D'ailleurs, on ne voit rien d'anormal à ce que l'appel formé par Commisimpex le 30 octobre 2012 n'ait pas encore été jugé.

67. D'autre part, quant aux critiques de Commisimpex supposées justifier que le Tribunal de commerce de Brazzaville n'aurait pas respecté l'égalité des parties, aurait été partial ou aurait adopté une motivation contradictoire, force est constater que ces critiques ne portent en réalité que sur la motivation et le bienfondé de la décision.

68. Or, on rappellera qu'il n'appartient pas au juge français de réformer un jugement étranger. Comme le confirme une jurisprudence constante, dans le cadre du contrôle qu'il peut exercer pour décider de lui accorder force exécutoire, le juge français doit se limiter à un contrôle restreint, qui ne saurait en aucun cas le conduire à réviser au fond le jugement étranger[19] ou se prononcer sur son bienfondé[20]. Il en va *a fortiori* du juge de céans.

69. Les critiques de Commisimpex quant à l'appréciation des éléments du dossier par le tribunal congolais ou sur la pertinence de sa motivation relèvent en réalité de critiques au fond et n'établissent aucune violation de ses droits procéduraux fondamentaux.

70. Enfin, Commisimpex n'établit en rien le caractère frauduleux du jugement.

71. Tout d'abord, le fait que le jugement de faillite comporte ou non des irrégularités procédurales ou qu'il soit mal fondé sur le fond n'est pas de nature, en soi, à caractériser une quelconque fraude imputable à la République du Congo.

72. De plus, Commisimpex n'apporte aucune preuve ni aucun élément au soutien de sa thèse selon laquelle la procédure initiée par la Caisse Nationale de Sécurité Sociale (« CNSS ») devant les juridictions congolaises aurait été commanditée par l'Etat ni de ce que le jugement de liquidation aurait été rendu « sur commande du pouvoir exécutif ».

73. La compétence du Tribunal de commerce de Brazzaville pour se prononcer sur la mise en liquidation d'une société commerciale, quel que soit le créancier qui en fait la demande, n'est pas sérieusement contestable de même que le fait qu'un organisme de sécurité sociale puisse en faire la demande sur le fondement de ses créances de cotisations sociales.

---

[18] Conclusions Commisimpex n° 2, n° 43 et 46.

[19] L'interdiction de la révision du jugement étranger par le juge français a été initialement posée par l'arrêt Münzer (Cass. Civ. 1ère, 7 janvier 1964, Bull. civ. I, 1964, n°15) et est désormais de jurisprudence constante. Pour un exemple d'arrêt plus récent, voir : Cass. Civ. 1ère, 11 juillet 2006, Bull. civ. I, 2006, n°376.

[20] La doctrine constate également que la jurisprudence française se montre compréhensive quant aux conditions d'accueil en France des jugements étrangers de faillite dans le but de respecter, autant que faire se peut, la dimension universelle des procédures d'insolvabilité dictée par l'unité du patrimoine du débiteur. Voir : D. Bureau, Commentaire sous Cass. Com., 18 janvier 2000, *Revue critique de Droit international privé,* 89 (3), juillet-septembre 2000, pp. 442 - 458, p. 458 ; C. Henry, Commentaire sous Cass. Civ. 1ère, 28 mars 2012, n°11-10639, *JDI* n°3, Juillet 2012, 15, §7.

74. L'Etat n'est en aucune façon à l'origine de la procédure introduite à Brazzaville, de sa seule initiative, par la CNSS, qui est un organisme autonome de l'Etat. En effet, la CNSS est un établissement public à caractère social doté de la personnalité civile et de l'autonomie financière.

75. Commisimpex ne rapporte pas d'avantage de preuve de son affirmation selon laquelle l'un des documents versés par la CNSS pour justifier de sa créance serait un « faux manifeste ». A cet égard, il est évident que la plainte avec constitution de partie civile que Commisimpex a déposée la veille de l'audience sur la liquidation n'avait qu'un but dilatoire en sorte qu'il n'est pas surprenant que sa demande de sursis à statuer ait été rejetée[21].

76. Enfin, pour tenter de donner du crédit à sa thèse selon laquelle le jugement de liquidation serait frauduleux, Commisimpex se fonde sur la sentence de 2013 alors que celle-ci, loin de reconnaître le caractère prétendument frauduleux du jugement a expressément indiqué refuser de se prononcer sur la fraude et rappelé que « *la décision [de faillite] n'est pas définitive car frappée d'appel et [...] il appartiendra à la Cour d'appel de Brazzaville d'en apprécier la régularité. Le Tribunal arbitral n'a pas compétence pour ce faire* »[22].

77. Finalement, il n'est pas contesté que le jugement a été rendu au terme d'un débat contradictoire et Commisimpex n'établit aucune violation des droits de la défense de nature à constituer une violation de l'ordre public international.

78. En conséquence de quoi, il convient que, outre Commisimpex, les liquidateurs désignés par le jugement congolais de liquidation puissent être présents à la procédure et les demandes de Commisimpex seront donc rejetées.

## PAR CES MOTIFS

− Adjuger à la République du Congo l'entier bénéfice de son assignation du 28 novembre 2012 et y ajoutant ;

− Rejeter les demandes de Commisimpex ;

− Dire et juger nulle et non-avenue la saisie pratiquée le 28 août 2012 au préjudice de la République du Congo à la demande de COMMISIMPEX entre les mains de l'Agence Française de Développement ;

− En conséquence, ordonner la mainlevée de ladite saisie ;

− Condamner COMMISIMPEX à payer à la République du Congo la somme de 10.000 euros au titre de l'article 700 du CPC, ainsi qu'aux entiers dépens.

726607                                                                                                **SOUS TOUTES RESERVES**

---

[21] Le rejet du sursis à statuer est d'autant moins choquant que chacun sait que le principe en vertu duquel le pénal tient le civil en l'état ne s'applique plus de manière rigoureuse ni automatique et que le juge apprécie souverainement l'opportunité du sursis. En l'espèce, s'agissant d'une plainte déposée la veille de l'audience de plaidoirie pour faux à l'encontre d'un organisme social dans une affaire où cet organisme demande la liquidation d'une société au titre de violations du droit de la sécurité sociale et non-paiement de cotisations sociales, il n'est pas anormal que le Tribunal ait rejeté la demande de sursis, loin s'en faut (voir les Conclusions de Commisimpex aux fins de sursis à statuer : **Pièce Commisimpex n° 45.5**).

[22] Sentence du 21 janvier 2013 : **Pièce Commisimpex n° 49**, n° 221 et 222.