UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMISSIONS IMPORT EXPORT S.A.,

                    *Petitioner,*

                    v.          Civil Action No. 1:13-cv-713-RJL

REPUBLIC OF THE CONGO,

                    *Respondent.*

**REPLY DECLARATION OF MARC SUSKIN IN FURTHER SUPPORT
OF RESPONDENT'S MOTION TO VACATE AMENDED DEFAULT JUDGMENT**

I, MARC SUSKIN, make this declaration pursuant to 28 U.S.C. § 1746:

1. I am a member of the law firm of Chadbourne & Parke LLP, attorneys for Respondent Republic of the Congo ("the Congo") in the above-captioned action. As such, I am fully familiar with the facts set forth herein. I make this reply declaration in further support of the Congo's motion to vacate the amended default judgment in this action, on the basis of my personal knowledge and from my review of papers filed in proceedings referenced herein to which the Congo was a party and of publicly-filed or otherwise publicly-accessible documents.

**Convention for cooperation in judicial matters between France and the Congo**

2. Attached hereto as Exhibit 1 is a true and correct copy of the *Convention de cooperation en matière judiciare entre la République Française et la République Populaire du Congo* [Cooperation Convention on Judicial Matters between the French Republic and the People's Republic of Congo], dated January 1, 1974, with a certified English translation of Article 49 thereof. Article 49 states in relevant part:

> In civil, social, or commercial matters, the contentious and non-contentious decisions rendered by all jurisdictions having a seat in the territory of the French Republic and the territory of the Republic of the Congo are recognized forthwith in the territory of the other State if they meet the following conditions: . . . (b) *The decision is no longer subject to an ordinary appeal or appeal in cassation pursuant to the law of the State where the decision was rendered.* . . . (emphasis added).

**English Translations of Exhibits from Genet Declaration**

3. Attached hereto as Exhibit 2 is a certified English translation of the brief that was submitted by the Congo in connection with the hearing of February 28, 2013 before the Tribunal de Grande Instance de Paris which consolidated two separate actions brought by the Agence Française de Développement and the Congo (docket numbers RG No. 13/80130 and RG No. 12/84003) into a single action:

> *Agence Française de Développement and the Republic of Congo v. Commissions Import Export (Commisimpex), and Messrs. Gaston Mossa, Aiméry Patrick Tati and Emile Nzondo in their capacities as liquidation trustees of Commissions Import Export (Commisimpex)* RG No. 12/84003,

(the "2013 French Attachment Proceedings"), the French language original of which was submitted to the Court in this action as Exhibit 5 to the Declaration of Jacques-Alexandre Genet executed November 18, 2014 (Dkt. No. 31-40) ("Genet Decl."). In this brief, the Congo stated:

> 28. <u>Firstly</u>, to understand the effects in France of the liquidation judgment rendered by the Congolese courts, it is necessary to refer to the provisions of the Convention for judicial cooperation between the French Republic and the People's Republic of Congo dated January 1, 1974 (the "Convention for judicial cooperation") (**Commisimpex Exhibit No. 80.18**).
>
> \* \* \*
>
> 30. . . . it is first necessary to ensure that *"the decision is no longer subject to an ordinary appeal or appeal in cassation pursuant to the law of the State where the decision was rendered"* (emphasis in original) (**Commisimpex Exhibit No. 80.18** [Convention for judicial cooperation], Art. 49, b). (Emphasis in original.)

2

31.     Yet, it is not disputed that Commisimpex appealed the liquidation judgment rendered by the Brazzaville Commercial Court on October 30, 2012 and that this appeal is pending before the Brazzaville Court of Appeal (**Commisimpex Exhibit No. 48**).

32.     There is therefore no doubt that *the Congolese liquidation judgment does not meet the conditions to qualify for automatic recognition under the Convention for judicial cooperation between the French Republic and the Republic of Congo* without needing to rule on the other criteria.  (Emphasis added.)

33.     In this regard, reviewing the validity of the Congolese liquidation judgment at this stage of the proceedings is out of the question.

\*   \*   \*

37.     Therefore, *without meeting the conditions of exequatur* [enforcement of the liquidation judgment in France] *and without falling under the scope of the Convention for judicial cooperation*, the liquidation judgment rendered by the Congolese courts does not call into question the ability of Commisimpex to defend itself in *these present proceedings* without, again, having to rule on the validity of the judgment.  (Emphasis added.)

4.     Attached hereto as Exhibit 3 is a certified English translation of the ruling of the Tribunal de Grande Instance de Paris in the 2013 French Attachment Proceedings rendered on March 28, 2013, the French language original of which was submitted to the Court in this action as Genet Decl., Exh. 6.  This is also the ruling that is referenced in ¶¶ 3-4 of the Second Declaration of Gaston Mossa, executed December 19, 2014 ("Mossa Reply Decl.").  In this ruling, the Tribunal de Grande Instance de Paris stated:

> [The Congo's brief] added that the Magistrate Judge does not have to rule on the validity of the liquidation decision rendered by the Congolese courts, since *it is subject to an internal appeal procedure and the decision thus does not benefit from automatic recognition as provided by the agreement between France and Congo*, and that therefore it does not create rights in France, but rather constitutes a simple judicial fact allowing the designated persons to claim their ability to act in France.  (Page 4, emphasis added.)

\*   \*   \*

As such, the summoning of the trustee liquidators for COMMISIMPEX is perfectly valid and cannot be grounds for the inadmissibility of their actions as defendants in the present proceedings.  (Page 8.)

*   *   *

[T]he Republic of Congo, which issued the summons, has for its part a true and legitimate interest in requesting the presence of the trustee liquidators at the hearing.  *In the event that the liquidation judgment is confirmed and recognized as applicable in France, it is in their interest that said judgment would be made before the trustee liquidators, who would thereupon become the legal representatives of the appellant creditor* [Commisimpex].  (Page 9, emphasis added)

. . . [A]ll the parties agree on the fact that *in France* the designated trustees have no powers to represent COMMISIMPEX and that the Congolese liquidation judgment, *which has not been granted exequatur*, does not entail either the divestiture of the debtor of the assets *in France* or the suspension of litigation against him *on French territory*.  COMMISIMPEX therefore reserves its rights to act in the context of this procedure and to enter a defense, a fact that is not disputed by any party.  (Page 9, emphasis added.)

Conversely, it is also certain that a foreign judgment, even one which has been appealed, constitutes a legal fact that the present jurisdiction may not ignore.  This judgment has a probative force concerning in particular the existence of the authorization given to the foreign trustee to undertake certain protective measures or the interest of the latter to be present at a procedure involving the company in dispute.  (Page 9.)

Under these circumstances, it is worth noting that the issue of the validity of the initial judgment in the liquidation procedure has had no effect on the motion to dismiss.  Neither has the judgment been invoked as a defining element in resolving the lawsuit.  Indeed, on the one hand the trustee liquidators were properly summoned.  On the other hand, the capacity and competence of COMMISIMPEX and its legal representatives to enter a plea as attaching creditors has not been disputed since the validity of the attachment preceding the Congolese judgment is not disputed on this point.  However, *the judge cannot issue an incidental ruling on the validity of a foreign judgment other than when this measure or litigation has a direct effect on the issue brought before him.  The Magistrate Judge does not therefore have to rule on the validity of the liquidation judgment, as has been requested.*  (Page 9, emphasis added.)

*   *   *

<u>**FOR THESE REASONS**</u>

**THE MAGISTRATE JUDGE . . .**

**States** that there are no grounds to rule on the unenforceability of the Commercial Court of BRAZZAVILLE judgment of 30 October 2012 in France. (Page 14.)

**Additional Court Ruling Referenced in Mossa Reply Declaration**

5.  Attached hereto as Exhibit 4 is a true and correct copy with certified English translation of the French language ruling of the Tribunal de Grande Instance de Paris rendered on April 10, 2013 in the action *Commisimpex and Mr. Moshin Hajaij v. Mr Gaston Mossa, Mr. Aimery Tati, Mr. Emile Nzondo and Caisse nationale de securite sociale*, RG No. 13/52008, which ruling is referenced in Mossa Reply Decl. ¶ 5. On page 5 of this ruling, the Court stated:

> The defendants contest the plaintiffs' [Commisimpex and M. Hajaij's] interest to act, arguing that the Congolese judgment is not open to enforcement in France, since the judgment cannot be granted exequatur [enforceability in France] because it is subject to appeal.
>
> Under the provisions of articles 49 to 51 of the Convention signed on January 1, 1974, the enforcement of decisions rendered in civil, social or commercial matters by courts in the territory of the two States [the Congo and France] must be recognized subject to the condition that, notably, the decision is no longer subject to an ordinary appeal or an appeal in cassation under the law of the State where the decision was rendered.
>
> *It is not disputed that the judgment at issue is on appeal, that it does not meet the conditions for exequatur per the agreement [the Convention for judicial cooperation] between the two States*, and that [the Congolese liquidation judgment's] provisions cannot *on this date* be subject to any enforcement on French territory. (Emphasis added.)
>
> It thus appears that Commisimpex and Mr. Hajaij lack an interest to act and that their request for non-enforcement of the judgment rendered on October 30, 2012 by the Commercial Court of Brazzaville must be declared inadmissible.

**Congo's Pending Appeal of the Initial**
**Set-Aside Ruling to the French Cour de Cassation**

6.  As noted in ¶ 3 of my earlier declaration in this matter (Declaration of Marc Suskin in Support of Respondent's Motion to Vacate Amended Default Judgment, executed September 24, 2014, Dkt. No. 23-17), on February 20, 2013, the Congo commenced an action to

5

set aside (or vacate) the 2013 Award.  The Second Declaration of Michael A. Polkinghorne executed November 24, 2014 (Dkt. No. 31-19) references certain proceedings in that action before the Court of Appeals of Paris (Cour d'Appel [CA] de Paris, 1e ch., Pole 1, Dossier No. 37964, Case No. 13/03410), including an October 14, 2014 ruling.  (*See* Polkinghorne II Decl. ¶ 19 & Exh. 9.)  The Congo on December 17, 2014 initiated an appeal to the French Cour de Cassation (France's highest court) from that October 14, 2014 ruling.  Attached hereto as Exhibit 5 is a true and correct copy with certified English translation of the December 17, 2014 notice filed by the Congo initiating its appeal of the October 14, 2014 Cour d'Appel ruling to the Cour de Cassation (appeal no. Y1429264).

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York, this 22nd day of December 2014.

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Marc Suskin*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Marc Suskin