UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMISSIONS IMPORT EXPORT S.A., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Case No. 13-00713 (RJL) |
| | ) | |
| REPUBLIC OF THE CONGO, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM ORDER
July 6, 2015 [Dkt. # 23]

FILED
JUL -6 2015
Clerk U S District & Bankruptcy
Courts for the District of Columbia

Currently pending before the Court is a motion by respondent Republic of the Congo ("respondent" or "Congo") to vacate the amended default judgment as void under Federal Rule of Civil Procedure (the "Rules") 60(b)(4) for lack of subject-matter jurisdiction and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, and under Rule 60(b)(1) for inadvertence and excusable neglect. *See* Mem. in Support of Mot. to Vacate Am. Default J. ("Motion" or "Mot.") at 2-3 [Dkt. # 23-1]. After due consideration of the parties' pleadings, the factual record, and the relevant law, respondent's motion to vacate is DENIED.

Petitioner Commissions Import Export S.A. ("Commisimpex") is a Congolese company that executed various contracts for public works and equipment in the mid-1980s with the Congo. *See* Pet. to Confirm Arbitral Award ("Petition") ¶ 2, 9 [Dkt. # 1]. Since then, petitioner and respondent entered into two agreements -- the 1992 and 2003 Protocols -- whereby respondent agreed to pay money owed to petitioner. *See* Dkts. ## 23-12 (the

1

"1992 Protocol") & 23-7 (the "2003 Protocol"). In 2000, the International Chamber of Commerce ("ICC") in Paris awarded petitioner approximately $107 million under the 1992 Protocol. *See* 2000 Award [Dkt. # 23-11]; Mot. at 5. In 2013, the ICC awarded petitioner more than €222 million under the 2003 Protocol, which is the subject of this enforcement action. *See* 2013 Award at 167-68 [Dkt. # 1-4]. The petition to confirm the ICC's 2013 award was initiated in this Court on May. 15, 2013, and on September 30, 2013, default judgment was entered in favor of petitioner, which respondent now moves to vacate. *See* Default J. [Dkt. # 16]; *see also* Am. Order and J., entered Oct. 9, 2013 [Dkt. # 18].

"A motion under Rule 60(b) seeks an extraordinary remedy," as "[t]he framers of Rule 60(b) set a higher value on the social interest in the finality of litigation." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir. 1983). Respondent argues vigorously that merits resolutions are preferable for sovereigns, *see* Mot. at 11-12, however, as our Circuit Court has ruled, foreign sovereigns bear the same "heavy" burden as any other movant under Rule 60(b). *See Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011) (holding that, because Syria was not immune under the FSIA, "no principle of sovereign immunity law upsets the parties' respective burdens under Rule 60(b)"). Accordingly, courts routinely uphold default judgments against sovereign states on Rule 60(b) motions. *See, e.g., Gates*, 646 F.3d at 5 (D.C. Cir. 2011); *Meadows v. Dominican Republic*, 817 F.2d 517, 519 (9th Cir. 1987); *Budejovicky Budvar, N.P. v. Czech Beer Imps., Inc.*, No. 05-1246, 2006 WL 1980308, at *5 (D. Conn. July 10, 2006) (upholding default judgment confirming New York Convention award).

2

Respondent argues that service was improper, and, thus, that this Court does not have personal jurisdiction. *See* Mot. at 13-19. The FSIA governs service of process on a foreign state. *See* 28 U.S.C. § 1608; Fed. R. Civ. P. 4(j)(1); *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012). Section 1608 prescribes four methods of service—"in descending order of preference"—and a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben–Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 n.4 (9th Cir. 2010) (same). The first method of service under section 1608(a) is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service . . . ." 28 U.S.C. § 1608(a)(1). The second, if no special agreement exists, is "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). If there is no applicable international convention, service may be made by sending a copy of the summons and complaint to the head of the ministry of foreign affairs of the foreign state concerned. 28 U.S.C. § 1608(a)(3).[1]

As to the FSIA's service requirements, Commisimpex complied. Commisimpex first determined (1) that there was no applicable special arrangement for service between the parties, and (2) that there was no applicable international convention on service of judicial documents. *See* Vasquez Decl. ¶ 10 [Dkt. # 31-1]. Thus, in accordance with the FSIA's third method of service, Commisimpex then sent a copy of the summons and the

---

[1] The fourth method of service is not relevant here. *See* 28 U.S.C. § 1608(a)(4).

petition and a notice of suit, together with a translation of each into French, the official language of the Congo, to Basile Ikouébé, head of the Congo's Ministry of Foreign Affairs. *Id.*[2]

The Congo contests that service was improper because a special arrangement for service existed in the 1992 Protocol. *See* Mot. at 15-16. However, this is a suit to enforce the 2003 Protocol, and there is nothing in the 2003 Protocol that suggests any special arrangement for service existed between the parties. *See* 2003 Protocol.

The Congo argues that subject-matter jurisdiction is lacking because petitioner lacks standing and is not the real party in interest.[3] *See* Mot. at 20-21. The Congo urges this Court to grant comity to orders by Congolese tribunals that forced Commisimpex into liquidation and that gave liquidation trustees the "sole legal authority" to act on behalf of Commisimpex. *Id.* Comity, however, is a matter of judicial discretion. *See Int'l Trading & Indus. Inv. Co. v. DynCorp. Aerospace Tech.*, 763 F. Supp. 2d 12, 24 (D.D.C. 2011) ("[A]ffording comity to foreign judgments is not mandatory[.]"). Courts will not grant comity to the judgment of a foreign country's court unless:

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due

---

[2] The Congo has not disputed that the required service documents were delivered to the Congolese Ministry of Foreign Affairs or that it had actual notice of the Petition or the Amended Judgment. *See* Mot. at 17; Ondongo Decl. at 1, [Dkt. # 23-21].

[3] The Congo also argues that the Court lacks subject-matter jurisdiction under the New York Convention because there is no agreement in writing to arbitrate in the 2003 Protocol. Mot. at 22. The highest court in France already held that there is a written agreement to arbitrate. Polkinghorne Decl. ¶¶ 17-18 [Dkt. 31-19]. Thus, this issue should not be relitigated here. *See TermoRio S.A.E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007) (the New York Convention "does not endorse a regime in which secondary States (in determining whether to enforce an award) routinely second-guess the judgment of a court in a primary State.")

4

> citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect . . . .

*Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981) (quoting *Hilton v. Guyot*, 159 U.S. 113, 202 (1895)). The Congolese orders that put Commisimpex into liquidation were the result of highly questionable, and perhaps even fraudulent, proceedings. *See* Pet'r's Opp'n to Mot. to Vacate [Dkt. # 31] at 27-32. In fact, the Paris Court of Appeals, which upheld the award that petitioner seeks to enforce here, described the liquidation proceedings as "violat[ing] the principle of good faith so that the judgment of liquidation had to be regarded as without effect on the arbitration proceeding." *See* Dkt # 31-28 at 6. Indeed, United States courts routinely deny comity to courts in countries where the judicial system is well-recognized to be corrupt and lack impartiality. *See, e.g., Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 287 (S.D.N.Y. 1999) (denying recognition to Liberian judgment because the country's judicial system was "barely functioning" and did not provide for "impartial tribunals"); *Films By Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 209, 216 (E.D.N.Y. 2003) (denying deference to Russian judgment because the decision was "strongly influenced, if not coerced, by the efforts of various Russian government officials"). Thus, like the underlying ICC award being enforced here, I decline to extend comity to the Congolese liquidation orders, and, accordingly,

there is no remaining issue that Commisimpex is the real party in interest with standing to enforce the arbitral award.[4]

For all of the forgoing reasons, it is hereby

**ORDERED** that respondent Congo's motion to vacate the amended order and default judgment [Dkt. # 23] is **DENIED**.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge

---

[4] The Congo also asserts that the default judgment should be vacated because there was excusable neglect; however, as discussed above, the Congo has raised no meritorious procedural defenses. *See Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995) ("It has long been established that as a precondition to relief under Rule 60(b), the movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture."). Additionally, neither of the Congo's New York Convention defenses is potentially meritorious. First, the Congo's argument that the 2003 Protocol arose out of political corruption is unavailing for similar reasons articulated by the Paris Court of Appeals. *See* Dkt. # 31-28 at 5-6. Second, even though the Congo has appealed the arbitral award to the Cour de Cassation, France's highest court, on balance an immediate confirmation is appropriate. *See G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139 (D.D.C. 2010) (declining to stay enforcement of arbitral award based on balance on factors). Thus the Congo is not entitled to relief under Rule 60(b) for excusable neglect.