## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMISSIONS IMPORT EXPORT S.A.,

*Petitioner,*

v.

REPUBLIC OF THE CONGO,

*Respondent.*

Civil Action No. 1:13-cv-713-RJL

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO COMMISIMPEX'S MOTION TO COMPEL REPUBLIC OF THE CONGO TO ANSWER POST-JUDGMENT INTERROGATORIES

CHADBOURNE & PARKE LLP
Attorneys for Respondent
    Republic of the Congo
1301 Avenue of the Americas
New York, NY  10019
(212) 408-5100

Dana Frix
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
Tel. (202) 974-5600

Of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

ARGUMENT ...............................................................................................................................4

I.      POST-JUDGMENT DISCOVERY IS GOVERNED BY AND SUBJECT TO
        THE LIMITATIONS OF RULES 26(b) AND 69(a)(2) ....................................................4

II.     POST-JUDGMENT DISCOVERY THAT CANNOT LEAD TO EXECUTABLE
        ASSETS IS NOT "RELEVANT" AND IS THUS IMPROPER UNDER RULES
        26(b) AND 69(a)(2) ........................................................................................................5

        A.      The Congo Properly Objected to Discovery of Various Categories of Non-
                Executable Assets .................................................................................................6

        B.      *NML Capital* Did Not Reject Objections to Post-Judgment Discovery That
                Are Based on Rules 26(b)(1) and 69(a)(2) ...........................................................8

III.    POST-JUDGMENT DISCOVERY IS ALSO SUBJECT TO ALL OTHER
        ORDINARY DISCOVERY OBJECTIONS AND LIMITATIONS, INCLUDING
        THE POWER OF THE DISTRICT COURT TO SUPERVISE AND CONTROL
        SUCH DISCOVERY IN ITS DISCRETION ..................................................................12

IV.     DISCOVERY SHOULD NOT PROCEED AND THE MOTION TO COMPEL
        SHOULD NOT BE GRANTED IN VIEW OF THE CONGO'S PENDING
        APPEAL TO THE D.C. CIRCUIT ON ISSUES THAT INCLUDE SUBJECT-
        MATTER JURISDICTION, BOTH AS A JURISDICTIONAL MATTER AND
        ALSO IN THE SOUND EXERCISE OF THIS COURT'S DISCRETION ...................17

V.      COMMISIMPEX IS NOT ENTITLED TO AN AWARD OF EXPENSES OR
        ATTORNEYS' FEES ......................................................................................................20

CONCLUSION...........................................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to U.N.*,
  988 F.2d 295 (2d Cir. 1993)...............................................................................................8

*Alexander v. F.B.I.*,
  186 F.R.D. 144 (D.D.C. 1999).........................................................................................21

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-MD-2481 KBF, 2014 WL 5801607 (S.D.N.Y. Nov. 7, 2014) .................................14

*Beck v. Test Masters Educ. Servs., Inc.*,
  289 F.R.D. 374 (D.D.C. 2013)..........................................................................................22

*Bennett v. Islamic Republic of Iran*,
  618 F.3d 19 (D.C.Cir. 2010) ..............................................................................................8

*Boca Investerings P'ship v. United States*,
  No. CIV.A. 97-602PLF/JMF, 1998 WL 647214 (D.D.C. Sept. 1, 1998)..............................21

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  78 F. Supp. 3d 376 (D.D.C. 2015) ...............................................................................18, 19

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  No. CV 08-2026 (PLF/JMF), 2014 WL 2118712 (D.D.C. May 21, 2014) ......................18, 19

*Crawford–El v. Britton*,
  523 U.S. 574 (1998).........................................................................................................13

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012).....................................................................................9, 10, 11, 13

*Export–Import Bank of China v. Grenada*,
  768 F.3d 75 (2d Cir. 2014)...............................................................................................14

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)...........................................................................................................18

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013)......................................................................................................15

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007)..........................................................................................................15

*Morrison v. Nat'l Australia Bank Ltd.*,
　561 U.S. 247 (2010) ............................................................................15

*In Re Multi-Piece Rim Prods. Liab. Litig.*,
　653 F.2d 671 (D.C. Cir. 1981) ...........................................................13

*Parsi v. Daioleslam*,
　778 F.3d 116 (D.C. Cir. 2015) ......................................................21, 22

*Pierce v. Underwood*,
　487 U.S. 552 (1988) ............................................................................21

*Republic of Argentina v. NML Capital, Ltd.*,
　134 S. Ct. 2250 (2014) ................................................................. *passim*

*In Re Sealed Case (Med. Records)*
　381 F.3d 1205 (D.C. Cir. 2004) .........................................................13

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for*
　*Southern Dist. of Iowa*,
　482 U.S. 522 (1987) ......................................................................13, 15

*Wyatt v. Syrian Arab Republic*,
　83 F. Supp. 3d 192 (D.D.C. 2015) ...................................................7, 8

**Statutes and Rules**

18 U.S.C. § 798 ...........................................................................................15

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 *et seq.* ...................... *passim*

Fed. R. Civ. P. 26 ............................................................................... *passim*

Fed. R. Civ. P. 37 .....................................................................2, 20, 22, 23, 24

Fed. R. Civ. P. 62.1(a) ........................................................................18, 19

Fed. R. Civ. P. 69 ................................................................................. *passim*

Rules Enabling Act, 28 U.S.C. § 2072 ......................................................15

**Other Authorities**

Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure*
　§ 2288 (3d ed. 2015) ..........................................................................21

U.S. Dep't of the Treasury, OFAC Regulations for the Financial Community (Jan.
　24, 2012) .............................................................................................15

Respondent the Republic of the Congo (the "Congo") respectfully submits this memorandum of law in opposition to the motion of Petitioner Commissions Import Export S.A. ("Commisimpex"), dated October 22, 2015, to compel the Congo to answer Post-Judgment Interrogatories [Dkt. No. 38] ("Motion to Compel").

## PRELIMINARY STATEMENT

Commisimpex's post-judgment interrogatories were improper and its Motion to Compel should be denied. Contrary to Commisimpex's contentions, the Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250 (2014) ("*NML Capital*"), did not pronounce post-judgment interrogatories like Commisimpex's to be automatically proper. To the contrary, *NML Capital* confirmed that post-judgment discovery requests must comply with the requirements of Rules 26 and 69 of the Federal Rules of Civil Procedure, under which (among other things) such discovery to be relevant must seek information about the judgment debtor's executable assets. *NML Capital* merely held that the Foreign Sovereign Immunities Act ("FSIA") did not itself create any separate or additional bar against post-judgment discovery when foreign state judgment debtors are involved. But since the Congo never asserted any such separate blanket FSIA objection to Commisimpex's discovery, but rather made only other objections, *NML Capital* says nothing to foreclose those objections here. To the contrary, *NML Capital* expressly confirmed that objections to post-judgment interrogatories based on the Federal Rules and other sources of law — which is what the Congo has asserted here — remain entirely appropriate.

In addition, as a prior decision of this Court has held, the pendency of the Congo's appeal to the D.C. Circuit from this Court's ruling on subject-matter jurisdiction divested this Court of jurisdiction during the pendency of the appeal, since any action in this case (including

1

Commisimpex's claimed right to serve post-judgment discovery, and any grant of relief on this Motion to Compel) necessarily implicates the subject-matter jurisdiction issue that the Court of Appeals will address.  In any event, apart from the jurisdictional issue created by the pending appeal, and regardless of whether enforcement of the judgment has been stayed pending appeal, this Court also has the discretion to defer such discovery (*e.g.*, as burdensome or a waste of resources) until the appeal is decided, which the Congo contends would be the appropriate course here.

Finally, there is no basis for Commisimpex's request for an award of expenses and attorneys' fees.  Whether the Congo succeeds on its objections here or not, there is no question that the Congo's objections meet the "substantially justified" standard employed with respect to such requests under Rule 37, given the legal bases shown for those objections in this memorandum, and Commisimpex's failure in most instances to cite any law whatsoever that the Congo's objections were improper.  For all these reasons, Commisimpex's Motion to Compel should be denied in its entirety.

## **BACKGROUND**

This action was originally brought by Commisimpex to confirm an international arbitration award against the Congo, a foreign state and sovereign nation, by Commisimpex's filing of a petition to confirm on May 15, 2013 (Dkt. No. 1).  An amended default judgment was issued against the Congo on October 9, 2013 (Dkt. No. 18).  The Congo moved on September 24, 2014 under Fed. R. Civ. P. 60 to vacate the default on several grounds, including failures of personal jurisdiction and subject-matter jurisdiction (Dkt. No. 23).  The Congo's motion to vacate was denied by order of this Court dated July 6, 2015 (Dkt. No. 35).  The Congo filed a notice of appeal from that ruling on

August 5, 2015 (Dkt. No. 36).  That appeal is currently pending before the D.C. Circuit, Case No. 15-7076.

On August 25, 2015 — while the Congo's appeal was pending — Commisimpex served upon the Congo Commisimpex's First Set of Post-Judgment Interrogatories to Respondent (the "Interrogatories") (*see* Dkt. No. 38-3).   The Interrogatories consist of 13 broad discovery demands calling on the Congo to "set forth," "identify" and/or "describe":

- "*any* bank accounts maintained by Congo or by any Instrumentality of Congo, *within or without Congo*" (Interrogatory No. 1);

- "*any* bank accounts that are *not maintained by Congo* or by an Instrumentality of Congo, but in which Congo or any Instrumentality of Congo has money deposited at this time, *within or without Congo*" (Interrogatory No. 2);

- "*any and all* Liquid Assets owned by Congo or by any Instrumentality of Congo, *located within or without Congo*" (Interrogatory No. 3);

- "*any and all* Tangible Assets owned by Congo or by any Instrumentality of Congo, *located within or without Congo*" (Interrogatory No. 4);

- "*all* persons or entities with knowledge or information regarding the particular Liquid or Tangible Asset" (Interrogatory No. 5);

- "*any* entities, persons or states, who owe a debt to Congo, or an Instrumentality of Congo" (Interrogatory No. 6);

- "*any* Creditors of Congo or an Instrumentality of Congo" (Interrogatory No. 7);

- "*every* Congolese official who resides, temporarily or permanently, within the United States" (Interrogatory No. 8);

- "*all* Foreign assistance that Congo, or an Instrumentality of Congo, receives from any Foreign entity" (Interrogatory No. 9);

- "*any* contract, agreement, or relationship between Congo or *any* Instrumentality of Congo and a Foreign entity . . . by which such Foreign entity invests *in any way* in Congo, or an Instrumentality of Congo" (Interrogatory No. 10);

- "five persons *most knowledgeable about Congo* or an Instrumentality of Congo's Liquid Assets, Tangible Assets, accounts or monies in *any* financial

institution, monies, debts owed to Congo, or an Instrumentality of Congo, Congo's creditors, and foreign investments in Congo or in an Instrumentality of Congo" (Interrogatory No. 11);

- "*any* books or records maintained by Congo, or an Instrumentality of Congo, that concern Congo or an Instrumentality of Congo's Liquid Assets, Tangible Assets, accounts or monies in *any* financial institution, monies, debts owed to Congo, or an Instrumentality of Congo, Congo's creditors, and foreign investments in Congo or in an Instrumentality of Congo" (Interrogatory No. 12);

- "*all* individuals who participated or assisted in preparing these interrogatories [sic], or who prepared or supplied any information, indicating in the case of each such individual the interrogatory number which he prepared or for which he supplied any information or answer" (Interrogatory No. 13).

(*See id.*, pp. 3-7 (emphasis added).)

The Congo served responses and objections to the Interrogatories on September 28, 2015 (*see* Dkt. No. 38-4), which identified various general objections to the Interrogatories, objected to certain definitions and instructions, and interposed specific objections to particular interrogatories.  Following a brief telephonic meet-and-confer between counsel (*see* Dkt. No. 38-5), Commisimpex filed this Motion to Compel.

## **ARGUMENT**

### **I.**

### **POST-JUDGMENT DISCOVERY IS GOVERNED BY AND SUBJECT TO THE LIMITATIONS OF RULES 26(b) AND 69(a)(2)**

Rule 69(a)(2) of the Federal Rules of Civil Procedure provides:

*Obtaining Discovery.*  In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person — including the judgment debtor — as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2).  This authorization to conduct post-judgment discovery is thus subject to two important limitations:  (1) the discovery being sought must be "in aid of the judgment or

execution," and (2) such discovery is subject to the ordinary requirements and limitations of discovery generally "as provided in the[Federal] rules." *Id.*

Currently (through November 30, 2015), Rule 26(b) of the Federal Rules of Civil Procedure limits discovery to "nonprivileged matter[s] that [are] relevant," Fed. R. Civ. P. 26(b)(1), and further limits the scope of discovery by commanding courts to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" if

> "the burden or expense of proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed. R. Civ. P. 26(b)(2)(C)(iii).  Effective December 1, 2015, amended Rule 26(b)(1) will limit discovery to matters that are both "relevant" and also

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit[,]

and under amended Rule 26(b)(2)(C)(iii), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

## II.

### POST-JUDGMENT DISCOVERY THAT CANNOT LEAD TO EXECUTABLE ASSETS IS NOT "RELEVANT" AND IS THUS IMPROPER UNDER RULES 26(b) AND 69(a)(2)

In view of the plain language of Rules 69(a)(2) and 26(b)(1), the Supreme Court has stated the commonsense conclusion that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *NML Capital*, 134 S. Ct. at 2257-58 (citing, *inter alia*, Fed. R. Civ. P. 26(b)(1)).  Accordingly, such discovery is improper.  This

principle is the cornerstone of a great number of the Congo's general objections to the Interrogatories.

A.      **The Congo Properly Objected to Discovery of Various Categories of Non-Executable Assets**

The Congo's General Objection No. 8 states, in accordance with *NML Capital*:

> The Congo objects to each individual item of the Interrogatories to the extent that any such item purports to call for information not reasonably calculated to lead to assets that can be levied upon in execution of the Judgment, so as to make such discovery not '[i]n aid of the judgment or execution' within the meaning of Fed. R. Civ., P. 69(a)(2), and thus outside the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1) and 69(a)(2).

(*see* Dkt. No. 38-4, p. 3, ¶ 8.)[1]   The Congo's General Objections thereafter identified various bases upon which assets being inquired about would not be subject to execution.

For example, in its General Objections Nos. 10-27 (*see id.*, pp. 4-8, ¶¶ 10-27), the Congo identified various categories of immunity from execution that exist under statutes, treaties and international law, some of which are tied to the Congo's status as a sovereign foreign state:

- General Objections Nos. 10-19 (*see* Dkt. No. 38-4, pp. 4-6, ¶¶ 10-19): Immunities under various provisions of the FSIA, 28 U.S.C. §§ 1330, 1602 *et seq*.

- General Objection No. 20 (*see* Dkt. No. 38-4, p. 6, ¶ 20):  Immunities under the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 ("VCDR"), including without limitation Arts. 22, 30 and 31 thereof.

- General Objection No. 21 (*see* Dkt. No. 38-4, p. 6, ¶ 21):  Immunities under the Vienna Convention on Consular Relations, Apr. 24, 1963, 596 U.N.T.S. 261 ("VCCR").

---

[1]   The same principle is also referenced in the Congo's General Objection No. 31 (*see* Dkt. No. 38-4, p. 8, ¶ 31).

- General Objection No. 22 (*see* Dkt. No. 38-4, p. 6, ¶ 22):  Immunities under customary international law.

- General Objection No. 23 (*see* Dkt. No. 38-4, pp. 6-7, ¶ 23):   Immunities under public international law.

- General Objection No. 24 (*see* Dkt. No. 38-4, p. 7, ¶ 24):  Immunities under foreign law or European Union law and regulation.

- General Objection No. 25 (*see* Dkt. No. 38-4, p. 7, ¶ 25):  Immunities under any applicable local law where assets may be located.

- General Objections Nos. 26-27 (*see* Dkt. No. 38-4, pp. 7-8, ¶¶ 26-27): Jurisdictions that would not recognize or enforce a U.S. judgment or where assets are not subject to execution based on a U.S. judgment.

These categories of immunity, read in conjunction with the principle set forth in General Objection No. 8, properly provide a basis under *NML Capital* and Rules 26(b)(1) and 69(a)(2) for objecting to post-judgment discovery requests like those in the Interrogatories that seek information on assets immune from execution.

Commisimpex's Motion to Compel nowhere challenges the validity of any of the immunities from execution identified in the Congo's General Objections, and rightly so.  For example, the FSIA forbids execution of a judgment against property of a foreign sovereign unless it is "used for a commercial activity in the United States."  28 U.S.C. §§ 1609, 1610(a); *see, e.g., Wyatt v. Syrian Arab Republic,* 83 F. Supp. 3d 192, 194 (D.D.C. 2015) (under FSIA § 1609, foreign state property is presumed immune from attachment and execution absent an exception to immunity provided by FSIA § 1610 or § 1611).  The FSIA also bars executions upon assets that are "the property . . . of a foreign central bank or monetary authority[,]" 28 U.S.C. § 1611(b)(1), that are military-related, *id.* § 1611(b)(2), or are related to certain designated international organizations, *id.* § 1611(a).

Similarly, "[p]roperty is immune from attachment under section 1610 of the FSIA if it is subject to the Vienna Convention on Diplomatic Relations ('VCDR')." *Wyatt,* 83 F. Supp. 3d at 195.

> The FSIA provides that any exceptions to immunity set forth in the statute are "[s]ubject to existing international agreements to which the United States is a party at the time of enactment." 28 U.S.C. § 1609. The VCDR is one such "existing international agreement."

*Wyatt,* 83 F. Supp. 3d at 194. The VCCR likewise is such an "existing international agreement" under 28 U.S.C. § 1609. Both the VCDR and VCCR prohibit execution on sovereign assets when doing so violates international law, and prohibit execution of diplomatic and other non-commercial assets. "Therefore, property exempt from attachment under the VCDR is also exempt under the FSIA, regardless of how it would be treated under sections 1610 and 1611." *Wyatt,* 83 F. Supp. 3d at 195 (citing *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to U.N.,* 988 F.2d 295, 297 (2d Cir. 1993) (holding that the "diplomatic and consular immunities of foreign states recognized under various treaties remain unaltered by the [FSIA]" and analyzing the VCDR as one such treaty); *see Bennett v. Islamic Republic of Iran,* 618 F.3d 19, 21 (D.C. Cir. 2010) ("Diplomatic properties are generally immune from attachment.").

## B.    *NML Capital* Did Not Reject Objections to Post-Judgment Discovery That Are Based on Rules 26(b)(1) and 69(a)(2)

Contrary to Commisimpex's assertions in its Motion to Compel, the Supreme Court's decision in *NML Capital* does not eliminate the limitations on post-judgment discovery imposed by Fed. R. Civ. P. 26(b)(1) and 69(a)(2) or "entitle[] [Commisimpex] as a matter of law to undertake wide-ranging post-judgment discovery in this proceeding compelling the Congo to disclose the nature and location of assets located *anywhere,* regardless of whether the assets are ultimately subject to execution proceedings in or outside of the United States." (Motion to

Compel, pp. 3-4 (emphasis in original).)  *NML Capital* was a very narrow, limited decision that expressly cautioned that it did not address objections to post-judgment discovery made on the ground that such discovery exceeded the scope permitted under Rules 26(b)(1) and 69(a)(2).  Rather, *NML Capital* addressed only one specific argument raised there by the petitioner Republic of Argentina — which argument the Congo has *not made* here — that the protections of the FSIA necessarily imply a flat-out immunity for sovereign states from *any discovery* in aid of execution of a judgment.  Nothing in *NML Capital* rejected the objections to post-judgment discovery that the Congo has raised here.

> The Supreme Court explained the narrow issue presented in *NML Capital* as follows:
>
> Argentina's only asserted ground for objection to the subpoenas was the [FSIA].  See 695 F.3d, at 208 ("Argentina argues . . . that the normally broad scope of discovery in aid of execution is limited in this case by principles of sovereign immunity").  And Argentina's petition for writ of certiorari asked us to decide only whether [the FSIA] "imposes [a] limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world."  Pet. for Cert. 14. <u>Plainly, then, this is not a case about the breadth of Rule 69(a)(2).</u>

134 S. Ct. at 2254-55 (emphasis added).  The Court further made explicit that it was "assum[ing] without deciding" that 'in a run-of-the-mill execution proceeding' the discovery at issue could properly have been ordered, and that "[t]he single, narrow question before us is whether the [FSIA] specifies a different rule when the judgment debtor is a foreign state."  *Id.* at 2255 (citations omitted).[2]

---

[2]   *NML Capital* also involved an additional factual wrinkle not present in this case.  The Supreme Court's decision expressly noted that the underlying Second Circuit ruling being affirmed held that 'because the Discovery Order involves discovery, not attachment of sovereign property, and *because it is directed at third-party banks, not at Argentina itself,* Argentina's sovereign immunity is not infringed.' *Id*. at 2254 (emphasis added) (*citing EM*

(Cont'd on following page)

Not only did the Supreme Court in *NML Capital* not reject the objections that the Congo has made here under Rules 26(b)(1) and 69(a)(2), but to the contrary it took pains to expressly note that ordinary federal discovery rules provide the controlling rules for post-judgment discovery against foreign states.  Noting the FSIA's near-total silence on discovery rules, the Court concluded that the usual provisions of the Federal Rules of Civil Procedure necessarily governed the scope of post-judgment discovery.  "Far from containing the 'plain statement' *necessary to preclude application of federal discovery rules* . . .  the [FSIA] says not a word on the subject."  *Id*. at 2256-57 (emphasis added) (citation omitted).

It bears reiterating that *NML Capital* "assume[d] without deciding" — because of the record below and the parties' concessions —  that post-judgment discovery of worldwide assets was proper.  *See id.* at 2255.  It was only in that context that *NML Capital* held that nothing *in the FSIA* precluded discovery of worldwide assets held for the foreign state by third-party banks. *Id.* at 2257-58.  However, the underlying discovery ruling that was affirmed by the Second Circuit and was then affirmed in turn by the Supreme Court in *NML Capital* acknowledged that limits on executability necessarily limited the scope of assets for which discovery could be sought under the Federal Rules:

> [T]he [district] court made clear that it expected the parties to negotiate further over specific production requests, which, the court said, must include "some reasonable definition of the information being sought."  There was no point, for instance, in "getting information about something that might lead to attachment in

_____

(Cont'd from preceding page)

*Ltd. v. Republic of Argentina,* 695 F.3d 201, 205 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014)).  This case, by contrast, does not present any such third-party focus.  The Interrogatories constitute discovery directed not at third parties but solely toward the Congo itself.

> Argentina because that would be useless information," since no Argentinian court would allow attachment.   "Thus, the district court . . . sought to limit the subpoenas to discovery that was reasonably calculated to lead to attachable property."

*Id.* at 2254 (citations omitted) (quoting *EM Ltd.,* 695 F.3d at 204-05).   As the Second Circuit stated in the ruling that the Supreme Court affirmed, "[t]he scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd.,* 695 F.3d at 207 (citations omitted).   The Supreme Court's affirmance says nothing to alter that.

Thus, for example, the Congo's General Objections Nos. 26-27 (*see* Dkt. No. 38-4, pp. 7-8, ¶¶ 26-27) properly objected to discovery about assets located in countries that would not recognize or enforce a U.S. judgment.   Similarly, the Congo's General Objection No. 35 (*see* Dkt. No. 38-4, pp. 9-10, ¶ 35) properly objected to discovery about assets located in countries (such as the Congo itself and presumably the other OHADA member states) that would not allow the Petitioner in this action to execute on a judgment in the name of Commisimpex due to the Congolese liquidation judgment that was affirmed by the OHADA court earlier this year, which took authority over Commisimpex away from the former management who now purports to litigate this action Commisimpex's name and placed such authority instead in the hands of a panel of judicially-appointed Liquidation Trustees.[3]

---

[3]   The details of this issue were previously set forth in the Congo's filings with respect to its Rule 60 motion to vacate the amended default judgment on subject-matter jurisdiction grounds, *see* Dkt. No. 23-1 at 19-22; Dkt. No. 32 at 11-18; Dkt. No. 33 at 1-2, and those issues now continue to be addressed in the Congo's appeal to the D.C. Circuit from this Court's July 6, 2015 ruling relating on that issue.  *See Commissions Import Export S.A. v. Republic of the Congo*, *appeal docketed*, No. 15-7076 (D.C. Cir. Aug. 10, 2015) (on appeal from Dkt. No. 35).

Rules 26(b)(1) and 69(a)(2), the Supreme Court's decision in *NML Capital* and the lower court rulings it affirmed establish that discovery requests about such non-executable assets are improper under the Federal Rules, irrespective of the Supreme Court's holding that the FSIA does not provide a separate and independent basis for barring them as against foreign sovereigns. The Congo's objections were therefore appropriate, and Commisimpex's Motion to Compel should be denied.

III.

**POST-JUDGMENT DISCOVERY IS ALSO SUBJECT TO ALL OTHER ORDINARY DISCOVERY OBJECTIONS AND LIMITATIONS, INCLUDING THE POWER OF THE DISTRICT COURT TO SUPERVISE AND CONTROL SUCH DISCOVERY IN ITS DISCRETION**

The Federal Rules of Civil Procedure commends the management of discovery to the discretion of the District Court. *See* Fed. R. Civ. P. 26(b)(1) (providing general authorization for discovery "[u]nless otherwise limited by court order"), 26(b)(2)(A) (authorizing the District Court "by order" to limit use of discovery devices), 26(b)(2)(C) (identifying various circumstances where, if found by the Court, "the court must limit" discovery). Rule 69(a)(2) expressly specifies that the post-judgment discovery it authorizes must be "as provided in these rules," *i.e.*, the Federal Rules of Civil Procedure. Thus, even if *arguendo* discovery of non-executable assets were not barred as irrelevant under Rules 26(b)(1) and 69(a)(2), *contra* Point II, *supra*, such discovery nevertheless can be barred or limited under standard discovery principles and the court's discretion in managing such discovery, and should be where appropriate.

The Supreme Court in *NML Capital* confirmed that "[t]he general rule in the federal system" is that the availability of discovery is "subject to the district court's discretion." 134 S. Ct. at 2254. The Second Circuit ruling that *NML Capital* affirmed likewise noted in the

context of post-judgment discovery that "as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd.,* 695 F.3d at 207; *see also, e.g., Crawford–El v. Britton,* 523 U.S. 574, 598-99 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly . . . ."); *see also In re Multi-Piece Rim Prods. Liab. Litig.,* 653 F.2d 671, 679-81 (D.C. Cir. 1981) (affirming the district court's denial of a motion to compel discovery as soundly within the "broad discretion" of a district court's power to tailor discovery); *compare In re Sealed Case (Med. Records),* 381 F.3d 1205, 1216-18 (D.C. Cir. 2004) (vacating and remanding a district court's broad grant of discovery where the lower court failed to use its discretion to impose reasonable limits on discovery pursuant to Fed. R. Civ. P. 26).

In addition, the Supreme Court in *NML Capital* specifically noted that in addition to objections under Fed. R. Civ. P. 26(b)(1) and 69(a)(2), other potential objections to post-judgment discovery by foreign state judgment debtors could legitimately be raised and would need to be addressed by District Courts.  The Court stated:

> Although this appeal concerns only the meaning of the [FSIA], we have no reason to doubt that . . . "other sources of law" ordinarily will bear on the propriety of discovery requests of this nature and scope, such as "settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted, which may appropriately consider comity interests and the burden that the discovery might cause to the foreign state."

134 S. Ct. at 2258 n.6 (quoting *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa,* 482 U.S. 522, 543-44 & n. 28 (1987)).

This Court thus has broad discretion to limit Commisimpex's discovery requests.  Courts addressing judgment-creditor discovery requests since *NML Capital* have underscored the broad discretion of district courts to limit discovery requests, in particular where such discovery is irrelevant under the Federal Rules or other sources of law.  As one such court noted:

> *NML Capital* does not address under what specific factual circumstances a court *must* grant jurisdictional discovery, and in fact, it makes clear that the decision whether to permit such discovery remains within the discretion of the district court. Indeed, in its opinion the Supreme Court noted that "other sources of law ordinarily will bear on the propriety of discovery requests of this nature and scope, such as settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted."

*In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 5801607, at *4 (S.D.N.Y. Nov. 7, 2014) (emphasis in original) (quoting *NML Capital*, 134 S. Ct. at 2258 n.6). Likewise, the Second Circuit in *Export-Import Bank of China v. Grenada*, 768 F.3d 75 (2d Cir. 2014) remanded the case to the district court to consider "*whether* to permit further [post-judgment] discovery, consistent with . . . *NML Capital*" and Rule 69. *Id.* at 93 (emphasis added).

The Congo's General Objections accordingly identified various objections to the requested post-judgment discovery beyond the objections as to non-executable assets discussed in Point II, *supra*. These objections include:

- General Objection No. 28 (*see* Dkt. No. 38-4, p. 8, ¶ 28), objecting to discovery of "information that concerns non-public diplomatic matters, national security matters, or international security matters, including but not limited to classified or secret information" the disclosure of which is barred by relevant U.S., Congolese or other applicable law.

- General Objection No. 29 (*see* Dkt. No. 38-4, p. 8, ¶ 29), objecting "on grounds of comity interests, including those relating to the burden that the Interrogatories might cause to the Congo, a foreign state, the Interrogatories' potential for undermining international comity, and their potential for invading the sovereignty of foreign states."

- General Objection No. 36 (*see* Dkt. No. 38-4, p. 10, ¶ 36), objecting to discovery "about assets located outside the jurisdiction of the United States on the ground that such purported extraterritorial application of Fed. R. Civ. P. 69(a)(2) is improper[.]"

- General Objection No. 38 (*see* Dkt. No. 38-4, pp. 10-11, ¶ 38), objecting to discovery that could "provide information that could be used, directly or indirectly, to facilitate the transfer of any assets to persons or entities on any sanctions list issued by the United States Treasury Department and/or the Office of Foreign Assets Control (OFAC) . . ., or any persons or entities associated with the persons or entities on such lists."

14

Commisimpex's Motion to Compel does not challenge the legal basis for any of these objections, and in fact they are legally well-founded:

(1)   <u>General Objection No. 28</u>:  18 U.S.C. § 798, to cite just one statute, bars disclosure or use of classified information.

(2)   <u>General Objection No. 29</u>: Comity issues were acknowledged as a valid basis for objections to post-judgment discovery in *NML Capital*, 134 S. Ct. at 2258 n.6, citing *Societe Nationale,* 482 U.S. at 543-44, & n. 28.

(3)   <u>General Objection No. 36</u>:  Extraterritoriality issues arise from the fact that there is "no clear indication" in the Rules Enabling Act, 28 U.S.C. § 2072, that Congress intended to authorize such extraterritorial application of the federal rules adopted pursuant to that act, and that accordingly extraterritorial application of Rule 69(a)(2) exceeds the rule's purported Congressional authorization, as per *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), and *Kiobel v. Royal Dutch Petroleum Co*., 133 S. Ct. 1659 (2013), and improperly disregards the "presumption that United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007).

(4)   <u>General Objection No. 36</u>:  "The Office of Foreign Assets Control (OFAC) administers a series of laws that impose economic sanctions against hostile targets to further U.S. foreign policy and national security objectives." *See generally, e.g.*,  U.S. Dep't of the Treasury,  OFAC  Regulations  for  the  Financial  Community  (Jan.  24,  2012), *http://www.treasury.gov/resource-center/sanctions/Documents/facbk.pdf*,        at        2-3 (identifying various such sanctions statutes and regulations).

In additional to these more substantive objections, the Congo's General Objections identified various familiar objections of the kind typically asserted with respect to discovery generally in most contexts, such as:

- General Objections Nos. 1-3, 7, and 9 (*see* Dkt. No. 38-4, pp. 1-2, ¶¶ 1-3; *id.*, p. 3, ¶ 7; *id.*, pp. 3-4, ¶ 9), setting forth standard objections regarding discovery requests that might exceed the scope authorized under the Federal Rules, implicate privilege and work product,[4] result in inadvertent disclosure, or pose overbreadth and/or undue burden issues.

- General Objections Nos. 30-34 (*see* Dkt. No. 38-4, pp. 8-9, ¶¶ 30-34), asserting familiar discovery objections about such matters as ESI that is not reasonable accessible, overly broad requests or time frames, requests for information not reasonably known to the Congo or that is publicly or commercially available, and disclosures that maybe barred by blocking or secrecy statutes.

- General Objection Nos. 39-42 (*see* Dkt. No. 38-4, pp. 11-12, ¶¶ 39-42), asserting typical provisions about how the Congo's responses and objections should be read, understood and may possibly be amended.

In addition, individual objections were asserted as appropriate to certain definitions and instructions used in the Interrogatories (*see* Dkt. No. 38-4, pp. 12-15), and to specific items requested in the Interrogatories (*see id.*, pp. 15-24).  Here again, Commisimpex's Motion to Compel did not challenge the legal basis for any of these objections either, because they quite plainly are entirely proper.

For example, given the Interrogatories' repeated demands for information on "any and all" assets, they would if taken literally without limitation purport to call for disclosure of assets down to level of paper clips.  The Congo's General Objection No.  9 (*see* Dkt. No. 38-4, pp. 3-4, ¶ 9) thus appropriately objected to each item in the Interrogatories:

---

[4]   *NML Capital* specifically referenced "settled doctrines of privilege" as a valid basis for objecting to post-judgment discovery.  134 S. Ct. at 2258 n.6.

as overly broad and unduly burdensome to the extent that any such item seeks information about assets whose value in comparison to the amount of the Judgment is too small to be reasonably practical for enforcement of the Judgment.

*NML Capital* specifically identified "the burden that the discovery might cause to the foreign state" as a valid basis for objection to post-judgment discovery directed to that foreign state. 134 S. Ct. at 2258 n.6.  Similarly, the Congo objected to Interrogatory No. 6 "as overly broad and burdensome, if not abusive," because its request that the Congo identify and provide information about "*any* entities, persons or states, who owe a debt to Congo, or an Instrumentality of Congo" would, if taken literally, "call[] for the Congo to identify nearly every taxpayer in the Congo" (*see* Dkt. No. 38-4, pp. 19-20 (emphasis added)).  The text of the various Interrogatories (*see generally* Dkt. No. 38-3, pp. 3-7; Background, *supra*) lays bare how expansive and burdensome providing a full response to the requested information would be.

In sum, post-judgment discovery is validly subject to ordinary discovery objections and to being limited in the Court's discretion in the interests of comity, avoiding undue burden and other typical discovery concerns, and adhering to substantive legal requirements and limitations. Commisimpex has thus failed to identify any basis to compel over the Congo's objections.

## IV.

### DISCOVERY SHOULD NOT PROCEED AND THE MOTION TO COMPEL SHOULD NOT BE GRANTED IN VIEW OF THE CONGO'S PENDING APPEAL TO THE D.C. CIRCUIT ON ISSUES THAT INCLUDE SUBJECT-MATTER JURISDICTION, BOTH AS A JURISDICTIONAL MATTER AND ALSO IN THE SOUND EXERCISE OF THIS COURT'S DISCRETION

An additional set of legal issues — some jurisdictional and some discretionary — are raised by the fact that the Congo currently has a pending appeal in this action, and more particularly by the fact that this appeal involves subject-matter jurisdiction issues.

It is a basic federal jurisdictional principle that a pending appeal divests a District Court of jurisdiction over the case while the appeal is pending:

> [A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*See, e.g., Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (citations omitted). Indeed, the Federal Rules of Civil Procedure contain a specific provision, Rule 62.1, to address how to respond "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending." *See* Fed. R. Civ. P. 62.1 (listing options including denying or deferring the motion but not including granting the movant any relief).

Here, the Congo's appeal implicates the fundamental question of whether federal subject-matter jurisdiction even exists over this action. (*See* n.3, *supra*.) Accordingly, any purported exercise of jurisdiction in any respect by this Court — such as on this Motion to Compel, or in permitting post-judgment discovery to be served — necessarily implicates "aspects of the case involved in the appeal" and thus is barred. *Griggs*, 459 U.S. at 58. The Congo's General Objection No. 6 (*see* Dkt. No. 38-4, p. 3, ¶ 6) thus properly stated:

> The Congo objects to the Interrogatories on the ground that the pendency of the 2013 Award Appeal has divested this Court of jurisdiction over this action and accordingly the Interrogatories could not properly be served subsequent to the noticing of the 2013 Award Appeal and thus need not be answered at this time.

This principle is confirmed by a recent case in this Court with facts that parallel those in this action. In *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, No. CV 08-2026 (PLF/JMF), 2014 WL 2118712 (D.D.C. May 21, 2014), *further proceedings at* 78 F. Supp. 3d 376 (D.D.C. 2015), following a grant of summary judgment against the defendant Nigeria on an arbitration award, Nigeria noticed an appeal to the D.C. Circuit and thereafter the plaintiff served certain post-judgment discovery on Nigeria. *See Cont'l Transfer*, 2014 WL 2118712, at *1; 78

F. Supp. 3d at 377-78.   Nigeria moved to strike the discovery and to bar further discovery pending resolution of the appeal.   *See Cont'l Transfer*, 2014 WL 2118712, at *1; F. Supp. 3d at 378.   The Magistrate Judge, referencing *Griggs* and Rule 62.1, ordered that it would "defer consideration of the motion until the appeal is resolved."   *Cont'l Transfer*, 2014 WL 2118712, at *2.   As characterized by the District Court, the "Magistrate Judge . . . ultimately concluded that he lacked authority to rule upon the motion while the appeal was pending."   78 F. Supp. 3d at 378.[5]

Thus, for these reasons, the pendency of the Congo's appeal to the D.C. Circuit on subject-matter jurisdiction issues deprives this Court of jurisdiction over the service of the Interrogatories and now also over this Motion to Compel.   The Motion to Compel should therefore be denied, or at a minimum deferred, until the pending appeal is decided.[6]

But even if *arguendo* the service of the Interrogatories and the filing and adjudication of this Motion to Compel were not formally barred as a federal jurisdictional matter, any further action with respect to responding to the Interrogatories should in any event be deferred in the sound exercise of the Court's discretion pending resolution of the pending appeal.   Thus, the Congo's General Objection No. 4 (*see* Dkt. No. 38-4, pp. 2-3, ¶ 4) states that, given the pending

---

[5]   The plaintiff thereafter pursued objections to the Magistrate Judge's ruling but the issue of barring post-judgment discovery pending appeal was "rendered moot" before the District Court could address it when the D.C. Circuit issued a decision on the pending appeal.   *See id.*

[6]   In view of the foregoing discussion of this Court's own *Cont'l Transfert Technique Ltd.* decision, Commisimpex's assertion that the Congo's jurisdictional objection based on the Congo's pending appeal was "frivolous as a matter of law" and "of a sort never tolerated in this District" (Dkt. No. 38-1, p. 4) defies understanding.   Moreover, it cannot be the case that Commisimpex was unaware of this decision, since Commisimpex itself cited it on the very next page of its brief.   (*See id.* at 5.)

appeal which could reverse the judgment, the post-judgment Interrogatories which seek to identify assets for judgment enforcement

> are premature, unduly burdensome, wasteful and an unreasonable and inefficient use of judicial and party resources in view of the pendency of the 2013 Award Appeal, and . . . therefore any responses to the Interrogatories should be deferred pending resolution of the 2013 Award Appeal, irrespective of whether any stay of execution of the Judgment by supersedeas bond or otherwise has been or will be obtained under Fed. R. Civ. P. 62(d).

The Congo's General Objection No. 5 (*see* Dkt. No. 38-4, p. 3, ¶ 5) amplifies this point in respect of the fact that the pending appeal implicates not merely substantive legal issues but specifically jurisdictional issues, objecting that responses to the Interrogatories:

> should be stayed where and while the Congo's challenges to this Court's subject-matter jurisdiction and personal jurisdiction over the Congo in this action are under review in the pending 2013 Award Appeal.

(*See also* General Objection No. 37 (Dkt. No. 38-4, p. 10, ¶ 37.)  In view of the Court's broad discretion to manage and limit discovery, including post-judgment discovery (*see* Point III, *supra*), this Court has the power and would be well within the sound exercise of its discretion to stay any responses to the Interrogatories until the Congo's appeal is decided.

## V.

## COMMISIMPEX IS NOT ENTITLED TO
## AN AWARD OF EXPENSES OR ATTORNEYS' FEES

Rule 37 of the Federal Rules of Civil Procedure prohibits a movant on a discovery motion from obtaining expenses, such as attorneys' fees, where

> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

"Substantially justified" under this rule is not a demanding test.  It does not mean that the opponent's position in the discovery dispute must ultimately prevail.  Rather, the Supreme Court

20

has held that a party meets the "substantially justified" standard whenever there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

> [A]s between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.

*Id.*; *accord Alexander v. F.B.I.,* 186 F.R.D. 144, 147 (D.D.C. 1999); *see also* 8B Charles Alan Wright, Arthur R. Miller et. al., *Federal Practice and Procedure* § 2288 (3d ed. 2015) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.").

For example, "[w]hen there is no controlling precedent on the issue, and counsel marshals what authority there is in support of her position, the position she articulates will be found to be substantially justified even if she does not prevail." *Boca Investerings P'ship v. United States,* No. CIV.A. 97-602PLF/JMF, 1998 WL 647214, at *1 (D.D.C. Sept. 1, 1998) (explaining that the "substantially justified" standard is "a forgiving one" and expenses have been disallowed when, *e.g.,* applicability of privilege claimed required a case by case, *ad hoc* balancing of public policies; the fact that one policy outweighed the other did not permit award of expenses).

The minimal level of this "forgiving" standard is illustrated by the very cases Commisimpex cites in its Motion to Compel, because they demonstrate types of egregious behavior outside the bounds of "substantial justification" in discovery matters that are nothing like the facts here. In *Parsi v. Daioleslam*, 778 F.3d 116, 127, 131-32 (D.C. Cir. 2015), for example, the D.C. Circuit held that the district court did not clearly err in awarding the defendant

21

litigation expenses and fees after the plaintiff (a) withheld emails with third parties, (b) made *no attempt* to explain omissions, and (c) instead misrepresented during a hearing that technical reasons had precluded it from producing the e-mails.  Likewise, in *Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 377, 381-82 (D.D.C. 2013), the district court granted attorneys fees where the defendant refused to provide emails by claiming that the documents had been accidentally lost or destroyed, although being under a duty to preserve the evidence.

Here, however, the Congo has provided "substantial justification" for the positions it took in its responses and objections to the Interrogatories, as detailed in Points I-IV, *supra*.  Some of the Congo's objections raise purely legal issues under the Federal Rules, or various statutes and treaties, or under jurisdictional doctrines.  Others of them — such as evaluating whether to stay post-judgment discovery pending the outcome of the Congo's appeal, or evaluating issues of comity or of how to address the massive burdens imposed by the breezy overbreadth with which the Interrogatories were drafted — involve matters that ultimately are within the Court's of discretion.  Such matters, absent agreement of the parties, can only be resolved through motion practice.  And in any event, even if reasonable minds could differ on how to read and apply *NML Capital* in view of the narrow and unusual procedural posture from which that case's holding arose, district courts still possess broad discretion to manage and limit discovery under basic provisions of the Federal Rules of Civil Procedure.

Commisimpex suggested in the parties' meet-and-confer, and in the Motion to Compel, that since many of the Congo's objections interposed objections "to the extent that" certain of the Interrogatories raised particular issues, the Congo at least should have responded to those Interrogatories (or the aspects thereof) that did not implicate such issues.  But, as the Congo pointed out in the meet-and-confer, and as shown in Point IV, *supra*, the Congo has certain

across-the-board general objections relating to its pending appeal that provided its basis for objecting without substantive responses to any of the Interrogatories at this time.  (*See* Dkt. No. 38-5 (e-mails exchanged by counsel following the meet-and-confer to confirm their positions).)

Notably, with respect to the Congo's federal jurisdictional objection in General Objection No. 6 (*see* Point IV, *supra*), counsel for the Congo specifically volunteered in the follow-up e-mails that:

> We also stated [during the meet-and-confer] that the law is not entirely clear with respect to our General Objection 6, but that it is possible our position on that objection could be changed if shown otherwise.

Dkt. No. 38-5, p. 1.  Nevertheless, counsel for Commisimpex never came forward with any authority contradicting the Congo's position on this point, and indeed still has not done so on this Motion to Compel.  To suggest in these circumstances, and in view of the discussion and authority cited in Point IV, *supra*, that the Congo's position on this across-the-board issue was not "substantially justified" within the meaning of Rule 37 is wholly unwarranted and without basis.

Similarly, as noted in Points II-III, *supra*, with respect to the vast majority of the Congo's general objections and objections to specific Interrogatories and to definitions and instructions, the Motion to Compel makes no argument and offers no law to suggest that such objections are improper at all, much less not "substantially justified" within the meaning of Rule 37.  Nor were any supposed issues as to many of these objections even raised or addressed during the "fairly brief meet-and-confer conversation" (*see* Dkt. No. 38-5, p. 1) between counsel before Commisimpex filed its Motion to Compel.  Here again, to contend that the Congo's position was not "substantially justified" within the meaning of Rule 37 is without basis.

For these reasons, irrespective of whether or not this Court decides to award any relief to Commisimpex on this Motion to Compel, Commisimpex's request for expenses and attorneys' fees under Rule 37 should be denied.

## **CONCLUSION**

For the foregoing reasons, Commisimpex's Motion to Compel, including its prayer for costs and attorneys' fees, should be denied in all respects.

Dated: November 23, 2015

Respectfully submitted,

CHADBOURNE & PARKE LLP


By      */s/ Robert A. Schwinger*

Robert A. Schwinger (DC Bar ID # NY0092)
Rachel W. Thorn (admitted *pro hac vice*)
Marc Suskin (admitted *pro hac vice*)
Members of the Firm
Attorneys for Respondent
Republic of the Congo
1301 Avenue of the Americas
New York, NY  10019
(212) 408-5100
*rschwinger@chadbourne.com*
*rthorn@chadbourne.com*
*msuskin@chadbourne.com*

Dana Frix
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 974-5600

Of Counsel

24