## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMMISSIONS IMPORT EXPORT S.A., | ) ) ) | |
| *Petitioner*, | ) ) | |
| *v.* | ) ) | Civil Action No. 1:13-cv-713-RJL |
| REPUBLIC OF THE CONGO, | ) ) ) | |
| *Respondent.* | ) ) ) | |

### REPLY MEMORANDUM IN SUPPORT OF COMMISIMPEX'S MOTION TO COMPEL REPUBLIC OF THE CONGO TO ANSWER POST-JUDGMENT INTERROGATORIES

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicolle Kownacki (D.C. Bar No. 1005627)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Commissions Import Export, S.A.*

December 10, 2015

–i–

## **TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................................2

I.    Commisimpex's Interrogatory Requests Are "Relevant" and "Proportional" to the Execution of its Judgment ...................................................................................................2

II.    A Stay of Discovery Pending Appeal Has Not Been Requested and Would Be Improper ............................................................................................................................6

III.    No Other Legal or Prudential Considerations Should Limit Commisimpex's Discovery Requests .............................................................................................................9

IV.    Commisimpex Is Entitled to an Award of Expenses and Attorney's Fees ......................11

CONCLUSION .............................................................................................................................12

On October 9, 2013, after years of arbitrating its claims, a judgment in the amounts of €567,184,160.72 and $855,000[1], plus interest, was rendered against the Congo. Am. Judgment, Dkt. No. 18. The Congo has refused to pay that judgment or the underlying arbitral award. The Congo has also refused to provide any information in response to Commisimpex's post-judgment interrogatories.

The Congo's arguments in its Opposition are not well taken. First, the principle of proportionality on a judgment of more than $768 million demands that significant discovery be allowed. The discovery requested is relevant and proper as recently discussed by the Supreme Court in *NML Capital*. Moreover, given that the Congo unreasonably refuses to provide any information whatsoever, exercise of discretion in this instance would tilt toward permitting all the discovery to go forward. Second, the Congo has neither moved for a stay of enforcement of the judgement nor posted a bond. Thus, there is no basis for delaying discovery pending appeal. Third, an award of attorney's fees is proper where the responding party effectively refuses to even engage in the process.

On December 3, 2015, in similar circumstances involving a judgment on an arbitral award against a foreign state and interrogatory requests that were substantially identical, Judge Schofield of the Southern District of New York granted a judgment-creditor's motion to compel discovery *in toto*. *See* Declaration of Francis A. Vasquez, Jr. dated Dec. 10, 2015 (attaching motion papers, interrogatories, and order). The outcome should be the same here.

---

[1] The sum total is equivalent to $768,816,681.77, as of October 9, 2013.

**ARGUMENT**

I.   **COMMISIMPEX'S INTERROGATORY REQUESTS ARE "RELEVANT" AND "PROPORTIONAL" TO THE EXECUTION OF ITS JUDGMENT**

As pretext for failing to produce *any* discovery in response to Commisimpex's request, the Congo contends that Commisimpex's Interrogatory requests are "'outside the scope permitted by Rule 26(1)'"—even though the Congo has refused to produce any information that it would consider "inside" the scope. Opp'n 5 (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). This argument is based on a deliberate misreading of *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014), and should be rejected.

Amended Rule 26(b)(1), which has now taken effect, states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Commisimpex's Interrogatories easily meet that standard. First, there can be no doubt that the requests are "proportional to the needs of the case," given that the Congo owes Commisimpex over $768 million (Am. Judgment, Dkt. No. 18), and, moreover, that Commisimpex is seeking only interrogatory responses at this juncture. The Congo complains in exaggerated fashion that Commisimpex's request for information about "any and all" assets "call[s] for disclosure of assets down to [the] level of paper clips." Opp'n 16. But given the immense size of Commisimpex's judgment, as well as the Congo's recalcitrant history of avoiding repayment to Commisimpex (*see also generally Commisimpex v. Republic of the Congo, et al.*, Case No. 1:12-cv-743 (D.D.C.) (seeking enforcement of 15-year-old unpaid debts)), Commisimpex's broad general asset discovery is more than appropriate. *See Aurelius*

*Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 17 (2d Cir. 2014) ("Broad post-judgment discovery in aid of execution is the norm in federal . . . courts."). Commisimpex is not on a pre-judgment fishing expedition seeking to establish its claim. Commisimpex holds a valid enforceable judgment, and seeks only information that will assist in enforcing that judgment. As to paper clips specifically, while a *de minimis* exception is surely implied, even relatively minor assets may lead to the discovery of potentially executable assets, and Commisimpex has no way of knowing otherwise until it receives actual information. Furthermore, the burden to the Congo of articulating the answers to the Interrogatories is far outweighed by the benefit of bringing this long-running high-stakes dispute to a close. Commisimpex's Interrogatories plainly further that end.

Commisimpex's Interrogatory requests also satisfy the Rule 26(b)(1) standard because they are relevant to identifying property that potentially may be executable. Despite the Congo's numerous objections to the contrary (*see* Opp'n 5-12), the standard for obtaining post-judgment discovery is no higher than that. As the Supreme Court explained in *NML Capital*, it was appropriate for the judgment-creditor to "ask for information about Argentina's worldwide assets generally," so that the creditor could "identify where Argentina may be holding property that *is* subject to execution." 134 S. Ct. at 2258. While that request "was bound to turn up information about property that Argentina regards as immune[, the judgment creditor] may think the same property *not* immune. In which case, Argentina's self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter." *Id.*

The Congo phrased numerous of its general objections as objecting "to the extent that" the Interrogatory calls for information about assets that are not subject to attachment for a variety of reasons, including purported immunities and enforceability issues. *E.g.* General Objections 8,

10-27.  This is an acknowledgement that Commisimpex has not, in fact, framed its requests as seeking "information that *could not possibly* lead to executable assets."  134 S. Ct. at 2257 (emphasis added).  As the Supreme Court noted, a request seeking information *only* about *un*-attachable assets would be "irrelevant" for discovery purposes.  *Id.*  But here, Commisimpex has made broad requests, and the Congo has objected to the *hypothetical* irrelevance of the information it might disclose in response to the Interrogatories.  The Congo makes no affirmative assertion that any *specific information* it must disclose is irrelevant.

The Congo's unreasonable tactics are foreclosed by the reasoning of *NML Capital*, which clearly divests the Congo of a gatekeeper role in determining which assets are attachable and which are not.  *NML Capital* makes clear that the job of making that determination is one for the Court ("the District Court will have to settle the matter"), which, in practical terms, can only occur after the existence of specific assets has been disclosed.  Though the Congo takes issue with Commisimpex's failure to "challenge[] the validity of any of the immunities from execution identified in the Congo's General Objections" (Opp'n 7), Commisimpex cannot argue in a vacuum against the hypothetical applicability of these purported immunities.  Moreover, the Court cannot, in a vacuum, make complex, burdensome decisions about the attachability of hypothetical assets before their existence is even revealed.

Indeed, before volunteering *any disclosures whatsoever*, the Congo would, apparently, have this Court determine—merely on the Congo's say-so—that hypothetical, unspecified assets are unavailable to be executed upon because they are:

- Immune under the FSIA, 28 U.S.C. §§ 1330, 1602 *et seq.*;

- Immune under the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227;

- Immune under the Vienna Convention on Consular Relations, Apr. 24, 1963, 596 U.N.T.S. 261;

–4–

- Immune under customary international law;

- Immune under public international law;

- Immune under foreign law or European Union law and regulation;

- Immune under any applicable law where the hypothetical asset may be located;

- Located in unspecified jurisdictions that would not recognize or enforce a U.S. judgment;

- Located in unspecified jurisdictions where assets are not subject to execution based on a U.S. judgment; or

- Located in OHADA member states that "presumably" (though even the Congo is not sure) would not allow Commisimpex to execute a judgment in its own name, due to the previous fraudulent liquidation proceedings in the Congo that this Court rightly declined to recognize. *See* Order dated Jul. 6, 2015, Dkt. No. 35, at 4-6.

Significantly, it is not even clear how the Congo would expect the Court to make such determinations, other than by anointing the Congo the gatekeeper of all immunity and enforceability decisions—which is precisely what *NML Capital* holds the Court should not do. Even if, as the Congo suggests, foreign state property is "presumed immune from attachment" (Opp'n 7), any decision here other than requiring complete disclosure grants the Congo the power to make self-serving determinations as to whether a property satisfies any of the exceptions to immunity.  This would be similar with respect to purportedly applicable immunities under the Vienna Conventions, as well.  *See* Opp'n 8.  Even if "[d]iplomatic properties are generally immune from attachment" (*id.*), any decision here other than requiring complete disclosure vests in the Congo the power to determine what is a "diplomatic property" under the treaty or under customary international law.  The Congo cannot be expected to make that decision in any way other than a self-serving one.  And in any event, the Congo already had the opportunity to produce self-identified information that it deemed non-objectionable—such as

information about any assets or individuals in the United States—and it *completely refused to do so*. As the Second Circuit recently explained with respect to a similar effort by Argentina to quash post-judgment discovery by reference to the Vienna Conventions, the FSIA, and international law:

> We take no view on Argentina's treaty interpretations because even if those interpretations are correct, appellees' discovery demands need not be quashed. Insofar as the discovery demands reach diplomatic or consular *property* that is immune from attachment, Argentina should object if and when appellees actually seek to execute on such property; its "self-serving legal assertion" of immunity does not entitle it to withhold otherwise discoverable information. . . . Insofar as the discovery demands reach diplomatic or consular *documents* that may be privileged or "inviolable" under the treaties, Argentina should present its objections to the district court in the form of assertions of privilege or inviolability.

*Aurelius Capital*, 589 F. App'x at 17 (citing *NML Capital*, 134 S.Ct. at 2257-58; *EM Ltd.v. Republic of Argentina*, 695 F.3d 201, 209 (2d Cir. 2012)).

This Court cannot define relevance so narrowly that the Congo would be exempt from disclosing mere *information* about assets that may, after a court determination, be found non-executable, and *NML Capital* does not instruct otherwise. Accordingly, this Court should find that Commisimpex's Interrogatories are within the scope of the Federal Rules and compel the Congo to answer them.

## II. A STAY OF DISCOVERY PENDING APPEAL HAS NOT BEEN REQUESTED AND WOULD BE IMPROPER

It has long been the law that this Court "retains the power to enforce an unstayed, unsuperseded judgment throughout the pendency of appeal." *S.E.C. v. Diversified Growth Corp.*, 1984 WL 21134, *1 (D.C. Cir. 1984); *see also Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1129 (D.C. Cir. 1978) ("[T]he vitality of [a] judgment is undiminished by pendency of the appeal. Unless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken, the judgment remains operative."); *Baker v. Socialist People's Libyan*

*Arab Jamahirya*, 810 F. Supp. 2d 90, 97 (D.D.C. 2011) (denying a motion to stay enforcement of a money judgment against a foreign sovereign while an appeal was pending).

The Congo seemingly contends that Rule 62.1 displaces this long-standing rule.  *See* Opp'n 18.  It does not.  Rule 62.1(a) provides in full:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1.  On its face, Rule 62.1 concerns only those motions seeking relief pending appeal that the district court already *lacks authority to grant*, such as a Rule 60(b) motion seeking relief from a final judgment.  The rule does not itself attempt to divest the district court of all jurisdiction over a matter in the event of an appeal.  As the Advisory Committee Note to Rule 62.1 states plainly:

> Rule 62.1 ***does not attempt to define the circumstances in which an appeal limits or defeats the district court's authority to act in the face of a pending appeal***.  The rules that govern the relationship between trial courts and appellate courts may be complex, depending in part on the nature of the order and the source of appeal jurisdiction.  Rule 62.1 applies only when those rules deprive the district court of authority to grant relief without appellate permission.  If the district court concludes that it has authority to grant relief without appellate permission, it can act without falling back on the indicative ruling procedure.

Fed. R. Civ. P. 62.1, Advisory Committee Note 2009 (emphasis added).  Thus, Rule 62.1 does not interfere with the normal discovery provisions available to judgment creditors such as Commisimpex, and it does not suggest that this Court lacks jurisdiction to enforce Commisimpex's discovery request.

The Congo strains to support its argument by relying on the case *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982).  *See* Opp'n 17-18.  But neither the case, nor the "basic federal jurisdictional principle" the Congo suggests it stands for, has any bearing on the

present circumstances.  *Griggs* concerned the timeliness of a notice of appeal filed prior to the filing of a Rule 59 motion to alter or amend the judgment, circumstances plainly not applicable here.  Its "basic principle"—that "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal" (459 U.S. at 58)—is not a "per se rule" and, indeed, by the terms of the principle itself, permits the district court to take "limited action during pendency of the appeal." *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231, 233-34 (S.D.N.Y. 1999) (citing *Griggs* and identifying numerous exceptions to this principle, including, *inter alia*, determining that a judgment was non-appealable or non-final, correcting clerical errors in the judgment, denying Rule 60(b) motions, and determining attorney's fees).  The enforcement and execution of unstayed judgments is indisputably an exception to this "basic principle."  *See* Fed. R. Civ. P. 62.  Post-judgment discovery, which is contemplated in Rule 69(a)(2) as part of the process for "execution" of a judgment, is thus also an exception to the "basic principle."

The only case the Congo points to that could even possibly indicate that the law is "unclear" as to the jurisdiction of this Court to enforce post-judgment discovery during an appeal is an unpublished magistrate decision that was later overruled as moot.  *See* Opp'n 18-19 (citing *Cont'l Transfert Technique Ltd v. Fed. Gov't of Nigeria*, No. CV 08-2026 (PLF/JMF), 2014 WL 2118712 (D.D.C. May 21, 2014), *overruled* 78 F. Supp. 3d 376, 378 (D.D.C. 2015)).  Contrary to the Congo's misleading assertion (Opp'n 19, n.6), Commisimpex did not rely on this unpublished, overruled, magistrate decision in its brief, and instead cited a later-issued, published decision in the same long-running case.  Regardless, the decision's holding is so contrary to long-established law that, were it not "rendered moot," it would have been explicitly overturned by Judge Friedman.  *See S.E.C. v. Diversified Growth Corp.*, 1984 WL 21134, *1 (D.C. Cir.

–8–

1984); *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1129 (D.C. Cir. 1978). The Congo's citation to this decision hardly makes its objection to all discovery non-frivolous. *See* Opp'n 19.

The Congo further argues that even if service of the Interrogatories and adjudication of the Motion to Compel "were not formally barred as a federal jurisdictional matter," this Court should "defer" discovery in the "sound exercise of the Court's discretion pending resolution of the pending appeal." Opp'n 19. This request for a "deferral" is nothing other than a request for an informal stay—a process which has a formal procedure as outlined in Rule 62 that, notably, could require the Congo to post a supersedeas bond, which it has not done. It is not "premature [or] unduly burdensome" (Opp'n 20 (quoting Congo General Obj. 5)) for this Court to grant discovery in aid of execution of a judgment that has been final and enforceable for over two years. *See Cont'l Transfert Technique Ltd. v. Nigeria*, 308 F.R.D. 27, 39 (D.D.C. 2015) (granting broad post-judgment discovery in permitting a Rule 30(b)(6) deposition after judgment had been final for more than 2 years). Accordingly, this Court should not, as a matter of law or as a matter of discretion, grant the Congo's *de facto* request for a stay of enforcement of the judgment.

### III. NO OTHER LEGAL OR PRUDENTIAL CONSIDERATIONS SHOULD LIMIT COMMISIMPEX'S DISCOVERY REQUESTS

The Congo makes an additional last-ditch effort to avoid its post-judgment discovery obligations by asking this Court to limit, as a matter of discretion, the Congo's obligation to respond to Commisimpex's discovery requests. Opp'n 12-17. Each of these purported objections, however, is purely makeweight and should be rejected:

- General Objection No. 28, objecting to discovery of "information that concerns non-public diplomatic matters, national security matters, or international security matters, including but not limited to classified or secret information." Dkt. No. 38-4, at 8, ¶ 28.

–9–

Like the Congo's immunity objections, this objection is purely hypothetical. It is unlikely the Congo would need to produce any national- or international-security information, but regardless, the Congo cannot use this hypothetical objection as a basis for excusing its failure to produce *any* information in response to Commisimpex's discovery requests.

- General Objection No. 29, objecting "on grounds of comity interests." Dkt. No. 38-4, at 8, ¶ 29.

The Supreme Court in *NML Capital* explicitly rejected comity as a basis for limiting post-judgment discovery, stating that "[t]hese apprehensions are better directed to that branch of government with authority to amend the [FSIA]," *i.e.* Congress. 134 S. Ct. at 2258. Moreover, the Congo makes no representation that Commisimpex's Interrogatories in fact undermine international comity, noting only that Commisimpex's request "*might* cause" a burden to the Congo, which has the "*potential* for undermining international comity." Dkt. No. 38-4, at 8, ¶ 29 (emphases added).

- General Objection No. 36, objecting to discovery "about assets located outside the jurisdiction of the United States on the ground that such purported extraterritorial application of Fed. R. Civ. P. 69(a)(2) is improper[.]" Dkt. No. 38-4, at 10, ¶ 36.

This objection is meritless, as the Federal Rules make clear that "[p]arties may obtain discovery regarding *any nonprivileged matter that* is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts in this Circuit and elsewhere have consistently permitted post-judgment discovery about assets located abroad. *See, e.g.*, *Cont'l Transfert Technique Ltd.*, 308 F.R.D. at 31, 39 (denying Nigeria's motion to strike post-judgment notice of deposition that sought information on Nigerian global assets); *Aurelius Capital*, 589 F. App'x at 18 (affirming grant of post-judgment motion to compel production of documents regarding assets, such as military property, located outside of the United States).

- General Objection No. 38, objecting to discovery that could "provide information that could be used . . . to facilitate the transfers of any assets to persons or entities on any sanctions list issued by the United States Treasury Department and/or the Office of Foreign Assets Control (OFAC)." Dkt. No. 38-4, at 10-11, ¶ 38.

This objection is simply noise, and the Court should not exercise its discretion to limit the production of such hypothetically problematic information. It is unclear how the Court is to determine *now* whether information might be used *later* to facilitate prohibited asset transfers. Moreover, whether an asset transfer would be prohibited is an issue for consideration at the attachment and execution stage, not an issue for discovery.

Finally, the Congo asserts "typical" objections that Commisimpex's requests are unduly burdensome. Opp'n 16. As discussed above, Commisimpex's requests are entirely proportional and appropriate to aid the execution of a $768 million judgment that the judgment-debtor refuses to pay outright. *See supra* Section I. The Congo cannot use such objections to escape its discovery obligations, and the Court should deny the Congo's request that it exercise discretion to limit the scope of discovery before the Congo has even produced a single piece of information in response.

### IV. COMMISIMPEX IS ENTITLED TO AN AWARD OF EXPENSES AND ATTORNEY'S FEES

The Congo attempts to avoid an award of expenses and fees by elaborately parsing the phrase "substantially justified" and suggesting that the standard for awarding fees is a "forgiving" one. Opp'n 21. But, aside from its meritless "across-the-board" suggestion that this Court lacks jurisdiction to enforce post-judgment discovery (*see supra* Section II), not a single one of the Congo's objections excuses its total failure to produce any information. Had the Congo produced *some* information, a productive discussion could have transpired regarding the extent to which Commisimpex required additional, but potentially objectionable, information,

and perhaps then, an award of fees and expenses would not have been appropriate.  Instead, the Congo forced Commisimpex to resort to seeking a court order to obtain any information whatsoever to enforce its valid, years-old judgment.  Moreover, as detailed above, the Congo's additional objections were not "substantially justified," because they were answered directly by the Supreme Court's recent decision in *NML Capital*.  *See supra* Section I.  The Congo cannot offer a plain misreading of a Supreme Court case that is directly on point and then claim that it has advanced a "substantially justified" objection to discovery.

Such tactics of evasion and delay must not be rewarded, and Commisimpex should be awarded fees and expenses associated with bringing the present motion.

## CONCLUSION

For the foregoing reasons, as well as those stated in Commisimpex's Memorandum in Support of its Motion to Compel the Congo to Answer Post-Judgment Interrogatories, Commisimpex respectfully requests that the Court grant its Motion and award Commisimpex all costs and fees associated with bringing the Motion.

Dated: Washington, D.C.  
December 10, 2015

Respectfully submitted,

**WHITE & CASE**LLP

/s/ Francis A. Vasquez, Jr.  
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)  
Nicolle E. Kownacki (D.C. Bar No. 1005627)  
701 Thirteenth Street, N.W.  
Washington, D.C. 20005  
(202) 626-3600

*Counsel for Commissions Import Export S.A.*