# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>IOAN MICULA, *et al.*,<br><br>   Petitioners,<br><br>VIOREL MICULA,<br><br>   Intervenor,<br><br>For Recognition and Enforcement of an Arbitration Award<br><br>   - against -<br><br>THE GOVERNMENT OF ROMANIA,<br><br>   Respondent. | Case No.1:15-mc-00107-P1 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ROMANIA TO ANSWER POST-JUDGMENT INTERROGATORIES**

Paula H. Anderson
Danforth Newcomb
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848 7727
Facsimile: (212) 646 7727
paula.anderson@shearman.com
dnewcomb@shearman.com

*Counsel for Intervenor Viorel Micula*

Francis A. Vasquez, Jr.
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626 3600
Facsimile: (202) 639 9355
fvasquez@whitecase.com

Jacqueline L. Chung
Anna K. Diehn
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone: (212) 819 8200
Facsimile: (212) 354 8113
jacqueline.chung@whitecase.com
anna.diehn@whitecase.com

*Counsel for Petitioners Ioan Micula, S.C. European Food S.A., S.C. Starmill S.R.L. and S.C. Multipack S.R.L.*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1
BACKGROUND ..................................................................................................................1
ARGUMENT ........................................................................................................................5
    I.   This Court Has Authorized Claimants to Take Post-Judgment Discovery of Romania ...................................................................................................................5
    II.  Romania Has Refused to Cooperate With Claimants to Produce the Requested Post-Judgment Interrogatory Responses .................................................................7
    III. Claimants Are Entitled to Attorney's Fees Incurred to Compel Romania's Compliance with the Post-Judgment Interrogatories ..............................................9
CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.*,
   No. 01 Civ. 9649 (JFK), 2006 WL 3456521 (S.D.N.Y. Nov. 30, 2006) ................................. 7, 9

*Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*,
   No. 05 Civ. 10174, 2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007) ............................................ 8, 9

*Milliken & Co. v. Bank of China*,
   758 F.Supp.2d 238 (S.D.N.Y. 2010) ............................................................................................ 9

*Republic of Argentina v. NML Capital Ltd*,
   134 S. Ct. 2250 (2014) .................................................................................................... 5, 6, 7

*Sang Lan v. Time Warner, Inc.*,
   No 11 Civ. 2870, 2015 WL 480378 (S.D.N.Y. Feb. 5, 2015) ..................................................... 10

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
   924 F.Supp.2d 508 (S.D.N.Y. 2013) ............................................................................................ 7

## STATUTES AND RULES

28 U.S.C. § 1610(c) ................................................................................................................... 3

C.P.L.R § 5223 of the New York Civil Practice Law ............................................................... 6

Federal Rule of Civil Procedure 37 ................................................................................ 1, 9, 10

Federal Rule of Civil Procedure 69(a)(2) .................................................................................. 6

# INTRODUCTION

Petitioners Ioan Micula, S.C. European Food S.A., S.C. Starmill S.R.L. and S.C. Multipack S.R.L. and Intervenor Viorel Micula (collectively "Claimants"), hereby move, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Respondent, the Government of Romania ("Romania"), to respond to post-judgment interrogatories issued to Romania over four months ago. Since then, the parties have engaged in several rounds of letter briefing, participated in two discovery conferences before this Court, and met and conferred on at least three different occasions. All of this activity has been for naught because Romania has neither produced nor agreed to produce *any* information in response to any of the interrogatories, notwithstanding this Court's ruling that Claimants are entitled to post-judgment discovery. Further, despite this Court's instruction to the parties to engage in good faith negotiations as to the scope of the discovery requests – and Claimants' good faith attempt to do so – Romania has continued to sideline Claimants' entreaties and employ unacceptable stalling tactics to delay discovery indefinitely. Left with no other alternative, Claimants now move this Court for an order compelling Romania to provide substantive answers to the post-judgment interrogatories and, additionally, directing Romania to compensate Claimants for costs incurred to enforce compliance with the requests.

# BACKGROUND

In April 2015, Claimants brought an action in this District to recognize and enforce an arbitral award issued by the International Centre for Settlement of Investment Disputes ("ICSID") against Romania on December 11, 2013 (the "Award").[1] On April 28, 2015, this Court issued a judgment recognizing the Award against Romania (the "Judgment"). ECF No.

---

[1] ICSID Case No. ARB/05/20.

13. The Judgment directed Romania to pay the Claimants a total of 376,433,229 Romanian Leu ("RON") plus interest, as set forth in the Award.

In an effort to identify Romanian assets that might be subject to post-judgment enforcement proceedings, Petitioner Ioan Micula issued post-judgment interrogatories to Romania on May 12, 2015. Declaration of Francis A. Vasquez, Jr. (October 8, 2015) ("Vasquez Decl.") Ex. A. These interrogatories asked Romania to identify various assets and investments owned by Romania or an agency or instrumentality of Romania in the United States and around the world.

Romania responded to the post-judgment interrogatories on July 2, 2015, and in its response objected to all but one of the interrogatories on the grounds that (1) Romania was immune from discovery under the Foreign Sovereign Immunities Act ("FSIA"); (2) the requests were pre-mature because Romania's motion to vacate the judgment was still pending at that time;[2] (3) Petitioners had failed to comply with notice provisions under the FSIA; and (4) the requests were overbroad. Vasquez Decl. Ex. B. The parties met and conferred for the first time on July 15, 2015, but were unable to resolve the dispute. Vasquez Decl. ¶ 6.

Accordingly, Petitioners wrote to this Court on July 27, 2015, requesting a pre-motion conference relating to the post-judgment interrogatories. ECF No. 59. In that letter, Petitioners explained that the FSIA did not shield Romania from post-judgment discovery and that its other objections relating to the scope and the timing of the requests lacked merit. Romania responded on August 8, 2015, in a letter reiterating its previous objections as to the FSIA and the scope of discovery. ECF No. 63.

---

[2] The Court subsequently denied Romania's motion to vacate the judgment on August 5, 2015. ECF No. 66.

2

At the August 6, 2015 conference before this Court, Romania also raised the argument that Petitioners should be required to initiate a separate enforcement proceeding before obtaining post-judgment discovery. Vasquez Decl. Ex. C (August 6, 2015 Hr'g Tr. at 10:8-15). Although the Court stated that it was inclined to find that Petitioners were entitled to issue the post-judgment interrogatories (subject to the exclusion of discovery within Romania), it withheld a ruling at that time and gave Romania an opportunity to set forth its new argument in a letter to the Court. *Id.* at 10:16-24. The Court also encouraged the parties to begin negotiating the scope of the interrogatories to avoid any further delay in the event that the Court found the interrogatories were appropriate. *Id.* at 13:4-8.

On August 13, 2015, Romania submitted a letter to the court re-iterating its argument that Petitioner Ioan Micula should be required to institute a supplemental proceeding in aid of execution before being entitled to post-judgment discovery. ECF No. 68. On the same day, as directed by the Court, Claimants submitted another letter to the Court requesting a finding under 28 U.S.C. § 1610(c) that a "reasonable period of time" had elapsed since the entry of judgment in this action, such that Claimants should be permitted to pursue attachment in aid of execution and execution of the Judgment. ECF No. 70. The parties responded to each other's letters on August 20, 2015. ECF Nos. 76, 77.

Per the Court's instructions, the parties engaged in a second meet and confer on August 24, 2015. Vasquez Decl. ¶ 8. At that conference, Romania stood by its objections as set forth in its letters and stated that it did not believe that it was obligated to comply with the discovery requests at that time. *Id.*

In a telephonic hearing with the Court on September 3, 2015, the Court held that a reasonable period of time had elapsed since the entry of judgment and that Claimants were

3

thereby authorized to pursue attachment in aid of execution and execution of the judgment, including discovery in aid of execution and enforcement. Vasquez Decl. Ex. D (Sept. 3, 2015 Hr'g Tr. at 6:11-15).[3] The only limitation that the Court imposed on the discovery requests was that they should exclude discovery within Romania. *Id.* at 9:11-14. In lieu of entering the discovery requests as is, the Court gave Romania yet another opportunity to negotiate the scope of the requests with Claimants[4] and encouraged Romania "to have a discussion with [the Claimants] and try to narrow the issues in a way that is efficient and makes sense." *Id.* at 9:8-10.[5] The Court further stated that in the event the parties could not come to an agreement, the Court would be willing to hear a motion to compel or a motion for a protective order from the parties. *Id.* at 9:24-10:2.

During the third and most recent meet and confer between the parties on September 28, 2015 (scheduled only after several requests to counsel for Romania to confirm a date for the conference), counsel for Romania made it clear at the outset that Romania had not agreed to produce any information in response to the requests. Vasquez Decl. ¶¶ 10-11, Exs. E, F. Counsel for Romania also stated that she was not authorized to agree to the scope of any discovery requests or responses. Vasquez Decl. ¶ 11, Ex. F. Although she suggested that Claimants limit the scope of certain discovery requests to seek information relating to attachable assets used for "commercial activity" in the United States (and provided a narrow definition of "commercial activity" that did not comport with Claimants' understanding of this term as applied under the FSIA), counsel stated that she could provide no assurance that Romania would find the

---

[3] The Court also denied Romania's motion for reconsideration of the August 5, 2015 order denying Romania's motion to vacate the judgment. Vasquez Decl. Ex. D (Sept. 3, 2015 Hr'g Tr. at 6:20-7:1).

[4] The Court separately ruled, over Romania's objection, that all of the Claimants – including Viorel Micula – should be involved in discussions regarding the scope of the discovery propounded on Romania. Vasquez Decl. Ex. D (Sept. 3, 2015 Hr'g Tr. 10:16-13:15).

[5] The Court emphasized that it would be in Romania's interest to "try to narrow the requests so that they still get the information they want, but so that it's not overly broad or repetitive or excessive in terms of work for you." Vasquez Decl. Ex. D (Sept. 3, 2015 Hr'g Tr. at 9:14-19).

4

limitations acceptable or that Romania would be willing to produce the requested information. Vasquez Decl. ¶ 11, Ex. F. Additionally, there were a number of requests, namely Interrogatory Requests Nos. 2, 9, 10, and 12,[6] for which counsel stated that Romania would not provide any responsive information even if Romania chose to provide responsive information to others. Vasquez Decl. ¶ 11, Ex. F.

It became apparent to Claimants during the September 28 meet and confer that Romania, which had not come to the table with an offer to produce *anything* responsive to the requests, had no intention to resolve the discovery dispute through a good faith negotiation. Rather, Romania had treated the scheduling of the meet and confer, and the meet and confer itself, as additional opportunities to stall the discovery process – through delay and by withholding from its counsel any authority to agree to any discovery modifications and refusing to provide any assurance that Claimants' agreement to limit their discovery requests would actually lead to production of responsive information. *E.g.*, Vasquez Decl. ¶¶ 10-11, Exs. E, F. Accordingly, Claimants have brought this motion to compel because Romania has made it more than clear through its actions that it will not produce responsive information absent a court order. Vasquez Decl. ¶ 12, Ex. F.

## ARGUMENT

### I. This Court Has Authorized Claimants to Take Post-Judgment Discovery of Romania

This Court has already found that Claimants are entitled to seek post-judgment discovery in aid of execution. Vasquez Decl. Ex. D (Sept. 3, 2015 Hr'g Tr. at 2:9-21; 6:13-15) (finding that "[P]etitioners are authorized to pursue discovery in aid of execution and enforcement of the judgment entered in this action" and that "discovery may begin"). The Court properly relied on

---

[6] Specifically, these requests seek information regarding assets held by Romania or investments in Romania: Request No. 2 (any bank accounts not maintained by Romania in which Romania has deposited money); Request No. 9 (any foreign assistance that Romania receives); Request No. 10 (any investments made by foreign entities in Romania); and Request No. 12 (any books or records that concern Romania's liquid assets, tangible assets, accounts, debts, creditors, or foreign investments in Romania). Vasquez Decl. Ex. A.

5

the ruling in *Republic of Argentina v. NML Capital Ltd*, 134 S. Ct. 2250 (2014), in which the Supreme Court upheld an order compelling the Republic of Argentina to comply with post-judgment discovery requests. Citing *NML Capital*, the Court stated that "[t]he rules governing discovery in post-judgment execution proceedings are quite permissive" and noted that "Federal Rule of Civil Procedure 69(a)(2) states that in aid of the judgment or execution, the judgment creditor may obtain discovery from any person, including the judgment debtor, as provided in these rules or by the procedure of the state where the court is located." Vasquez Ex. D (Sept. 3, 2015 Hr'g Tr. at 3:17-24 (quoting *NML Capital*, 134 S. Ct. at 2254) (internal quotation marks omitted)). Furthermore, the Court stated that Section 5223 of the New York Civil Practice Law Rules ("C.P.L.R.") provides that "the judgment creditor may compel disclosure of all matter relevant to the subject to the satisfaction of the judgment." *Id*. at 3:24-4:2 (citing C.P.L.R. §5223; 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012 (2d. ed.)).

In so holding, the Court rightfully rejected Romania's objections to post-judgment discovery. First, it rejected Romania's assertion that the FSIA rendered it immune to discovery – an argument also rejected by the *NML* court. *See NML Capital*, 134 S.Ct. at 2252 (holding that "no provision in the FSIA immunizes a foreign-sovereign judgment debtor from postjudgment discovery of information concerning its extraterritorial assets"); Vasquez Ex. D (Sept. 3, 2015 Hr'g Tr. at 5:24-6:1). Second, it rejected Romania's belated and unfounded argument that post-judgment discovery should only be available once judgment creditors had initiated a new proceeding to seek enforcement of the judgment. *Id.* at 2:22-3:16 (citing authorities to support the proposition that a court retains authority to hear ancillary proceedings – including post-judgment discovery proceedings – once it has entered judgment in an action).

Americas 90834083

There is no question, therefore, that Claimants are entitled to undertake discovery within and without the United States to identify information that may lead to attachable assets. *See NML Capital*, 134 S. Ct. at 2258 (authorizing subpoenas that requested "information about Argentina's worldwide assets generally, so that NML can identify where Argentina may be holding property that *is* subject to execution"). Petitioner Ioan Micula's post-judgment interrogatories to Romania, issued for that purpose, are therefore enforceable.

## II. Romania Has Refused to Cooperate With Claimants to Produce the Requested Post-Judgment Interrogatory Responses

Romania's conduct thus far makes it obvious that it has no intention of complying with the discovery requests absent a court order compelling it to do so, and perhaps even after such an order is entered. Since the Petitioner first issued the interrogatories four months ago, Romania has engaged in numerous delay tactics to avoid responding to the discovery requests and, ultimately, to postpone the likelihood that Romania will be required to satisfy the judgment issued by this Court. It has lodged numerous unfounded objections to discovery, ignored Claimants' attempts to schedule court-ordered meet and confer conferences in a timely manner, and refused to engage in productive negotiations about the scope of the discovery requests. *E.g.*, Vasquez Decl. ¶¶ 10-12, Exs. E, F. It has obstructed all of Claimants' good faith efforts to obtain post-judgment discovery. Such dilatory conduct should not be condoned by this Court. *See, e.g.*, *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F.Supp.2d 508, 521 (S.D.N.Y. 2013) (sustaining court's order compelling foreign sovereign to respond to discovery requests to prevent judgment creditor "from further stalling these already prolonged post judgment discovery proceedings"); *Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *8-11 (S.D.N.Y. Nov. 30, 2006) (granting motion to compel post-judgment discovery where judgment debtor

7

offered no valid justification for refusing to comply with judgment creditor's discovery requests).

At the most recent hearing on September 3, 2015, the Court instructed the parties to meet and confer once again to negotiate the scope of the post-judgment interrogatories. Vasquez Decl. Ex. D (Sept 3, 2015 Hr'g Tr. at 6:8-19). The meet and confer requirement comes with certain obligations. "The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible." *Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*, No. 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007). "The meet-and-confer requirement mandates that parties actually 'meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.'" *Id.* (citing *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB) JCF, 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998)).

The parties duly conferred on September 28, 2015 after Claimants contacted Romania repeatedly to schedule a telephone conference. Vasquez Decl. ¶ 10, Ex. E. Although Claimants had expected to negotiate an agreement with Romania as to the scope of Romania's discovery responses, it became clear from the outset that Romania had not come prepared to make any agreements – chiefly because its counsel had not received authorization from Romania to agree on any issue. Vasquez Decl. ¶¶ 10-11, Exs. E, F. Counsel for Romania conceded that Romania had not offered to produce *anything* in response to the interrogatories. Vasquez Decl. ¶ 11, Ex. F. Furthermore, although Romania's counsel requested that Claimants limit the scope of their discovery requests to cover only attachable assets that were involved in "commercial activity"

within the United States, she also repeatedly stated that there was no assurance that Romania would in fact produce discovery even if Claimants agreed to those limitations. Vasquez Decl. ¶ 11, Ex. F. Through its refusal to properly engage with Claimants on discovery issues or give Claimants any indication of what it is "reasonably capable of producing," *Excess Ins. Co.*, 2007 WL 2900217 at *1, Romania thwarted any chance that the parties might be able to resolve the discovery issue on their own without court intervention. In light of these circumstances, Claimants must respectfully request that this Court compel Romania to produce the information to which Claimants are entitled.

### III. Claimants Are Entitled to Attorney's Fees Incurred to Compel Romania's Compliance with the Post-Judgment Interrogatories

Claimants are also entitled to an award of attorney's fees in the event that the Court grants this motion to compel. Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel is granted, then "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). This Court routinely issues awards for attorney's fees and costs to the moving party pursuant to Rule 37. *See, e.g.*, *Banco Central De Paraguay*, 2006 WL 3456521 at *12 (directing movant to submit account of attorney's fees and costs incurred in bringing a motion to compel so that such fees could be imposed on the non-movant); *Milliken & Co. v. Bank of China*, 758 F.Supp.2d 238, 250-51 (S.D.N.Y. 2010) (awarding moving party costs and fees where defendant employed dilatory tactics and acted in bad faith in failing to produce the requested documents).

An award of expenses under Rule 37 is mandatory unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the

9

opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

None of the stated exceptions to this rule apply here. First, as documented above, Claimants engaged in a good faith effort to obtain discovery before resorting to a motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). Second, Romania's refusal to answer the interrogatories or engage in a productive discussion as to their scope is not "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). "Substantial justification" exists only where "there [is] genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Sang Lan v. Time Warner, Inc.*, No 11 Civ. 2870, 2015 WL 480378, at *3 (S.D.N.Y. Feb. 5, 2015) (citations omitted). There is no reasonable basis for Romania's deliberate stonewalling of Claimants' attempts to identify assets that may be used to satisfy a judgment against Romania that has been outstanding for almost two years. Finally, there are no "other circumstances" that would make an award of expenses unjust. Fed R. Civ. P. 37(a)(5)(A)(iii). For these reasons, an award of attorney's fees is proper.

## CERTIFICATION OF GOOD FAITH MEET AND CONFER

Pursuant to Fed. R. Civ. P. 37(a)(1), the Claimants hereby certify that they have engaged in good faith efforts to resolve these discovery disputes without Court Action, as detailed above and in the accompanying declaration of Francis A. Vasquez, Jr.

10

## CONCLUSION

For the foregoing reasons Claimants respectfully request that the Court grant the Motion to Compel Romania to Answer Post-Judgment Interrogatories and award Claimants all costs and fees associated with bringing the present motion.

Dated: New York, New York
October 8, 2015

Respectfully submitted,

WHITE & CASE LLP

/s/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr.
701 Thirteenth Street, N.W.
Washington, DC 20005

-and-

Jacqueline L. Chung
Anna K. Diehn
1155 Avenue of the Americas
New York, NY 10036

*Counsel for Petitioners Ioan Micula, S.C. European Food S.A., S.C. Starmill S.R.L. and S.C. Multipack S.R.L.*

SHEARMAN & STERLING LLP

/s/ Paula H. Anderson
Paula H. Anderson
Danforth Newcomb
599 Lexington Avenue
New York, NY 10022-6069

*Counsel for Intervenor Viorel Micula*

11