# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMISSIONS IMPORT EXPORT S.A.,

*Petitioner,*

v.

Civil Action No. 1:13-cv-713-RJL

REPUBLIC OF THE CONGO,

*Respondent.*

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>COMMISIMPEX'S MOTION FOR SANCTIONS</u>

CHADBOURNE & PARKE LLP
  Robert A. Schwinger (DC Bar ID # NY0092)
  Rachel W. Thorn (admitted *pro hac vice*)
  Marc Suskin (admitted *pro hac vice*)
Counsel of Record for Respondent
  Republic of the Congo
1301 Avenue of the Americas
New York, NY  10019
(212) 408-5100
*rschwinger@chadbourne.com*
*rthorn@chadbourne.com*
*msuskin@chadbourne.com*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 6

I.   NO SANCTIONS SHOULD BE AWARDED, EXCEPT PERHAPS AT
     MOST AN ORDER SETTING A REASONABLE DATE CERTAIN FOR
     SERVING RESPONSES TO THE INTERROGATORIES ................................... 7

     A.   The Reasons Why the Sanctions Sought by Commisimpex Should Be
          Denied Do Not Lie in Denying or Ignoring the Import of the
          Discovery Order or of Any Controlling Precedent ................................... 7

     B.   Given the Lack of Any Specific Deadline in the Discovery Order for
          Completing Interrogatory Responses, No Sanction Is Warranted
          Beyond at Most Now Setting a Date Certain for Compliance ................... 8

II.  EVEN ASSUMING *ARGUENDO* THAT A SANCTION OF SOME KIND
     WERE APPROPRIATE HERE, THE EXTREME SANCTIONS SOUGHT
     BY COMMISIMPEX ARE INAPPROPRIATE AND UNWARRANTED
     FOR A FIRST-TIME MOTION ABOUT DISCOVERY ORDER
     NONCOMPLIANCE ............................................................................................ 13

     A.   Commisimpex Asks for Sanctions Drawn from Cases Whose Facts
          Are Vastly Different From The Facts Here .............................................. 14

     B.   The FSIA Bars the Court from Depriving the Congo of its
          Attachment/Execution Immunity as a Discovery Sanction ..................... 18

III. THERE IS NO BASIS TO IMPOSE RULE 37 SANCTIONS UPON
     CHADBOURNE ................................................................................................... 23

CONCLUSION .................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Alexander v. F.B.I.*, 541 F. Supp. 2d 274 (D.D.C. 2008)................................................................20

*Armstrong v. Executive Office of the President*, 1 F.3d 1274 (D.C. Cir. 1993) .....................10, 11

*Bank Markazi v. Peterson*, No. 14-770, 2016 WL 1574580, slip op. (U.S. Apr. 20, 2016)..........18

\* *Bolger v. Dist. of Columbia*, 248 F.R.D. 339 (D.D.C. 2008) ............................................25, 26, 28

*Bonds v. Dist. of Columbia*, 93 F.3d 801 (D.C. Cir. 1996).......................................................17

*Bradshaw v. Vilsack*, 286 F.R.D. 133 (D.D.C. 2012)..........................................................26, 28

*Butler v. Pearson*, 636 F.2d 526 (D.C. Cir. 1980)................................................................26, 28

*Cent. States, S.E. & S.W. Areas Pension Fund v. Express Freight Lines, Inc.*,
971 F.2d 5 (7th Cir. 1992) ................................................................................................7

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979)............................................................................................11

*Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999)................................................................9, 11

\* *Crawford v. Am. Fed'n of Gov't Employees*, 576 F. Supp. 812 (D.D.C. 1983) .....................25, 28

*Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999)................................22

*Davis v. D.C. Child & Family Servs. Agency*, 304 F.R.D. 51 (D.D.C. 2014) ...........................26

*Edgar v. Barnhart*, 2006 WL 3377587 (W.D. Wis. Sept. 27, 2006)............................................10

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
905 F.2d 438 (D.C. Cir. 1990)...........................................................................................22

\* *FG Hemisphere Assocs. v. Democratic Republic of Congo*,
603 F. Supp. 2d 1, *aff'd*, 637 F.3d 373 (D.C. Cir. 2011)...........................................15, 16, 29

*FG Hemisphere Assocs. v. Democratic Republic of Congo*,
637 F.3d 373 (D.C. Cir. 2011)............................................................................................8

*Hadix v. Caruso*, 465 F. Supp. 2d 776 (W.D. Mich. 2006)........................................................10

*Hayes v. Sebelius*, 762 F. Supp. 2d 90 (D.D.C. 2011)................................................................19

*Henderson v. United States*, 517 U.S. 654 (1996).......................................................................20

**Page(s)**

*Hildebrandt v. Vilsack*, 287 F.R.D. 88 (D.D.C. 2012)..................................................17

*Humphrey's Exterminating Co., Inc. v. Poulter,* 62 F.R.D. 392 (D. Md. 1974) ..........................25

*In re Am. Preferred Prescription, Inc.,* 255 F.3d 87 (2d Cir. 2001) ................................................7

*Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638 (D.C. Cir. 2000)....................................19

\*  *Johnson v. GEICO Cas. Co.*, 269 F.R.D. 406 (D. Del. 2010) ............................................9, 10, 11

*In Re Kellogg Brown & Root, Inc.,* 796 F.3d 137 (D.C. Cir. 2015),
    *cert. denied sub nom. United States ex rel. Barko v. Kellogg Brown & Root, Inc.,*
    136 S. Ct. 823 (2016) ........................................................27

*Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258 (D.D.C. 2009) ................................................17

*Martin v. Shank*, 836 F.2d 1342 (4th Cir. 1988) (*per curiam*) ........................................7

*Myrdal v. Dist. of Columbia*, 248 F.R.D. 315 (D.D.C. 2008)........................................29

*Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180 (3d Cir. 2003)............................25

*Parsi v. Daioleslam*, 778 F.3d 116 (D.C. Cir. 2015) ........................................................8, 10, 11

*Perkinson v. Houlihan's/D.C., Inc.*, 108 F.R.D. 667 (D.D.C. 1985), *aff'd sub nom.*
    *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686 (D.C. Cir. 1987) ..............................29, 30

*Piratello v. Philips Elecs. N. Am. Corp.*, 360 F.3d 506 (5th Cir. 2004) ........................................7

\*  *Republic of Argentina v. NML Capital Ltd.*, 134 S. Ct. 2250 (2014) ................................7, 8, 21

*Rouse Constr. Int'l v. Rouse Constr. Corp.*, 680 F.2d 743 (11th Cir. 1982) ................................7

*Ruckelshaus v. Sierra Club,* 463 U.S. 680 (1983) ........................................................19

*Schipani v. McLeod,* 541 F.3d 158 (2d Cir. 2008)........................................................22

*United States v. Droganes*, 728 F.3d 580 (6th Cir. 2013) ................................................20

*United States v. Dynamic Visions Inc.,* 307 F.R.D. 299 (D.D.C. 2015) ......................................11

*United States v. Horn*, 29 F.3d 754 (1st Cir. 1994) ........................................................20

*United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006), 20
    *aff'd*, 541 F.3d 130 (2d Cir. 2008)........................................................20

\*  *United States v. Waksberg*, 881 F. Supp. 36 (D.D.C. 1995)........................................................20

**Page(s)**

*Walters v. Industrial and Commercial Bank of China, Ltd.*,
   651 F.3d 280 (2d Cir. 2011) ...........................................................................22


**Statutes**

18 U.S.C. § 401 ..............................................................................................................20

Foreign Sovereign Immunities Act:

   28 U.S.C. § 1603(d) ...............................................................................19, 21

   28 U.S.C. § 1603(e) ...............................................................................19, 21

   28 U.S.C. § 1605(a)(1) .................................................................................22

\*   28 U.S.C. § 1609 ...................................................................................18, 21

\*   28 U.S.C. § 1610 ...................................................................18, 19, 21, 22

   28 U.S.C. § 1610(a)(1) .................................................................................22

\*   28 U.S.C. § 1611 ...................................................................18, 19, 21

   28 U.S.C. § 1611(a) .......................................................................................19

   28 U.S.C. § 1611(b) .......................................................................................22

   28 U.S.C. § 1611(b)(1) ...........................................................................19, 21

   28 U.S.C. § 1611(b)(2) ...........................................................................19, 21

Rules Enabling Act:

   28 U.S.C. § 2072 ...........................................................................................20

\*   28 U.S.C. § 2072(b) .......................................................................................20


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 37 .............................................................................................17, 25, 26

Fed. R. Civ. P. 37(b) ........................................................................................................1

Fed. R. Civ. P. 37(b)(2) .................................................................................................24

Fed. R. Civ. P. 37(b)(2)(A) ...........................................................................................13

**Page(s)**

Fed. R. Civ. P. 37(b)(2)(A)(ii) ................................................................14, 19

＊ Fed. R. Civ. P. 37(b)(2)(C) .............................................12, 13, 24, 25, 26, 28, 29, 30

**Other Authorities**

Timothy J. Simeone, Comment, *Rule 11 and Federal Sovereign Immunity: Respecting the Explicit Waiver Requirement*, 60 U. Chi. L. Rev. 1043 (1993) ....................20

Catherine T. Struve, *Sovereign Litigants: Native American Nations in Court*, 55 Villa. L. Rev. 929 (2010) ................................................................................20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| COMMISSIONS IMPORT EXPORT S.A., |
| *Petitioner,* |
| v. |
| REPUBLIC OF THE CONGO, |
| *Respondent.* |

Civil Action No. 1:13-cv-713-RJL

**MEMORANDUM OF LAW IN OPPOSITION TO**
**COMMISIMPEX'S MOTION FOR SANCTIONS**

Chadbourne & Parke LLP ("Chadbourne"), counsel of record for Respondent Republic of the Congo (the "Congo") in the above-captioned action, respectfully submits this memorandum of law in opposition to the motion of Petitioner Commissions Import Export S.A. ("Commisimpex") for sanctions pursuant to Fed. R. Civ. P. 37(b) (Dkt. No. 48) (the "Motion"), in respect of this Court's December 16, 2015 order (Dkt. No. 42) (the "Discovery Order"), which granted Commisimpex's motion to compel with respect to Commisimpex's post-judgment interrogatories to the Congo.

**PRELIMINARY STATEMENT**

While the Congo to date has not served responses to Commisimpex's post-judgment interrogatories, the Discovery Order which Commisimpex accuses the Congo of violating did not set a date certain for providing those responses. Under these circumstances, if any sanction is to be awarded against the Congo, it should be limited at present to the setting of a date certain for those responses. The Court should not impose any of the sanctions that Commisimpex requests in the Motion, which arise from cases where they were used as end-stage sanctions after years of

defiance of court orders that had specific deadlines for compliance — facts easily distinguishable and far more extreme than the situation now before this Court.   Moreover, some of what Commisimpex requests is contrary to express provisions of the Foreign Sovereign Immunities Act and thus unlawful.   Finally, Commisimpex's request to hold Chadbourne jointly and severally liable with the Congo for attorneys' fees on this Motion is utterly without basis and completely irresponsible.   This request should be rejected because the record contains no evidence at all, much less the required clear and convincing evidence, that the lack of interrogatory responses was due to any misconduct, neglect or instigation on the part of Chadbourne.

## BACKGROUND

Commisimpex obtained an amended default judgment in this action on October 9, 2013 (Dkt. No. 18), which the Congo moved to vacate on September 24, 2014 (Dkt. No. 23), but which vacatur was denied on July 6, 2015.  (Dkt. No. 35.)  The Congo noticed an appeal to the D.C. Circuit from that ruling on August 5, 2015.  (Dkt. No. 36.)  (*See* Schwinger Decl. ¶¶ 4-6.)

Commisimpex then served post-judgment interrogatories upon the Congo on August 25, 2015 (*see* Dkt. No. 38-3) (the "Interrogatories"), to which the Congo served objections on September 28, 2015 (*see* Dkt. No. 38-4).  On October 22, 2015, Commisimpex filed a motion to compel responses to those Interrogatories (*see* Dkt. No. 38) (the "Motion to Compel"). Following briefing, Commisimpex's Motion to Compel was granted by the December 16, 2015 Discovery Order.  (*See* Schwinger Decl. ¶¶ 7-9, 11.)

Commisimpex's papers on its Motion to Compel did not request any date certain or specific time frame for the responses it was seeking to compel.  (*See* Dkt. Nos. 38, 38-6, 41.) Accordingly, the Discovery Order, which tracked fairly closely the proposed order Commisimpex had submitted (*compare* Dkt. No. 38-6 *with* Dkt. No. 42), likewise did not specify

a deadline for responding to the Interrogatories.   Rather, the Discovery Order stated in its entirety simply as follows:

> "Upon consideration of Petitioner Commissions Import Export S.A.'s Motion to Compel Respondent Republic of the Congo to Answer Post-Judgment Interrogatories, the opposition and reply thereto, and the evidentiary submissions filed in support thereof, it is hereby:
>
> "**ORDERED** that Petitioner's Motion to Compel Republic of the Congo to Answer Post- Judgment Interrogatories is **GRANTED**; and it is
>
> "**FURTHER ORDERED** that, subject to the Court's review and approval, Petitioner is awarded attorney's fees and costs associated with the preparation of its Motion to Compel and any reply thereto.
>
> "**SO ORDERED.**"

(Dkt. No. 42.)  (*See* Schwinger Decl. ¶¶ 10, 12.)

On September 24, 2015 — long before the Discovery Order was issued, nearly a month before the Motion to Compel was filed, and shortly before the Congo served its objections to the Interrogatories — Chadbourne sent the Congo a memorandum which set forth, *inter alia*, a discussion in unflinching detail of the consequences that a party might face if it was ordered to respond to discovery requests but did not do so.  (Schwinger Decl. ¶ 13.)  Promptly after the Discovery Order was issued, Chadbourne (a) advised the Congo of the Discovery Order (including forwarding a copy of the Discovery Order), (b) advised the Congo about what the Discovery Order meant and required, (c) re-sent the Congo a copy of Chadbourne's September 24, 2015 memorandum and (d) began requesting that the Congo's representatives participate in a discussion with Chadbourne about what Chadbourne needed from the Congo in order for the Congo to be able to comply with the Discovery Order.  (*Id.* ¶ 14.)  Despite these requests, the Congo's representatives did not participate in any such discussion or even cooperate in scheduling a time to hold such a discussion.  (*Id.* ¶ 15.)

In a December 31, 2015 letter to Chadbourne, Commisimpex's counsel referenced the Discovery Order and stated:

> "In view of the Court's Order, we ask that the Republic of the Congo provide responses to the interrogatories no later than January 15, 2016."

(*Id.* ¶ 16. & Exh. A.)  By e-mail sent on January 5, 2016, Chadbourne responded:

> "We promptly advised our client of the ruling after it was issued and have been requesting a time to discuss with them what needs to be done to comply with the ruling.  Perhaps on account of the press of year-end business, we have not received responses.  In light of this, it now seems unrealistic that responses could be provided by the January 15, 2016 date that you requested.  We will let you know as soon as we have instruction from our client and can give you a more realistic estimate of when responses could be provided."

(*Id.* ¶ 17. & Exh. B.)

Counsel then had a further e-mail exchange on January 19-20, 2016.  In a January 19, 2016 e-mail to Chadbourne, Commisimpex's counsel asked:

> "Have you conferred with your clients and have [they] agreed to provide the information as ordered by the Court?  We would expect to receive it forthwith.  If not, we will be moving for sanctions.  Thank you for your attention to this."

(*Id.* ¶ 18. & Exh. C.)  Chadbourne replied by e-mail the next day, January 20, 2016, stating:

> "At present, I have not received any information from my client for use in interrogatory responses, and despite our efforts we still have not been able to hold a discussion with our client about this matter.  Accordingly, at this time I cannot give you an estimate of when interrogatory responses could be provided."

*Id.*

Despite Chadbourne's repeated requests to the Congo throughout this period, and its advising the Congo about Commisimpex's follow-up concerning the Discovery Order, responses to the Interrogatories continued to remain outstanding because Chadbourne did not receive any of the information needed to respond to the Interrogatories and Chadbourne continued to be unable to schedule a discussion with the Congo about what Chadbourne needed from the Congo

in order for the Congo to be able to comply with the Discovery Order.  (*Id.* ¶ 19.)  This situation continued for several weeks after Chadbourne's e-mails with Commisimpex's counsel.  (*Id.*)

Then, on February 8, 2016 — after a period of months in which the Congo had been pressed by Chadbourne for payment of substantial outstanding invoices — Chadbourne was notified on behalf of the Congo that Chadbourne should dismiss the Congo's pending appeals in the D.C. Circuit and "cease all representation" of the Congo in United States legal proceedings, without provision for any other counsel to be substituted in Chadbourne's stead in any of those proceedings.  (*Id.* ¶ 20.)  Chadbourne had not been given any prior warning or indication that such a step was coming or even under consideration by the Congo, and indeed to the contrary had been instructed by the Congo on numerous instances in the prior months to continue its representation.  (*Id.* ¶ 21.)  The next day, on February 9, 2016, Chadbourne telephoned Commisimpex's counsel and advised of this development.  (*Id.* ¶ 22.)

Since the time when Chadbourne was notified that the Congo had terminated Chadbourne as its counsel, the Congo has continued not to provide Chadbourne with any of the information needed to respond to the Interrogatories, and not to participate in any discussion with Chadbourne about what Chadbourne needed from the Congo in order for the Congo to be able to comply with the Discovery Order.  (*Id.* ¶ 23.)

On multiple occasions, starting before the Motion to Compel was ever filed, Chadbourne stated unequivocally to the Congo's representatives that as officers of the Court Chadbourne and its attorneys were ethically obligated to make clear that the only position that they could and would take was that compliance with any order of the Court compelling responses to the Interrogatories was required, and that Chadbourne could not and would not give any contrary

advice.  (*Id.* ¶ 24.)  At no time did Chadbourne ever counsel the Congo not to comply with the Discovery Order in any respect.  (*Id.* ¶ 25.)

On March 17, 2016, in view of the Congo's having terminated Chadbourne as its counsel, Chadbourne moved to be relieved as counsel of record in this action (Dkt. No. 44), after previously having moved in the D.C. Circuit to dismiss the Congo's pending appeal arising from this action and to be relieved as the Congo's counsel of record in that court for that same reason.  (*See* Dkt. No. 44, ¶ 4; Schwinger Decl. ¶ 26.)  Both of these withdrawal motions are now fully briefed and awaiting decision.  (Schwinger Decl. ¶ 26.)  On April 4, 2016, during the briefing of Chadbourne's motion to be relieved as counsel in this Court, Commisimpex filed this Motion for sanctions for noncompliance with the Discovery Order.  (*Id.* ¶ 27.)

## ARGUMENT

This Motion arises from two simple facts that are not disputed.  The first is that on December 16, 2015, the Court issued the Discovery Order which granted Commisimpex's Motion to Compel.  The second is that since that time, the Congo has not provided any responses to any of the Interrogatories that were the subject of Commisimpex's Motion to Compel.  This Motion presents the questions of what, if any, sanctions should the Court grant in this situation, as against the Congo and as against the Congo's counsel.

As against the Congo, the Court at this time should order no sanction beyond, at most, setting a date certain for the Congo to respond to the Interrogatories, taking into due consideration the extraordinary breadth of information sought by those Interrogatories and the logistical complications associated with obtaining discovery from a sovereign foreign state as distinguished from typical private civil litigants.  As against Chadbourne, the Court should not impose any sanction at all because Commisimpex has shown no basis whatsoever for imposing any sanctions upon counsel.

# I.

## NO SANCTIONS SHOULD BE AWARDED, EXCEPT PERHAPS AT MOST AN ORDER SETTING A REASONABLE DATE CERTAIN FOR SERVING RESPONSES TO THE INTERROGATORIES

**A.    The Reasons Why the Sanctions Sought by Commisimpex Should Be Denied Do Not Lie in Denying or Ignoring the Import of the Discovery Order or of Any Controlling Precedent**

As noted above, it is undisputed that to date the Congo has not provided any responses to any of the Interrogatories that were the subject of Commisimpex's Motion to Compel.  Although the Congo respectfully states that it believes that the Discovery Order was wrongly decided, it is important to make clear at the outset that the Congo does not assert that it had the right simply to ignore or not comply with the Discovery Order, and its opposition to the sanctions being requested does not lie in any such argument.[1]

Similarly, and contrary to Commisimpex's speculation in its moving Memorandum of Points and Authorities (Dkt. No. 48-1 ("Mov. Mem.") at 2), the Congo does not deny or ignore the holding in *Republic of Argentina v. NML Capital Ltd.*, 134 S. Ct. 2250 (2014), that the

---

[1]   The Discovery Order could not be appealed when it was issued.   "[O]rders granting postjudgment discovery are not appealable."   *Cent. States, S.E. & S.W. Areas Pension Fund v. Express Freight Lines, Inc.,* 971 F.2d 5, 6 (7th Cir. 1992); *accord Rouse Constr. Int'l v. Rouse Constr. Corp.*, 680 F.2d 743, 746 (11th Cir. 1982) ("the granting of a post-judgment discovery motion is not an appealable final order"); *Piratello v. Philips Elecs. N. Am. Corp.*, 360 F.3d 506, 508-09 (5th Cir. 2004) (post-judgment "discovery orders do not constitute final decisions under § 1291, and therefore, are not immediately appealable"); *Martin v. Shank*, 836 F.2d 1342 (4th Cir. 1988) (*per curiam*) ("The grant of a post-judgment discovery order is interlocutory and not appealable."); *see also In re Am. Preferred Prescription, Inc.,* 255 F.3d 87, 92-93 (2d Cir. 2001).   Nothing in this memorandum of law or the Congo's opposition to this Motion is intended to waive any argument against the Discovery Order that the Congo might seek to make on appeal at such future time as the appropriate appellate context arises.

7

Foreign Sovereign Immunities Act ("FSIA") contains "no . . . provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets," *id.* at 2256, and that none should be judicially implied or created. *Id.* at 2256-58. Nor does the Congo deny or ignore the holding in *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 637 F.3d 373 (D.C. Cir. 2011), that "the FSIA does not abrogate a court's inherent power to impose contempt sanctions on a foreign sovereign." *Id.* at 380.[2] That being said, the Congo also notes that the D.C. Circuit in *FG Hemisphere* cautioned that the question of whether "the FSIA does not permit a court to *enforce* a contempt sanction" — as distinguished from being able to *impose* such a sanction, "[wa]s not the issue before [the D.C. Circuit]" in that case, and that the D.C. Circuit further questioned whether it was proper "to conflate the power to impose a contempt sanction with the authority to enforce it." *See id.* at 379 & n.2.

With the Congo's position with respect to the Discovery Order hopefully thus clarified, the real issues on this Motion can now be addressed.

**B.    Given the Lack of Any Specific Deadline in the Discovery Order for Completing Interrogatory Responses, No Sanction Is Warranted Beyond at Most Now Setting a Date Certain for Compliance**

As Commisimpex itself notes (Mov. Mem. at 4), "a production order is generally needed to trigger sanctions." *Parsi v. Daioleslam*, 778 F.3d 116, 128 (D.C. Cir. 2015). In light of this, and given the specific contents of what was and was not said in the Discovery Order, the

---

[2]    As Commisimpex helpfully and graciously noted in its motion papers, "the sovereign defendant in *FG Hemisphere*, the Democratic Republic of the Congo, is distinct from the Republic of the Congo, which is the Respondent in the present case." (Mov. Mem. at 10 n.1.)

appropriate sanction here is, at most, that the Court now issue a new order setting a reasonable date certain for the Congo to respond to the Interrogatories.

The critical fact here is that the Discovery Order did not establish any specific date certain by which responses to the Interrogatories needed to be completed. All the Discovery Order said was that Commisimpex's Motion to Compel was granted. However, in Commisimpex's papers on its Motion to Compel, it never identified any date certain or specific time frame for the responses to the Interrogatories it was seeking to compel. (*See* Dkt. Nos. 38, 38-6, 41.) Moreover, apart from the Court's addition of one phrase about the Court needing to review and approve requests for attorney's fees, the Discovery Order issued by the Court was virtually identical to Commisimpex's own proposed order, which did not seek to impose a date certain for compliance. (*Compare* Discovery Order *with* Dkt. No. 38-6.) While this of course does not mean that compliance could be deferred indefinitely, it does affect the availability of sanctions against a party that to date has not complied with this non-specific Discovery Order.

The significance of a lack of a specific deadline in the Discovery Order comes from the rules governing contempt sanctions:

> "Two requirements must be met before a party or its attorneys may be held in civil contempt. First, the court must have fashioned an order that is *clear and reasonably specific*. Second, the defendant must have violated that order. Generally, to properly hold a party or its attorneys in civil contempt, *the court must find facts meeting these two elements by clear and convincing evidence*."

*Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999) (citations omitted) (emphases added). Thus, courts have declined to issue contempt sanctions for failures to comply with orders that contain no specific deadlines.

For example, in *Johnson v. GEICO Cas. Co.*, 269 F.R.D. 406 (D. Del. 2010):

> "The Court decline[d] to issue a Rule To Show Cause why Berkshire should not be held in contempt for failure to comply with [a Discovery] Order [because] the Order *did not specify a deadline by which production was to be completed*, and

the Court d[id] not find the two to three month delay to be so unreasonable as to warrant sanctions."

*Id.* at 414 (emphasis added).  The same principle is applied outside the discovery context as well.

For example, in *Armstrong v. Executive Office of the President*, 1 F.3d 1274 (D.C. Cir. 1993), the D.C. Circuit held:

> "Because the district court orders on which the contempt citation rests did not specify that the defendants had an affirmative duty to [comply] *by a date certain*, the district court abused its discretion in holding the defendants in contempt at least in part because of their failure to [comply] within four months."

*Id.* at 1277 (emphasis added).  Similarly, in *Hadix v. Caruso*, 465 F. Supp. 2d 776 (W.D. Mich. 2006), with respect to a court order that directed compliance with "a complicated administrative task that may take extended administrative work, consultation with others, *etc.*" but which set forth no express deadline, the court stated:

> "An order absent a deadline is not meaningless.  Rather, the best construction of such an order is that it requires action within a 'reasonable time.'  However, since a 'reasonable time' is such a broad and flexible concept as applied to complex administrative and technical tasks, the conclusion follows that there has been no showing of a clear violation of a 'clear and definite' order as to this element of the [court-approved] Plan."

*Id.* at 801.  Likewise, in *Edgar v. Barnhart*, 2006 WL 3377587 (W.D. Wis. Sept. 27, 2006), the court held:

> "The record in this case lacks clear and convincing evidence upon which to find that the commissioner has violated this court's order of June 16, 2005.  The order merely directed the commissioner to conduct further proceedings in plaintiff's case without specifying any time frame within which those proceedings should be held.  Although this court expects its orders to be carried out within a reasonable time frame, I am persuaded that it would be improper to hold the commissioner in contempt when the order did not set forth an explicit deadline for compliance and when a hearing has now been scheduled."

*Id.* at *3.

By contrast, in cases like *Parsi*, relied upon by Commisimpex, where the Court affirmed awards of sanctions, the issue presented involved violations of discovery orders that had

established specific deadlines for compliance.  *See, e.g.*, 778 F.3d at 120 (party was ordered "to submit the server . . . by July 16").   The same is true for other cases relied upon by Commisimpex.   *See, e.g., United States v. Dynamic Visions Inc.,* 307 F.R.D. 299, 301-02 (D.D.C. 2015) (noncompliance with a series of at least six court-ordered discovery deadlines); *Cobell*, 37 F. Supp. 2d at 18-19, 21 (sanctions imposed after initial discovery order was supplemented with one setting a date certain for compliance); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1065 (2d Cir. 1979) (sanctions affirmed where magistrate judge had found that noncompliant party "had no basis for assuming that the [interrogatory] answers were not due on the dates set in her orders").

In this case, where the Discovery Order lacked any date certain for compliance, there are multiple factors which show why the lack of responses to the Interrogatories to date cannot be deemed contemptuous or sanctionable by clear and convincing evidence as required:

- The Interrogatories call for a volume and breadth of information that is simply staggering — literally information on virtually any asset held by the Congo anywhere on the planet.  This is not a task that could be completed in a matter of days or even weeks after the Discovery Order was issued.

- The time to date since the Discovery Order was issued is just four months, similar to the periods held insufficient in *Johnson* and *Armstrong* where no deadline was specified.

- The Discovery Order was issued on December 16, just before the Christmas/New Year's period, where experience teaches that matters tend to slow down significantly all across the globe.[3]

- The Congo just recently concluded a presidential election on March 20, 2016, in a process involving a two-round system, the first round of which began in January 2016, shortly after the Discovery Order was issued, *see generally* *https://en.wikipedia.org/wiki/Republic_of_the_Congo_presidential_election,_2016* (last visited April 20, 2016), which obviously would have a significant effect on governmental affairs and operations during that time..

Given these circumstances, the sanctions that Commisimpex seeks to impose here are improper and unwarranted, and no sufficient basis for them has been shown by clear and convincing evidence. In particular, this is the case as to the two principal and exceedingly severe first-time sanctions Commisimpex seeks, preclusion from asserting FSIA attachment/execution immunities and weekly increasing monetary contempt sanctions. To order such sanctions in these circumstances, where the Congo was not even faced with a specific deadline for providing responses to the Interrogatories, would be an abuse of discretion.

Indeed, given the circumstances here, even the third sanction sought by Commisimpex — awarding of attorneys' fees relating to bringing this Motion — should be denied as well. Here there are "circumstances [that] make [such] an award of expenses unjust," Fed. R. Civ. P.

---

[3]   "Christianity is the largest religion in Republic of the Congo, accounting for 50% of the total population." *https://en.wikipedia.org/wiki/Religion_in_the_Republic_of_the_Congo* (last visited April 20, 2016).

37(b)(2)(C), and under the terms of Rule 37(b)(2)(C) such circumstances create an exception to any requirement to award attorneys' fees. The fact is that the lack of any express deadline or date certain for compliance in the Discovery Order is the fault of Commisimpex, which never requested any such deadline or date in its Motion to Compel and submitted a proposed order that contained no provision for any such deadline or date. The appropriate step to take here now, if anything, is simply for the Court now to set a reasonable date certain for serving responses to the Interrogatories, taking into account the extraordinary breadth of the Interrogatories, and not impose on others the attorneys' fees that Commisimpex incurred to address a problem arising from its own shortsightedness when it drafted its Motion to Compel.

## II.

### EVEN ASSUMING *ARGUENDO* THAT A SANCTION OF SOME KIND WERE APPROPRIATE HERE, THE EXTREME SANCTIONS SOUGHT BY COMMISIMPEX ARE INAPPROPRIATE AND UNWARRANTED FOR A FIRST-TIME MOTION ABOUT DISCOVERY ORDER NONCOMPLIANCE

Even if the Court were inclined to issue a sanction of some kind against the Congo under Rule 37(b)(2)(A), the sanctions requested here by Commisimpex — orders of preclusion and for mounting monetary penalties — are entirely inappropriate to the circumstances before the Court. Commisimpex has taken *end-stage* sanctions from cases involving *multi-year sagas* of defiance of court orders with *specific deadlines* for compliance and tried to import them blindly into this case, to be used on a first-time instance of an alleged discovery order violation. Ordering sanctions of these kinds in the present circumstances is unwarranted and would be an abuse of discretion. No such sanctions should be imposed, and indeed certain of them may not even be legally proper to order in any circumstances.

**A.     Commisimpex Asks for Sanctions Drawn from Cases
        Whose Facts Are Vastly Different From The Facts Here**

The circumstances on this Motion are fairly simple.  The Court overruled the Congo's objections to the Interrogatories by issuing its December 16, 2015 Discovery Order, and to date the Congo has not yet served its responses to those Interrogatories.  Such circumstances are nothing like those in the cases from which Commisimpex draws the extreme sanctions it seeks to have this Court to impose.

For example, Commisimpex points to the notorious long-running litigation between the Republic of Argentina and its bondholders, *NML Capital Ltd. v. Republic of Argentina*, Case No. 1:08-cv-06978-TPG (S.D.N.Y.) ("*NML*"), and an order issued in that case last summer that effectively precluded the sovereign judgment debtor from asserting FSIA attachment/execution immunities relating to non-commercial activity.  (*See* Mov. Mem. at 6-8 & Mov. Mem. Exh. A [*NML* Dkt. No. 814].)  While Commisimpex notes the unremarkable point that preclusion orders are included in the master list of possible remedies for discovery order noncompliance set forth in Fed. R. Civ. P. 37(b)(2)(A)(ii) (*see* Mov. Mem. at 6), that hardly shows that such orders are warranted in every such case, much less in the particular circumstances of this case.

Commisimpex carefully makes no mention of the circumstances in *NML* which preceded the issuance of the preclusion order in that case.  This perhaps is not surprising, because a review of the filings in that case shows the circumstances which led to the issuance of the preclusion sanction in *NML* to be vastly different from the circumstances here.

The August 13, 2015 preclusion sanction in *NML* arose out of discovery requests that NML served on Argentina on August 14, 2012.  [*NML*, Dkt. No. 793 at 2].  After many months, the bondholders filed a motion to compel in June 2013, which was granted on September 25, 2013, in an order that set an express deadline for compliance.  (*See id.* at 3-4).  That deadline

came and went and Argentina still failed to comply.   In December 2014, following appellate activity before the U.S. Supreme Court and the Second Circuit which included multiple hearings, the September 25, 2013 discovery order was affirmed.  (*Id.* at 5-6.)  Nevertheless, the discovery requests to Argentina remained unanswered for months, until finally seven months later another motion to compel was filed.  (*Id.* at 6-7.)  The requests then continued to remain unanswered yet again through the time in August 13, 2015, when the district court in *NML* finally took the step of issuing a preclusion order that Commisimpex now cites.   In other words, the preclusion sanction in *NML* to which Commisimpex points was not issued until (a) *three years* after the discovery requests were first served, (b) just short of *two years after* the compliance deadline originally set by the court had passed, and (c) almost *eight months* after the last appellate ruling on the discovery issues.

This lengthy history bears no relationship to the facts in this case, in which the underlying Interrogatories and Discovery Order have been outstanding for only a few months, and the Discovery Order never set a date certain for compliance.   For Commisimpex to argue that because preclusion was appropriate in the circumstances of *NML* it must necessarily also be appropriate in the vastly different circumstances here is unreasonable and should be rejected.

Commisimpex next points to the long-running *FG Hemisphere* litigation in this Court, *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 603 F. Supp. 2d 1, *aff'd*, 637 F.3d 373 (D.C. Cir. 2011), in support of issuing mounting weekly monetary sanctions against the Congo.  (*See* Mov. Mem. at 9-11.)  But there too, the facts underlying the sanction to which Commisimpex points were remarkably different and far more extreme than anything seen here.

*FG Hemisphere* involved a September 2005 motion to compel responses to post-judgment discovery which was granted by a September 2006 order that set a date certain for

compliance.  603 F. Supp. 2d at 1.  Then, in November 2006, the Court stayed the response obligations under that order and issued a "bifurcated discovery plan."  *Id.* at 1-2.  In February 2007, the Court set a date certain for completion of Phase II of that bifurcated discovery plan, but the responses provided were insufficient.  *Id*. at 2.  It was not until March 2009 that the Court finally issued a contempt order with mounting weekly monetary sanctions for any future noncompliance (again, with a date certain).  *Id.* at 2-3.  The contempt order included an express finding that there had been a "clear showing that DRC violated this Court's unambiguous discovery orders of February 12, 2007 and November 28, 2006,"  *Id.* at 2.

Here again, Commisimpex has relied upon a case involving more than *three years* of discovery noncompliance, with violations of multiple court orders that contained specific deadline dates for compliance.  The facts and timing with respect to the Interrogatories and the Discovery Order in this case, however, bear no resemblance to what this Court was faced with in *FG Hemisphere*.  *FG Hemisphere* thus provides no basis for ordering such mounting weekly monetary contempt sanctions in the circumstances here.

Indeed, the defense Commisimpex offers of the sanction it seeks — that "this Court[ has a] practice of imposing similar sanctions on similar contemnors" and that "[i]mposing the same sanctions on the Congo today [as were imposed on the DRC in *FG Hemisphere*] is a fair comparison" because "the DRC and the Congo are neighboring foreign states" (Mov. Mem. at 11) — can only be described as facetious, impertinent and wholly unreasonable.  Commisimpex cites no authority for its bizarre assertion that sanctions should be imposed based on geography rather than the particular facts and circumstances of each case.  Perhaps most troubling, to the extent that Commisimpex is suggesting a negative inference should be drawn in this case because of the geographic proximity of these two foreign states, it comes dangerously close to

16

making an argument of inherent racial, ethnic and/or cultural culpability that this Court and all members of the bar should find repugnant.

The simple fact of the matter is that the stage and progress of post-judgment discovery activity in this action is nowhere close to what would be necessary for this Court, in the sound exercise of its discretion, to order at this time the kinds of sanctions that Commisimpex has requested against the Congo.

> "The central requirement of Rule 37 is that any sanction must be just, which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation."

*Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (internal citations and quotations omitted) (reversing order of preclusion as an abuse of discretion). Severe sanctions, like those sought by Commisimpex here, are "to be applied only after less dire alternatives have been explored without success." *See Hildebrandt v. Vilsack*, 287 F.R.D. 88, 95 (D.D.C. 2012) (quotations omitted). While extreme sanctions such as preclusion may eventually be warranted where a party has been given "second and third chances to produce required discovery with respect to a host of discovery issues," and violated multiple court orders with specific deadlines while requesting "no fewer than ten requests for discovery-related extensions of time," *see Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 262 & n.6 (D.D.C. 2009), such relief is utterly unwarranted and would be an abuse of discretion under the facts here. Rather, at this stage, and given circumstances presented, the only sanction the Court should consider issuing is at most setting a date certain for the Congo to serve responses to the Interrogatories. *See, e.g., Hildebrandt v. Vilsack*, 287 F.R.D. at 99 (despite violations of deadlines in multiple court orders, and requests for orders of preclusion, "the Court has concluded that an order that the plaintiffs comply with all outstanding discovery obligations is the appropriate sanction for the plaintiffs' violation of the Court's discovery order").

17

**B.      The FSIA Bars the Court from Depriving the Congo of its**
**        Attachment/Execution Immunity as a Discovery Sanction**

In addition to the issues noted above with the sanctions Commisimpex is seeking, there is

a statutory problem with Commisimpex's request that the Congo be:

> "precluded from asserting that its property is immune from attachment or
> execution under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1610, on the
> basis that it is not being used for commercial activity."

(Dkt. No. 48-3 (Proposed Order)).  Such a sanction that would effectively strip the Congo of an

attachment/execution immunity guaranteed by the FSIA, an action that is illegal and contrary to

the express terms of the statute.  To issue such an order would be reversible error.

The command of the FSIA is blunt and clear.  The FSIA states in 28 U.S.C. § 1609,

entitled "Immunity from attachment and execution of property of a foreign state":

> "Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act the property in the United States of a foreign
> state *shall be immune* from attachment arrest and execution except as provided in
> sections 1610 and 1611 of this chapter."

28 U.S.C. § 1609 (emphasis).  There is no provision in § 1609 for additional judicially-created

exceptions to § 1609 attachment/execution immunity.  As the Supreme Court stated just

yesterday:

> "[I]t is not for the courts to deny an immunity which our government has seen fit
> to allow, or to allow an immunity on new grounds which the government has not
> seen fit to recognize. . . .  [I]t remains Congress' prerogative to alter a foreign
> state's immunity and to render the alteration dispositive of judicial proceedings in
> progress."

*Bank Markazi v. Peterson*, No. 14-770, 2016 WL 1574580, slip op. at 23 (U.S. Apr. 20, 2016)

(quotations omitted).

Because Congress in § 1609 expressly limited the exceptions to § 1609

attachment/execution immunity to those set forth in §§ 1610-11, it is improper to craft new

exceptions to § 1609 or new additions to §§ 1610-11 that are not provided for in the statute,

under basic *expressio unius est exclusio alterius* principles of statutory construction.  *See, e.g., Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000); *Hayes v. Sebelius*, 762 F. Supp. 2d 90, 113 (D.D.C. 2011).  Adherence to this principle is particularly important in the context of statutes addressing sovereign immunity, since "[w]aivers of [sovereign] immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d] . . . beyond what the language requires.'"  *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983) (citations omitted) (re U.S. sovereign immunity).

The FSIA in § 1610, entitled "Exceptions to the immunity from attachment or execution," provides limited exceptions to this immunity in respect of property "used for a commercial activity in the United States,"  28 U.S.C. § 1610.  Notably, the FSIA also specifically defines the terms "commercial activity" and "commercial activity carried on in the United States by a foreign state" as used in the FSIA.  *See id.* §§ 1603(d)-(e).  The FSIA's § 1610 commercial activity exceptions are then further limited by § 1611, which bars application of those exceptions to property related to, *inter alia*, certain international organizations, 28 U.S.C. § 1611(a), central banks or monetary authorities, *id.* § 1611(b)(1), and military activities, *id.* § 1611(b)(2).

Commisimpex does not identify any provision in 28 U.S.C. § 1610 or § 1611 pursuant to which a court can curtail the immunity that Congress created by precluding a party from asserting it or from relying on the statutorily-provided definition of "commercial activity." Commisimpex points only to the general authority to issue orders of preclusion under Fed. R. Civ. P. 37(b)(2)(A)(ii) (*see* Mov. Mem. at 6-8), but that is wholly insufficient because the Rules Enabling Act expressly provides that a federal rule cannot be used to ignore an express

substantive statutory command from Congress.  *See* 28 U.S.C. § 2072(b) (federal rules "shall not abridge, enlarge or modify any substantive right").

Thus, for example, in the context of the United States' sovereign immunity, this Court has held that the United States could not be subjected to contempt damages for violation of a preliminary injunction, and rejected the argument that the Rules Enabling Act waived sovereign immunity so as to authorize judicial remedies under the Federal Rules that would intrude upon it. *See United States v. Waksberg*, 881 F. Supp. 36, 40 (D.D.C. 1995).[4]  *Compare Henderson v. United States*, 517 U.S. 654, 671-72 (1996) (service of process provisions in the Federal Rules were merely "auxiliary" and "distinct from . . .  substantive matters" and thus did not improperly contravene contrary provisions in the Suits in Admiralty Act (which defines the United States' waiver of its sovereign immunity for certain suits in admiralty)); *cf. also* Catherine T. Struve, *Sovereign Litigants: Native American Nations in Court*, 55 Villa. L. Rev. 929, 952 (2010) ("a Civil Rule that purported to alter the scope of sovereign immunity would seem to run afoul of the Rules Enabling Act[]"); Timothy J. Simeone, Comment, *Rule 11 and Federal Sovereign Immunity: Respecting the Explicit Waiver Requirement*, 60 U. Chi. L. Rev. 1043, 1054 (1993) ("Sovereign immunity therefore falls squarely within the category of 'substantive rights,' which may not, by the very terms of § 2072, be abridged by the Federal Rules of Civil Procedure." (footnote omitted)).

---

[4]   *Waksberg* held similarly with respect to sanctions against a sovereign under the court's inherent power or under the general contempt power of 18 U.S.C. § 401.  *Waksberg*, 881 F. Supp. at 40 (citing *United States v. Horn*, 29 F.3d 754, 764 n.11 (1st Cir. 1994))*; accord Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 301-02 (D.D.C. 2008); *see United States v. Droganes*, 728 F.3d 580, 590 (6th Cir. 2013)*; United States v. Stein*, 435 F. Supp. 2d 330, 375-76 (S.D.N.Y. 2006), *aff'd*, 541 F.3d 130 (2d Cir. 2008).

Foreign sovereign immunity is not a mere procedural nicety that exists at the discretion of the judicial branch.  Rather, it is a critical substantive policy decision of the United States relating to comity in international relations, which is the province of "the political branches." *Republic of Argentina*, 134 S. Ct. at 2255.  As the Supreme Court recently has explained, the FSIA exists to provide a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state," *id.* (quotation omitted), replacing the use of judge-made or common-law standards, *see id.* at 2255-56, and so as a result "any sort of immunity defense made by a foreign sovereign in an American court *must stand on the Act's text*."  *Id.* at 2256 (emphasis added).

The sanction that Commisimpex seeks necessarily entails disregarding (a) the FSIA's statutory definitions under §§ 1603(d)-(e) specifying the contours of what "commercial activity" is, and/or (b) the basic grant of attachment/execution immunity under § 1609, and/or (c) the FSIA's express enumeration and limitation of exceptions to that § 1609 immunity under §§ 1610-11.  Commisimpex has not identified any textual authority in the FSIA for curtailing the Congo's FSIA attachment/execution immunity as it seeks to have the Court do here.  Accordingly, the relief it requests is unlawful and must be denied.

To order this kind of preclusion would place this Court in direct conflict with the express command of Congress as embodied in the FSIA in ways that could have dramatic and unsettling repercussions in matters of international relations, global security and the world financial system.  For example, under the order sought by Commisimpex, the Congo would be precluded from asserting even that property relating to its central bank or monetary authorities, *see* 28 U.S.C. § 1611(b)(1), or its military activities, *see id.* § 1611(b)(2) was not being used for commercial activity, thus potentially subjecting such property to execution despite Congress's express

command in § 1611(b) that it did not want such property to be subject to execution even under the § 1610 exception.  It does not take much imagination to appreciate the political, security and economic implications that could flow from not protecting sensitive assets of these kinds from execution as Congress directed.

Commisimpex should not be heard to argue that the Congo by its actions with respect to the Discovery Order should be deemed to have waived its attachment/execution immunity pursuant to 28 U.S.C. § 1610(a)(1).  That section by its terms only applies where a "foreign state has waived its immunity from attachment in aid of execution or from execution *either explicitly or by implication*."  *Id.* (emphasis added).  Plainly there has been no explicit waiver, and the circumstances here do not meet the legal requirements for establishing a waiver by implication:

> "[A § 1610(a)(1)] waiver, whether explicit or implicit, requires the '*intentional relinquishment* of a known right.'  *Schipani v. McLeod,* 541 F.3d 158, 159 n.3 (2d Cir. 2008) (emphasis in original; internal quotation marks omitted).  Nothing in the text of the FSIA signals that Congress intended any lesser standard for the waiver of sovereign immunity.  To the contrary, the legislative history of § 1610(a)(1) indicates that Congress contemplated that waiver of execution immunity would be accomplished by some affirmative act of the foreign sovereign[.]"

*Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 295-96 (2d Cir. 2011) (§ 1610(a)(1) waiver cannot be implied merely from a sovereign's failure to act in U.S. litigation).

"[W]aivers of execution immunity under § 1610(a)(1) are governed by the same principles that apply to waivers of immunity from jurisdiction under section 1605(a)(1)."  *Id.* at 296 (quotations omitted).  As the D.C. Circuit has cautioned, the "implied waiver provision" under § 1605(a)(1) is interpreted "narrowly," and "implicit in § 1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity."  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999); *see Foremost-McKesson, Inc. v. Islamic*

*Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir.1990) ("courts rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended") (quotations omitted).

Thus, there is no basis to claim that the Congo somehow impliedly waived its right to attachment/execution immunity by not yet having provided responses to Interrogatories.  For this reason, the preclusion sanction sought by Commisimpex would plainly violate FSIA mandates.

Commisimpex has identified one case, *NML*, where a sanction of this kind was issued by a court which was outside this District and this Circuit.  (Mov. Mem. at 7-8.)  Notably, this ruling from *NML* was an oral ruling that was memorialized in a terse half-page order that cited no supporting authority and did not address any of the FSIA statutory issues discussed above.  (*See id.*, Exh. A.)  In addition, that lone ruling from *NML* has not been tested by any appellate review.  Given the clear violence that this proposed sanction does to FSIA mandates, and Commisimpex's failure to identify any other court that has ever issued such relief as a discovery sanction, this Court should not go out on a limb to issue such a sanction here, particularly since this case presents nothing more than an early-stage discovery issue of the kind typically dealt with through more mundane discovery orders, like setting a date certain for compliance.

### III.

### <u>THERE IS NO BASIS TO IMPOSE RULE 37 SANCTIONS UPON CHADBOURNE</u>

The burden facing a party that seeks to sanction its opposing party's *counsel* for the opposing party's delay in providing discovery responses is extraordinarily high.  That party must show by *clear and convincing evidence* that *lawyer misconduct* was the reason for its client's failure to provide discovery.  Commisimpex in its Motion not only fails to satisfy this burden but indeed appears not even to have tried, simply summarily demanding that Chadbourne be held jointly and severally liable for attorneys' fees because its client has not yet provided discovery

responses, without even attempting to show any facts that might justify such an extreme and unusual sanction.  No matter what sanctions the Court may choose to impose *upon the Congo* for failure to provide responses to the Interrogatories following issuance of the Discovery Order, Commisimpex has presented no factual or legal basis to show why it would be appropriate to impose sanction *Chadbourne* in respect of the Congo's failure to respond merely because Chadbourne was the Congo's counsel of record during this time.  There is no basis for doing so, and Commisimpex's request for sanctions against Chadbourne should therefore be denied.

While Commisimpex's papers repeatedly make the sweeping assertion that Chadbourne should be liable for Commisimpex's attorneys' fees and other costs, their discussion of what possible basis there might be for such a ruling is next to non-existent — a short three-sentence paragraph.  (*See* Mov. Mem. at 13.)  Commisimpex in this paragraph does nothing more than point to Fed. R. Civ. P. 37(b)(2)(C), which states, with respect to the sanctions generally made available for not obeying a discovery order under Fed. R. Civ. P. 37(b)(2):

> "*Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(b)(2)(C).  But this rule by its terms does not call for Rule 37(b)(2)(C) sanctions to be imposed automatically upon counsel in every instance of a party's noncompliance with a discovery order.   Rather, the Court must examine the particular circumstances to determine whether there is any legitimate basis to sanction counsel in lieu of or in addition to sanctioning the disobedient party, bearing in mind the rule's express caution that orders to pay expenses should not be issued where "circumstances make an award of expenses unjust."  *Id.*  For the Court to do otherwise would be to punish counsel who has done nothing wrong simply for the misfortune of having a client that has not complied with discovery.

Caselaw in this Court and this Circuit illustrates that imposing Rule 37(b)(2)(C) sanctions on counsel is appropriate only in very limited circumstances where counsel is at fault for the client's failure to comply with a discovery order.  For example, in *Crawford v. Am. Fed'n of Gov't Employees*, 576 F. Supp. 812 (D.D.C. 1983), the Court declined to impose Rule 37(b)(2)(C) sanctions on counsel because "the few occasions when courts have assessed attorneys['] fees against counsel under Rule 37 'have all involved a *high degree of culpability*.'" *Id.* at 815 (emphasis added) (citation and footnote omitted).  The Court agreed that "'an award ought to be made against the attorney *only when it is clear that discovery was unjustifiably opposed principally at his instigation*.'"  *Id.* (emphasis added) (quoting *Humphrey's Exterminating Co., Inc. v. Poulter,* 62 F.R.D. 392, 395 (D. Md. 1974)).

Similarly, in *Bolger v. Dist. of Columbia*, 248 F.R.D. 339 (D.D.C. 2008), the Court held that "'[u]nder Rule 37, an attorney may only be sanctioned for *personally violating a discovery order or for advising a client to do so*.'"  *Id.* at 346 (emphasis added) (quoting *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc*., 339 F.3d 180, 185 (3d Cir. 2003)).  In *Bolger*, a document that had been requested in April 2002 was not produced until March 2007 despite multiple court orders in the interim directing its production, and in the face of repeated representations (which ultimately proved false) that the document did not exist.  *See* 248 F.R.D at 341-42.  Yet even in the face of those circumstances, the Court refused to impose sanctions on the non-complying party's counsel "because there is no firm evidence that any counsel of record intentionally violated or sought to violate a discovery order or obligation."  *Id.* at 346; *see also id.* at 347 (noting also in this regard the requirement that a civil contempt must be proven "by clear and convincing evidence").  Indeed, the Court also rejected a request to take discovery on the issue of counsel's conduct, given the representations counsel already had made to the Court about the

25

circumstances underlying the noncompliance.  *See id.* at 47.  The Court held that even if such discovery might reveal "some sloppiness by some counsel" or "a failure by some counsel on some occasions to be fully diligent in discovery follow-up," that still "probably not warrant personal sanctions against attorneys under the applicable legal standards."  *Id.*

Cases where Rule 37(b)(2)(C) sanctions are imposed directly upon counsel typically involve situations where the noncomplying party was blameless and the discovery noncompliance was the result of counsel's misconduct or neglect, for which it would be unfair to punish the client.  In *Bradshaw v. Vilsack*, 286 F.R.D. 133 (D.D.C. 2012), for example, the Court held that imposing "[m]onetary sanctions against [the counsel] . . . [was] firmly justified by the cost, inconvenience, and difficulty that his *professional misconduct* has imposed on the defendants, the Court, and his own former client," *id.* at 144 (emphasis added), whereas imposing such sanctions on the client himself "*for the misdeeds of his attorney* would be unjust." *Id.* (emphasis added).  Similarly, in *Davis v. D.C. Child & Family Servs. Agency*, 304 F.R.D. 51 (D.D.C. 2014), the Court held that monetary discovery sanctions under Rule 37 "should not fall on the individual Plaintiffs because it is their counsel who have failed to meet the discovery obligations."  *Id.* at 62.  The Court held that because their counsel had not "complied with the Court's discovery orders or demonstrated that they are capable of complying in the near future . . . , the sanctions should fall on the attorneys directly."  *Id.*; *see also Butler v. Pearson*, 636 F.2d 526, 531 (D.C. Cir. 1980) (attorneys' fees were awarded against counsel under Rule 37 where "unnecessary litigation has resulted from the undue neglect of plaintiffs' counsel" with respect to interrogatory responses).

Here, Commisimpex has made no showing whatsoever of any such "professional misconduct" or "neglect" or "culpability" here on the part of Chadbourne, or that Chadbourne in

any way instigated or encouraged noncompliance with the Discovery Order.  In fact, the record shows just the opposite:

- Promptly after the Discovery Order was issued, Chadbourne advised the Congo of the Discovery Order (including forwarding a copy of the Discovery Order) and advised the Congo about what the Discovery Order meant and required.  (Schwinger Decl. ¶ 14.)

- Both before and after the Discovery Order was issued, Chadbourne advised the Congo in writing about possible sanctions for not complying with a discovery order from this Court.  (*Id.* ¶¶ 13-14.)[5]

- Starting as soon as Chadbourne first advised the Congo of the Discovery Order, Chadbourne began requesting that the Congo's representatives participate in a discussion with Chadbourne about what Chadbourne needed from the Congo in order for the Congo to be able to comply with the Discovery Order.  (*Id.* ¶ 14.)

- Despite these requests, which included advising the Congo about Commisimpex's follow-up concerning the Discovery Order, responses to the Interrogatories continued to remain outstanding because Chadbourne did not receive any of the information needed to respond to the Interrogatories and the Congo's representatives never participated in any discussion about what Chadbourne needed the Congo to do in order for the Congo to be able to comply with the Discovery Order, nor even

---

[5]   Mere reference to the fact of this memorandum does not waive any privilege or other protection.  *See In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145-48 (D.C. Cir. 2015), *cert. denied sub nom. United States ex rel. Barko v. Kellogg Brown & Root, Inc.*, 136 S. Ct. 823 (2016).

cooperated in scheduling a time to hold such a discussion (*id.* ¶¶ 14-15).   This continued unabated through the time when the Congo terminated Chadbourne as its counsel in the face of continuing substantial unpaid invoices.  (*Id.* ¶ 20.)

- Since that time, the Congo has continued not to provide Chadbourne with any of the information needed to respond to the Interrogatories, and not to participate in any discussion with Chadbourne about what Chadbourne needed the Congo to do in order to be able to comply with the Discovery Order.  (*Id.* ¶ 23.)

- On multiple occasions, starting before the Motion to Compel was ever filed, Chadbourne stated unequivocally to the Congo's representatives that as officers of the Court Chadbourne and its attorneys were ethically obligated make clear that the only position that they could and would take was that compliance with any order of the Court compelling responses to the Interrogatories was required, and that Chadbourne could not and would not give any contrary advice.  (*Id.* ¶ 24.)

- At no time did Chadbourne ever counsel the Congo not to comply with the Discovery Order in any respect.  (*Id.* ¶ 25.)

It beggars belief to suggest that anything in these circumstances represents any "high degree of culpability," *Crawford,* 576 F. Supp. at 815, or "professional misconduct," *Bradshaw*, 286 F.R.D. at 144, or "neglect," *Butler*, 636 F.2d at 531, that would warrant imposing Rule 37(b)(2)(C) sanctions directly upon Chadbourne, either along with or in lieu of whatever such sanctions might be imposed upon the Congo.   There is not a single fact showing or even suggesting "that discovery was unjustifiably opposed principally at [Chadbourne's] instigation," *Crawford,* 576 F. Supp. at 815, or that any Chadbourne attorney "personally violat[ed] a discovery order or . . . advis[ed] a client to do so."  *Bolger*, 248 F.R.D. at 347.  It is therefore

utterly baseless and entirely irresponsible for Commisimpex to argue that Rule 37(b)(2)(C) sanctions should be imposed here directly upon Chadbourne without a shred of evidence to support them.   Indeed, the Motion makes no serious attempt to show how imposing Rule 37(b)(2)(C) sanctions directly upon Chadbourne would be appropriate here.

Commisimpex cites in its moving memorandum of law the language of Rule 37(b)(2)(C) itself (*see* Mov. Mem. at 13), but as discussed above that language does not mandate that such sanctions be imposed against counsel but merely permits them to be imposed under appropriate circumstances.   Commisimpex also cites *Myrdal v. Dist. of Columbia*, 248 F.R.D. 315, 316-17 (D.D.C. 2008) (*see* Mov. Mem. at 13), but the Court in *Myrdal* merely quoted the language of Fed. R. Civ. P. 37(b)(2)(C), *see* 248 F.R.D. at 316-17, without in fact sanctioning counsel.   There does not appear to have been even a request by the movant in *Myrdal* to impose sanctions against counsel, *see id.* at 316, the issue was not discussed by the Court, *see id.* at 317-18, and no such relief was ordered.   *Id.* at 318.

Commisimpex's memorandum of law also cites this Court's decision in *FG Hemisphere*, 603 F. Supp. 2d at 3, to claim that this Court has sanctioned not just "recalcitrant foreign governments" but also "their counsel" for "non-compliance with a discovery order" (*see* Mov. Mem. at 13) but this is completely untrue.   No sanction against counsel was imposed or even discussed in *FG Hemisphere*.  *See* 603 F. Supp. 2d at 2-3.

In fact, Commisimpex cites only a single case in which Rule 37(b)(2)(C) sanctions were actually imposed upon counsel, *Perkinson v. Houlihan's/D.C., Inc.*, 108 F.R.D. 667 (D.D.C. 1985), *aff'd sub nom. Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686 (D.C. Cir. 1987).  (*See* Mov. Mem. at 5.)   But in that case, the sanctioned counsel had contributed to document destruction, *see* 108 F.R.D. at 674, "impeded [a] deposition," *see id.*, "attempted to obstruct

service of a trial subpoena," *see id.*, and engaged in "misrepresentations and acts of discovery obstruction," *see id.* at 675 — facts nothing like the situation in this case.

In sum, imposing Rule 37(b)(2)(C) sanctions on counsel requires "clear and convincing evidence" of extreme facts showing the culpability of counsel in obstructing the discovery process.  It is unquestionable that no such facts are present in this case, and that Commisimpex has not so much as even alleged any such facts in the Motion, much less shown them.  Thus, to the extent Commisimpex seeks to have Rule 37(b)(2)(C) sanctions imposed directly upon Chadbourne, either in conjunction with or in lieu of such sanctions against the Congo, its Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Commisimpex's motion for sanctions should be denied in all respects.  As against the Congo, the Court at this time should order no sanction beyond, at most, setting a date certain for the Congo to respond to the Interrogatories, taking into due consideration the extraordinary breadth of information sought by those Interrogatories and the logistical complications associated with obtaining discovery from a sovereign foreign state as distinguished from typical private civil litigants.  As against Chadbourne, the Court should not impose any sanctions at all.

Dated:   April 21, 2016

Respectfully submitted,

CHADBOURNE & PARKE LLP


By     <u>       */s/ Robert A. Schwinger*     </u>
      Robert A. Schwinger (DC Bar ID # NY0092)
      Rachel W. Thorn (admitted *pro hac vice*)
      Marc Suskin (admitted *pro hac vice*)
      Members of the Firm
    Counsel of Record for Respondent
      Republic of the Congo
   1301 Avenue of the Americas
   New York, NY  10019
   (212) 408-5100
   *rschwinger@chadbourne.com*
   *rthorn@chadbourne.com*
   *msuskin@chadbourne.com*