**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| COMMISSIONS IMPORT EXPORT S.A. | ) | |
| *Petitioner*, | ) | |
| v. | ) | Civil Action No. 1:13-cv-713-RJL |
| REPUBLIC OF CONGO | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
COMMISIMPEX'S MOTION TO COMPEL DENIS-CHRISTEL SASSOU NGUESSO
TO COMPLY WITH THE SEPTEMBER 19, 2016 SUBPOENA**

Benjamin G. Chew (DC Bar No. 466221)
Manatt, Phelps & Phillips, LLP
1050 Connecticut Avenue NW, Suite 600
Washington, DC 20036
Telephone:     (202) 585-6511
Facsimile:      (202) 585-6600
Email:            bchew@manatt.com

*Counsel for Non-Party Denis-Christel Sassou
Nguesso*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................5

    I.     Commisimpex's Subpoena is Invalid Because it Was Not Personally Served on
          Mr. Nguesso ....................................................................................................5

    II.    Even if Properly Served, The Subpoena Must Be Quashed Because It Seeks
          Compliance Beyond the Geographic Limits of Rule 45(c) ....................................7

    III.   The Court Should Not Enforce the Subpoena Based on Comity and a Proper
          Balancing of the Discovery Rules ........................................................................10

          A.    Principles of Comity and Foreign Relations Require that All Alternatives
                Be Exhausted Before Allowing Discovery of a Member of Congo's
                Parliament ..........................................................................................10

          B.    The Subpoena's Document Requests Are Overly Broad, Oppressive,
                Unduly Burdensome, and Not Narrowly Tailored to Seek Relevant
                Information ..........................................................................................14

                1.    The Applicable Discovery Rules Do Not Allow Fishing
                        Expeditions, Especially in Cases Involving Foreign Officials ......14

                2.    The Foreign Sovereign Immunities Act Further Limits the
                        Categories of Documents that Might Be Relevant to This Action 15

                3.    The Document Requests At Issue Are Overly Broad, Oppressive,
                        Unduly Burdensome, and Not Narrowly Tailored To Seek
                        Relevant Information ..................................................................16

CONCLUSION ..................................................................................................................20

Non-Party Denis-Christel Sassou Nguesso, by and through the undersigned counsel and appearing specially and solely for the purpose of contesting the subject subpoena, in accordance with Fed. R. Civ. P. 45 and 69, hereby respectfully submits this Memorandum of Points and Authorities in Opposition to Petitioner Commissions Import Export S.A.'s ("Commisimpex") Motion to Compel Mr. Nguesso to comply with the September 19, 2016 Subpoena.

## **INTRODUCTION**

Commisimpex seeks to compel Mr. Nguesso's attendance at a deposition and production of documents, despite the fact that the subpoena at issue was never properly served on him and is defective in a myriad of ways.  Indeed, while Commisimpex conclusorily claims that it served Mr. Nguesso on September 19, 2016, the alleged process server never identified himself or overtly sought to provide any documents to Mr. Nguesso.  Instead, the individual apparently allowed himself to be stopped by Mr. Nguesso's body guards and then only left an envelope on the ground (without telling anyone) while Mr. Nguesso was leaving.  Such actions do *not* provide the "reasonable notice" required for personal service and they render the subpoena defective.

Moreover, Commisimpex's subpoena ignores Rule 45's clear and unambiguous terms, which do not allow any subpoena to seek compliance beyond the Rule's geographic terms.  Mr. Nguesso does not live, work, or regularly conduct business in person within 100 miles of the District of Columbia, and therefore, the subpoena cannot be enforced as *a matter of law*.  As a result, it should be quashed.

Finally, the subpoena seeks to invade the most personal and private parts of Mr. Nguesso's and his family's lives based on nothing more than the vague and unfounded allegation that they might have received some assets at some point in time from the Congo.  But all of the

information that Commisimpex seeks may be obtained from other parties, including the Congo, itself.  And Commisimpex cannot overcome the important and delicate concerns of comity and foreign relations that arise by seeking discovery from a sitting member of the Congo's Parliament (who is not a party to this action and who was only in this country as part of his official duties as a foreign official).  Commisimpex's document requests are oppressive, vastly overbroad, and seek large swathes of information that have nothing to do with this case.  This provides an independent reason why the subpoena should be quashed.

In short, Commisimpex complains that Mr. Nguesso failed to appear for his deposition or produce any documents, but that alleged "failure" is totally of Commisimpex's own making. Due to Commisimpex's deficient service, Mr. Nguesso did not have any idea that service had been attempted until well *after* the date of his deposition, and since that time, Mr. Nguesso has proceeded with alacrity to challenge the subpoena, due to all of its deficiencies.  Commisimpex's subpoena is deficient, cannot be enforced, and should be quashed.

## BACKGROUND

This matter arises out of what appears to be a longstanding dispute between the Republic of the Congo and Commisimpex.  Mr. Nguesso is *not* a party to that dispute and has never been a party to this action.  *See* Court's Docket, generally.

Mr. Nguesso is a citizen and resident of the Republic of the Congo.  Declaration of Omar Arouna ("Arouna Decl.") ¶ 3 (attached hereto as **Exhibit A**).  He currently serves as an elected member of the National Assembly of the Republic of the Congo, a legislative body that votes on bills, enacts laws, and otherwise oversees the functioning of the Congolese Government, just as does the United States Congress here.  *See id.*  Mr. Nguesso is also the son of Denis Sassou Nguesso, the current President of the Republic of the Congo.  *Id.*  This family connection

appears to be the sole reason why Commisimpex allegedly attempted to serve Mr. Nguesso with a subpoena during his recent trip to the District of Columbia.  *See* Docket Number ("Doc. No.") 62-1 at 5.

Despite his recent trip, Mr. Nguesso travels to the District of Columbia infrequently and does not conduct any business here.  Arouna Decl. ¶¶ 4, 12.  In fact, Mr. Nguesso has only traveled to the District of Columbia five times in the last ten years—twice in 2016, once in 2014, and twice before that.  *Id.* ¶ 4.

Mr. Nguesso's recent travel has all been as part of his official duties as a member of the Congo's Parliament.  *See id.* ¶¶ 4, 13.  In 2014, Mr. Nguesso traveled to the District of Columbia to attend a U.S.-Africa Leader Summit meeting of African heads of state as part of the official delegation representing his country.  *Id.* ¶ 4.  In 2016, Mr. Nguesso traveled to the District in May to prepare for his September trip, and then returned in September as planned.  *Id.*  The primary purpose of this recent visit was to attend the Congressional Black Caucus dinner and the Ronald H. Brown Series with the Constituency for Africa.  *Id.* ¶ 13.  Mr. Nguesso also met with the representatives of numerous Congressmen involved in African Affairs.  *Id.* (describing Mr. Nguesso's meetings at Congress).

On September 19, 2016 (the date Mr. Nguesso was allegedly served), during his September visit, Mr. Nguesso was exiting a meeting on I Street NW during a rain storm.  *Id.* ¶ 6. He was surrounded by two body guards, one of which was holding his umbrella while the driver of the car held open the car door.  *Id.*  Mr. Nguesso was rushing to get into his car to avoid the rain, and he did not appear to see or to interact with anyone as he rushed into his car.  *Id.* ¶ 7.

At that time, an individual wearing a baseball cap dashed in Mr. Nguesso's direction, but one of the body guards stopped him while he was still a few feet away.  *Id.*  Those surrounding

Mr. Nguesso believed the man to be a protestor or political activist who might attempt to accost or harass Mr. Nguesso.  *Id.*  Mr. Nguesso was already in the car at this point.  *Id.*  The man did not appear to be carrying any papers.  *Id.* Nor did he appear to present or leave any papers on the ground.  *Id.* ¶ 8.  When the car started moving away from the curb, some of those surrounding Mr. Nguesso noticed a wet brown envelope on the sidewalk next to the office building door, but they did not think anything of it.  *Id.*

Mr. Nguesso did not have any knowledge that there had been an attempt to serve documents of any kind upon him until after seeing an article in Le Monde, which was published on October 11, 2016, after the return date for the subpoena. *Id.* ¶¶ 8-9.  Mr. Nguesso only saw the subpoena, itself, a few days ago.  *Id.* ¶ 10.  At that point in time, Mr. Nguesso retained counsel to assist him in challenging the subpoena.  *Id.*

Indeed, the subpoena seeks intensely personal and highly confidential information regarding Mr. Nguesso and his family's finances and travel, without any regard as to whether it would be relevant to this litigation.  *See* Doc. No. 60.  The subpoena also seems to conflate Mr. Nguesso with the Republic of the Congo, despite the fact that he is a non-party allegedly served in his personal capacity, merely because he is the President's son.  To justify this invasive and oppressive search into some of the most private aspects of Mr. Nguesso's life, Commisimpex only conclusorily alleges that "it has been widely reported that he has improperly enriched himself from the proceeds of the Congo's oil resources."  Doc. No. 62-1 at 5.  But this subpoena is defective in numerous ways.  First, it was not served properly under Rule 45.  Second, the subpoena seeks compliance beyond Rule 45's explicit geographical limits.  Third, principles of comity and the intrusive and overbroad language of the subpoena, itself, preclude its

enforcement.  Accordingly, Commisimpex's Motion to Compel should be denied, and the subpoena should be quashed.

## ARGUMENT

**I.     Commisimpex's Subpoena is Invalid Because it Was Not Personally Served on Mr. Nguesso**

The Court should deny Commisimpex's Motion to Compel and quash the subpoena to Mr. Nguesso because the subpoena was not personally served on Mr. Nguesso, as required by the Federal Rules.  Specifically, Fed. R. Civ. P. 45(b)(1) provides that "[s]erving a subpoena requires delivering a copy *to* the named person." *Id.* (emphasis added).  Courts in this district interpret Rule 45 to require personal service.  *See FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 37 (D.D.C. 2004) (explaining that "Fed. R. Civ. P. 45(b)(1) requires personal service of deposition subpoenas"). Such personal service, at a bare minimum, must be "reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action." *See Weiss v. Glemp*, 792 F. Supp. 215, 224 (S.D.N.Y. 1992) (alterations in original) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306 (1950)).

Here, Mr. Nguesso was *not* personally served in accordance with Rule 45.  While Commisimpex's Proof of Service conclusorily states that a process server served Mr. Nguesso, *see* Doc. No. 60 at 6, the facts show just the opposite.[1]  Indeed, when the process server allegedly approached Mr. Nguesso, Mr. Nguesso was exiting a meeting on I Street NW during a rain storm

---

[1] In Commisimpex's counsel's affidavit in support of its motion to compel, counsel also asserts that "the process server approached Mr. Sassou Nguesso on the sidewalk and served him with Commisimpex's subpoena." Doc. No. 62-2 at 5.  But this statement is inadmissible hearsay, as counsel makes no claim that he was actually there witnessing the event.  Moreover, just as with the Proof of Service, this statement provides no detail as to how Mr. Nguesso was allegedly served or what happened during the process of "service."  It is therefore insufficient to allow the Court to determine whether personal service actually occurred.

and was surrounded by two body guards, one of whom was holding an umbrella.  Arouna Decl. ¶ 6.  Mr. Nguesso was rushing to get into his car to avoid the rain and did not appear to see or interact with the server in any way.  *Id.* ¶ 7.  While those with Mr. Nguesso did notice an individual in a baseball cap coming in his direction, they believed the man to be a protestor or political activist, and Mr. Nguesso's bodyguards stopped the individual while he was still a few feet away.  *Id.*  Mr. Nguesso was already in the car at this point in time.  *Id.*

Importantly, the man did not appear to be carrying any papers.  *Id.*  Nor did he appear to present any papers to the group or leave any papers on the ground.  *Id.* ¶ 8.  No one in the group heard the individual identify himself or say a word.  *Id.*  And while some members of the party noticed seeing a wet brown envelope on the sidewalk next to the office building door as their car drove away, no one had any idea that there had been an alleged attempt to serve documents of any kind upon Mr. Nguesso.  *Id.*  Mr. Nguesso did not learn that service had even been attempted until after he saw an article published in a French newspaper in the middle to late October, well after the date set for compliance with the subpoena.  *Id.* ¶¶ 9-10.

Given the alleged process server's failure to reach Mr. Nguesso, identify himself, or openly seek to provide Mr. Nguesso with the subpoena at issue, any "attempted service was not effected 'in a way reasonably calculated to apprise' [Mr. Nguesso], or the persons accompanying him, that service of process was being attempted."  *See Weiss*, 792 F. Supp. at 224 (holding that service had not been properly effectuated even though the process server clearly presented the papers to be served to the group because "[t]he papers proffered by [the process server] could just as well have been a petition, a leaflet, a protest, or another non-legal document").[2]

---

[2] Notably, the process server used by Commisimpex, Gene Kassman, has previously been terminated from employment as a process server "because of misrepresentations he made to [his employer] in the course of his employment."  Declaration of David Felter ("Felter Decl.") ¶ 5

Therefore, because Mr. Nguesso did not have any reasonable notice of any subpoena or court summons, Commisimpex failed to personally serve Mr. Nguesso in accordance with Rule 45.  Its subpoena is invalid, should not be enforced, and should be quashed.  *See Philip Morris*, 312 F. Supp. 2d at 37; *Weiss*, 792 F. Supp. at 224.

## II.      Even if Properly Served, The Subpoena Must Be Quashed Because It Seeks Compliance Beyond the Geographic Limits of Rule 45(c)

The Subpoena in this case cannot be enforced because it seeks production of a non-party witness and documents in the District of Columbia, a location well over 100 miles from where Mr. Nguesso lives, is employed, and regularly conducts business in person.  Indeed, Fed. R. Civ. P. 45(d)(3) provides that "the court for the district where compliance is required must quash or modify a subpoena that … requires a person to comply beyond the geographical limits specified in Rule 45(c)."  Rule 45(c), in turn, expressly limits *both* appearance at a deposition *and* the "production of documents, electronically stored information, or tangible things" to a place "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1) & (c)(2).  Thus, where a person does not reside, is not employed, and does not regularly conduct business in person within 100 miles of the location specified by the subpoena, the subpoena must be quashed in its entirety.  *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 231 (D.D.C. 2015) ("Depositions and production of documents

---

(attached hereto as **Exhibit B**).  Mr. Kassman used to be employed by Capitol Process Services, a reputable service company in the District of Columbia. *Id.* ¶¶ 2, 4. But Capitol fired Mr. Kassman after he represented to his employer that he was at a particular location in Montgomery County, MD, while his company-issued GPS device showed that he was "at a commercial site distant from the location where he represented he was." *Id.* ¶¶ 6-7.  Mr. Kassman's history casts further doubt on his conclusory allegation that he "served" Mr. Nguesso.  This is especially true because Mr. Nguesso is not 6'2" tall, as the Affidavit claims.  *See* Arouna Decl. ¶ 14 (noting that Mr. Nguesso is "5'11" and, in no event, tall than 6 feet").

are geographically limited to locations 'within 100 miles of where the person resides[,] is employed, or regularly transacts business in person[.]'").[3]

Here, Commisimpex's subpoena cannot be enforced because Mr. Nguesso does not live, work, or regularly conduct business in person within 100 miles of the District of Columbia.  To the contrary, Mr. Nguesso resides in the Republic of the Congo and works as a member of the Congolese Parliament's National Assembly, thousands of miles from the District of Columbia.  Arouna Decl. ¶ 3.  Moreover, Mr. Nguesso travels to the District of Columbia infrequently and "does not conduct any business here."  *Id.* ¶ 4.  To the contrary, Mr. Nguesso has only travelled to the District of Columbia *five times in the last ten years*.  *See id.* (describing the five trips taken by Mr. Nguesso); *see also id.* ¶ 12 ("Mr. Nguesso does not conduct business in Washington, DC, or within 100 miles of the District of Columbia.").

Under Rule 45(c), this minimal travel to the District of Columbia precludes Mr. Nguesso from being compelled to attend a deposition or produce documents in this District.  *See, e.g.*, *M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 207-08 (S.D.N.Y. 2007) (quashing subpoena because "traveling to an area within a 100-mile radius for fourteen to eighteen days [over five business trips] in two years is insufficient to render a person amenable to a subpoena"); *Bostian v. Suhor Indus., Inc.*, No. 07-CV-151-GFK-FHM (N.D. Okl. Oct. 12, 2007) (quashing subpoena even though it was served in Oklahoma because the non-party's

---

[3] Importantly, Rule 45 was amended in 2013 in order to make it clear that "Rule 45(c) directs that compliance may be commanded *only* as it provides."  *See* Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—2013 Amendment, Subdivision (c) (emphasis added).  The Advisory Committee Notes then clarify that, just as for depositions, for "other discovery, Rule 45(c)(2) directs that … production of documents, tangible things, and electronically stored information may be commanded [only] to occur at a place within 100 miles of where the person subject to the subpoena resides, is employed, or regularly conducts business in person."  *Id.* Thus, because the 2013 Amendments modified the scope of Rule 45, those cases previously allowing discovery of documents beyond 100 miles from the place of production are no longer persuasive.

"twice yearly business visits to Oklahoma are not frequent enough to be considered regularly transacting business"); *Regents of the University of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996) (holding that "'regularly' does not mean ten times in seven years").

Notably, this Court reached the exact same conclusion in a very similar case a few years ago. *See In re Father Christopher Hartley v. Felipe Vicini LLuberes*, No. 08-010 (RJL), slip. op. at 1 (D.D.C. May 2, 2008) (Leon, J.) (Dkt. No. 16) (attached hereto as **Exhibit C**).  There, the plaintiff served a non-party witness with a subpoena in the District of Columbia.  The non-party argued under Rule 45 that the Subpoena had to be quashed because the non-party "currently liv[ed] in Ethiopia" and did not "regularly travel to the District of Columbia."  *See Hartley*, No. 08-010, Dkt. No. 1 at 9 (attached hereto as **Exhibit D**); *see also* Dkt. No. 15-1 at 2 (attached hereto as **Exhibit E**) (noting that the non-party had only travelled to the District of Columbia on three occasions in twenty years).  Based on the non-party's arguments, this Court quashed the subpoena.  *See* **Exhibit C**.[4]  Accordingly, just as in the numerous cases to consider the issue, because the Subpoena at issue commands the production of witnesses and documents outside of 100 miles from where Mr. Nguesso lives works and regularly conducts business in person, it cannot be enforced and must be quashed.

---

[4] This Court did allow the production of documents based on the subpoena, but this occurred *before* the 2013 amendment to Rule 45, which now encompasses the production of documents as well as depositions.  Moreover, the plaintiff there had missed the deadline to make objections to the document portion of the subpoena and never moved for leave to file objections *nunc pro tunc*.  By contrast, Mr. Nguesso has moved for leave to file objections *nunc pro tunc* contemporaneously with this Motion, and has explained the bases for his late filing there.

III.    **The Court Should Not Enforce the Subpoena Based on Comity and a Proper Balancing of the Discovery Rules**

   A.    **Principles of Comity and Foreign Relations Require that All Alternatives Be Exhausted Before Allowing Discovery of a Member of Congo's Parliament**

Commisimpex's subpoena seeks discovery from a sitting Member of the Congolese Parliament who was present in the United States at the time of the alleged service because of diplomatic meetings with his counterparts in the United States Congress.  Enforcement of the subpoena would implicate important and delicate issues of comity and the balancing of foreign relations.  Because the information requested may be obtained from other sources without implicating any of the dangers presented here, the subpoena should be quashed.

The United States Supreme Court has instructed that "American courts … should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 546 (1987).  Indeed, the Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation."  *Id.*  "American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state."  *Id.*

Where, as here, a party seeks discovery from a non-party member of a foreign government, "[p]rinciples of comity dictate that we accord the same respect to foreign officials as we do to our own."  *Giraldo v. Drummond Co., Inc.*, 808 F. Supp. 2d 247, 251 (D.D.C. 2011) (quoting *In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998)).  As a result, in *Giraldo*, the Court refused to allow discovery requests to a third-party former President of Colombia (even outside of his official capacity as president) because "comity and foreign relations interests …

require[d] that all other reasonably available means to acquire such information be exhausted before a deposition is permitted." *Id.* at 252.  Because other individuals had "some information on the main issues" being pursued, the Court held that no discovery would be allowed unless the plaintiffs "first show[ed] that the [requested] information is both necessary and unavailable through other means." *Id.*

Here, Commisimpex cannot meet its burden of showing that the information it requested from Mr. Nguesso, a sitting member of the Congolese Parliament, is "both necessary and unavailable through other means." *See Giraldo*, 808 F. Supp. 2d at 252.  In fact, in its memorandum in support of its Motion to Compel, Commisimpex readily concedes that the sole reason for its subpoena to Mr. Nguesso is to "identify *Congolese* assets that might be subject to post-judgment enforcement proceedings."  Doc. No. 62-1 at 4 (emphasis added).  There is, of course, a better way to obtain such assets—from the Republic of the Congo itself.  Seeking this information through the Congo, a party to this litigation, makes far more sense and far better serves the important interests of comity and foreign relations than does pursuing it through a tangentially related third-party like Mr. Nguesso.

This is especially true given the fact that Mr. Nguesso was only present in this country at the time of his alleged service in his official capacity as a member of Congo's Parliament.  *See* Arouna Decl. ¶ 13.  In the related context of personal jurisdiction, this Court has a long history of discounting contacts with this District made as a result of meeting with the United States Government.  *See, e.g.*, *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) ("[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but would also threaten to convert the District of Columbia

into a national judicial forum").  Mr. Nguesso, as a foreign dignitary who met with numerous members of the United States Congress while in the United States, should not be afforded any less protection than other non-residents who come to the District of Columbia every day to speak to their Government.  *See Companhia Brasileira Carbureto De Calcio v. Applied Industrial Materials Corp.*, 35 A.3d 1127, 1132-33 (D.C. 2012) ("To hold that people have the right to petition their government but then to subject them to personal jurisdiction in the District of Columbia merely because they have exercised that right 'would pose a threat to free public participation in government' … potentially chilling the 'robust' and 'wide-open' exchange … upon which our representative democracy depends.").  Any other holding would pose a threat to the open relationship that exists between foreign dignitaries who seek to come to this country to meet with their counterparts and to strengthen relationships between neighboring nations.

Notably, Commisimpex concedes that it only initiated this discovery to Mr. Nguesso due to "the Congo's failure to produce the requested information."  Doc. No. 62-1 at 5.  But simply because the Congo has *yet* to produce this information, does *not* mean that it is unavailable from that source.  The Court has ordered the Congo to respond in full, *see* Doc. No. 42, and the parties are currently awaiting the Court's decision on sanctions.  Comity dictates that the Court should refuse to compel Mr. Nguesso to undergo a burdensome and intrusive search for documents and information relating to a *party* to this litigation, merely because that party has not yet provided the information required.  This is especially true where many of the documents requested might actually belong to the Congo, and therefore, should be obtained from that source.  *See Bostian*, 2007 WL 3005177, at *2 (quashing subpoena for documents to non-party employee for

"documents belonging to the defendant corporation" because they were "appropriately obtained directly from [the corporation] under Fed. R. Civ. P. 34").[5]

Further, Commisimpex served a nearly identical subpoena on Mr. Nguesso's mother, Antoinette Sassou Nguesso in June of 2016, while she was visiting the United States. *Compare* Doc. No. 55 *with* Doc. No. 60. The service of this nearly identical subpoena on a separate individual (in addition to showing harassment of the President of the Republic of the Congo's family) further shows that the information requested may be obtained from sources other than a sitting member of the Congolese Government.

In short, Commisimpex is solely seeking assets related to the Republic of the Congo, rather than any information exclusively within the possession of Mr. Nguesso. There are numerous ways to obtain that information (including directly from the Congo itself) that do not implicate the important concerns of comity and foreign relations that come from compelling discovery of a sitting member of the Congo's Parliament who came to this country as a representative of his nation. This Court should not allow Commisimpex to use a foreign dignitary's visit to the United States as a sword to seek intrusive discovery against a non-party only tangentially related to this case. These are the exact type of "abusive" discovery requests against which the Supreme Court sought to protect. *See Aerospatiale*, 482 U.S. at 546; *Giraldo*, 808 F. Supp. 2d at 252; *see also Leibovitch v. Islamic Republic of Iran*, --- F. Supp. 3d ---, 2016 WL 2977273, at *16 (N.D. Ill. May 19, 2016) (refusing to allow discovery of third-party banks

---

[5] To the extent the Subpoena seeks any documents from Mr. Nguesso that he obtained in his role as a member of Parliament, Mr. Nguesso would be immune from producing those documents under the doctrine of foreign sovereign immunity. *See Giraldo*, 808 F. Supp. 2d at 249 (finding that the former President of Colombia "enjoy[ed] residual immunity as to information relating to acts taken or obtained in his official capacity as a government official"). The potential difficulty of sorting through documents obtained in his personal capacity and in his capacity as a government official further militates toward quashing this subpoena and seeking this information from another source.

in post-judgment proceeding where the plaintiffs had "alternate means available for obtaining

discovery in aid of their judgment" and there was "little basis for a court in the United States to

'become a clearinghouse for information about any all property held by [a foreign state]

abroad'").

### B. The Subpoena's Document Requests Are Overly Broad, Oppressive, Unduly Burdensome, and Not Narrowly Tailored to Seek Relevant Information

Even assuming *arguendo* that considerations of comity and foreign relations do not

foreclose the enforcement of Commisimpex's subpoena (which they do), the oppressive and

overbroad nature of the specific document requests at issue still require the subpoena to be

quashed.  Commisimpex seeks information regarding some of the most personal and confidential

information of Mr. Nguesso and his family—a non-party and sitting member of Congo's

Parliament.  Given the incredibly small portion of the requested information that *might* be

relevant, this Subpoena should not be enforced as written.

### 1. The Applicable Discovery Rules Do Not Allow Fishing Expeditions, Especially in Cases Involving Foreign Officials

Commisimpex appears to be utilizing the "discovery devices provided in Rule 26" in

seeking to enforce its subpoena.  *See* Doc. No. 62-1 at 6.  Under Rule 26, "a court must consider

whether the 'discovery appears reasonably calculated to lead to the discovery of admissible

evidence.'"  *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C.

2012).  Moreover, "Courts may deny motions to compel if they find that the information

requested is irrelevant" or not narrowly tailored to the relevant issues in the case.  *See id.* at 36.

"Courts test relevance by looking at the law and facts of the case, not simply the expressed

desires of a party to see certain information."  *Id.*  Indeed, "[o]n several occasions, courts have

denied discovery on issues that stray too far away from the core facts of the case."  *Id.*  "Courts

also frequently deny discovery when the party requests voluminous discovery where only a small

14

fraction of the produced documents may be relevant. Courts often call such attempts 'fishing expeditions.'" *Id.*

Additionally, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id.* at 26. This Rule limits discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive." Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d)(3)(A) (requiring a subpoena to be quashed or modified when it "subjects a person to undue burden"). Oppressive, harassing, or overbroad discovery will *not* be countenanced, simply on the off-chance that it will lead to discoverable evidence. *See Kellogg*, 284 F.R.D. at 37; *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.").

These concerns are especially true in cases involving "sovereign interest[s] expressed by a foreign state." *Areospatiale*, 482 U.S. at 546. Indeed, "[w]hen it is necessary to seek evidence abroad, … the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.* Thus, where, as here, third-party discovery is sought against a foreign government official allegedly served in the United States while on official government business, the Court must be especially "vigilant" in preventing the imposition of oppressive, unwarranted, or largely irrelevant discovery. *See id.*; *see also Giraldo*, 808 F. Supp. 2d at 252.

2. The Foreign Sovereign Immunities Act Further Limits the Categories of Documents that Might Be Relevant to This Action

Notably, the efficacy of these Document Requests is further limited by the nature of the judgment proceeding at issue. The Foreign Sovereign Immunities Act ("FSIA") provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution," with limited exceptions mainly related to the existence of property "used for a

commercial activity in the United States." 18 U.S.C. §§ 1609-10.  Thus, all property of a foreign

sovereign of a personal nature or otherwise unrelated to "commercial activity" is generally

immune from attachment or seizure, even pursuant to a valid judgment.  *See id.*; *see also EM*

*Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (finding that certain bank

accounts "were never an attachable asset of the Republic [of Argentina] and that § 1610's

'commercial activity' exception to impunity from attachment [did] not apply").

 Here, while Commisimpex seeks information related to "the many properties and other

assets held by [Mr. Nguesso's] family and other associates," *see* Doc. No. 62-1, such information

would only be relevant to Commisimpex's ability to collect on its judgment *if* it relates to

*commercial* properties located in the United States.  This fact further minimizes the potential for

relevant information that might be obtained through Commisimpex's subpoena and, as discussed

below, underscores the incredible overbreadth of the Requests, themselves.  Given the limited

utility of the Requests in seeking relevant information, Commisimpex should not be able to

invade every aspect of Mr. Nguesso's and his family's lives based on the unfounded allegation

that they might have received some assets at some point in time from the Congo.  *See EM Ltd.*,

473 F.3d at 486 (affirming district court's decision to refuse discovery and noting that "in the

FSIA context, 'discovery should be ordered circumspectly and only to verify allegations of

specific facts crucial to an immunity determination'").

   3. The Document Requests At Issue Are Overly Broad, Oppressive, Unduly
     Burdensome, and Not Narrowly Tailored To Seek Relevant Information

 The document requests contained in Commisimpex's subpoena are overly broad,

oppressive, unduly burdensome, and not narrowly tailored to seek relevant or admissible

evidence.  Tellingly, while Commisimpex readily concedes that it is concerned only with

"locating assets belonging to the Congo," Doc. No. 62-1 at 7, its document requests extend far beyond those necessary to find such information.

For example, Document Requests 1-4 seek *all* documents "concerning" *any* bank accounts, credit accounts, real estate, and corporations or other legal entities owned by Mr. Nguesso or any of his family members, without *any* limitation in time, and regardless of the subject matter.  *See* Doc. No. 60 at 20 (Requests 1-4).  These Requests therefore seek an incredible amount of highly sensitive personal and financial information from Mr. Nguesso and his family, most (if not all) of which would have nothing to do with the Congo at all. Commisimpex does conclusorily allege (without any real foundation) that "it is widely known that the President and his family control many of the Congo's state-owned enterprises and transfer revenues from such state-owned entities to themselves and others."  Doc. No. 62-1 at 7. But Mr. Nguesso, a non-party and sitting member of Congo's Parliament, should not be required to open up his bank accounts and disclose all of his financial information merely because Commisimpex believes it *might* find evidence of assets belonging to the Congo.  More is required, especially when seeking such information from a foreign government official.  *See Kellogg*, 284 F.R.D. at 37; *Giraldo*, 808 F. Supp. 2d at 252.

Similarly, Request No. 7 incredibly requires:

> All Documents concerning any travel by You, Your Family Members, or Your Affiliates, whether undertaken under a legal name or an alias, to or from the United States in 2016, including but not limited to:
>
> a.      Copies of travel documents held by You, Your Family Members, or Your Affiliates;
>
> b.      All Documents concerning the source or sources of funding for such travel by you, Your Family Members or Your Affiliates;
>
> c.      All receipts and other documents concerning any stay by You, Your Family Members, or Your Affiliates at a hotel or other public accommodation;

> d.    All receipts and other documents concerning any meals had by You, Your Family Members, or Your Affiliates at a restaurant or other public accommodation; and
>
> e.    All receipts and other documents concerning any consumer goods purchased by You, Your Family Members, or Your Affiliates, or on behalf of You, Your, Family Members, or Your Affiliates.

Doc. No. 60 at 22-23.  This Request in essence seeks to invade every aspect of Mr. Nguesso's and his family's travel to the United States, seeking information on even the most minute of details, regardless of where Mr. Nguesso went or for what purpose he travelled.  Mr. Nguesso is *not* a party to this litigation between Commisimpex and the Congo, and Commisimpex cannot invade every aspect of his life, hoping, by chance, to find some information relevant to its judgment.  Such a patent fishing expedition should not be enforced, especially considering that this subpoena was allegedly served while Mr. Nguesso was travelling to the United States on official business as a member of Parliament.

Likewise, Request No. 5 seeks information regarding any payments of any kind made to Mr. Nguesso or his family by the Congo or any instrumentality at any point in time.  Doc. No. 60 at 20.  While this Request might not be quite as egregious as those preceding it (a fairly low standard), it still seeks all payments made to Mr. Nguesso, regardless of whether Mr. Nguesso might have had a legitimate reason for receiving them and regardless of whether they might even possibly have been wrongly provided.  For example, this Request would require Mr. Nguesso to produce his pay stub each and every month for his salary from the Congolese Parliament, regardless of the fact that there can be no dispute that these payments are valid.  Moreover, this is the quintessential type of information that should be produced by the Congo, itself, as a party to this action, and *not* by Mr. Nguesso.  Again, Commisimpex's Requests "stray too far away from the core facts of the case," and must be quashed.  *See Kellogg*, 284 F.R.D. at 36-37.

Finally, the Subpoena contains a host of document requests seeking information regarding a myriad of assets, bank accounts, and records owned or maintained by the Congo, itself.  Doc. No. 60 at 23-24 (Requests 8-19).  While these Requests might be proper if they were addressed to the *Congo*, this subpoena seeks information from the wrong party.  Even if Mr. Nguesso had such documents in his possession, they belong to the Congo, not to a single member of its Parliament, and Commisimpex should be required to seek them directly from their owner.[6]  *See Bostian*, 2007 WL 3005177, at *2 (quashing subpoena where "documents belonging to the defendant corporation [were] subpoenaed directly from a non-party employee" and requiring that they be obtained directly from the party to the action).  This conclusion is again fortified by principles of comity and foreign interests.  Where, as here, Commisimpex is seeking documents directly belonging to a foreign sovereign, which directly affect that sovereign's interests, those documents should come from that sovereign, *not* from a tangentially related third-party like Mr. Nguesso.  *See Aerospatiale*, 482 U.S. at 546 (holding that courts should "take care to demonstrate due respect" for "any sovereign interest expressed by a foreign state").

In short, Commisimpex's subpoena seeks to invade the most personal and private parts of non-party Mr. Nguesso's and his family's lives based on the vague and unfounded allegation that they might have received some assets at some point in time from the Congo.  All of the information that Commisimpex seeks may be obtained from other parties, including the Congo, itself, and Commisimpex has not presented sufficient justification to obtain discovery from a sitting member of the Congo's Parliament (who was only in this country as part of his official duties as a foreign official).  Commisimpex's document requests are oppressive, vastly overbroad, and seek large swathes of information that have nothing to do with this case.  For all

---

[6] As discussed above, any documents Mr. Nguesso received as part of his official duties would be protected under foreign sovereign immunity. *See Giraldo*, 808 F. Supp. 2d at 249.

of these reasons, and given the important concerns of comity and foreign relations, this subpoena should be quashed.

## **CONCLUSION**

For all of the reasons herein, Mr. Nguesso respectfully requests that the Court deny Commisimpex's Motion to Compel in its entirety.

Dated: October 27, 2016                    Respectfully submitted,

                                           /s/ Benjamin G. Chew
                                           Benjamin G. Chew (DC Bar No. 466221)
                                           Manatt, Phelps & Phillips, LLP
                                           1050 Connecticut Avenue NW, Suite 600
                                           Washington, DC 20036
                                           Telephone:    (202) 585-6511
                                           Facsimile:    (202) 585-6600
                                           Email:        bchew@manatt.com

                                           *Counsel for Non-Party Denis-Christel Sassou*
                                           *Nguesso*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October 2016, I will file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Francis A. Vasquez, Jr., Esq.
White & Case LLP
701 Thirteenth Street NW
Washington, DC 20005
Telephone:      (202) 626-3603
Facsimile:      (202) 639-9355
Email:          fvasquez@whitecase.com

*Counsel for Petitioner Commissions Import Expert S.A.*

Robert A. Schwinger, Esq.
Marc Suskin, Esq.
Rachel W. Thorn, Esq.
Chadbourne & Parke LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone:      (212) 408-5100
Facsimile:      (212) 408-5227
Email:          rschwinger@chadbourne.com
                msuskin@chadbourne.com
                rthorn@chadbourne.com

*Counsel for Respondent Republic of the Congo*

/s/ Benjamin G. Chew
Benjamin G. Chew (DC Bar No. 466221)
Manatt, Phelps & Phillips, LLP
1050 Connecticut Avenue NW, Suite 600
Washington, DC 20036
Telephone:      (202) 585-6511
Facsimile:      (202) 585-6600
Email:          bchew@manatt.com

*Counsel for Non-Party Denis-Christel Sassou
Nguesso*